R. Bruce Rich
Benjamin E. Marks
Jonathan Bloom
John R. Gerba
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000

*Attorneys for Defendant West Publishing Corporation*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x

EDWARD L. WHITE, P.C.

                Plaintiff,

                v.

WEST PUBLISHING CORPORATION d/b/a West;
and REED ELSEVIER, INC. d/b/a LexisNexis,

                Defendants.

-----------------------------------------------------------------x

12 Civ. 1340 (JSR)
**Filed Electronically**

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT WEST PUBLISHING CORPORATION'S
## <u>MOTION FOR SUMMARY JUDGMENT</u>

## TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ........................................................................................ iii

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF FACTS ...........................................................................................4

    The Litigator™ Database ........................................................................................4

    The Motions at Issue ...............................................................................................6

    The Lack of Impact on Plaintiff Due to the Availability of the Motions on Litigator™.....8

ARGUMENT ................................................................................................................9

    I.      THE SUMMARY JUDGMENT STANDARD ...................................................9

    II.    WEST'S TRANSFORMATIVE USE OF PLAINTIFF'S FACTUAL
           MOTIONS, WITH NO PROSPECT OF MARKET HARM, IS FAIR USE ........10

           A.     Factor One:  The Nature and Purpose of the Use .....................................11

                   1.     West's use is transformative .........................................................11

                   2.     The commercial nature of the use is not legally significant ..........13

           B.     Factor Four:  The Effect of the Use on the Potential Market
                 for or Value of the Copyrighted Work ......................................................14

           C.     Factor Two:  The Nature of the Copyrighted Work ..................................17

            D.     Factor Three:  The Amount and Substantiality of the Use .......................18

            E.     Including Plaintiff's Motions in the Litigator™ Database Advances
                 Rather Than Impedes the Purposes of the Copyright System ..................19

    II.    IN THE ALTERNATIVE, WEST IS ENTITLED TO SUMMARY
           JUDGMENT ON PLAINTIFF'S CLAIMS FOR ACTUAL DAMAGES,
           STATUTORY DAMAGES, ATTORNEYS' FEES, AND
           INJUNCTIVE RELIEF ......................................................................................21

           A.     Plaintiff Cannot Show Any Actual Damages ............................................21

           B.     Plaintiff Is Not Eligible to Receive Statutory Damages or
                 Attorneys' Fees .........................................................................................21

C.      Plaintiff Is Not Entitled to Injunctive Relief.............................................23

CONCLUSION.................................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                          **Page(s)**

<u>A.V. ex rel. Vanderhye</u> v. <u>iParadigms</u>,
    562 F.3d 630 (4th Cir. 2009) ........................................................................12, 16

<u>Am. Geophysical Union</u> v. <u>Texaco</u>,
    60 F.3d 913 (2d Cir. 1994)................................................................ 13, 15, 17-18

<u>Anderson</u> v. <u>Liberty Lobby, Inc.</u>,
    477 U.S. 242 (1986)........................................................................................ 9-10

<u>Beer</u> v. <u>XTO Energy, Inc.</u>,
    No. CIV-07-798-L, 2010 WL 1490069 (W.D. Okla. April 13, 2010)......................................7

<u>Bill Graham Archives</u> v. <u>Dorling Kindersley Ltd.</u>,
    448 F.3d 605 (2d Cir. 2006)................................................................12, 15, 17, 18

<u>Blanch</u> v. <u>Koons</u>,
    467 F.3d 244 (2d Cir. 2006)..............................................................10, 12, 13, 15

<u>Campbell</u> v. <u>Acuff-Rose Music, Inc.</u>,
    510 U.S. 569 (1994).................................................................................. passim

<u>Castle Rock Entm't, Inc.</u> v. <u>Carol Publ'g Grp., Inc.</u>,
    150 F.3d 132 (2d Cir. 1998)........................................................................ passim

<u>Danielson, Inc.</u> v. <u>Winchester-Conant Properties, Inc.</u>,
    322 F.3d 26 (1st Cir. 2003)....................................................................................23

<u>East/West Venture</u> v. <u>Wurmfeld Assocs., P.C.</u>,
    722 F. Supp. 1064 (S.D.N.Y. 1989)......................................................................23

<u>eBay, Inc.</u> v. <u>MercExchange, L.L.C.</u>,
    547 U.S. 388 (2006).............................................................................................23

<u>Field</u> v. <u>Google Inc.</u>,
    412 F. Supp. 2d 1106 (D. Nev. 2006) ..................................................................12

<u>Grundberg</u> v. <u>Upjohn Co.</u>,
    137 F.R.D. 372 (D. Utah 1991) ...................................................................... 22-23

<u>Harper & Row, Publ'rs, Inc.</u> v. <u>Nation Enters.</u>,
    471 U.S. 539 (1985).................................................................................16, 17, 19

<u>Hounddog Prods., L.L.C.</u> v. <u>Empire Film Group, Inc.</u>,
    826 F. Supp. 2d 619 (S.D.N.Y. 2011)...................................................................24

Kane v. Comedy Partners,
    No. 00 Civ 158 (GBD), 2003 WL 22383387 (S.D.N.Y. Oct. 16, 2003) ...............................14

Kelly v. Arriba Soft Corp.,
    336 F.3d 811 (9th Cir. 2003) .......................................................................................12, 18

Kunycia v. Melville Realty Co., Inc.,
    755 F. Supp. 566 (S.D.N.Y. 1990)........................................................................................23

Leibovitz v. Paramount Pictures Corp.,
    137 F.3d 109 (2d Cir. 1998)..................................................................................................15

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
    475 U.S. 574 (1986)........................................................................................................9-10

Maxtone-Graham v. Burtchaell,
    803 F.2d 1253 (2d Cir. 1986)................................................................................................17

New Era Publ'ns Int'l v. Carol Publ'g Grp.,
    904 F.2d 152 (2d Cir. 1990).................................................................................................17

Nunez v. Caribbean Int'l News Corp.,
    235 F.3d 18 (1st Cir. 2000)............................................................................................16, 18

NXIVM Corp. v. Ross Inst.,
    364 F.3d 471 (2d Cir. 2004).................................................................................................14

Pearson Education, Inc. v. Vergara,
    No. 09 Civ. 6832 (JGK) (KNF), 2010 WL 3744033 (S.D.N.Y. Sept. 27, 2010) ...................24

Penguin Books U.S.A., Inc. v. New Christian Church of Full Endeavor, Ltd.,
    288 F. Supp. 2d 544 (S.D.N.Y. 2003).................................................................................22

Perfect 10 v. Amazon, Inc.,
    508 F.3d 1146 (9th Cir. 2007) .............................................................................................12

Peter Letterese & Assocs., Inc. v. World Inst. of Scientology Enters., Int'l,
    533 F.3d 1287 (11th Cir. 2008) ...........................................................................................17

RPM Mgmt., Inc. v. Apple,
    943 F. Supp. 837 (S.D. Ohio 1996) ....................................................................................23

Salinger v. Colting,
    607 F.3d 68 (2d Cir. 2010)...........................................................................................23-24

Shoptalk, Ltd. v. Concorde-New Horizon Corp.,
    168 F.3d 568 (2d Cir. 1999)................................................................................................22

Soc'y of the Holy Transfiguration Monastery, Inc. v. Archbishop Gregory of Denver,
  689 F.3d 29 (1st Cir. 2012)............................................................................23

Sony Corp. of Am. v. Universal City Studios, Inc.,
  464 U.S. 417 (1984)............................................................................... 12, 18-20

Swatch Group Mgmt. Servs. Ltd. v. Bloomberg L.P.,
  No. 11 Civ. 1006 (AKH), 2012 WL 1759944 (S.D.N.Y. May 17, 2012) .................. 15-16, 18

Thornton v. J Jargon Co.,
  580 F. Supp. 2d 1261 (M.D. Fla. 2008)............................................................21

Warner Bros. Entm't Inc. v. X One X Prods.,
  644 F.2d 584 (8th Cir. 2011) ...........................................................................23

Winter v. Natural Resources Defense Council,
  555 U.S. 7 (2008)............................................................................................23

**Statutes**

17 U.S.C. § 101 ............................................................................................22-23

17 U.S.C. § 107(1) ..........................................................................................13

17 U.S.C. § 107(2) ..........................................................................................17

17 U.S.C. § 107(3) ..........................................................................................18

17 U.S.C. § 107(4) ..........................................................................................14

17 U.S.C. § 411 ..............................................................................................10

17 U.S.C. § 412...........................................................................................4, 21-23

17 U.S.C. §501(b) ..........................................................................................10

**Other Authorities**

1 M.B. & D. Nimmer, Nimmer on Copyright, § 4.10 at 4-52 (2012)..........................23

Barton Beebe, An Empirical Study of U.S. Copyright Fair Use Opinions,
  1978-2005, 156 U. Pa. L. Rev. 549 (2008) .........................................................10

Fed. R. Civ. P. 56 ...........................................................................................1

Fed. R. Civ. P. 56(c) .......................................................................................9

Fed. R. Civ. P. 56(e)(2).....................................................................................9

Local Rule 56.1 ................................................................................................................1

Defendant West Publishing Corporation ("West") submits this memorandum of law in support of its motion for summary judgment pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1.

## PRELIMINARY STATEMENT

This dispute involves an ill-conceived claim of copyright infringement arising out of longstanding, heretofore uncontested, practices on the part of West that constitute quintessential fair uses of the two documents in question. There being no genuine issues of material fact concerning application of the fair-use doctrine to West's conduct, West hereby moves for summary judgment dismissing the complaint as to it on that basis.

Defendants are the largest legal research providers in the United States. For nearly a decade, West has included among its product offerings a database that includes copies of briefs, motions, and other court filings. Each such document already is available to the public through other means. As Plaintiff's principal, Edward White, has conceded, it "has always been the case" that lawyers – and, indeed, any member of the public – could obtain copies of court filings from the courts in which they are filed. The Public Access to Court Electronic Records ("PACER") service that is maintained by the federal judiciary as part of its commitment to providing public access to court information makes obtaining copies of court filings even easier: with a PACER account and a few clicks of a computer mouse, anyone can obtain electronic copies of briefs filed through PACER with any federal court. Plaintiff finds no fault with, and would assert no legal claim directed against, such activity.

Plaintiff nonetheless has chosen to sue West for facilitating access to the very same materials for identical use by the very same population of interested parties that, Plaintiff concedes, already is entitled to receive them. The specific business activity that Plaintiff attacks – West's Litigator™ database – provides more convenient and comprehensive access to

court filings by aggregating millions of documents into a text-searchable database that enables subscribers to locate filings of interest.  Despite the fact that West thereby is helping to fulfill the very policy of ensuring public access to court filings to which White otherwise subscribes, Plaintiff has mounted the novel and groundless claim that West infringes its purported copyright rights.

The copyrights West is claimed to have infringed are for motion papers prepared and filed on behalf of Plaintiff's clients in Plaintiff's capacity as legal counsel.  Even assuming White were able to demonstrate that these two works are copyrightable and otherwise meet the statutory requisites for bringing this action, West's copying is classic fair use.  From the infancy of copyright law, courts have recognized that some opportunity for fair use of copyrighted materials is necessary where the interests of public access to the information embodied in copyrighted material outweigh the author's right to prevent its copying.  The "ultimate test of fair use" is "whether the copyright law's goal of 'promoting the Progress of Science and useful Arts,' U.S. Const., art. I, § 8, cl. 8, would be better served by allowing the use than by preventing it."  <u>Castle Rock Entm't, Inc.</u> v. <u>Carol Publ'g Grp., Inc.</u>, 150 F.3d 132, 141 (2d Cir. 1998) (other quotation omitted).  West's conduct passes this test with ease.

As he must, White has conceded that West's conduct has no effect whatsoever on his incentive to create briefs and motions.  White's livelihood is based on providing legal services to his clients, who presumably pay his law firm for those services – including, as appropriate, creating legal documents for use in connection with litigation.  Regardless of the outcome of this case, White will continue to litigate cases and to write briefs and file motions whenever he deems it to be in his clients' best interests.

Correspondingly, there is no existing or potential ancillary market for Plaintiff's work product.  Plaintiff has never licensed, attempted to license, or been asked to license works like those at issue here.  Indeed, it would be peculiar in the extreme were a lawyer, having been paid by a client to create legal work product on its behalf, to turn around and attempt to resell that product to third parties with which it enjoyed no attorney-client relationship.  More generally, and also not surprisingly, White could not identify any concrete harm he or his firm has suffered from the inclusion of the two motions at issue in West's database.  In short, a ruling in West's favor would do nothing to impede the purpose of copyright law.

In contrast, imposing copyright liability here would contract the storehouse of knowledge about the workings of the judicial system, the issues that are before the courts, the facts underlying particular cases, and the nature of the legal arguments in such cases.  What is more, law, as all other areas of human endeavor, reflects an accretive body of learning.  West's Litigator™ database serves to allow lawyers, academics, and judges, among others, to evolve legal doctrine, scholarship, and precedents based on past advocacy.  If litigants such as Plaintiff were able not merely to charge their clients for their legal services, but, having committed that work to public scrutiny via court filings, to condition public access to them upon paying a fee, these important public purposes would be impeded.

The material facts relevant to West's fair-use defense being undisputed, as we establish, West's transformative use of Plaintiff's fact-based works in a manner that impairs no present or prospective market for those works mandates summary judgment in West's favor under the fair-use doctrine.  Even if the Court were to decline to grant summary judgment to West on its fair-use defense, however, the record conclusively establishes that Plaintiff would not be entitled to most of the forms of relief it seeks.  Accordingly, as an alternative basis for relief at this stage of

the case, West moves for summary judgment on Plaintiff's claims for actual damages, statutory

damages, attorneys' fees, and injunctive relief.  Plaintiff admits that it cannot identify any actual

damages it has incurred as a result of West's conduct.  As to its request for statutory damages

and attorneys' fees, Plaintiff cannot meet the statutory prerequisites of section 412 of the

Copyright Act for these forms of relief.  Nor can Plaintiff meet the standards for injunctive relief.

The lack of any irreparable harm, coupled with a balance of hardships that weighs decidedly in

West's favor and a strong public interest in the continued availability of West's database, handily

defeat Plaintiffs' request for a permanent injunction.

## STATEMENT OF FACTS

### The Litigator™ Database

West's Litigator™ product assists users with a wide range of tasks, including retrieving

and comparing jury instructions and verdicts; investigating property records; conducting research

on opposing counsel, judges, and potential expert witnesses; reviewing court dockets; and

preparing checklists for depositions and interrogatories.  <u>See</u> Declaration of Tom Leighton (Oct.

4, 2012) ("Leighton Decl.") ¶ 3.  Litigator™ also includes an extensive body of documents such

as briefs and motions that have been filed with the courts and made available to the public for

inspection and copying.  <u>See id.</u>  West's customers with access to Litigator™ can use these

documents for many useful purposes, including to understand the factual and legal issues

involved in particular cases, as well as to discern whether and, if so, how legal arguments that

may be of relevance in their own personal or professional activities and engagements have been

presented.  It is evident that affording such access serves to:  improve the public's knowledge of

the law and our legal system; enhance the quality of legal advocacy; advance legal scholarship;

and make the practice of law more efficient.  See id.  Litigator™ also provides an important

archival function, as further described below.

West began incorporating briefs into Litigator™ in 2003.  See id. ¶ 4.  For many briefs

and other documents filed electronically in federal courts, West obtains copies through PACER,

which is maintained by the federal judiciary as part of its commitment to providing public access

to court information.  See id.; see also www.pacer.gov.  In other instances, West obtains copies

of briefs and other court filings from the offices of the clerks of the courts in which the

documents were filed.  See Leighton Decl. ¶ 4.  Litigator™ currently contains approximately 11

million documents, including millions of briefs and motions.  See id.  While the size of the

database is a critical aspect of its utility, West does not endeavor to be, and is not, comprehensive

in its collection of court filings.  See id. ¶ 5.

Before an acquired document gets added to Litigator™, West transforms and enhances it

in a number of ways designed to facilitate subscribers' ability to access the information it

contains.  See id. ¶ 6.  Initially, the document is processed, converted into a text-searchable form,

and saved in a proprietary file format.  See id.  This allows the documents to be incorporated into

West's electronic research system.  See id.  The documents also are coded in order to enable key

features of Litigator™.  See id. ¶ 7.  For instance, the coding allows users to sort and retrieve

documents by area of law or jurisdiction.  See id.  It also enables linking – a central element of

West's product offering – to other documents filed in the same case, to documents filed in

similar cases, and to any authority cited in the document that is otherwise available in West's

system, which makes those resources instantly available to West's subscribers with one easy

click.  See id.  West's coding of the document also enables West's KeyCite system to provide

instantly available indications of whether any particular cited opinion is still good law.  See id.

For each document, West creates a unique identifier so that users can identify the document and cite it to others.  See id.

West also undertakes a privacy review before a document is added to Litigator™.  See id. ¶ 9.  This review looks for sensitive and/or private information and redacts that information before a document is made available.  See id.  Examples of the types of information that are screened out during this process are Social Security numbers, bank account information, or information identifying individuals in sensitive cases such as those involving allegations of sexual abuse.  See id.  West also reviews documents for sealed or confidential material and removes that as well before uploading documents to Litigator™.  See id. ¶ 10.

Once documents have cleared West's review process and are loaded into Litigator™, subscribers are able to see links to them in lists of search results, as well as links to the case in which they were filed.  See id. ¶ 12.  By clicking on a link, subscribers can access a document in West's proprietary file format.  See id.  Once accessed, the proprietary file generally also contains a link to a PDF of the document.  See id.  The PDF ensures that lawyers, judges, and other officers of the court have remote access, 24 hours a day, 365 days a year, to an as-filed copy of the document and provides both convenience and a valuable archival function.  See id.

West has received only a handful of requests over the years for removal of a document from the Litigator™ database and, as a matter of practice, honors such requests without regard to the reason.  See id. ¶ 11.

**The Motions at Issue**

Plaintiff alleges that West infringed its copyrights in two documents by including them in its database: Plaintiffs' Combined Motion for Summary Judgment for Plaintiffs, Beer and Ramsey, and Brief in Support, dated May 20, 2009 ("Beer Summary Judgment Motion"), and

Plaintiff's Motion in Limine, dated March 15, 2010 ("Beer Motion in Limine") (collectively, the "Motions").  See Am. Compl. ¶ 4.  Both of the Motions were filed via PACER in the United States District Court for the Western District of Oklahoma in the Beer v. XTO Energy, Inc. litigation (Case No. CIV-07-798-L).  See Dep. of Edward L. White ("White Dep.") 150:7-152:11.[1]  While both Motions are available to the public through PACER and the court clerk, neither has been published, which has implications for some of the forms of relief White seeks.  See infra pp. 22-23.  Outside of filing copies of these documents with the court and providing copies to his clients and possibly an expert, White confirmed that he was not aware of any other distribution of the Motions by him or anyone else associated with his firm.  See White Dep. 63:7-64:5.

How these two briefs became the predicate for this action is instructive.  Beer was brought as a class action, and Plaintiff was appointed as class counsel when the class originally was certified.  See White Dep. 79:14-20.  Subsequent to the filing of the Motions, however, the Beer court determined that Plaintiff had not acted in the best interests of the class and was no longer adequate counsel to the class, removed Plaintiff as class counsel, and decertified the class.  Id. at 82:14-83:5; see also Beer, Case No. CIV-07-798-L, 2010 WL 1490069 (W.D. Okla. Apr. 13, 2010).  Following decertification, two new individuals filed a motion to intervene as named plaintiffs in Beer with new class counsel.  See White Dep. 83:10-14.  To preserve a role for himself in the litigation – and before being enjoined by the court from continuing to communicate with absent members of the former class, see id. at 87:14-88:17[2] – White began reaching out to the members of the previously certified class and offering to represent them on an

---

[1] Cited excerpts of deposition testimony are annexed to the Declaration of John R. Gerba (October 5, 2012) ("Gerba Decl."), which is submitted herewith.

[2] See also Beer, Case No. CIV-07-798-L (W.D. Okla. July 20, 2010) (Gerba Decl. Ex. K).

individual basis.  See id. at 83:16-84:16.  As part of these efforts to remain an integral part of the

Beer litigation and to prevent other lawyers from using his work in their bid to represent a new

class, Plaintiff filed copyright registrations for the Motions and other court filings in the case.

See id. at 84:17-85:12.  The registrations were issued on May 20, 2010 (Beer Summary

Judgment Motion) and May 21, 2010 (Beer Motion in Limine).  See Am. Compl. ¶ 4.

West loaded the Beer Summary Judgment Motion into Litigator™ on July 11, 2009.

Leighton Decl. ¶ 17.  West loaded the Beer Motion in Limine into Litigator™ on May 2, 2010.

Id. ¶ 18.  The documents were viewed by West subscribers only a handful of times.  Id. ¶¶ 17-18.

**The Lack of Impact on Plaintiff Due to the Availability of the Motions on Litigator™**

White admitted that he has no objection to members of the public copying documents he

files with courts via PACER.  See White Dep. 164:19-165:19.  Indeed, he acknowledged that it

has "always been the case" that lawyers could obtain copies of filed briefs from PACER or the

courthouse.  Id. at 128:11-129:4.  White is well aware that this right of access to court filings

extends to any member of the public.  See id. at 71:3-6, 71:18-21, 76:24-77:11.

The ability of the public to access court filings through Litigator™ has had no discernible

impact on the creation of or market for the Motions or similar works.  White acknowledged that

the possibility of someone obtaining the Motions via PACER and distributing them had no

impact on Plaintiff's decision to create those Motions or on the quality of his work product.  See

White Dep. 77:12-21, 136:15-20.  Indeed, White testified that the only reason the Motions were

created was to advocate for his clients in Beer.  See id. at 69:14-24, 76:13-77:21.  He admitted

that he did not create the Motions to license or sell them to other lawyers; he never has attempted

to do so, and no one ever has asked him to do so.  See id. at 74:12-18, 78:3-79:7, 202:12-20.

Moreover, the conduct Plaintiff challenges here will have no detrimental effect on the creation or

quality of comparable works.  White confirmed that, win or lose, he will continue to practice law

and to file briefs on his clients' behalf when he thinks it is in their best interests, and the quality

of his advocacy will not be diminished.  See id. at 72:14-18, 77:17-21, 125:3-126:2.  The

availability of some of Plaintiff's past court filings on Westlaw did not and would not

compromise its ability to represent clients effectively.  See id. at 137:3-9.

As a courtesy to White, and consistent with its overall practice where a request to take

material down has been made, West removed the Motions from its database shortly after the

original complaint was filed and more than three months before the filing of the Amended

Complaint.  See Leighton Decl. ¶ 19.  Reflecting the utter lack of impact that the presence or

absence of the Motions in Litigator™ has on Plaintiff, White was unaware as of August 30, 2012

(the date of his deposition) that the Motions were no longer available on Litigator.  See White

Dep. 101:5-8.  He similarly was under the misimpression that West automatically incorporates

all of his court filings into its database.  See id. at 99:6-15, 101:9-12, 103:12-23.

## ARGUMENT

## I.   THE SUMMARY JUDGMENT STANDARD

Summary judgment should be granted if the evidence, viewed in the light most favorable

to the nonmoving party, shows that there is "no genuine issue as to any material fact and that the

movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  To defeat a properly

made and supported motion for summary judgment, the opposing party must come forward with

"specific facts showing a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 248 (1986); Fed. R. Civ. P. 56(e)(2).  That factual evidence must be "of such a character

that it would warrant a jury in finding a verdict in favor of" the nonmoving party.  Anderson, 477

U.S. at 251 (citation omitted).  Summary judgment cannot be defeated simply by raising

"metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,

475 U.S. 574, 586 (1986), or by adducing evidence that is "merely colorable or is not

significantly probative." Anderson, 477 U.S. at 249 (citation omitted).

The substantive merits issue on this motion is fair use.[3]  As the Court of Appeals has

made clear, fair-use defenses often are ripe for resolution at the summary judgment stage.

"'Although '[f]air use is a mixed question of law and fact,' this court has on a number of

occasions resolved fair use determinations at the summary judgment stage where . . . there are no

genuine issues of material fact.'" Blanch v. Koons, 467 F.3d 244, 251-52 (2d Cir. 2006)

(quoting Castle Rock, 150 F.3d at 137); see also Barton Beebe, An Empirical Study of U.S.

Copyright Fair Use Opinions, 1978-2005, 156 U. Pa. L. Rev. 549, 570 (2008) (noting that in

copyright cases in which a fair-use defense is offered and in which summary judgment is sought

by one or the other party, summary judgment is granted over eighty percent of the time).

## II.  WEST'S TRANSFORMATIVE USE OF PLAINTIFF'S FACTUAL MOTIONS, WITH NO PROSPECT OF MARKET HARM, IS FAIR USE

As the  Supreme Court has explained, "[f]rom the infancy of copyright protection, some

opportunity for fair use of copyrighted materials has been thought necessary to fulfill copyright's

very purpose, 'to promote the Progress of Science and useful Arts.' Art. I, sec. 8, cl. 8."

Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 575-77 (1994) (citations omitted).  The fair-

use doctrine is essential to prevent "rigid application" of copyright law protections from

"stifl[ing] the very creativity which that law is designed to foster." Id.

Section 107 of the Copyright Act instructs courts to evaluate invocations of fair use on a

case-by-case basis by considering the following non-exclusive list of factors:

---

[3] West does not concede that Plaintiff can establish copyright ownership and a valid registration with respect to either of the Motions, as required by 17 U.S.C. §§ 411 and 501(b), but, solely for purposes of this motion, does not contest these elements of Plaintiff's claims.  There is no dispute that West copied the Motions.

(1)  the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

(2)  the nature of the copyrighted work;

(3)  the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

(4)  the effect of the use upon the potential market for or value of the copyrighted work.

The Second Circuit has emphasized that these factors should be construed so as to advance the underlying objectives of copyright law.  As noted above, "[t]he ultimate test of fair use . . . is whether the copyright law's goal of 'promoting the Progress of Science and useful Arts,' U.S. Const., art. I, § 8, cl. 8, would be better served by allowing the use than by preventing it."  Castle Rock, 150 F.3d at 141 (other quotation omitted).

The conduct of which West stands accused plainly falls into the zone protected by fair use.  On an uncontested record as to the material facts that undergird a fair-use analysis here, the statutory factors weigh heavily in West's favor.  This is because West is offering a valuable informational database that uses court filings for a totally different and non-competing purpose, and for a different audience, than that for which they were created.  The underlying purposes of copyright thus clearly would be advanced rather than threatened by a finding of fair use.  Analysis of the interrelating first and fourth factors, which we discuss first, compels the conclusion that West's use is fair; application of the second and third factors bolsters this conclusion.  A grant of summary judgment to West dismissing the complaint is warranted.

A.    Factor One:  The Nature and Purpose of the Use

1.    West's use is transformative

The "central purpose" of the first-factor inquiry is to determine "whether the new work merely supersede[s] the objects of the original creation . . . or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or

message"; it is to determine "whether and to what extent the new work is transformative."

Campbell, 510 U.S. at 579 (quotations omitted).  By generating value beyond that inhering in the

original, the goal of copyright "is generally furthered" by transformative works.  Campbell, 510

U.S. at 579.[4]  Although West augments the briefs it includes in its database with features that

enhance the user experience, the defendant's use of the copyrighted work "need not alter or

augment the work" to be transformative.  A.V. ex rel. Vanderhye v. iParadigms, 562 F.3d 630,

639, 640 (4th Cir. 2009) (finding the archiving of student papers in a database used for

automatically detecting plagiarism to be transformative).

    Transformative uses of copyright works include uses for a new purpose, distinct from that

for which the copyrighted work was created.  See, e.g., Blanch, 467 F.3d at 252 ("The sharply

different objectives that Koons had in using, and Blanch had in creating, [Blanch's photograph]

confirms the transformative nature of the use."); Bill Graham Archives v. Dorling Kindersley

Ltd., 448 F.3d 605, 610 (2d Cir. 2006) (holding that reproduction of reduced-size images of

Grateful Dead posters "fulfill[ed] DK's transformative purpose of enhancing the biographical

information in [the defendant's book], a purpose separate and distinct from the original artistic

and promotional purpose for which the images were created").[5]

---

[4] Although transformative use weighs heavily in favor of fair use, the Supreme Court has held
that a transformative use is not required for a finding of fair use.  Campbell, 510 U.S. at 579; see
also Sony Corp. of Am. v. Universal City Studios, Inc., 464 U.S. 417, 453 n.40 (1984).

[5] See also Perfect 10 v. Amazon, Inc., 508 F.3d 1146 (9th Cir. 2007) ("Google uses Perfect 10's
images in a new context to serve a different purpose."); Kelly v. Arriba Soft Corp., 336 F.3d 811,
818-19 (9th Cir. 2003) (finding that search engine served "a different function than [the
plaintiff's images] – improving access to information on the internet versus artistic expression");
Field v. Google Inc., 412 F. Supp. 2d 1106, 1119 (D. Nev. 2006) (holding that Google's caching
function was transformative because the caching "serves different and socially important
purposes in offering access to copyrighted works through 'cached' links and does not merely
supersede the objectives of the original creations").

There can be no dispute that West uses Plaintiff's Motions for an entirely different purpose than the legal advocacy for which they were created. Plaintiff wrote the Motions to persuade the court to rule in favor of its clients. See White Dep. 69:14-24, 76:13-23. By contrast, West has no interest in the outcome of cases involving Plaintiff's clients and obviously does not seek to compete with Plaintiff in rendering advice to clients and writing briefs and motions on their behalf. In other words, West's use did not in any way "supersede the objects" of the original works. Campbell, 510 U.S. at 579.

Instead, West included the documents in its database to make them available to subscribers as part of a curated, interlinked legal research tool – a socially important function that helps to educate the public as to the workings of our justice system and to improve the overall quality and efficiency of legal advocacy and scholarship, while also serving an important archiving function. See Leighton Decl. ¶¶ 3, 7, 13. West thereby used Plaintiff's works as "'raw material' . . . in the furtherance of distinct creative or communicative objectives." Blanch, 467 F.3d at 253 (citation omitted).[6]

### 2.    The commercial nature of the use is not legally significant

The commercial/nonprofit dichotomy codified in section 107(1) of the Copyright Act "concerns the unfairness that arises when a secondary user makes unauthorized use of copyrighted material to capture significant revenue as a direct consequence of copying the original work." Am. Geophysical Union v. Texaco, 60 F.3d 913, 922 (2d Cir. 1994). However, the commercial or nonprofit educational purpose of a work is "only one element of the first

---

[6] By adding keyword search functionality and links to cited materials, see Leighton Decl. ¶¶ 6-7, West facilitates legal research by directing users to materials that otherwise could be obtained from the courthouse or via PACER if the user already knew what he or she was looking for. Plaintiff has acknowledged that West transformed the Works. See Am. Compl. ¶ 23 (alleging that West "copied, digitized, *transformed*, and packaged [the Motions] into databases that are sold for profit") (emphasis added).

factor enquiry into its purpose and character," Campbell, 510 U.S. at 584, and the fact that a use is commercial does not bar a finding of fairness. Id. Indeed, "the Supreme Court has discounted the force of commerciality in applying a fair use analysis[.]" Kane v. Comedy Partners, No. 00 Civ 158 (GBD), 2003 WL 22383387, at *3 (S.D.N.Y. Oct. 16, 2003). As the Supreme Court has noted, if "commerciality carried presumptive force against a finding of fairness, the presumption would swallow nearly all of the illustrative uses listed in the preamble paragraph of § 107, including news reporting, comment, criticism, teaching, scholarship, and research, since these activities 'are generally conducted for profit in this country.'" Campbell, 510 U.S. at 584 (citation omitted). The commercial nature of a transformative use carries little weight where, as in this case, the factors considered together point toward fair use.

* * *

The first statutory factor weighs heavily in favor of fair use.

**B.    Factor Four:  The Effect of the Use on the Potential Market for or Value of the Copyrighted Work**

The transformative, non-superseding nature of West's use of the Motions is confirmed by the absence of any impact on the actual or any potential market for the Motions.

The fourth statutory fair-use factor requires an assessment of "the effect of [Defendants'] use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4). The primary focus of this factor is on whether the defendant's work functions as a substitute for the plaintiff's work and thus reduces the value of the existing market for that work. See e.g. NXIVM Corp. v. Ross Inst., 364 F.3d 471, 482 (2d Cir. 2004) (asking "whether the secondary use usurps the market of the original work").

Also relevant under the fourth factor is whether the defendant's activity might erode the value of a "potential" market for the plaintiff's work. Analysis of the possible impact of the

defendant's behavior on "potential markets," however, is limited by two important principles.

First, the inquiry is limited to possible impacts on "traditional, reasonable, or likely to be

developed markets." Am. Geophysical Union, 60 F.3d at 930.  Second, the set of potential

markets that is cognizable under the market-harm inquiry does not include markets in which the

plaintiff's works are used in "transformative" ways.  See Bill Graham Archives, 448 F.3d at 615

("[C]opyright owners may not preempt exploitation of transformative markets. . . . Since DK's

use of BGA's images falls within a transformative market, BGA does not suffer market harm due

to the loss of license fees." (first alteration in original) (citation and internal quotation marks

omitted)); see also Castle Rock, 150 F.3d at 145 n.11 ("[B]y developing or licensing a market for

parody, news reporting, educational or other transformative uses of its own creative work, a

copyright owner plainly cannot prevent others from entering those fair use markets.").

A copyright owner's failure to adduce any evidence of harm to the actual or potential

market for the copyrighted work weighs heavily in favor of fair use.  In Blanch, the fact that the

plaintiff admitted she had "never licensed any of her photographs for use in works of graphic or

other visual art" and that the defendant's use of her photograph in a painting "did not cause any

harm to her career or upset any plans she had" for the photograph led the court to conclude that

the fourth factor "greatly" favored the defendant.  467 F.3d at 258; see also id. at 262

(Katzmann, J., concurring) ("[T]he fourth factor of the fair-use analysis dramatically favors

Koons, in that Blanch failed to show that Koons' use of her work actually harmed her in any

way[.]"); Leibovitz v. Paramount Pictures Corp., 137 F.3d 109, 116 n.6 (2d Cir. 1998)

("Leibovitz has not identified any market for a derivative work that might be harmed by the

Paramount ad.  In these circumstances, the defendant had no obligation to present evidence

showing lack of harm in a market for derivative works."); Swatch Group Mgmt. Servs. Ltd. v.

Bloomberg L.P., No. 11 Civ. 1006 (AKH), 2012 WL 1759944, at *5 (S.D.N.Y. May 17, 2012)

(finding fair use where "[n]othing in the record suggests any market effect stemming from

Defendant's use of such a limited portion of the recording of the Earnings call.").[7]

Here, Plaintiff has failed to identify any adverse effect whatsoever on the actual or any

potential market for the Motions arising from their use by West.  To the contrary, White's

testimony confirms there is none:

- he never has attempted to license or sell the Motions, and no one ever has attempted to license or purchase them from him (White Dep. 78:3-9, 78:21-79:7, 202:12-203:18);

- West's copying has no effect on his incentive to create the Motions and does not affect their quality (id. at 72:4-18, 117:19-118:4); and

- he cannot point to any concrete harm caused by West's copying (id. at 40:13-24).

This testimony reflects the fact that rather than benefitting from using Plaintiff's works "without

paying the customary price," Harper & Row, Publ'rs, Inc. v. Nation Enters., 471 U.S. 539, 562

(1985), West created a transformative new product that does not "substitute[] for the market of

the original work."  Castle Rock, 150 F.3d at 145; see Declaration of David Blackburn, dated

October 5, 2012 ("Blackburn Decl."), ¶¶ 4-8.[8]  West's transformative use does not compete with

---

[7] See also iParadigms, 562 F.3d at 643 (finding fair use where each of the plaintiffs conceded that the defendant's use of their school papers had not "impinged on the marketability of their works or interfered with their use of the works"); Nunez v. Caribbean Int'l News Corp., 235 F.3d 18, 25 (1st Cir. 2000) (noting lack of evidence of a market for sale of modeling photographs to newspapers to illustrate controversy and that plaintiff did "not suggest that he ever tried to sell portfolio photographs to newspapers").

[8] As White conceded, there is no licensing market for court filings on which West has intruded. Indeed, these particular works by themselves are of no value to West and would not have been licensed by West even if it were required; the works acquire value only as part of the aggregation of works that make up West's database.  See Blackburn Decl. ¶ 7.  That is why, to be courteous, West voluntarily removed the Motions from its database after this suit was filed – a move that had no discernible repercussion either for West or for Plaintiff.  See Leighton Decl. ¶ 19; White Dep. 101:9-12, 127:12-131:12.

Plaintiff in the market for legal services, nor is there a secondary market for court filings with which West competes.  See White Dep. 78:3-9, 78:21-79:7, 202:12-203:18; Blackburn Decl. ¶ 8.

For all these reasons, the fourth statutory factor tilts decisively in favor of fair use.

### C.      Factor Two:  The Nature of the Copyrighted Work

The second fair-use factor considers the nature of the plaintiffs' copyrighted work.  17 U.S.C. § 107(2).  The law "generally recognizes a greater need to disseminate factual works than works of fiction or fantasy."  Harper & Row, 471 U.S. at 563.  As the Second Circuit stated in American Geophysical Union with respect to scientific articles, "[t]he manifestly factual character of the . . . articles precludes us from considering [them] as 'within the core of the copyright's protective purposes.'"  60 F.3d at 925 (citations omitted); see also New Era Publ'ns Int'l v. Carol Publ'g Grp., 904 F.2d 152, 157-58 (2d Cir. 1990) (finding that factor two favored fair use where copied work, a biography, was, on balance, factual or informational); Maxtone-Graham v. Burtchaell, 803 F.2d 1253, 1263 (2d Cir. 1986) (finding collection of verbatim interviews to be "essentially factual in nature," favoring fair use).

Although even nonfiction works may have creative elements that are entitled to some weight under factor two, see, e.g., Peter Letterese & Assocs., Inc. v. World Inst. of Scientology Enters., Int'l, 533 F.3d 1287, 1300 (11th Cir. 2008), the straightforward, functional presentation of fact and law in the Motions places them on the less creative end of the nonfiction spectrum and, accordingly, tips factor two in favor of fair use.  Even if the Court were to find creative elements in the works, the second factor "may be of limited usefulness where [a] creative work . . . is being used for a transformative purpose."  Bill Graham Archives, 448 F.3d at 612.

The second factor thus favors fair use.

**D.      Factor Three:  The Amount and Substantiality of the Use**

The third fair-use factor looks at the amount and substantiality of the portion used in relation to the copyrighted work as a whole.  17 U.S.C. § 107(3).  Copying an entire work "does not preclude a finding of fair use."  Am. Geophysical Union, 60 F.3d at 926.  Rather, the Supreme Court has explained, "the extent of permissible copying varies with the purpose and character of the use."  Campbell, 510 U.S. at 586-87; see also Sony, 464 U.S. at 449-50 (because time-shifting "merely enables a viewer to see such a work which he had been invited to witness in its entirety free of charge, the fact that the entire work is reproduced . . . does not have its ordinary effect of militating against a finding of fair use").

Where, as here, the transformative purpose of the copying necessitates the use of the entire work, the third factor does not weigh against a finding of fair use.  See, e.g., Bill Graham Archives, 448 F.3d at 613 (finding that copying of the entire work "does not necessarily weigh against fair use because copying the entirety of a work is sometimes necessary to make fair use" of the work); Nunez, 235 F.3d at 24 (finding that copying less than plaintiff's entire photograph would have made the picture useless to the defendant's news story); Swatch, 2012 WL 1759944 at *5 ("[I]nsomuch as a public interest is served by Defendant's dissemination of the information contained in the [recording of an earnings call], that interest is better served by the dissemination of that information in its entirety . . . ."); see also Kelly, 336 F.3d at 821 (concluding that copying plaintiff's photographs in their entirety was "reasonable" because it was "necessary . . . to copy the entire image to allow users to recognize the image and decide whether to pursue more information about the image or the originating web site").

The same is true of the court filings in Litigator™.  There would be little value in making only fragments of court filings available in a research database.  Were West to attempt such

selectivity, the inevitable arbitrariness would rob the database of much of its utility for the practitioners, judges, academics, and students who comprise West's customer base, and it would nullify its value as an archival repository of complete copies of court filings for courts and law libraries.  See Leighton Decl. ¶ 13.

In view of the reasonable extent of West's copying, factor three is, at worst, neutral.

### E. Including Plaintiff's Motions in the Litigator™ Database Advances Rather Than Impedes the Purposes of the Copyright System

Viewing the case in terms of "whether the copyright law's goal of promoting the Progress of Science and useful Arts, U.S. Const., art. I, § 8, cl. 8, would be better served by allowing the use than by preventing it," Castle Rock, 150 F.3d at 141 (quotations omitted), confirms that West makes fair use of the Motions.  The central purpose of copyright law is to stimulate creative activity that otherwise would not occur.  By "establishing a marketable right to the use of one's expression," copyright "supplies the economic incentive to create and disseminate ideas." Harper & Row, 471 U.S. at 558.  Copyright law "is intended to motivate the creative activity of authors and inventors by the provision of a special reward."  Id. at 545 (quoting Sony, 464 U.S. at 429).

Granting Plaintiff a right to demand compensation from legal-research services when they include Plaintiff's briefs in their systems would do nothing to advance this goal.  The economic incentive that motivates the drafting and filing of briefs and other court papers is not the sale of copies of the documents, it is the fact that a client has hired the attorney or firm to handle the case; the documents are created to advance the client's interests.  See White Dep. 69:4-71:2.  Attorneys do not require secondary markets for their work to motivate their creation and no such secondary market exists.  See Blackburn Decl. ¶ 8.  The ethical duty to zealously represent the client, as well as the client's payment of fees, provides the necessary motivation.

On the other hand, a ruling in Plaintiff's favor would do considerable harm to the public interest in the dissemination of documents embodying important information about the judicial system that occurs by means of West's database.  If litigators could demand a fee for the right to reproduce and distribute their public court filings, it would spawn transaction costs that surely would overwhelm West's ability to continue to provide the Litigator™ service.  See Leighton Decl. ¶ 14.  As a result, other lawyers, scholars, and the public at large would be deprived of convenient access to judicial records.  Knowledge of how the law is shaped would diminish.  No one (including Plaintiff) would gain, but the public at large would lose.  This is the sort of perverse outcome that the fair-use doctrine is designed to prevent by permitting socially beneficial, non-superseding uses of copyrighted works.  See Sony, 464 U.S. at 454 ("[T]o the extent time-shifting expands public access to freely broadcast television programs, it yields societal benefits.").

* * *

An overall evaluation of the fair-use factors compels the conclusion that they weigh decisively in favor of fair use.  West's use is transformative in a way that advances an important public interest in access to court filings, which tilts the first factor in favor of West, and there is no evidence of harm to any actual or potential market for the works, which tips factor four in favor of fair use.  The Motions are factual in nature and lacking in creative elements, which weighs in favor of West on factor two.  Finally, the amount taken, although the entire work, is dictated by the transformative purpose, such that factor three is, at worst, neutral.  On balance, it is clear that the challenged conduct is fair use as a matter of law.[9]

---

[9] West also joins in the argument in favor of summary judgment on the basis of implied license for the reasons set forth in the Memorandum of Law in Support of Defendant Reed Elsevier Inc.'s Motion for Summary Judgment, which apply equally to West.

III.   **IN THE ALTERNATIVE, WEST IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIMS FOR ACTUAL DAMAGES, STATUTORY DAMAGES, ATTORNEYS' FEES, AND INJUNCTIVE RELIEF**

As demonstrated above, West is entitled to summary judgment, and a concomitant dismissal of the complaint as to it, on its fair-use defense.  Even if the Court were to deny that relief, however, the record is ripe for the Court now to rule, as a matter of law, on the availability of various remedies were Plaintiff ever to secure a favorable liability ruling.  Specifically, it is now clear that Plaintiff has failed to prove any actual damages arising out of the asserted infringements, is not eligible to receive statutory damages or attorneys' fees, and would not be entitled to injunctive relief.[10]

A.   **Plaintiff Cannot Show Any Actual Damages**

Plaintiff has admitted he cannot identify any actual damage he has incurred as a result of West's conduct.  See White Dep. 40:13-24.  Accordingly, West is entitled to summary judgment on Plaintiff's request for actual damages.  See Thornton v. J Jargon Co., 580 F. Supp. 2d 1261, 1276-77 (M.D. Fla. 2008) (granting summary judgment on plaintiff's claim for actual damages where it was undisputed that the plaintiff never licensed the allegedly infringed work for any fees and also failed to provide any evidence of benchmark licenses).

B.   **Plaintiff Is Not Eligible to Receive Statutory Damages or Attorneys' Fees**

Plaintiff cannot satisfy the statutory prerequisites for eligibility for an award of statutory damages and attorneys' fees.  Section 412 of the Copyright Act provides in relevant part that "no award of statutory damages or of attorney's fees . . . shall be made for (1) any infringement of copyright in an unpublished work commenced before the effective date of its registration; or (2)

---

[10] The only forms of relief not foreclosed to Plaintiff as a matter of law on this record are its claims for (1) disgorgement of West's alleged profits from the alleged infringement of the Works, (2) declaratory relief, and (3) costs.

any infringement of copyright commenced after the first publication of the work and before the effective date of its registration, unless such registration is made within three months after first publication of the work." 17 U.S.C. § 412.  Plaintiff cannot meet the first prong of section 412 because both of the Motions were copied by West and incorporated into Litigator™ before the works were registered.  See Leighton Decl. ¶¶ 17-18; Am. Compl. ¶ 4.  Plaintiff cannot meet the second prong of section 412 because – notwithstanding their public availability at the courthouse in which they were filed and from PACER – the Motions have not been "published" for purposes of section 412.

"Publication" is defined in section 101 of the Copyright Act as "the distribution of copies . . . of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending." 17 U.S.C. § 101.  One or more of these acts must have occurred prior to commencement of the infringement for section 412(2) to apply, but White conceded that none of these acts has taken place.  See White Dep. 56:13-57:23, 63:7-64:5 (conceding absence of distribution beyond filing with court and sending them to clients and possibly experts in the case); see also Deposition of Martin S. High ("High Dep.") 65:1-12, 85:13-24.

Plaintiff's very limited acts of distribution do not constitute publication as required by section 412(2).  See, e.g., Grundberg v. Upjohn Co., 137 F.R.D. 372, 388 (D. Utah 1991) ("[P]lacement of documents in court files and offering documents into evidence, even though this may provide access to the public, does not constitute publication under the copyright laws.").  Courts distinguish between "general" and "limited" publication, and the definition of "publication" in section 101 corresponds to "general" publication.  See Penguin Books U.S.A., Inc. v. New Christian Church of Full Endeavor, Ltd., 288 F. Supp. 2d 544, 555 (S.D.N.Y. 2003); Shoptalk, Ltd. v. Concorde-New Horizon Corp., 168 F.3d 568, 590 (2d Cir. 1999).  In contrast,

"[l]imited" publication, which involves the communication or distribution of a work to a "definitely select group," for a "limited purpose," and "without the right of diffusion, reproduction, distribution or sale," is not a "publication" within the meaning of section 101. Warner Bros. Entm't Inc. v. X One X Prods., 644 F.2d 584, 593 (8th Cir. 2011); see also Soc'y of the Holy Transfiguration Monastery, Inc. v. Archbishop Gregory of Denver, 689 F.3d 29, 45 (1st Cir. 2012).

Publicly filing a document with a governmental entity is at best a limited publication; it is not a general one that satisfies section 412(2).  See Danielson, Inc. v. Winchester-Conant Properties, Inc., 322 F.3d 26, 36 (1st Cir. 2003); Grundberg, 137 F.R.D. at 388; see also RPM Mgmt., Inc. v. Apple, 943 F. Supp. 837, 841-42 (S.D. Ohio 1996); Kunycia v. Melville Realty Co., Inc., 755 F. Supp. 566, 574 (S.D.N.Y. 1990); East/West Venture v. Wurmfeld Assocs., P.C., 722 F. Supp. 1064, 1066 (S.D.N.Y. 1989); 1 M.B. & D. Nimmer, Nimmer on Copyright, § 4.10 at 4-52 (2012) ("[P]lacing a work in a public file . . . clearly does not constitute an act of publication.").

### C.    Plaintiff Is Not Entitled to Injunctive Relief

Plaintiff also is not entitled to injunctive relief.  In eBay, Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006), the Supreme Court held that a plaintiff seeking a permanent injunction must demonstrate that (1) it has suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of the hardships as between the parties, an equitable remedy is warranted; and (4) the public interest would not be disserved by a permanent injunction.  In Salinger v. Colting, 607 F.3d 68 (2d Cir. 2010), the Second Circuit held that following eBay and Winter v. Natural Resources Defense Council, 555 U.S. 7 (2008), entitlement to injunctive relief no longer could be presumed in copyright cases.  See 607 F.3d at 75, 79-80.  Rather, the Court of Appeals held that the

plaintiff "must show that, on the facts of the[] case, the failure to issue an injunction would actually cause irreparable harm." <u>Id.</u> at 82.  That is, the court "must actually consider the injury the plaintiff will suffer if he or she loses on the . . . injunction." <u>Id.</u> at 80.  In addition, the court may issue an injunction only if the balance of the hardships tips in the plaintiff's favor and only if the public interest would not be disserved by issuance of an injunction. <u>Id.</u> at 82; <u>see also</u> <u>Hounddog Prods., L.L.C.</u> v. <u>Empire Film Group, Inc.</u>, 826 F. Supp. 2d 619, 632 (S.D.N.Y. 2011); <u>Pearson Education, Inc.</u> v. <u>Vergara</u>, No. 09 Civ. 6832 (JGK) (KNF), 2010 WL 3744033, at *4 (S.D.N.Y. Sept. 27, 2010).

Plaintiff cannot meet this standard.  First, there is no evidence that Plaintiff has suffered *any* injury, let alone irreparable injury, as a result of West's conduct.  <u>See</u> <u>supra</u> pp. 16-17, 21. With no evidence of irreparable harm, Plaintiff has no right to injunctive relief.  Second, Plaintiff cannot show that the balance of hardships tips in its favor.  To the contrary, if a permanent injunction were not to issue, there would be no discernible adverse effect on Plaintiff whatsoever; White has admitted that the outcome of this case will have no bearing on his incentive to write and file briefs and motions on behalf of his clients or on the quality of his advocacy.  <u>See</u> <u>supra</u> pp. 13, 16, 19.  On the other hand, if West were enjoined, it would jeopardize its ability to continue to make court filings available to its subscribers; the transaction costs involved in securing the necessary rights would present an insuperable obstacle to the continued offering of the Litigator™ product.  <u>See</u> Leighton Decl. ¶ 14; Blackburn Decl. ¶ 9. This would be an enormous blow to a business West has spent years developing at great effort and expense.

Finally, the public interest plainly would be disserved if West no longer were able to include briefs and motions in its database.  There can be no dispute that the judicial system

benefits from litigators, law libraries, and the courts having access to complete copies of court filings with links to sources and cited materials, which can enhance legal advocacy and research in any number of ways.

For these reasons, there is no basis for injunctive relief in this case no matter what the ultimate merits determination.

## CONCLUSION

For the foregoing reasons, West respectfully submits that its motion for summary judgment should be granted and the action dismissed in its entirety.

Respectfully submitted,

WEIL, GOTSHAL & MANGES LLP

By: ____/s/ *R. Bruce Rich*_____
    R. Bruce Rich
    Benjamin E. Marks
    Jonathan Bloom
    John R. Gerba
    767 Fifth Avenue
    New York, New York 10153
    (212) 310-8000
    benjamin.marks@weil.com

*Attorneys for Defendant West Publishing Corp.*