# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Edward L. White, P.C.,

                Plaintiff,

v.

West Publishing Corporation d/b/a "West"; and
Reed Elsevier Inc., d/b/a LexisNexis,

      Defendants.

Case Number 12-cv-1340 (JSR)

# EXPERT REPORT OF DAVID BLACKBURN, PH.D.

**September 10, 2012**

I.      Introduction                                                                                      1

II.     The Works at Issue and the Lexis and West Products                      3

III.    Lexis and West Have No Impact on the Primary Market for the Works at Issue    7

IV.     Customer Demand Is for the Lexis and West Products, Not for the Works at Issue or for any Particular Brief    7

V.      Lexis and West Have Created a Market Where One Would Not Otherwise Exist    10

VI.     There Is No Harm to the Potential Market for or the Value of the Works at Issue    14

**CONFIDENTIAL**

# I.     Introduction

1.      I have been asked by counsel for West Publishing Corporation d/b/a West ("West") and LexisNexis, a div. of Reed Elsevier Inc. ("Lexis"), to provide an economic opinion relating to certain claims made by Edward L. White, P.C. ("White"). I understand that White alleges that West and Lexis have infringed White's copyrights by copying works covered by U.S. Copyright Registration Number TX0007259439 and Registration Number TX0007417300 (collectively the "works at issue").[1]  In particular, I have been asked to assess certain economic factors relevant to Lexis's and West's alleged use of the works at issue and the effect, if any, of this alleged use on the actual or potential market for, or value of, the works at issue.  I have also been asked by counsel for Lexis and West to prepare a report summarizing my opinions in this respect.

2.      I am an applied microeconomist and Vice President for NERA Economic Consulting ("NERA"), an economic consulting firm based in White Plains, New York.  I am based in NERA's Washington, D.C. office.  I earned a B.Sc. in Applied Mathematics and Economics from Brown University and a M.A. and Ph.D. in Economics from Harvard University. I have taught economics courses at the graduate and undergraduate level at several institutions.  I have written and spoken publicly on a number of economic issues, including issues related to copyright infringement.  At NERA, my practice has focused on the economics of intellectual property, antitrust economics, and calculating economic damages in commercial disputes.  My CV is attached as **Attachment 1**.[2]

3.      This report is based on my professional training and experience; NERA's review and analysis of depositions[3] and documents produced in this litigation; and discussions with

---

[1]  *Edward L. White, P.C., v. West Publishing Corporation d/b/a "West"; and Reed Elsevier Inc., d/b/a LexisNexis*, United States District Court, Southern District of New York, 12-CV-1340 (JSR), Amended Complaint, June 26, 2012 ("Amended Complaint").

[2]  NERA is billing Lexis and West for my services at my customary billing rate of $445 per hour and the hours of any other NERA economists at their customary rates.  Neither my, nor NERA's, compensation depends on the outcome of this matter.

[3]  NERA reviewed transcripts for the following depositions: Deposition of Leigh Anne Beauchamp, August 16, 2012 ("Beauchamp Deposition"); Deposition of Martin S. High,

**CONFIDENTIAL**

personnel knowledgeable about certain facts discussed herein.[4]  A list of materials that I have considered is included as **Attachment 2**.

     4.     My research and analysis are continuing and, while I do not expect to change my methodology or general approach, I reserve the right to revise my conclusions to the extent I receive and consider additional information, or if additional research or reflection leads me to change my opinions.  I also expect to respond, if asked, to any opinions that may be provided by White or White's experts.

     5.     Based on my research and the information available to me to date, I conclude:

- The features of the product offerings from Lexis and West (the database products which have included the enhanced versions of the briefs) are sufficiently different from the works at issue in terms of functionality and use that, as a matter of economics, the Lexis and West products represent distinct products that do not compete with or supersede the works at issue.

- Lexis and West customers do not purchase the Briefs, Pleadings and Motions ("BPM") product from Lexis or the Pleadings, Motions, and Memoranda ("PMM") product from West in order to gain access to any particular brief or other document, including the works at issue.  Rather, customer demand exists for the BPM and PMM products themselves – and for the particular features of those products.

- Briefs such as the works at issue are created to provide legal services for clients, and there is no evidence to suggest that the conduct of Lexis or West has had any effect on the market for legal services.  Moreover, as Mr. White has himself made clear, there is no secondary market for licensing briefs, nor is there any reason to

---

Ph.D., September 6, 2012 (rough transcript, "High Deposition"); Deposition of Tom Leighton, August 28, 2012 ("Leighton Deposition"); Deposition of Edward L. White, August 30, 2012 ("White Deposition").

[4]    I spoke with Leigh Anne Beauchamp, Director of Content Development at Lexis, on September 4, 2012.

**CONFIDENTIAL**

believe that, absent Lexis's and West's enhancement of the works, any such secondary market would exist.  Thus, Lexis and West do not negatively affect any actual or potential market for the works at issue.

- In short, there is no evidence that Lexis's and West's use of the works at issue has resulted in any harm to either the value of those works or any potential market for them.

## II.   The Works at Issue and the Lexis and West Products

6.     As I described above, I understand that White is the owner of two copyrighted works which it alleges are infringed by Lexis and West.  In particular, I understand that these works include:

a)  "Plaintiffs' Combined Motion for Summary Judgment For Plaintiffs, Beer and Ramsey, And Brief In Support," filed on May 20, 2009 and registered on May 20, 2010, U.S. Copyright Registration TX0007259439 (the "Summary Judgment Motion"),[5] and

b)  "Plaintiffs' Motion In Limine," filed on March 15, 2010 and registered on May 21, 2010, U.S. Copyright Registration TX0007417300 (the "Motion In Limine").[6]

I understand that both of these works relate to a court case in the United States District Court for the Western District of Oklahoma, captioned *Ladene Ramsey Beer, et. al v. XTO Energy, Inc. f/k/a Cross Timbers Oil Company*, Case No CIV-07-798-L ("*Beer*").[7]

7.     Both Lexis and West provide a number of products and services aimed at the legal community.  Lexis, for example, offers *lexis.com* and *Lexis Advance*, which provide access to

---

[5]   Amended Complaint, Exhibit A; P00056-85.

[6]   Amended Complaint, Exhibit A; P00001-24.

[7]   P00001-24; P00056-85.  I understand that, subsequent to the filing of these works, the court determined that White was no longer adequate counsel to the class and the case proceeded with different counsel and different named plaintiffs.  [White Deposition, pp. 82-3, 88.]

**CONFIDENTIAL**

case law, news and business content, public records, and other related content.  Lexis provides 36 billion public records, including access to more than 135 million dockets, including approximately 1.4 million briefs, motions, and other litigation content.[8]  I understand that the works at issue were, at one point, available through Lexis's BPM product through *lexis.com* and *Lexis Advance*.  Access to this product is available via a variety of subscription packages.

8.      Similarly, West offers a variety of subscription options to its offering of legal research, case law, and related materials.  West's *westlaw.com* and *WestlawNext* services offer access to West's collection of case law and related materials for relevant content which can be sorted, accessed, and used in a variety of ways.  West provides access to more than 2.4 million appellate briefs and more than 5.8 million trial documents.[9]  These briefs and trial documents are available in West's PMM package, which links together dockets, briefs, pleadings, cases, and other documents.[10]

9.      Both Lexis and West acquire this content through a variety of means, including subscriptions with courts, access to PACER (Public Access to Court Electronic Records), as well as physically acquiring paper documents from various courts.[11]  Once a document is acquired for Lexis's BPM product, Lexis subjects it to a detailed process of integration into its system, including conversion to a text-searchable format, linking to and from related documents, editorial classification efforts, and the like.[12]  West undertakes a similar process to acquire, convert, and process the so-called "related content" that it includes in its product offerings.[13]  I understand that both Lexis and West obtained copies of the works at issue through PACER.

---

[8]   http://www.lexisnexis.com/en-us/products/lexis.page, accessed September 6, 2012; Conversation with Leigh Anne Beauchamp.

[9]   http://store.westlaw.com/pdf/wln2/L-373938_v3.pdf, accessed September 6, 2012.

[10]  http://store.westlaw.com/westlaw/litigator/pleadings-motions-mem/default.aspx, accessed September 6, 2012; WEST00000300-32 at 303 and 309.

[11]  Beauchamp Deposition, pp. 19, 21, 35-8; LN00003215-451; Conversation with Leigh Anne Beauchamp; Leighton Deposition, pp. 14-5, 26-8, 51-2; Leighton Exhibit 2 (WEST00000031-60).

[12]  Beauchamp Deposition, pp. 29-31, 55-7; LN00003215-451.

[13]  Leighton Deposition, pp. 17-8, 36-50; WEST00000300-32 at 309; WEST00000237-91.

**CONFIDENTIAL**

10.     Lexis offers various pricing schemes, including monthly subscription rates that depend on the number of users/attorneys and the type of customer, as well as the particular subscription package purchased, and single-document rates for non-governmental customers that range from $50 to $65 for those Lexis customers who do not otherwise have a subscription to a package that contains the document (*i.e.*, a customer without a subscription to the BPM product who desired access to a brief in the BPM collection would be subject to this fee on a per-document basis).[14]  I understand, as well, that education packages exist such that law student users are able to obtain free access to Lexis products.[15]  Indeed, a February 2007 Lexis document indicates that the "vast majority" of BPM documents were accessed by law students.[16]

11.     Similarly, West offers packages and pricing that fall into three major categories: monthly fees (often as a part of a bigger package), fees based on searches or hours used, and a per-document fee structure.[17]  When charging on a per-document basis, West's fees have ranged from $65 to $90 per document, depending on the particular package and time period.[18]

12.     Finally, I note that the Lexis and West legal database products in question are more than just repositories of briefs, pleadings, and other case-related documents.  That is, the products offered by both Lexis and West integrate these works into a deep product offering.[19]  The packages offered by West and Lexis not only provide the text of the briefs, but also: make

---

I understand that Lexis and West may also link the enhanced, text-searchable document to the document in the form in which it was originally filed.  In my opinion, this feature cannot represent a separate, stand-alone product because it is integrated into, and only accessible through, the enhanced version of the document.  [Beauchamp Deposition, p. 30.]

[14]   LN00008274.xlsx; LN00008239.xlsx; Declaration of Jean Patrouch, pp. 3-4.

[15]   Conversation with Leigh Anne Beauchamp.

[16]   LN00003010-4.

[17]   *Edward L. White; Edward L. White, P.C.; and Kenneth Elan, on behalf of themselves and all others similarly situated, v. West Publishing Corporation d/b/a "West"; and Reed Elsevier Inc., d/b/a LexisNexis*, United States District Court, Southern District of New York, Case No. 12 Civ. 1340 (JSR), Plaintiffs' Response to Defendant West Publishing Corporation's ("West") First Set of Interrogatories, June 13, 2012 ("West Narrative Response"), pp. 1-2.

[18]   West Narrative Response, p. 3.

[19]   See, for example, WEST00000704-5; WEST00000300-32.  LN00000018-9; LN00000039-40.  See also, again, footnotes 8 and 9.

**CONFIDENTIAL**

them text searchable; link them to case law cited within as well as to other documents, opinions and briefs in the case; and link to the briefs from other documents in the case.  Lexis and West also include only those briefs that, in their judgment, will increase the value of the product offerings.  Lexis's and West's databases allow users to search for specific language across millions of court documents simultaneously.[20]  (Indeed, Mr. White testified that it is these enhancements, such as the ability to search text and "pull up a whole set of briefs" that "undercuts [his] ability to practice."[21])  Moreover, even the particular subscription packages in which the works at issue were included are only a part of larger Lexis and West product offerings.[22]

13.     In sum, the features of the product offerings from Lexis and West (the database products which have included the enhanced versions of the briefs) are sufficiently different from the works at issue in terms of functionality and use that, as a matter of economics, the Lexis and West products represent distinct products that do not compete with or supersede the works at issue.[23]

---

[20]   See footnotes 12 and 13.

[21]   See, for example, White Deposition, pp. 128-9.  See also White Deposition, pp. 164-6.

[22]   http://store.westlaw.com/westlaw/litigator/pleadings-motions-mem/default.aspx, accessed September 6, 2012; http://www.lexisnexis.com/en-us/products/briefs-leadings-motions-and-verdicts.page, accessed September 6, 2012.

[23]   There is a large economic literature relating to what characterizes a product.  Much of the recent economic research in the field of industrial organization – put simply, the study of firms and market behavior – has recognized that products are often best represented as a bundle of particular characteristics.  In this sense, two candidate products can be thought to be different products if they offer different bundles of product characteristics.  Such a definition, however, may create too fine a line between products – a 2-liter bottle of Coca-Cola, for example, would be a different product than a 1.5-liter bottle of Coca-Cola.  Timothy Bresnahan of Stanford University and Robert Gordon of Northwestern University have argued that new goods can be distinguished as goods which have no good substitutes and by the extent to which they satisfy customer needs not already provided for in the market (at least, not well provided).  [Timothy F. Bresnahan and Robert J. Gordon, "Introduction," *The Economics of New Goods*, Timothy F. Bresnahan and Robert J. Gordon, Eds., University of Chicago Press, 1996, available at www.nber.org/chapters/c6063.pdf, accessed September 6, 2012.]  By either definition, it is clear that the Lexis and West products are distinct goods relative to the works at issue.

**CONFIDENTIAL**

## III.   Lexis and West Have No Impact on the Primary Market for the Works at Issue

14.   First, it is clear that the potential effect, if any, on the market for the works at issue, or the value of those works, would be confined to a secondary market, as opposed to the primary market – the market for legal services – for which the works were initially created.  The works at issue were created to provide a legal service to White's clients in the *Beer* matter and had already served their purpose in that market once they were created and publicly filed.  In my opinion, the alleged infringement by West and Lexis does not affect the primary market for the works, or for similar works.  Indeed, Mr. White himself testified that neither his willingness to create the works at issue nor their quality is in any way affected by the possibility that Lexis or West may make unauthorized copies of them available to their customers.[24]  The desire to monetize these briefs in a secondary licensing market is not an impetus for their creation in the first place.  Accordingly, as an economic matter, there is no reason to believe that the alleged copyright infringement impacts the creation or quality of briefs, either by White or by any other attorney.[25]

## IV.   Customer Demand Is for the Lexis and West Products, Not for the Works at Issue or for any Particular Brief

15.   The information that I have seen indicates that Lexis and West customers do not purchase the BPM product from Lexis or the PMM product from West in order to gain access to any particular brief or other document, including the works at issue.  Rather, customer demand exists for the BPM and PMM products themselves – and for the particular features of those products, including the volume of briefs in the databases.  Indeed, a 2007 analysis by Lexis indicates that only 28 percent of the documents in the BPM product had been accessed at all, that

---

[24]   White Deposition, pp. 72, 77.

[25]   Mr. White testified that he thought it was possible that some attorneys may be better positioned to compete with him because his briefs may be accessible through Lexis or West. [White Deposition, pp. 126-9.]  In my opinion, it is unlikely that the availability of White's briefs on Lexis or West has any such effect.  Even if briefs could provide such an advantage, White's briefs are already available via PACER, or simply by going to the court and getting copies of any documents filed with the court by White.  West and Lexis do not make the works at issue available; they are available regardless.

**CONFIDENTIAL**

the average document had only been accessed 1.1 times over that period and that student subscribers, not law firms, accounted for the majority of accesses.[26]  This document indicates that, despite the availability of over 200,000 documents at that time, users at law firms had only accessed the average BPM document about 0.2 times.[27]  As described above, some of these customers may face a price of $50 or more to access these documents, but others have subscriptions which cover the ability to access documents in the BPM package at no additional charge.[28]  Despite this – and despite the additional features added to the documents in the BPM package – most individual documents were not accessed very often over this period.  Similarly, West has reported that, as of June 30, 2012, there were 6,033,469 documents in the various databases that included the works at issue.  Those databases have had 3,804,343 document accesses since 2009.[29]  Thus, the average document in the West databases as of June 30, 2012 had been accessed about 0.6 times since 2009.

16.     Indeed, as I have described above, one of the features added to the documents by Lexis and West is to integrate the documents into whole collections of available documents, and to make them text searchable and to link them to and from relevant case law and other documents or opinions in the case.  That is, these documents are relatively easy to find and to access as a result of the additional features added by Lexis and West, yet, nevertheless, briefs – or other documents in BPM – are not accessed often.  The availability of so many briefs and other documents and the resulting ability to see multiple briefs on the same topic is one of the features marketed by Lexis and West.  For example, the large number of briefs may allow users to verify the accuracy of an argument or case citation in a brief by seeing the same argument or citations repeated in other briefs.  Similarly, by being able to click directly on cited case law, the

---

[26]  LN00003010-4.

[27]  There were 22,315 accesses from "Large Law" firms and 10,114 accesses from "Small Law" firms, for a total of 32,429 accesses made from a total of 205,134 available briefs uploaded. This averages to about 0.2 accesses per document, as 32,429 divided by 205,134 equals approximately 0.158.  [LN00003010-4.]

[28]  I understand from Leigh Anne Beauchamp that, currently, many Lexis subscribers receive complimentary access to the BPM product as a part of the broader Lexis subscription.

[29]  West Narrative Response, pp. 3-4.

**CONFIDENTIAL**

Lexis and West products may allow users to more easily verify the validity of the citations, potentially saving time and effort.[30]

17.     Thus, it is clear that Lexis and West customers typically do not pay for access to any particular brief (which, if filed in federal court, for example, could be acquired through PACER regardless).  Rather, customers subscribe to BPM (or PMM) for the entirety of the product, including the editorial work done by Lexis and West to identify potential relevant documents as well as the range of documents available and the ability to conduct key word searches across multiple documents.  Indeed, surveys conducted by Lexis in 2009 of BPM customers indicate that many valued the editorial work done by Lexis.[31]  One BPM customer noted that he "wouldn't use BPM's if they weren't editorially selected… BPM's would be 'worthless' if there was no review process."[32]  This editorial content – identifying potentially relevant documents[33] and providing them to customers – obviously is something not offered by the individual documents prior to their inclusion in BPM or PMM.  That is, while it may be possible to locate and acquire a copy of a particular brief of which a customer is already aware (*i.e.*, briefs written by a particular lawyer or for a particular case), the ability to identify potentially relevant materials and to provide easy access to them through the subscription systems of Lexis and West in part distinguish the Lexis and West products from the works at issue.

18.     Thus, there is no evidence of which I am aware of customer demand for the works at issue or for attorney-authored briefs more generally.[34]  Accordingly, absent customer demand

---

[30]  See, for example, WEST00000300-32; LN00000141-5.

[31]  For example, some customers indicated that the editorial work done to identify relevant documents is valuable because "there are more documents than I can read" and "time is important," and customers are "happy to hear that [Lexis] filter[s] out 'junk' documents." [LN00008241-73 at 68-71.]

[32]  LN00008241-73 at 71.

[33]  See, for example, LN00003215-451 at 258-71.

[34]  As I discuss in more detail in the next section, I understand that while attorneys may share briefs with each other, this is not done in return for any sort of licensing fee and neither Mr. White nor Dr. High have ever licensed or been approached for a license to any of their briefs.

**CONFIDENTIAL**

9

there is no evidence of the existence of a secondary market for the works at issue specifically or for attorney-authored briefs more generally.

## V.   Lexis and West Have Created a Market Where One Would Not Otherwise Exist

19.    While Lexis and West have created products that are distinct from the works at issue, one must still ask the question of whether or not some alternative, secondary market would exist for the works at issue, absent the enhancements made by Lexis and West.  As I have discussed above, however, there is no evidence of which I am aware which indicates that Lexis's or West's customers have any desire to purchase or license individual copies of the works at issue.  For example, the "Summary Judgment Motion" was accessed through Lexis only one time by a law firm user on March 8, 2012, which was after the initial filing of this lawsuit and therefore may be a result of the brief being identified in the complaint.[35]  The "Motion In Limine" was accessed through Lexis a total of nine times – seven times on the same day (in the span of about 12 minutes) from the same location using an account at Oklahoma City University, and once each on November 9, 2011 and April 20, 2011 by individuals at law firms.[36]  However, the only access that was the result of a direct request for the specific document, rather than through a general search, was the single access to the "Summary Judgment Motion" which, as noted, may be a result of this lawsuit.  Thus, there appears to have been, at most, one access of the works at issue that was specifically requested (and thus could have been, presumably, duplicated with little effort via a PACER search) and what is essentially three searches that apparently resulted from a general search that may not have resulted in an access of the works at issue if they were not included in Lexis's searchable database.[37]

---

[35]  LN00008276.xls; *Edward L. White; Edward L. White, P.C.; and Kenneth Elan, on behalf of themselves and all others similarly situated, v. West Publishing Corporation d/b/a "West"; and Reed Elsevier Inc., d/b/a LexisNexis*, United States District Court, Southern District of New York, Case No. 12-CV-1340 (JSR), Class Action Complaint, February 22, 2012.

[36]  LN00008276.xls; Declaration of Brett Bogan.  I understand that this listing excludes any access by counsel in this matter.

[37]  I understand that the "Summary Judgment Motion" has been accessed five times via West's products, and the "Motion In Limine" has been accessed seven times via West's products.

**CONFIDENTIAL**

20.     These access records – and the general access records for BPM and PMM documents discussed above – indicate that it is unlikely that, absent the enhancements made by Lexis and West, lawyers would have directly contacted White and offered to pay for access to the works at issue.  Indeed, Mr. White has stated that he has never been approached for a license to his briefs, pleadings or motions.[38]  Martin High, the other attorney listed on the works at issue, has also never been approached for a license to his legal documents.[39]  Moreover, I understand that while lawyers do, at times, reach out to other lawyers to request a copy of briefs (either a specific brief or a general category of brief) in order to assist them in their own work, these requests appear to be fulfilled as a matter of professional courtesy without a request for or provision of payment.  Indeed, neither Mr. White nor Dr. High cited a single instance of an attorney licensing a brief from another.[40]  Mr. White testified that he has, at times, reached out to specific colleagues when writing a brief that touches on topics with which Mr. White may not be as familiar as some colleagues, but Mr. White did not suggest that he has ever had to license a brief in such situations.[41]  In sum, there is nothing of which I am aware that would suggest that, absent Lexis's and West's enhancements, there would be a market for the licensing of the works at issue to other lawyers or law students.

21.     A related question is whether there is reason to believe that White would have been able to license the works at issue to Lexis or West.  To the extent Lexis and West obtained their original copies of these documents from PACER, that would have demonstrated a willingness to pay a small amount for access to them, as PACER charged $0.08 per page until April 1, 2012 and $0.10 per page starting April 1, 2012.[42]  I understand that for some court

---

[West Narrative Response, Exhibit A.]  I note that several of these accesses were also after the complaint in this lawsuit was filed.

[38]  White Deposition, pp. 202-3.

[39]  High Deposition, p. 51.

[40]  White Deposition, pp. 202-3; High Deposition, pp. 52-3.

[41]  White Deposition, pp. 191-2.

[42]  http://www.pacer.gov/, accessed September 6, 2012.  PACER charges for a maximum of 30 pages, even for documents that exceed 30 pages in length.  [http://www.pacer.gov/psc/faq.html, accessed September 10, 2012.]  Thus, the maximum charge for a PACER document was $2.40 prior to April 1, 2012 and $3.00 thereafter.

**CONFIDENTIAL**

systems, Lexis receives free copies of electronic filings and that, for others, Lexis may pay a fixed fee for the provision of electronic documents.[43]   However, while Lexis and West may have been willing to make those payments to PACER to acquire these documents (or not), there is no evidence to suggest that Lexis or West would be willing to enter into licensing negotiations with all the copyright holders for the documents they include in the BPM and PMM products.

22.    The payments to PACER (the "Motion In Limine" appears to have been 24 pages long, or $1.92, while the "Summary Judgment Motion" appears to have been 30 pages long, or $2.40, a $4.32 total for the works at issue)[44] indicate merely that, upon identifying the documents and their relevance to the BPM or PMM product, Lexis and West are willing to make nominal payments to acquire the documents.  However, there is no evidence of which I am aware that either West or Lexis would even be willing to pay anything to individual authors or copyright holders and incur the transaction costs of identifying copyright owners and obtaining permissions. As I discussed above, there is no evidence to suggest that Lexis's and West's customers have any particular demand for the works at issue nor that the inclusion of the works at issue within their subscription products increases sales, revenue or profit in any meaningful way.  Rather, as discussed above, it is the combination of the breadth of document offerings and the editorial work and hyperlinking among all sorts of documents that is attractive to customers.[45]  Put differently, if consumers have no particular demand for the works at issue, there is no reason for Lexis or West to either.  Indeed, the relative lack of importance of any particular document is highlighted by Lexis's and West's decision to remove documents from their databases.  In particular, I understand that both West and Lexis have removed all of White's briefs from their databases.  Tom Leighton, Vice President of Content Acquisition for West, testified that on the rare occasions when an author has requested that a document be removed from West's databases, West has simply removed it.[46]

---

[43]    Beauchamp Deposition, pp. 36, 52.

[44]    P00001-24; P00056-85.

[45]    See also, for example, WEST00000300-32; WEST00000704-5; LN00000141-5.

[46]    Leighton Deposition, pp. 62-3.

**CONFIDENTIAL**

23.     This fact pattern is not specific to the works at issue.  Instead, as I have discussed above, most BPM and PMM documents are not accessed at all; rather it is the option value of having access to so many potentially useful documents – and the integration of those documents into the suite of features offered by Lexis and West – that drives customer demand.  While West and Lexis have demonstrated a willingness to make nominal payments to obtain copies of the documents they include in their product offerings, the cost of identifying, locating and negotiating with thousands of different authors in order to acquire licensing rights would greatly exceed the cost of acquiring the documents through PACER or other means.  For example, the works at issue name both Mr. White and Dr. High, but Mr. White has testified that he is the sole author (and copyright holder).[47]  However, authorship and copyright ownership information is not available on the document itself.  Similarly, Mr. White testified that he has not reached agreements when working with co-counsel over who owns the copyrights on any documents resulting from that work.[48]  Moreover, even if the copyright holder could be identified, lawyers – like many professionals – often switch firms and firms change names and go out of business so, as a result, tracking copyright owners down may be difficult or impossible.  Thus, if widespread negotiations were necessary, in my opinion, it is unlikely that Lexis and West would be willing to incur the necessary costs to acquire licenses from each author, particularly given the fact that most of these documents are not accessed often.[49]  Accordingly, in my opinion, it is unlikely that any market would develop for the BPM and PMM products, let alone for the works at issue in this case.

---

[47]   P00001-24; P00056-85; White Deposition, p. 169-70.  Dr. High testified that he is a co-author, which further illustrates the difficulties that are likely to arise in identifying authorship and acquiring licenses to these types of works.  [High Deposition, pp. 41-3.]

[48]   White Deposition, pp. 171-2, 190-1.  Mr. White also testified that his written agreements with clients have no provisions regarding copyright ownership.  [White Deposition, pp. 42-4.]  Dr. High testified that he has no written agreement with Mr. White regarding ownership of co-authored documents, nor could he recall having ever discussed it.  [High Deposition, pp. 19, 84.]

[49]   As I discussed above, both West and Lexis have demonstrated that they will simply remove documents from their databases.

**CONFIDENTIAL**

## VI.    There Is No Harm to the Potential Market for or the Value of the Works at Issue

24.     For the reasons discussed above, in my opinion, the Lexis and West products do not compete with or make a superseding use of the works at issue and there is, accordingly, no reason to believe that the conduct of Lexis or West with regard to the works at issue have had any adverse impact on the potential market for or the value of the works.[50]  Indeed, it is likely that absent the enhancements by Lexis and West there would be no market for the works – other than the primary market for legal services on which the Lexis and West products have no discernible effect – and there is no reason to believe that White would be able to license the works at issue to Lexis or West or to any of their customers.

David Blackburn

---

[50]  In fact, Mr. White himself suggested that exposing his briefs to other attorneys may have led to being contacted to serve as co-counsel with colleagues.  [White Deposition, pp. 202-3.]  If so, then the availability of his briefs via Lexis or West may actually serve to *increase* the demand for his services and the value of those briefs (at least as business-recruitment tools).

**CONFIDENTIAL**

## NERA
Economic Consulting

National Economic Research Associates, Inc.
Suite 600
1255 23rd Streeet, NW
Washington, DC  20037
+1 202 466 3510   Fax +1 202 466 3605
Direct Dial: +1 202 466 9264
david.blackburn@nera.com
www.nera.com

**Attachment 1**

# David Blackburn
# Vice President

## Education

**Harvard University**
Ph.D., Economics, 2005

**Brown University**
B.Sc., with Honors, Applied Mathematics and Economics, 1998

## Professional Experience

**NERA Economic Consulting**

| | |
|---|---|
| 2012- | Vice President |
| 2008-2012 | Senior Consultant |
| 2005-2008 | Consultant |

**Framingham State College**

| | |
|---|---|
| 2003 | Instructor - Intermediate Microeconomics |

**Universidad Nacional de Tucumán, Argentina**

| | |
|---|---|
| Summer 2002 | Visiting Professor |
| | Instructor - Regulation in Network Industries |

## Written Testimony

Expert Report of David Blackburn, Ph.D., *William F. Shea, LLC, et al. v. Bonutti Research, Inc., et al.*, United States District Court, Southern District of Ohio, Case No. 2:10-cv-615, January 2012.  Assess issues relating to alleged competition related to Shea's alleged breach of contract and other claims.

Rule 26(b)(4) Expert Witness Disclosure of Plaintiffs Wildheart Entertainment, L.P., Maxim Langstaff, and Michele Langstaff, *Wildheart Entertainment, L.P., Maxim Langstaff, and Michele Langstaff v. Higher Ground, LLC et al.*, Superior

Court for the District of Columbia (Civil Division), Civil Action No. 2010 CA 005253 B, June 2011.  Assess Wildheart's claims for damages resulting from Higher Ground's alleged breach of contract, interference, and other claims.

Expert Report of David Blackburn and Christine S. Meyer, *Waddington North America, Inc. v. Sabert Corporation*, United States District Court for the District of New Jersey, Civil Action No. 2:09-cv-04883-GEB-MCA, January 2011.  Assess Waddington's claim for damages resulting from Sabert's alleged infringement of patented metalized cutlery technology.

Rebuttal Expert Report of David Blackburn, *International Business Machines Corporation v. BGC Partners, Inc., BGC Brokers US, L.P., BGC Financial L.P., and BGC USA, L.P.*, U.S. District Court, Southern District of New York, Civil Action No. 1:10-cv-00128, November 2010.  Assess IBM's claim for damages resulting from BGC's alleged breach of contract and copyright infringement.

Expert Report of David Blackburn, *Danforth S. DeSena, DPM and Solstice Corporation v. Beekley Corporation*, United States District Court, District of Maine, Civil Action No. 2:09-cv-00352-DBH, December 2009.  Assess DeSena's claim for damages from Beekley's alleged infringement of patented radiographic scanner technology.

Report of David Blackburn on Claimed Monopolistic Impact of Proposed New York State Legislation (Senate Bill Number 3708-D), Letter to Governor David Paterson, December 2009.

Expert Report of David Blackburn, Ph.D., *Carolina Power & Light Co., et al. v. Aspect Software, Inc. and BellSouth Communications Systems, L.L.C.*, United States District Court, Eastern District of North Carolina, Western Division, Case No. 5:08-cv-00449, October 2009.  Assess Aspect's indemnification obligation relating to a patent settlement entered into by Carolina Power.

Expert Report of David Blackburn, *Jose Estrada and Rene Byron Brizuela v. Toyota Motor Sales USA, Inc., et al.*, United Status District Court, Central District of California, Case No. CV 08-05992 GAF(AJWx), October 2009.  Assess Estrada's claim for damages resulting from the alleged infringement of Estrada's musical copyrights.

Expert Report of David Blackburn, *UMG Recordings, Inc., et al. v. Divx, Inc., et al.*, United States District Court, Central District of California, Case No. CV 07 06835 – AHM(AJWx), August 2009.  Rebuttal Expert Report of David Blackburn, September 2009.  Assess the extent and source of UMG's damages resulting from Divx's alleged infringement of UMG's copyrighted works.

Expert Report of David Blackburn, Ph.D., *Dominion Resources, Inc. v. Aspect Software, Inc. and Rockwell Automation, Inc.*, United States District Court,

Updated: September 10, 2012

Eastern District of Virginia, Case No. 3-08-cv-737, June 2009.  Assess Aspect's indemnification obligation relating to a patent settlement entered into by Dominion.

Expert Report of David Blackburn, Ph.D., *UMG Recordings, Inc., et al. v. Veoh Networks, Inc., et al.*, United States District Court, Central District of California, Case No. CV 07 5744 – AHM(AJWx), May 2009.  Rebuttal Expert Report of David Blackburn, Ph.D., June 2009.  Assess the extent and source of UMG's damages resulting from Veoh's alleged infringement of UMG's copyrighted works.

Report of David Blackburn on Claimed Monopolistic Impact of Proposed New York State Legislation (Senate Bill Number 4487-B), Letter to Governor David Patterson, November 2008.

Expert Report of Steven Schwartz and David Blackburn, *Ford Motor Company v. Sudesh Agrawal*, Cuyahoga County Court of Common Pleas, Case No. CV-04-536688, January 2008.  Assess Agrawal's claim for damages resulting form Ford's allegedly unlawful policies relating to excess wear and use.


# Live Testimony

Deposition Testimony, *International Business Machines Corporation v. BGC Partners, Inc., BGC Brokers US, L.P., BGC Financial L.P., and BGC USA, L.P.*, U.S. District Court, Southern District of New York, Civil Action No. 1:10-cv-00128, December 2010.  Assess IBM's claim for damages resulting from BGC's alleged breach of contract and copyright infringement.

Deposition Testimony, *Danforth S. DeSena, DPM and Solstice Corporation v. Beekley Corporation*, United States District Court, District of Maine, Civil Action No. 2:09-cv-00352-DBH, February 2010.  Assess DeSena's claim for damages from Beekley's alleged infringement of patented radiographic scanner technology.

Deposition Testimony, *Carolina Power & Light Co., et al. v. Aspect Software, Inc. and BellSouth Communications Systems, L.L.C.*, United States District Court, Eastern District of North Carolina, Western Division, Case No. 5:08-cv-00449, December 2009.  Assess Aspect's indemnification obligation relating to a patent settlement entered into by Carolina Power.

Deposition Testimony, *UMG Recordings, Inc., et al. v. Veoh Networks, Inc., et al.,* United States District Court, Central District of California, Case No. CV 07 5744 – AHM(AJWx), July 2009.  Assess the extent and source of UMG's

Updated: September 10, 2012

damages resulting from Veoh's alleged infringement of UMG's copyrighted works.

## Papers and Publications

"25 Percent, 50 Percent ... What's In A Number?" (w/ C. Meyer), *IPLaw360*, June 23, 2011.

"The 25 Percent Rule in Patent Damages: Dead and Now Buried" (w/ S. Tzenova), NERA Working Paper, June 10, 2011.

"Intellectual Property Valuation Techniques and Issues for the 21st Century," (w/ B. Ray), in *Intellectual Property Strategies for the 21st Century Corporation*, John Wiley and Sons, Inc., 2011.

"Secondary Currency in Circulation: An Empirical Analysis," (w/ M. Colacelli), *Journal of Monetary Economics*, Volume 56, Issue 3, April 2009, pp. 295-308.

"Does the Supreme Court's Decision in *Quanta* Affect Firms' Incentives to Innovate?" (w/ B. Ray and L. Wu), NERA Working Paper, March 2009.

"Words Matter: Economics & A Literal Reading of Mars, American Seating, and Monsanto-Ralph -- Potholes Along the Road to Economic Rationality?" (w/ P. Beutel), NERA Working Paper, March 10, 2009.

"Reasonable Royalties After *eBay*" (w/ C. Meyer), *IPLaw360*, September 24, 2007.

"Where's the Economics Behind Lucent v. Gateway et al.?" (w/ M. Lopez), NERA Working Paper, March 23, 2007, and *Intellectual Property Today*, April 10, 2007.

"On-line Piracy and Recorded Music Sales," Harvard University, 2005 (Working Paper).

"Developing Superstars: The Effects of File Sharing on the Investment in New Talent," Harvard University, 2005 (Working Paper).

"Network Externalities and Copyright Enforcement," *Estudios de Economia*, June 2002, v. 29, iss. 1, pp. 71-88.

Dissertation: "Essays on the Economics of Copying and the Recorded Music Industry," Harvard University, 2005.

Updated: September 10, 2012

## Public Presentations

*Antitrust Issues in the Strategic Acquisition and Use of Patents*, Third Annual Chicago Forum on International Antitrust Issues, Northwestern University, Chicago, IL, June 2012.

*Litigating Patent Cases in Different Industries: Night and Day or Shades of Gray?*, New York, NY, April 2012.

*Behavioral Economics in Antitrust: Puzzling Behavior*, Antitrust Seminar, National Economic Research Associates, Santa Fe, New Mexico, July 2011.

*An Economic View of the Entire Market Value Rule*, Fordham Intellectual Property Law Institute, 19th Annual Conference on Intellectual Property Law & Policy, April 2011.

*Reasonable Royalty Damages: The Entire Market Value Rule and Apportionment*, New York, NY, November 2009.

Law Seminars International TeleBriefing, *Trends in Federal Circuit Patent Damages Decisions*, September 2009.

International Industrial Organization Conference, Northeastern University, April 2006.

International Industrial Organization Conference, Georgia Tech University, April 2005.

Economics Department Seminar, Northeastern University, March 2005.

Economics Department Seminar, Wesleyan University, March 2005.

Federal Trade Commission, March 2005.

University of Texas-Dallas, Economics Department Seminar, February 2005.

U.S. Department of Justice, February 2005.

Wellesley College, Economics Department Seminar, February 2005.

University of Southern California, Economics Department Seminar, February 2005.

Harvard University, Industrial Organization Seminar, November 2004.

Updated: September 10, 2012

International Industrial Organization Conference, Northwestern University, April 2004.

## Fellowships and Awards

Certificate for Excellence in Teaching, Harvard University, 2002-2005

Charles H. Smith Fellowship in Economics, Harvard University

## Referee

*American Economic Review*, *Economic Journal*, *Review of Network Economics*

Updated: September 10, 2012

Attachment 2

## List of Materials Considered

<u>Legal Documents and Non-Bates Labeled Case Documents</u>

Declaration of Brett Bogan.

Declaration of Jean Patrouch.

Deposition of Leigh Anne Beauchamp, August 16, 2012 with accompanying exhibits.

Deposition of Martin S. High, Ph.D., September 6, 2012 (rough transcript).

Deposition of Tom Leighton, August 28, 2012 with accompanying exhibits.

Deposition of Edward L. White, August 30, 2012 with accompanying exhibits.

*Edward L. White; Edward L. White, P.C.; and Kenneth Elan, on behalf of themselves and all others similarly situated, v. West Publishing Corporation d/b/a "West"; and Reed Elsevier Inc., d/b/a LexisNexis,* United States District Court, Southern District of New York, Case No. 12 Civ. 1340 (JSR), Class Action Complaint, February 22, 2012.

*Edward L. White, P.C., v. West Publishing Corporation d/b/a "West"; and Reed Elsevier Inc., d/b/a LexisNexis,* United States District Court, Southern District of New York, 12-CV-1340 (JSR), Amended Complaint, June 26, 2012.

*Edward L. White, P.C., v. West Publishing Corporation d/b/a "West"; and Reed Elsevier Inc., d/b/a LexisNexis,* United States District Court, Southern District of New York, Civ. 1340 (JSR), Defendant West Publishing Corporation's Response to Plaintiff's Request for Production of Documents Regarding Pricing, September 5, 2012.

*Edward L. White; Edward L. White, P.C.; and Kenneth Elan, on behalf of themselves and all others similarly situated, v. West Publishing Corporation d/b/a "West"; and Reed Elsevier Inc., d/b/a LexisNexis,* United States District Court, Southern District of New York, 12-CV-1340 (JSR), Plaintiffs' Response to Defendant West Publishing Corporation's ("West") First Set of Interrogatories, June 13, 2012.

Supplemental Declaration of Nancy Buckley.

Economic Literature

Timothy F. Bresnahan and Robert J. Gordon, "Introduction," *The Economics of New Goods*,
    Timothy F. Bresnahan and Robert J. Gordon, Eds., University of Chicago Press, 1996,
    available at www.nber.org/chapters/c6063.pdf, accessed September 6, 2012.


Bates Labeled Materials

P00001-P00024

P00056-P00085


LN00000007- LN00000008

LN00000018- LN00000019

LN00000030- LN00000031

LN00000039- LN00000040

LN00000109- LN00000119

LN00000128- LN00000136

LN00000137- LN00000139

LN00000141- LN00000145

LN00000150- LN00000192

LN00003010- LN00003014

LN00003215- LN00003451

LN00005935- LN00005987

LN00006017- LN00006121

LN00008241- LN00008273


WEST00000237- WEST00000291

WEST00000300- WEST00000332

WEST00000527- WEST00000528

WEST00000607- WEST00000608

WEST00000652

WEST00000704- WEST00000705

WEST00001400- WEST00001401


Native Files

LN00008239.xlsx

LN00008240.xls

LN00008274.xlsx

LN00008275.xlsx

LN00008276.xls


Websites

http://www.lexisnexis.com/en-us/products/briefs-leadings-motions-and-verdicts.page, accessed
   September 6, 2012.

http://www.lexisnexis.com/en-us/products/lexis.page, accessed September 6, 2012.

http://www.pacer.gov/, accessed September 6, 2012.

http://www.pacer.gov/psc/faq.html, accessed September 10, 2012.

http://store.westlaw.com/pdf/wln2/L-373938_v3.pdf, accessed September 6, 2012.

http://store.westlaw.com/westlaw/litigator/pleadings-motions-mem/default.aspx, accessed
   September 6, 2012.