# EXHIBIT C

UNITED COURT DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
ECF CASE NO.: 12-CV-1340
- - - - - - - - - - - - - - - - - - - - - - - - -x

EDWARD L. WHITE, P.C.,

        Plaintiff,

         -against-

WEST PUBLISHING CORPORATION d/b/a "West", and
REED ELSEVIER INC., d/b/a LexisNexis,

        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - -x

VIDEO DEPOSITION OF EDWARD L. WHITE

New York, New York

August 30, 2012

REPORTED BY:

DANIELLE GRANT

Ref:  8095

Page 2

1

2

3

4

5

6

7

8

9                        August 30, 2011

10                          10:15 a.m.

11

12

13

14

15            Video Deposition of EDWARD L. WHITE,

16     held at the offices of Weil Gotshal & Manges, LLP,

17     767 Fifth Avenue, New York, New York pursuant to

18     Notice before DANIELLE GRANT, a Shorthand Reporter

19     and Notary Public of the State of New York.

20

21

22

23

24

25

```
 1

 2      A P P E A R A N C E S:

 3      GREGORY A. BLUE, P.C.
        Attorneys for the Plaintiff
 4      405 Lexington Avenue, Suite 2600
        New York, New York 10174
 5      646.351.0006
        BY:  GREGORY A. BLUE, Esq., of Counsel
 6           blue@bluelegal.us

 7

 8      WEIL, GOTSHAL & MANGES, LLP
        Attorneys for West Publishing Corporation
 9      767 Fifth Avenue
        New York, New York 10153-0119
10      212.310.8000
        BY:  BENJAMIN E. MARKS, Esq., of Counsel
11           benjamin.marks@weil.com
             JOHN GERBA, ESQ., of Counsel
12           john.gerba@weil.com

13

14      MORRISON & FOERSTER, LLP
        Attorneys for Reed Elsevier
15      1290 Avenue of the Americas
        New York, New York 10104
16      212.468.8000
        BY:  CRAIG B. WHITNEY, Esq., of Counsel
17           cwhitney@mofo.com
             EMILY BRETZ, Esq., of Counsel
18           ebretz@mofo.com

19

20

21

22

23

24

25
```

1

2          IT IS HEREBY STIPULATED AND

3    AGREED that the filing and sealing of

4    the within deposition be, and the

5    same are hereby waived;

6          IT IS FURTHER STIPULATED AND

7    AGREED that all objections, except as

8    to the form of the question, be and

9    the same are hereby reserved to the

10   time of the trial;

11         IT IS FURTHER STIPULATED AND

12   AGREED that the within deposition may

13   be sworn to before any Notary Public

14   with the same force and effect as if

15   sworn to before the Court;

16

17

18

19

20

21

22

23

24

25

1

2            VIDEOGRAPHER:  Good morning.  This

3       is tape number one of the videotaped

4       deposition of Edward L. White in the

5       matter of Edward L. White, P.C. versus

6       West Publishing Corporation d/b/a West

7       and Reed Elsevier Inc. d/b/a LexisNexis

8       in the United States District Court

9       Southern District of New York.  This

10      deposition is being help at Weil,

11      Gotshal & Manges LLP, located 767 Fifth

12      Avenue, New York, New York 10753 on

13      August 30, 2012 at approximately 10:15

14      a.m.

15           My name is Richard Ramos and I am

16      the legal video specialist.  The court

17      reporter is Danielle Grant.

18           Will counsel please introduce

19      themselves beginning with the party

20      noticing this proceeding.

21           MR. MARKS:  Benjamin Marks from

22      Weil, Gotshal & Manges, counsel for the

23      West Publishing Corporation.

24           MR. GERBA:  John Gerba from Weil,

25      Gotshal Manges, also for West.

1

2           MR. WHITNEY:  Craig Whitney from

3         Morrison Foerster, counsel for

4         LexisNexis, a division of Reed Elsevier.

5           MS. BRETZ:  Emily Bretz, also from

6         Morrison Foerster, counsel for

7         LexisNexis.

8           MR. BLUE:  Gregory Blue for the

9         plaintiff.

10         VIDEOGRAPHER:  Will the court

11        reporter please swear in the witness.

12  EDWARD L. WHITE, called as a witness, having been

13      first duly sworn by Danielle Grant, a

14      Notary Public within and for the State of

15      New York, was examined and testified as

16      follows:

17  EXAMINATION BY

18  MR. MARKS:

19     Q   Mr. White, my name is Benjamin

20  Marks and I represent West Publishing

21  Corporation in this matter.

22       Would you please state your name

23  and address for the record.

24     A   Edward Leslie White.  3208 Broken

25  Bow Court, Edmond, Oklahoma 73013.

1                      E. White

2           A    Intellectual property, both

3    litigation and patent prosecution, et cetera?

4           Q    Yes.

5           A    Probably 30 to 40.

6           Q    What percentage of your practice is

7    copyright related?

8           A    Small.  It varies, but I would say

9    less than 10 typically.

10          Q    How many active litigation matters

11   is the firm handling right now?

12          A    Where cases have been filed?

13          Q    Yes.

14          A    Thirty.

15          Q    Is that a typical caseload for any

16   given year?

17          A    Again, it varies, but for the most

18   part, yes.

19          Q    Give me a range from low end to

20   high end, recognizing it's approximate.

21          A    For the last ten years?

22          Q    Sure.

23          A    Well, the first year I had ramped

24   up but I basically took anything that came in

25   the door so I ended up with a lot of cases, some

1                     E. White

2    of which were not the best cases, but.  So I

3    think probably early in my career it would have

4    been 50, 60, 70, and it's tailed off in terms of

5    the number now.

6            Q    Has there ever been a time where

7    your firm was handling less than ten cases since

8    the first year?

9            A    No.

10           Q    And over the past three years how

11   many active litigation matters has your firm

12   handled that have involved at least one court

13   filing by the firm, that would be dozens of

14   cases?

15           A    Yes.

16           Q    Are you the sole owner of Edward L.

17   White, P.C.?

18           A    Yes.

19           Q    How many employees does Edward L.

20   White, P.C. have?

21           A    One.

22           Q    Has it ever had more than one

23   employee?

24           A    Yes.

25                MR. BLUE:  Can I just ask for a

1                    E. White

2              clarification.  You mean total employees

3              other than Mr. White.

4                   THE WITNESS:  Yes.

5         Q    No, no, I'm asking for the total

6    number of employees including Mr. White?

7         A    Two.  Currently, and yes, it has

8    had more than two.

9         Q    Okay.  If you could just walk me

10   through, since the inception of the firm, how

11   many other people have worked for the firm, who

12   they are and what their roles have been?

13        A    The last employee I had was Rafael

14   Glapion, who was an associate.  And before him I

15   had -- I've had over the years several clerks,

16   you know, honestly there have probably been five

17   over the years, law school students.

18        Q    When have you had any law school

19   students working for your firm in the past three

20   years?

21        A    Yes, Sierra Freeman in the last

22   three years.

23        Q    And when did Miss Friedman work for

24   the firm?

25        A    Two summers ago, it would have

1                            E. White

2      affected any of the fee arrangements you've made

3      with any of your clients?

4                  MR. BLUE:  Objection.

5           A    Ask that again.

6           Q    Has at availability of some of your

7      court filings on West Law or/and Lexis affected

8      any of the fee arrangements you had made with

9      clients?

10                 MR. BLUE:  Same objection, vague.

11          A    I don't know.

12          Q    From your perspective has that been

13     a factor at all?

14          A    It's possible.

15          Q    Has it ever come up in discussions

16     over what your fee would be?

17          A    It's never come up in discussions.

18          Q    Has it ever been part of your

19     internal calculus about what rates you would

20     seek to be paid for your representation?

21          A    No.

22          Q    To your knowledge, has the

23     availability of some of your court filings on

24     West Law and Lexis affected your ability to earn

25     fees from clients?

1                              E. White

2              A     I believe it has.

3              Q     How so?

4              A     I believe part of what I offer

5    is -- I've done certain kinds of cases, I've

6    royalty cases, I've done copyright, both

7    prosecution and defense, I've done patent

8    infringement and defense cases.  And to the

9    extent people can take my work now and use my

10   work in a fairly simple fashion, I think that

11   that set of information I have has a value and I

12   think it's been decreased.

13             Q     Have you ever attempted to measure

14   the amount by which the value of your work has

15   been decreased?

16             A     I don't know how I would do that.

17             Q     Do you know how anyone would do

18   that?

19             A     I'm not in that kind of business

20   but I suspect there's probably some way to make

21   an analysis.

22             Q     But sitting here today you're not

23   aware of any way to make that analysis?

24             A     Correct.

25             Q     Has the availability of some of

1                      E. White

2     your court filings on West Law and Lexis

3     affected your cost of providing legal advice to

4     clients?

5          A    Potentially.  I hadn't thought

6     about that.

7          Q    How has it affected the cost, your

8     cost of providing legal services to clients?

9          A    I'm just kind of, thinking out

10    loud, but I pay for Lexis services, and to the

11    extent Lexis collecting briefs, it could have

12    affected it and made my legal service more

13    expensive if they're spending money collecting

14    services and charging more or less or it could

15    have lessened it.  It I don't know how it would

16    affect it, but it's an indirect effect if there

17    is one.

18          Q    And sitting here today, you have no

19    knowledge of whether or not that Lexis's

20    collection of briefs has had any impact on the

21    pricing of the services you that you purchase

22    from Lexis?

23          A    Yes.

24          Q    Same answer as to West Law for the

25    period for you were a West Law subscriber?

1                         E. White

2            his own behalf or on behalf of a client?

3            Q    On your own behalf?

4            A    Yes.

5            Q    And you had your own firm for ten

6       years before registering a single copyright,

7       correct?

8            A    Yes.  For --

9            Q    On my own behalf.

10               And is it fair to say that your

11      firm has prepared hundreds of court filings?

12           A    Yes.

13           Q    Is it fair to say thousands of

14      court filings?

15           A    Probably.

16           Q    Do you have any understanding of

17      whether copyright registration is a common

18      practice among law firms or attorneys with

19      respect to court filings they prepare on behalf

20      of clients?

21           A    I haven't asked.

22           Q    You don't have an understanding one

23      way or the other?

24           A    Correct.

25           Q    Are you aware of any other

1                          E. White
2      attorneys or law firms with registered
3      copyrights in court filings?
4           A    Again, I haven't asked, so, and I
5      haven't done the search, so no.
6                MR. MARKS:  I'd like to mark as
7                White Exhibit 5 a copy of a two-page
8                document bearing the Bates numbers
9                P00119 and 120.
10                   (Certificate of Registration was
11                   marked as White Exhibit No. 5 for
12                   identification, as of this date.)
13          Q    Mr. White, have you seen White
14     Exhibit 5 before?
15          A    Yes.
16          Q    What is White Exhibit 5?
17          A    It's a certificate of registration
18     for a brief.
19          Q    And the title of the brief is
20     Plaintiffs' Combined Motion for Summary Motion
21     for Plaintiffs and Ramsey and brief in support,
22     correct?
23          A    Yes.
24          Q    And this was the summary judgment
25     motion that you filed in the Beer v. XTO Energy

Page 56

1                        E. White

2    case on behalf of Miss Beer and Miss Bique in

3    their seeking of termination of liability on

4    their individual claims?

5              A    Correct.

6              Q    What is the reference to the date

7    of first publication on this form?

8              A    Are you asking me what the date is?

9              Q    I see that the date is May 20,

10   2009, and what I'm asking is what is that date a

11   reference to?  What happened on that date?

12             A    I believe that's when it was filed.

13             Q    Was there any distribution of the

14   motion and brief in support by you other than

15   filing it with the court?

16             A    I believe we sent it to the client

17   by regular mail -- the clients by regular mail.

18   And there may have been others, but that is a

19   likely one.

20             Q    Did you serve it on opposing

21   counsel?

22             A    Via the court system it does that

23   automatically.

24             Q    And other than filing the document

25   with the court and mailing a copy of it to your

1                       E. White

2    clients, are you aware of any distribution by

3    you or on your behalf to anyone else?

4         A    I believe I probably provided it to

5    the experts as well that were involved in that

6    case, but I -- and there may have been others.

7         Q    Anyone else you can think of

8    sitting here today?

9         A    Not that I can think of sitting

10   here today.

11        Q    Is there anyone else who authorized

12   it -- authorized to distribute this document on

13   behalf of the firm?

14        A    Other than myself and Jan?

15        Q    Correct?

16        A    And Marty could have distributed it

17   on behalf of the firm.  He may have sent it to

18   someone, I don't know.

19        Q    You're not aware of Miss Inman or

20   Mr. -- excuse me, Dr. High distributing a copy

21   of this brief to anybody who wasn't either a

22   client or an expert or a party in the case?

23        A    Correct.

24        Q    Under the heading Author there's a

25   line that says, "Author created text compilation

Page 58

1                          E. White

2      editing."

3                  Do you see that?

4      A      Yes.

5      Q      What is that a reference to?

6      A      I think that the firm created the

7      whole thing.

8      Q      So the reference to text is that

9      the firm prepared the text of the document?

10     A      Correct.

11     Q      What's the reference compilation?

12     A      Well, there were also exhibits, and

13     I can't remember if it's as registered the

14     exhibits were attached but there -- some of the

15     exhibits that were attached were not drafted by

16     the firm, they were compiled into the document.

17     Q      And so your assertion of copyright

18     doesn't include any of the exhibits, it merely

19     would cover whatever compilation copyright there

20     might be in picking exhibits written by other

21     people?

22              MR. BLUE:  Objection.

23     A      I mean, generally speaking, I think

24     that's correct.

25     Q      And what is the reference to

1                        E. White

2               MR. BLUE:  Objection.

3          A    I think -- I think that's more

4     accurate.

5          Q    And you don't have any written

6     agreement with Dr. High governing ownership of

7     copyrights in work product that he contributed

8     to in connection with that case, do you?

9          A    I don't believe so.

10         Q    And Dr. High did in fact contribute

11    to the drafting of plaintiffs' combined motion

12    for summary judgment?

13         A    I'm sure he saw it and I'm sure he

14    said things about it, but whether he contributed

15    to drafting I couldn't say as I sit here today.

16         Q    He provided you with written

17    comments on your draft?

18         A    Yes.

19         Q    Made editorial suggestions?

20         A    Yes.

21               MR. MARKS:  I'd like to mark as

22               White Exhibit 6, a two-page document

23               bearing the Bates number P00054 to 55.

24               (Document, Bates stamped P00054 to

25               55 was marked as White Exhibit No.

Page 62

1                          E. White

2                   6 for identification, as of this

3                   date.)

4        Q    Mr. White, have you seen White

5   Exhibit 6 before?

6        A    Yes.

7        Q    What is White Exhibit 6?

8        A    A certificate of registration for

9   plaintiffs' motion in limine.

10       Q    And this is a motion in limine

11  filed on behalf of the plaintiffs in the Beer

12  versus XTO Holdings case?

13       A    Right.

14       Q    And was this motion filed on behalf

15  of just Miss Beer and Miss Bique or was this

16  filed on behalf of the class?

17       A    Class.

18       Q    And is the reference next to the

19  line date of first publication, is that the date

20  that this motion in limine was filed with the

21  court?

22       A    Yes, I believe it was.

23       Q    And in addition to filing this

24  document with the court, did you mail a copy of

25  it to your clients?

1                          E. White

2            A    I'm not sure we mailed the motion

3       in limine.  I would have discussed it with them.

4            Q    And did you provide a copy of the

5       motion to the experts in the case?

6            A    I doubt it.

7            Q    Are you aware of any distribution

8       of the motion in limine by you or anyone acting

9       on behalf of the firm to anyone other than

10      filing of the court?

11           A    No.

12           Q    And that's true not only at the

13      time it was filed but subsequently until

14      discovery in this case, correct?

15           A    I provided it to counsel, but yes.

16           Q    Counsel in this case in connection

17      with this litigation?

18           A    Correct.

19           Q    And that's true of the -- the

20      motion for summary judgment as well, but there

21      was -- I asked you a series of questions about

22      whether or not it had been distributed by you or

23      on your behalf and I believed I was asking about

24      at any point in time, but I'd like to make sure

25      that that's how you understood the question?

E. White

1

2          A     Well, yes, that's how I think I

3   understood the question and I don't believe

4   there's been any distribution other than in the

5   case or to counsel.

6          Q     And on White Exhibit 6 there is a

7   reference to it being a work made for hire.

8                Do you see that?

9          A     Yes.

10         Q     And is that the same designation as

11  work made for hire for the same reasons as we

12  discussed in relation to White Exhibit 5?

13         A     Yes.

14         Q     That it was prepared by an employee

15  of Edward L. White, P.C. within the scope of his

16  employment?

17         A     It was prepared for Edward L.

18  White, P.C., yes.

19         Q     And did Dr. High contribute to the

20  motion in limine?

21         A     I don't believe so.  If he did it

22  would have been editorial comments.

23         Q     There's a limitation of the

24  copyright claim and it says "Materials from this

25  claim, text from other sources."

1                          E. White

2                 Do you see that?

3          A     Yes.

4          Q     And what's that a reference to?

5          A     I think we included that in all of

6     these and -- I don't recall specifically in this

7     instance.

8          Q     You did not include a similar

9     limitation in your registration of White Exhibit

10    5, correct?

11         A     Looks like we didn't.

12         Q     Even though White Exhibit 5 you

13    believe included exhibits that were prepared by

14    third parties, correct?

15         A     I believe so, yes.

16         Q     Sitting here today would you agree

17    it would have been appropriate to include a

18    limitation on the copyright claims that you were

19    claiming in the copyright and the individual

20    exhibits that were attached and prepared by the

21    third parties?

22              MR. BLUE:  Objection.

23         A     I'd have to go back and look at it,

24    but it's possible that that limitation, but I

25    don't think to the extent I would have claimed a

1                          E. White

2    those were accurate.

3            Q    Did your clients review the draft

4    of the brief?

5            A    Yes, I feel confident they did.

6    It's the normal practice in this kind of

7    situation.

8            Q    It's a normal practice that they

9    would provide comments on the brief?

10           A    Sometimes the comments would simply

11   be, "it looks like," but yes, they would

12   typically say something.

13           Q    Did you have any assistance in the

14   case research in connection with this motion?

15           A    I would expect that Marty would

16   have helped at least in terms of making his

17   editorial comments, but I don't recall

18   specifically.

19           Q    You don't recall whether or not you

20   had any clerks or other research assistants

21   working on this with you?

22           A    I don't believe so at this time.

23           Q    Does Dr. High ever utilize research

24   assistants or clerks to help him in the

25   performance of his work in connection with his

Page 69

1                        E. White

2     relationship with you?

3            A    I don't believe so.

4            Q    Why was this document prepared?

5            A    The document was prepared in order

6     to attempt to secure summary judgment for the

7     named plaintiffs.

8            Q    Is there any other reason that you

9     prepared this document?

10           A    Well, they also -- it's in my

11    strategy of the litigation, but --

12                MR. BLUE:  I just want to avoid a

13                situation where --

14           Q    I'm not trying to intrude on work

15    product or privilege.  My question is, was there

16    any reason that you prepared this document other

17    in connection with your advocacy on behalf of

18    your clients in the Beer versus XTO Energy case?

19           A    No, essentially that was it.

20           Q    You qualified with essentially.  Is

21    there any reason unrelated to your

22    representation of these clients that you

23    prepared this document?

24           A    None that I can think of.

25           Q    And at the time that you prepared

1                          E. White

2     the document you anticipated that you would be

3     filing it with the court on behalf of your

4     clients, correct?

5             A     Correct.

6             Q     And you filed the summary judgment

7     motion with the court because you wanted the

8     court to consider it and grant the motion,

9     correct?

10            A     That was the primary reason, yes.

11            Q     What are the ancillary reasons that

12    you filed with the court?

13                  MR. BLUE:  Can we also --

14                  MR. MARKS:  Without --

15                  MR. BLUE:  -- say it's the same

16            caveat, you're not talking about

17            litigation strategy or how he advised

18            the clients how to proceed.

19            Q     If it relates to litigation

20    strategy, I will accept that that's the reason.

21    You don't have to give me the particulars of the

22    litigation strategy.

23            A     Litigation strategy.

24            Q     No reason unrelated to prosecution

25    of a litigation?

1                    E. White

2          A    Correct.

3          Q    And you knew at the time it was

4    prepared that it would be available on Pacer,

5    correct?

6          A    Yes.

7          Q    For anyone with a Pacer

8    subscription to download?

9          A    I think you have to have a

10   subscription but I knew it would be on Pacer.

11         Q    And that anyone, any member of the

12   public who wanted to obtain it from Pacer would

13   be able to obtain it?

14         A    Assuming they had the subscription.

15         Q    Are you aware of any restrictions

16   on who can obtain a Pacer subscription?

17         A    I don't know there's requirements.

18         Q    And you also knew that a copy of

19   the brief would be available from the courthouse

20   itself, correct?

21         A    Yes.

22         Q    And that any member of the public

23   who went in and complied with whatever terms the

24   Western District of Oklahoma has set up for

25   copying briefs could go in and may a copy,

Page 72

1                     E. White

2    right?

3         A    Yes.

4         Q    And did the possibility that

5    somebody might make a copy of your brief from

6    Pacer and distribute your brief affect your

7    decision to write this motion?

8         A    If I had prior knowledge of that

9    fact, I still would have written the motion, if

10   that's what you're asking me.

11        Q    That is what I'm asking you.  The

12   answer is yes?

13        A    Yes.

14        Q    And did the possibility that

15   someone might make a copy of your brief in Pacer

16   and distribute your brief affect the quality of

17   your work on this motion?

18        A    No.

19        Q    And at the time you prepared the

20   motion, you had no way of knowing whether West

21   or Lexis would include a copy of it in a

22   database, correct?

23        A    Correct.

24        Q    Subsequent to your filing of this

25   document with the court, and until, until this

Page 73

                                E. White

1

2      case was commenced, has anyone ever requested a

3      copy of this document from you?

4              A    Well, that gets into -- there --

5      there's another counsel involved with this case,

6      so that, a copy was certainly provided to them.

7              Q    When you say this case, I want to

8      make sure --

9              A    Beer.

10             Q    Beer v. XTO, okay.  And who is

11     that?

12             A    The Helms Underwood is the firm,

13     Helms Underwood Cook.

14             Q    And you provided a copy of this

15     brief to that firm?

16             A    Say you, Edward L. White, P.C., I

17     believe Jan would have -- may have provided a

18     copy to them.

19             Q    And that was in connection with

20     their representation of members of your original

21     class?

22             A    Yes.

23             Q    And the reason that a copy was

24     provided was to -- was because they had assumed

25     representing members of a class that you had at

1                          E. White

2      one point represented?

3             A     Correct.

4             Q     And that's the only reason that you

5      provided a copy of the brief to them?

6             A     Yes.

7             Q     And to your knowledge that's the

8      only reason they requested a copy of the brief

9      was to assume the representation of the

10     individuals you had previously represented?

11            A     Yes.

12            Q     Have you ever offered to license

13     the copyright you claim in this work to anybody

14     else?

15            A     No.

16            Q     Has anyone ever asked you for such

17     a license?

18            A     No.

19                  MR. MARKS:  I'd like to mark as

20            White Exhibit 8 a document bearing Bates

21            number P0001 through P00024.

22                  (Motion in Limine was marked as

23            White Exhibit No. 8 for

24            identification, as of this date.)

25            Q     Mr. White, what is White Exhibit 8?

1                    E. White

2          A     It's plaintiffs' motion in limine

3     in Beer versus XTO.

4          Q     Can you describe for the process of

5     how this document was prepared?

6          A     Generally speaking, it was prepared

7     by me addressing the issues that I felt needed a

8     motion in limine filed on and gathering the

9     relevant background information and legal

10    authority and drafting a brief.

11         Q     And you believe that Dr. High

12    provided editorial comment on this brief?

13         A     I believe he probably did on this

14    one.

15         Q     And did Miss Inman play a similar

16    role with respect to White Exhibit 8 as she did

17    in White Exhibit 7 with regard to formatting the

18    document and providing the cover sheet and the

19    certificate of service, et cetera?

20         A     Yes.

21         Q     Were there any other contributors

22    to the preparation of the motion?

23         A     To the extent we talked to clients

24    about it that may have had comments, it's

25    possible.

Page 76

                              E. White

1
2          Q     Did anyone, to your knowledge,
3    other than you and Dr. High perform any of the
4    case research associated with the preparation of
5    this motion?
6          A     I'm sorry, what was that?
7          Q     I'm asking who did the case
8    research in connection with the preparation of
9    the motion?
10         A     It would have been me, and then to
11   the extent he was providing editorial comments,
12   there may have been work by Dr. High.
13         Q     And this document was prepared on
14   behalf of the class in Beer v. XTO Energy in
15   order to persuade the court to exclude certain
16   evidence from trial in this action?
17         A     Essentially.  I mean you know what
18   a motion in limine is, but yes.
19         Q     Was there any other reason that you
20   prepared this document other than for the
21   purpose of representing your clients in the Beer
22   v. XTO Energy case?
23         A     No.
24         Q     And at the time the document was
25   prepared you anticipated that it would be filed

1                        E. White

2    with the court, correct?

3          A    Yes.

4          Q    And you knew at the time it was

5    prepared that once filed it would be available

6    on Pacer?

7          A    Yes.

8          Q    And you knew at the time it was

9    prepared that once filed it would be available

10   for copying at the courthouse?

11         A    Yes.

12         Q    And the possibility that somebody

13   might copy and distribute your brief did not

14   affect your decision to write this motion, did

15   it?

16         A    Correct.

17         Q    And the possibility that someone

18   may copy and distribute your brief did not

19   affect the quality of your work on this motion,

20   did it?

21         A    No.

22         Q    At the time you prepared this

23   motion you had no way of knowing whether West or

24   Lexis would include a copy of it in a database,

25   correct?

1                          E. White

2          A     Right.

3          Q     And have you ever offered to

4   license the copyright you claim in this work to

5   anyone else?

6          A     No.

7          Q     Has anyone ever asked you for such

8   a license?

9          A     No.

10         Q     And has anyone ever asked you for

11  such a license?

12         A     No.

13         Q     Has anyone every asked you for a

14  license to your copyright in any of your

15  registered copyrights?

16         A     You're asking me if on the ones

17  that were filed on behalf of the firm, not my

18  clients.

19         Q     Correct, not your clients.  Thank

20  you for the clarification.

21               With regard to the documents for

22  which you secured a copyright registration, I'm

23  asking has anybody ever attempted to license

24  your copyright in any of those Works?

25         A     No one has ever expressly asked me

1                        E. White

2    for a license to an Edward L. White, P.C.

3    registered work, no.

4         Q    Have you ever offered a license to

5    the copyright in any Edward L., P.C. registered

6    work?

7         A    No.

8         Q    You brought Beer v. XTO Energy as a

9    putative class action, correct?

10        A    Yes.

11        Q    And with Miss Beer and Miss Bique

12   as the name plaintiffs, correct?

13        A    Correct.

14        Q    And on or about March 20, 2009, the

15   court granted your motion for class

16   certification, correct?

17        A    I think the date's right.

18        Q    You were appointed counsel for the

19   class?

20        A    Yes.

21        Q    And Miss Beer and Miss Bique were

22   appointed as representatives of the class?

23        A    Correct.

24        Q    On May, I think we've already

25   talked about that on May 20, 2009 you filed a

1                       E. White

2    motion for summary judgment on behalf of Miss

3    Beer and Miss Bique?

4           A    I believe that's right.

5           Q    That's White Exhibit 7?

6           A    Yes.

7           Q    And your motion was limited to the

8    individual claims of the named plaintiffs and

9    did not cover the claims to the class, correct?

10          A    Correct.

11          Q    And on or about February 5, 2010,

12   the court granted summary judgment to Miss Beer

13   and Miss Bique on their individual claims,

14   correct?

15          A    I believe that's right.

16          Q    And shortly before the court award

17   summary judgment to Miss Beer and Miss Bique,

18   you filed a second motion for summary judgment

19   on the issue of class damages, correct?

20          A    Yes.  I think again the timing

21   sounds right.

22               MR. MARKS:  I'm going to mark as

23          White Exhibit 9 a copy of the docket in

24          Beer versus XTO Energy.  I don't mean to

25          make this a memory test on dates so let

1                          E. White

2            me provide you with a coy of the docket

3            and you can confirm for me whether or

4            not anything, as we go through the

5            sequencing is inaccurate to the best of

6            your recollection.

7                (Beers v. XTO Energy court docket

8                was marked as White Exhibit No. 9

9                for identification, as of this

10                date.)

11       Q    So if you turn to the portion of

12  the document which is where the entries are

13  organized chronologically, that has us in the

14  spring of 2010, I think on page 20 of the

15  document we've got the -- excuse me, on page 19

16  of the document there's an entry, entry 148

17  reflects that on February 5th the court granted

18  the plaintiffs' motion for summary judgment with

19  respect to their individual claims?

20       A    Yes.

21       Q    And if you look up ahead at docket

22  entry 144, on February 2nd you filed a motion

23  for summary judgment on damages for all

24  plaintiffs, correct?

25       A    Yes.

Page 82

1                    E. White

2          Q     And the court denied the second

3    summary judgment motion for damages on behalf of

4    all plaintiffs as premature as there had been no

5    determination for liability for the class,

6    correct?

7          A     The court's order reflects what the

8    court did.  I think it was a little more

9    complicated.

10         Q     You would agree with me that the

11   court denied motion for summary judgment on

12   damages to the class?

13         A     Yes.

14         Q     And on April 13, 2010 the court

15   decertified the class, correct?

16         A     Yes.

17         Q     And the court found that you were

18   not adequately protecting absent class members,

19   correct?

20         A     Again, the court's order says what

21   it says.

22         Q     And the court's order said that --

23   reflected its determination that you were not

24   adequately representing the class, correct?

25              MR. BLUE:  Objection.

Page 83

                              E. White

1

2        A    It said what it said.

3        Q    As a result of that order you were

4   removed as counsel for the class, correct?

5        A    Yes.

6        Q    And the court also found that Miss

7   Beer and Miss Bique were no longer adequate

8   representatives of the absent class?

9        A    Yes, I believe that's correct.

10        Q    And at the end of April 2010,

11   Mr. Goodard and Mr. Fenkhauser (phonetic) filed

12   a motion to intervene as names plaintiffs with

13   new counsel, correct?

14        A    Goddard, yes.

15        Q    Excuse me, Goddard, thank you.

16             And after the court's

17   determination that you were no longer adequate

18   class counsel, you wrote to members of the

19   absent class and offered to represent them

20   individually, correct?

21        A    I'm not sure the sequencing is

22   exactly correct but I did -- there was certainly

23   communications.

24        Q    Communications between you and

25   members of the class following the court's

1                           E. White

2    decertification of the class, correct?

3           A    Well, there's no class following

4    decertification.

5           Q    Members of the -- members of the

6    formerly certified class?

7           A    Yes.

8           Q    And in those communications you

9    offered to represent those parties individually

10   in continuing litigation against XTO Energy,

11   correct?

12          A    Again, the letters speak for

13   themselves, but yes, essentially that's correct.

14          Q    You wanted to stay involved as

15   counsel for those parties, correct?

16          A    Yes.

17          Q    And by May 15, 2010, you had filed

18   copyright registrations for 15 of the court

19   filings and discovery documents that you had

20   prepared while acting as counsel for the

21   formerly certified class?

22          A    I think the dates are right, yeah.

23          Q    And you wanted to prevent new

24   counsel from copying the work product you had

25   done on behalf of the class, correct?

                              E. White

1

2          A     I wanted to protect my intellectual

3     property, if that's what you're asking me.

4          Q     And the concern that you had was

5     that other lawyers who were seeking to act on

6     behalf of the same individuals you were seeking

7     to represent would use your work product in

8     their own efforts to represent those same

9     individuals?

10                MR. BLUE:  Objection.

11                Go ahead.

12         A     That was certainly a concern.

13         Q     What other concern did you have?

14         A     Well, again, it's -- I think that

15    the best way to say it was I was seeking to

16    protect my intellectual property and that was a

17    significant concern.

18         Q     What else motivated the timing of

19    registering 15 documents in the case other than

20    the fact that you had been removed as counsel

21    for the class, there was a motion to intervene

22    with new class counsel, and you were seeking to

23    represent those same individuals in their

24    individual capacity?

25         A     Well, part of it was I didn't have

1                         E. White

2    a trial that I had expected to have and so I had

3    more time.  But your assertion that that was

4    copying by subsequent counsel was a concern is

5    accurate.

6              Q    And what I'm trying to understand

7    is were there any other concerns motivating the

8    last 15 copyright registrations that you've made

9    in your career on behalf of your firm?

10                  MR. BLUE:  Objection, asked and

11            answered?

12             A    Yes.

13             Q    And what were they?

14             A    A desire to protect my intellectual

15    property.

16                  VIDEOGRAPHER:  Excuse me, Counsel,

17            we're coming down to seconds.

18                  MR. MARKS:  That's fine.  Why don't

19            we go ahead and change now.

20                  VIDEOGRAPHER:  The time is 11:53

21            and we're off the record.

22                  (Whereupon, at 11:53 a.m., a recess

23            was taken to 11:59 a.m.)

24                  (The deposition resumed with all

25            parties present.)

Page 87

```
1                        E. White

2              VIDEOGRAPHER:   The time is 11:59

3         and this begins tape two of the

4         videotaped deposition of Edward L.

5         White.

6         Q    In July of 2010, Mr. White, the

7    court in Beer v. XTO -- XTO Energy granted the

8    motion to intervene, correct?

9         A    Yes.

10        Q    And you were directed to deliver

11   all discovery materials to intervener's counsel,

12   right?

13        A    Correct.

14        Q    And after the court learned about

15   your outreach to members of the decertified

16   class concerning potential individual

17   representations, the court enjoined you and

18   Dr. High from any future correspondence with

19   class members, correct?

20        A    The court entered an order that was

21   to some extent consistent with what you said.

22        Q    How was it inconsistent with what I

23   said?

24        A    You can read the order.

25        Q    Sitting here today can you identify
```

Page 88

1                          E. White

2     anything about my statement's that inaccurate?

3            A    I don't have the order in front of

4     me.

5            Q    But I agree with you, the order

6     says what it says but you can't identify

7     anything incorrect in my statement sitting here

8     today?

9                 MR. BLUE:  Objection.

10           A    Nothing specific.

11           Q    And you don't dispute that the

12    court enjoined you and Dr. High from future

13    correspondence with members of the class that

14    had been certified with you as class counsel?

15           A    Again, I have to look at exactly

16    what the court order said, but that was the

17    tenor of the order.

18           Q    And the new named plaintiff's who

19    intervened in the case filed a class

20    certification motion in August 2010, correct?

21           A    I believe so.

22           Q    And earlier the court certified the

23    class with new class counsel and new

24    representative plaintiffs, correct?

25           A    Yes.

Page 89

```
 1                        E. White
 2            Q    And earlier this year the case
 3    settled right before trial?
 4            A    Yes, it did.
 5            Q    And class counsel in that case has
 6    submitted a fee request of more than $18
 7    million, correct?
 8            A    Correct.
 9            Q    And you have filed a motion asking
10    the court to award you a portion of the attorney
11    fee award and to reimburse your firm for
12    specific litigation expenses, correct?
13            A    Yes.
14            MR. MARKS:  I'd like to mark as
15            White Exhibit 10, a document bearing the
16            title "Motion in Support of Class
17            Counsel's Fee Request and Request for
18            Separate Allocation of Fees to White and
19            to Prior Class Representatives."
20                (Motion in Support of Class
21                Counsel's Fee Request and Request
22                for Separate Allocation of Fees to
23                White and to Prior Class
24                Representatives was marked as White
25                Exhibit No. 10 for identification,
```

Page 98

                                E. White

1
2          Q    And have you used West Law to
3    access a court filing prepared by another
4    attorney?
5          A    Again, it -- it's possible, but I
6    don't believe so.  I don't think that back when
7    I had West Law I was aware of that as an option.
8          Q    Has anyone ever accessed an
9    attorney authored court filing via West Law on
10   your behalf?
11         A    No.
12         Q    Has anyone ever used Lexis to
13   access a court filing prepared by another
14   attorney on your behalf?
15              MR. BLUE:  Objection, vague.
16         A    No, I don't believe so.
17         Q    When did you first become aware
18   that a document prepared by your firm was
19   available on West Law?
20         A    Sometime after I became aware of
21   course that they were offered, but I don't -- I
22   can't tell you when exactly.
23         Q    How did you become aware of it?
24         A    I -- honestly I can't tell you.
25         Q    You don't remember?

1                         E. White

2          A     No.

3          Q     How did you become aware that a

4    document prepared by Edward L. White, P.C. was

5    available on Lexis?

6          A     I think, and I don't know if this

7    is true in fact, my assumption was once I

8    figured out that briefs were available that I

9    had assumed that basically all federal briefs

10   were available, that there was some sort of

11   program to pull those off and kind of in an

12   automated fashion index and process.

13         Q     Do you understand sitting here

14   today whether or not that's the case?

15         A     I don't know if that's the case.

16         Q     Did you ever search Lexis for a

17   copy of a brief or other court filing prepared

18   by your firm?

19         A     I believe I did.

20         Q     And were you able to locate any?

21         A     I believe I was, yeah.

22         Q     Which documents were you able to

23   identify?

24         A     I believe some of the Beer

25   documents, one or more of the beer documents.

Page 100

1                          E. White

2              Q    And when did you conduct that

3    search?

4              A    I don't know.  After they were

5    registered in 2010, but I don't know when.

6              Q    Certainly within the last year or

7    two which is the time frame in which you've

8    indicated you first became aware that Lexis made

9    briefs available, correct?

10             A    Correct.

11             Q    And have you ever conducted a

12   search for your own materials on West Law?

13             A    No.

14             Q    Has anyone ever done that on your

15   behalf?

16             A    It's possible, I don't know.

17             Q    Sitting here today, you're not

18   aware of anybody having searched West Law for

19   copies of your briefs or other court filings on

20   West Law?

21             A    Correct.

22             Q    When was the last time that you

23   used Lexis to access one of your own documents?

24             A    I don't know.

25             Q    Within the past year?

1                    E. White

2          A    I don't know.

3          Q    Since the case was filed?

4          A    I don't know.

5          Q    Do you know whether or not any

6    documents prepared by Edward L. White, P.C. are

7    currently available on Lexis?

8          A    No, I don't know.

9          Q    Do you know whether any documents

10   prepared by Edward L. White, P.C. are currently

11   available on West Law?

12         A    No, I don't know.

13         Q    Do you have any understanding of

14   the time period for which any particular

15   document authored by your firm was available on

16   West Law?

17              MR. BLUE:  I'm sorry, just for

18              clarification, dates during which it was

19              available.

20         Q    Yeah, the time period, for how long

21   it was available.

22         A    I don't know.

23         Q    Same answer as to Lexis?

24         A    Correct.

25         Q    The amended complained in this

1                         E. White
2     action places two Works at issue in this
3     copyright infringement action, correct.
4          A    I don't know that that's accurate.
5          Q    Do you believe that more Works are
6     at issue than two?
7          A    Well, paragraphs 4 and -- paragraph
8     4 talks about two particular Works, but then the
9     exhibit we looked at has more Works referenced,
10    so I don't know when you say places then at
11    issue, I'm not sure what that means.
12         Q    As the plaintiff in this case, do
13    you believe that you're seeking relief on behalf
14    of injunctive relief or damages with -- let me
15    break that apart.  Are you seeking damages from
16    West Law and Lexis for infringements of Works
17    other than the motion in limine or the motion
18    for summary judgment?
19              MR. BLUE:  Objection.  We made that
20              clear in the documents.
21              MR. MARKS:  You're referring to
22              your representation that it's only two
23              Works at issue?
24              MR. BLUE:  Yes.
25              MR. MARKS:  Well, I will accept

1                          E. White

2              your representation on the record here

3              that the only two Works at issue are the

4              motion in limine that's been marked as

5              White Exhibit 8 and the motion for

6              summary judgment that's been marked as

7              White Exhibit 7?

8                  MR. BLUE:  Correct, for purposes of

9              this litigation, reserving rights with

10             respect to everything else, currently at

11             issue are those two writings.

12             Q    And my question for you, Mr. White,

13   is turning to White Exhibit 7, how did you

14   become aware that plaintiffs' combined motion

15   for summary judgment in the Beer v. XTO Energy

16   case was available on West Law?

17             A    As I said to you, my assumption was

18   that when I found out they had this brief bank,

19   whatever you want to call it, that all federal

20   filings were on there.  So I didn't become -- I

21   don't recall a specifically becoming aware that

22   that pleading was on there.  My belief was that

23   all federal pleadings were on there.

24             Q    Do you have any reason to believe

25   that this document was ever made available on

1                        E. White

2    West Law other than your belief that all federal

3    pleadings were made available on West Law?

4            MR. BLUE:  Objection.

5        A    I'm not sure exactly what you're

6    asking but I had, I think, my testimony is I had

7    a belief that all pleadings were available.

8        Q    I will represent to you that your

9    belief is incorrect.

10       A    All right.

11       Q    Okay.  And I'm asking whether

12   there's any other basis for your belief that

13   this document that's been marked as White

14   Exhibit 7 was ever available on West Law other

15   than your belief that West Law was making all

16   federal pleadings available?

17       A    Other than as a part of this

18   litigation information that's been produced, I

19   didn't have an independent...

20           MR. BLUE:  And let me just

21           interject to object to the extent your

22           question includes a request for

23           conversations between Mr. White and his

24           counsel concerning this litigation.

25           MR. MARKS:  I'm not asking for the

1                          E. White

2          A     Same answer.

3          Q     The answer is no, you don't have

4    any knowledge?

5                MR. BLUE:  Objection.

6          A     My answer was that I don't have a

7    specific recollection of having done a search

8    but my -- I may have more likely on Lexis done a

9    search because I had that service, but my belief

10   was that they were all available.

11         Q     And you didn't -- you don't have

12   any recollection sitting here today of searching

13   for this document on Lexis or West Law?

14         A     No.

15         Q     Okay.  With respect to the

16   plaintiff's motion in limine that's been marked

17   as White Exhibit 8, you don't -- other than

18   conversations, excluding whatever conversations

19   you may have had with counsel, you don't have

20   any basis to no one way or the other whether

21   plaintiff's motion in limine was ever made

22   available on West Law?

23               MR. BLUE:  Objection.

24         A     My answers with respect to this

25   document would be the same as with respect to

```
 1                        E. White

 2     others.

 3          Q    You don't have specific knowledge

 4     of this document ever appearing on West Law and

 5     you don't have specific knowledge of this

 6     document ever appearing on Lexis, correct?

 7               MR. BLUE:  Objection.

 8          A    Correct, other than as previously

 9     discussed.

10          Q    Other than a belief that West Law

11     and Lexis were making all federal filings

12     available, correct, and conversations with

13     counsel?

14          A    Again, as previously discussed,

15     yes.

16          Q    Are you aware of any instance in

17     which another attorney has copied the

18     expressions set forth in White Exhibit 8?

19          A    No.

20          Q    Are you aware of any instance in

21     which another attorney has used the expressions

22     set forth in White Exhibit 7?

23               MR. BLUE:  Objection.

24          A    No.

25          Q    Prior to filing this lawsuit, did
```

1                          E. White

2     you ever ask West Law to remove materials

3     written by Edward L. White, P.C. from its

4     database?

5              A     No.

6              Q     Prior to filing this lawsuit, did

7     you have any communications with West Law about

8     not putting any of your materials into the

9     database in the first place?

10             A     No.

11             Q     Did you ever have any communication

12    at any time with anyone at West about the

13    availability of your materials in its database?

14             A     I don't believe so.

15             Q     Has anyone ever told you that a

16    request from West to remove your materials from

17    its database would be futile?

18             A     Has anyone told me that, no.

19             Q     Do you have any reason to believe

20    that such a request would be futile?

21             A     Yes.

22             Q     What's the basis for your belief?

23             A     Dealing with West in the past.

24             Q     What -- what about your dealings

25    with West in the past makes you believe that

1                           E. White

2    requesting that they remove materials from their

3    database would be futile, absent federal court

4    litigation?

5          A    It's just my general impression

6    based on prior dealings with West that a request

7    from one attorney to remove materials would have

8    been futile.

9          Q    And you never made such a request?

10         A    Correct.

11         Q    And what are the nature of your

12   dealings that gave you the impression that they

13   wouldn't entertain a dialogue if you wanted

14   materials removed from the database?

15         A    Less than reasonable behavior from

16   West previously.

17         Q    What is the behavior that you're --

18   to which you're referring?

19         A    I had a dispute about how much

20   we -- I owed them, the firm owed them upon

21   termination.  And I can't remember if that

22   contract was specifically with me as an

23   individual or for the firm, but a dispute

24   associated with termination of prior West

25   service.

Page 116

E. White

1

2          A     Less than a year.

3          Q     When was your first communication

4     with Mr. Blue in relation to this action?

5          A     Same thing, I don't know.

6          Q     Did you retain the Bragar Wexler

7     firm at the same time that you retained

8     Mr. Blue?

9          A     My expressed dealings have been

10    with Mr. Blue.

11         Q     Have you had any communications

12    with Mr. Bragar?

13              MR. BLUE:  That's a yes or no.  I

14              just don't want you to get into the

15              substance of communications.

16         Q     I'm not asking for the substance,

17    I'm asking about communication.

18         A     I don't believe so.

19         Q     How did you come to met Mr. Blue?

20         A     Mr. Blue and I discussed a couple

21    of litigation matters.

22              MR. BLUE:  I'm going to object to

23              the extent that you're asking for the

24              substance of those discussions.

25         Q     And excluding your counsel in this

```
 1                          E. White
 2      action, have you had conversations with other
 3      attorneys about the availability of briefs on
 4      West Law or Lexis?
 5                      MR. BLUE:  I'll object to the
 6              extent that previous answers have
 7              discussed that.
 8              Q     You can answer.
 9              A     I believe I have.
10              Q     Who's that?
11              A     Couldn't say specifically.  Like
12      most lawyers, I talk to my friends and
13      colleagues about various legal matters and it
14      would have been in that context of, you know,
15      did you realize that this was out there.
16              Q     Sitting here today, you can't
17      recall a specific conversation?
18              A     No, I can't recall a specific.
19              Q     Has anyone ever told you in words
20      or in substance that they would writing legal
21      briefs if they were copied and distributed by
22      West Law and Lexis without permission?
23              A     No.
24              Q     Has anyone told you in words or in
25      substance that the quality of their briefs would
```

                              E. White

1

2    diminish if they were copied and distributed by

3    West Law and Lexis without permission?

4          A    No.

5          Q    Has anyone ever told you that they

6    had complained to West Law or Lexis about the

7    availability of court filings on West Law or

8    Lexis?

9          A    It, you know, it's one of those

10   deals, I don't have a specific recollection but

11   I believe that somebody I talked to had

12   mentioned that they had complained.

13         Q    You don't recall who this person

14   is?

15         A    No, I don't.

16         Q    Man or a woman?

17         A    I believe it was a man, but I've --

18   I've had quite a few conversations with folks

19   about this issue so I can't be sure who it was.

20         Q    Since the filing of the complaint,

21   you mean?

22         A    Since and before.

23         Q    So you've had quite a few

24   conversations about this issue before you filed

25   a complaint in this action?

1                    E. White

2              MR. BLUE:  Objection.

3         A    Friends and colleagues, yes.

4         Q    But you can't recall a single

5    conversation?

6         A    No.

7         Q    Did you memorialize anything about

8    whether anybody has ever complained to Lexis or

9    West Law?

10        A    No.

11        Q    Nobody ever shared with you a copy

12    of a written complaint?

13        A    No.

14        Q    Nobody put that in an e-mail, this

15    was all oral communications if they happened?

16        A     They happened, communications about

17    this issue, but I don't recall any e-mails.

18        Q     Turning your attention to the

19    amended complaint which is still before you I

20    believe, you authorized the filing of the

21    amended complaint, correct?

22        A    Yes.

23        Q    Did you review it for factual

24    accuracy before it was filed?

25        A    Yes.

Page 124

1                          E. White

2       copies of the Works, prepared derivative Works

3       and distributed copies of the Works, end quote.

4                  Could you see that?

5            A    Yes.

6            Q    What is the basis for your

7       allegation that West and Lexis have compared

8       derivative Works?

9            A    Well, without limiting this

10      explicitly to the answer, I mean there's a lot

11      of legal arguments involved, but I think

12      certainly taking the Works off of Pacer and

13      putting them on their database would be one

14      instance.  Sending them vie an e-mail to someone

15      would be another instance.

16           Q    That would be a derivative work?

17           A    I think it's a derivative work,

18      yes.

19           Q    Okay.  So --

20           A    It's not a very significant change,

21      but they indexed them, they put them on the

22      database, they made them available.  I think all

23      those are derivative Works.

24           Q    It's all creation of derivative

25      Works?

```
1                         E. White

2            A    Yes.

3            Q    You aren't going to stop being a

4     lawyer if you lose this case, are you?

5            A    I don't expect to.

6            Q    You don't expect to stop or you

7     don't expect to lose?

8            A    Either.

9            Q    All right.  Assume with me that --

10    but you would agree that if you lost this case

11    you wouldn't stop being a lawyer, would you?

12           A    Correct.  Not just because of that.

13    I mean at some point I will because I'll die or

14    retire.

15           Q    And even if you lose this case you

16    will continue to represent your clients to the

17    best of your ability, won't you?

18           A    Certainly.

19           Q    And win or lose in this case, you

20    will still file motions when you think it's in

21    your client's best interest to do so, correct?

22           A    Yes.

23           Q    And win or lose this case, you will

24    still respond to motions filed against your

25    clients in other cases, correct?
```

1                        E. White

2          A     Yes.

3          Q     Have you suffered any damages from

4     the available -- availability of the motion to

5     dismiss -- excuse me, the motion for summary

6     judgment and the motion in limine on West Law?

7                    MR. BLUE:  Objection.

8          A     Any actual damages?

9          Q     Yes, any actual damages?

10         A     Again, we talked early on about

11    some -- some -- some of the perceived damage

12    that I see that's difficult to calculate, but

13    yes, I think I have and I think it's also

14    reduced the value of my practice to the extent

15    that the available -- availability of those

16    Works makes it easier for someone else to

17    undertake oil and gas litigation and

18    specifically kind of roll up the litigation like

19    those two briefs related to.

20         Q     And do you have any knowledge about

21    another attorney accessing your motion for

22    summary judgment through West Law or Lexis?

23         A     Other than as it relates to

24    information I learned in this litigation, no.

25         Q     And do you have any knowledge or

1                        E. White

2    awareness of another attorney accessing your

3    briefs through West Law or Lexis in order to

4    provide services in competition with you?

5          A    No, but I believe that happens.

6          Q    What is the basis for your belief?

7          A    Why does West and Lexis sell the

8    briefs other than for use by counsel and use by

9    counsel is to some extent by definition

10   competition and so it's facilitating more

11   effective competition with me.

12         Q    And do you have any understanding

13   of how many people have accessed your motion for

14   summary judgment through Pacer?

15         A    I don't.

16         Q    Do you have any understanding of

17   how many attorneys have accessed your motion in

18   limine through Pacer?

19         A    No.

20         Q    Do you have any understanding of

21   how many attorneys have made copies of either

22   your motion for summary judgment or your motion

23   in limine at the courthouse?

24         A    No.

25         Q    So you have no idea whether or not

1                          E. White

2     the percentage of attorneys who might have

3     accessed either of those Works through West Law

4     or Lexis is tiny as a percentage of the people

5     who have obtained copies of those documents

6     through Pacer or from the court itself?

7           A     I don't know what fraction of

8     people that have accessed those Works have done

9     so through Lexis or West Law versus Pacer, if

10    that's your question.

11          Q     And if somebody wanted to see those

12    briefs so that they could compete more

13    effectively with you, they could go get a copy

14    from Pacer, couldn't they?

15          A     If they specifically knew about the

16    case at issue and knew that they wanted those

17    specific briefs, but it's, you know, not part of

18    my complaint in this case is that it's the

19    systematic way and you know, the text search

20    ability and the ability to pull up a whole set

21    of briefs on an issue is what undercuts my

22    ability to practice.  It's not just that one

23    brief's available if you know that case and you

24    know you want that brief, which has always been

25    the case, but it's that there's a systematic way

1                          E. White

2     that someone can have access, use, and basically

3     have a whole roadmap for a case based on briefs

4     on file.

5          Q    And can you identify a single

6     client represent -- client representation that

7     you have lost because of the availability of one

8     of your Works on West Law or Lexis?

9          A    I can't imagine someone coming to

10    me and saying I would have hired you but I went

11    to Joe Smith because he told me he could get

12    these briefs off Lexis.  It's never happened but

13    I can't imagine how it would.

14         Q    And are you aware of any case that

15    you have lost in part because your litigation

16    adversaries had access to briefs that you had

17    filed in the past?

18         A    Again, I can't imagine that

19    specifically coming up but it certainly is, and

20    I didn't mention that fact before, but that, the

21    access of adversaries to briefs in an easy

22    fashion that involve Edward L., you know, Ed

23    White, is another way in which I could have been

24    harmed by the --

25         Q    The fact that a litigation

1                         E. White

2    adversary could have used West Law or Lexis to

3    obtain copies of briefs you have filed in the

4    past?

5            A    Correct.

6            Q    And your litigation adversaries

7    know who you are presumably, right?

8            A    Presumedly.

9            Q    So they could go to the courthouse

10   and get copies of your briefs and filings,

11   couldn't they?

12           A    Again, not as in a simple of

13   fashion, but yes.

14           Q    So it's easier for them to get it

15   through West Law and Lexis, but they could get

16   it through publicly available records at the

17   courthouse or on Pacer, correct?

18           A    Yes.

19           Q    You have also alleged that you have

20   suffered irreparable injury from the

21   availability of the motion for summary judgment

22   and the motion in limine on West Law?

23           A    I think we allege that, yes.

24           Q    And is the irreparable injury any

25   different from what you've described?  Is that a

1                              E. White

2       different kind of harm or just a different way

3       of describing the same problem from your

4       perspective?

5              A    I think it's a different way of

6       describing the same problem.

7              Q    And the same question as to Lexis,

8       have you suffered any irreparable injury from

9       the availability of the motion for summary

10      judgment and the motion in limine on Lexis other

11      than what you've just described?

12             A    I don't think so.

13             Q    Turning your attention to paragraph

14      32.  It's an allegation that says, quote, Unless

15      enjoined from doing so, the defendants'

16      continued commercial use of the Works will cause

17      plaintiff irreparable harm by depriving it of

18      both the right to control the reproduction and

19      distribution of copyrighted Works and to receive

20      revenue from those Works, end quote.

21             Do you see that?

22             A    Yes.

23             Q    How are you being deprived of the

24      right to receive revenues from the motion in

25      limine and the motion for summary judgment?

                            E. White

1

2          A     I think to the extent the copies of

3    my -- copies of derivative Works and the like

4    are created from my Works without payment and

5    without authorization I've been harmed.

6          Q    Is the only loss of revenues to

7    which you're referring the fact that you're not

8    being paid a feed by West Law or Lexis?

9          A    No, I think I've described other

10   harms.

11         Q    But I'm -- I'm referring

12   specifically to your allegation you are being

13   deprived of your right to receive revenues from

14   the motion for summary judgment and the motion

15   in limine, and I'm trying to understand how

16   you're being derived of the right to receive

17   revenues from those Works?

18         A     I think it says we've derive, or as

19   I've discussed earlier, and then also in

20   addition specifically, as you kind of hinted at,

21   specific use based or access based or copy based

22   fees associated with reproduction or creation of

23   derivative Works.

24         Q    You don't get any compensation from

25   Pacer when somebody uses Pace to make a copy of

1                          E. White

2     the motion for summary judgment or motion in

3     limine, do you?

4          A    I don't.

5          Q    You don't get compensated by the

6     federal court system when somebody goes to the

7     courthouse and makes a copy of your motion for

8     summary judgment or your motion in limine, do

9     you?

10         A    I don't.

11         Q    Are you being damaged by the

12    availability of your Works to the public through

13    Pacer?

14              MR. BLUE:  Objection to the extent

15              it calls for a legal conclusion.

16         Q    I'm asking for a factual -- I'm

17    asking a factual question.  Are you being

18    damaged by the availability of your court

19    filings to the public through Pacer?

20         A    I don't know if I'd say it exactly

21    that way.  I think that the value of my

22    intellectual property would be slightly higher

23    if it were not available on Pacer.  I suspect

24    that.  But as part of being a part of the Pacer

25    system you have to submit Works to be a part of

Page 134

                              E. White
1
2    the Pacer system.
3            Q    And that's true for court filings,
4    right, too, when you make a public court filing
5    the public has access to it, right?
6            A    Correct.
7            Q    Are you damaged by the availability
8    at the courthouse of copies of your public
9    filings?
10           A    I suppose to a limited extent, yes,
11   the same extent, but part of the system.
12           Q    And you're being irreparably
13   injured by the fact that the court makes your
14   documents available to the public, right?
15               MR. BLUE:  Objection.
16           A    I don't know if I'd say it that
17   way.
18           Q    Would you say you're being
19   irreparably injured by the availability on Pacer
20   of your briefs and other court filings?
21           A    Again, I don't know that I'd say it
22   that way.  I don't -- they have -- it's a
23   different situation in my mind.
24           Q    And what is the difference?
25           A    The federal systems for filing

```
 1                        E. White
 2    pleadings, Pace is anyway, and it's a part of
 3    how lawyers do business.
 4         Q    And it's been -- the public
 5    availability of court filings have been part of
 6    the way lawyers do business since long before
 7    the invention of Pacer, correct?
 8         A    Generally speaking, court files
 9    open, yes.  But they're not indexed and they're
10    not available in an Internet search.
11              MR. MARKS:  We've reached a
12              convenient break point for lunch.  Why
13              don't we take however long you guys want
14              to take for 40 minutes, half-hour?
15              MR. BLUE:  Why don't we go off the
16              record?
17              VIDEOGRAPHER:  The time is 12:50
18              and we're off the record.
19                 (Whereupon, at 12:50 p.m., a recess
20                 was taken to 1:34 p.m.)
21                 (The deposition resumed with all
22                 parties present.)
23              VIDEOGRAPHER:  The time is 1:34 and
24              this begins tape number three of the
25              videotaped deposition of Edward L.
```

```
 1                         E. White
 2              White.
 3         Q    Mr. White, I'd like to start by
 4    asking you a question that was asked earlier
 5    today, and I understand from my colleagues that
 6    the transcript may not have come out clearly so
 7    bear with me, I'm just going to ask the question
 8    again.
 9                   We were speaking earlier today
10    about the summary judgment motion that you
11    filed on behalf of Miss Beer and Miss Bique in
12    the Beer v. XTO Energy case.
13                   Do you recall that?
14         A    Yes.
15         Q    Did the possibility that someone
16    might make a copy of your summary judgment
17    motion and supporting brief from Pacer and
18    distribute that material affect your decision to
19    write the summary judgment motion?
20         A    No.
21         Q    Your professional reputation has
22    not been compromised by the fact that West Law
23    and Lexis subscribers have been able to access
24    some of your court filings through those
25    services, has it?
```

Page 137

1                        E. White

2            A    I don't believe so.

3            Q    And your ability to represent

4     clients effectively has not been comprised by

5     the availability of some of your past court

6     filings on West Law or Lexis, has it?

7            A    My ability to represent them

8     effectively has not been compromised, but as I

9     explained, I think it affects my business.

10           Q    Because other lawyers are able to

11    compete for business with you by -- through

12    access to your briefs?

13           A    Well, as we've discussed, but yes,

14    essentially.

15           Q    The brief filed on your behalf in

16    opposition to West's and Lexis's partial motions

17    to dismiss cited briefs written by other

18    lawyers, correct?

19           A    I believe that's correct.

20           Q    I don't want to make this a memory

21    test.  Let me hand you a copy of plaintiff's

22    memorandum of law in opposition to defendants'

23    motions to dismiss filed on your behalf in this

24    case.

25                     If I could point your attention to

1                        E. White

2           Q    Do you recall approximately when

3    you registered to file with the Western -- to be

4    authorized to file electronically with the

5    Western District of Oklahoma?

6           A    It was before it became mandatory,

7    but I don't recall what year that was.  There

8    was a voluntary period where you could either

9    file in paper file or file electronically, and

10   then there was a point where it became mandatory

11   and I had registered prior to that mandatory

12   point.

13          Q    Are you registered with any state

14   courts to file electronically?

15          A    No.

16               MR. WHITNEY:  I'm going to mark two

17               documents here just to speed up the

18               process.  The first document marked as

19               White 11 is documents Bates numbered P25

20               to P29.  And the second marked as White

21               12 is a document Bates numbered P86 to

22               P91.

23                    (E-mail bearing Bates numbers P25

24                    to P29 was marked as White Exhibit

25                    No. 11 for identification, as of

```
1                         E. White

2                    this date.)

3                    (E-mail bearing Bates numbers P86

4                    to P91 was marked as White Exhibit

5                    No. 12 for identification, as of

6                    this date.)

7          Q    Mr. White, have you seen what's

8     been marked as Exhibit 11 before, which is the

9     one that starts with Bates number P25?

10         A    Yes.

11         Q    And what is it?

12         A    This is the -- a copy of the e-mail

13    that's received from the court upon filing of a

14    document and this particular one is document

15    176, a motion in limine.

16         Q    And is this the motion in limine

17    that is at issue in this case that you're

18    accusing Lexis and West and copyright

19    infringement on?

20         A    I believe it's the same one, yes.

21         Q    And Exhibit 12 for Bates number

22    P86, can you tell me what that document is?

23         A    It's the same kind of thing, it's

24    an e-mail notice regarding the motion for

25    summary judgment.
```

1                         E. White

2          Q     And is that the same -- is that the

3     motion for summary judgment that is at issue in

4     this case that you're accusing West and Lexis of

5     copyright infringement on?

6          A     I believe so, there are two but I

7     think this is the correct one.

8          Q     Did you receive these notices after

9     filing the Works at issue in the Beer v. XTO

10    Energy case?

11         A     Yes, I would have received a notice

12    by e-mail.

13         Q     Do you have an understanding of who

14    can get these notices?

15         A     Anyone who's entered an appearance

16    in the case, any counsel or parties or pro se

17    entered an appearance, and I think in this

18    particular instance it indicates on page P87 who

19    got the notice.

20         Q     Do you know if attorneys who are

21    not representing parties in this case can

22    receive these ECF notices?

23         A     I don't receive any in cases where

24    I'm not an attorney but it's possible I suppose.

25         Q     What was your understanding of the

1                          E. White

2      availability of these briefs after they were

3      filed?

4                 MR. BLUE:  Objection, asked and

5            answered.

6                 You can answer it again.

7           A    My -- I knew that they were filed

8      and therefore available on Pacer and also I

9      believe that you could get a -- I say this -- I

10     think you can get a paper copy at the courthouse

11     although I have not done that in a long time.

12          Q    If I can turn you to the -- sort of

13     the top third of these documents, we can look at

14     Exhibit 11 but you can see that the same

15     language exists on Exhibit 12.  It says, the

16     second to last sentence above where it says U.S.

17     District Court near in the middle of the page,

18     "To avoid later charges, download a copy of each

19     document during this first viewing."  If you

20     want to back it up it says -- let me read the

21     whole paragraph to make it clear.

22                 "Judicial conference of the United

23     States policy permits attorneys of record and

24     parties in a case (including pro se

25     litigations) to receive one free electronic

Page 153

1                          E. White

2    copy of all documents filed electronically if

3    receipt is require by law or directed by the

4    filing.  Pacer access fees apply to all other

5    users.  To avoid later charges, download a copy

6    of each document during the first viewing.

7    However, if the reference document is a

8    transcript, the free copy and 30 page limit do

9    not apply."

10              Do you see where it says that?

11        A    Yes.

12        Q    When you -- do you receive these

13   notices when other attorneys file briefs in

14   cases in which you are representing a party?

15        A    Yes.

16        Q    Do you download a copy of that

17   document upon receiving these notices?

18        A    I typically don't, but Jan does on

19   my behalf.

20        Q    What do you or Jan do with the

21   document after it's downloaded?

22        A    Typically it's saved to our

23   computer files.

24        Q    And do you print out that document

25   on occasion, those documents on occasion?

                              E. White

1                                E. White

2     significant limitation.

3          Q     And is it your understanding that

4     copyright prohibits an individual from copying a

5     document without the authority of the copyright

6     owner?

7               MR. BLUE:  Objection, calls for

8          legal conclusion.

9               You can answer.

10         A     As a general rule, absent an

11    argument for fair use, yes.

12         Q     And are you aware that a document

13    available on Pacer can be copied by any member

14    of the general public without permission of the

15    copyright owner?

16              MR. BLUE:  You're talking once

17         again that it -- that's it's possible

18         that it's done or are you saying that

19         it's lawful?

20              MR. WHITNEY:  I'm saying say it's

21         authorized by the person that filed the

22         document.

23         A     So I'm sorry --

24              MR. WHITNEY:  I'm sorry.  On that

25         basis I'll object on vague.  If you can

Page 164

E. White

 1          restate it I would appreciate it.

 2          Q    Okay.  Are you aware that by filing

 3     a document with ECF, you are authorizing any

 4     member of the public to access and copy the

 5     document filed through ECF?

 6          MR. BLUE:  Objection calls, for a

 7               legal conclusion.

 8               You can answer.

 9          A    I'm aware of the idea as expressed

10     in this policy that litigants -- litigants

11     receive a free copy and others can purchase

12     copies as specified here.

13          MR. BLUE:  I just want the record

14               to show that Mr. White is referring to

15               Exhibit No.

16          THE WITNESS:  15.

17          MR. BLUE:  15.

18          Q    Do you have any objection to

19     members of the public accessing your document, a

20     document that you had filed with the court via

21     ECF accessing it via Pacer?

22          A    Not generally.

23          Q    Do you have a specific objection to

24     a member of the public accessing a document you

Page 165

1                          E. White

2    filed via ECF via Pacer?

3          A    I don't have an objection to them

4    accessing it, I have an objection to what

5    happened to information that Lexis and West

6    accessed, but the access initially, no.

7          Q    Do you have any objection to a

8    member of the public making a copy of the brief

9    that you have filed with the court via ECF via

10   Pacer?

11         A    Not in general terms.

12         Q    Do you have any specific objection

13   to a member of the public making a copy of a

14   brief you have filed with the court via ECF via

15   Pacer?

16         A    Well again, I filed suit, so I have

17   an objection here.  But other than this case, I

18   don't know of any specific objectionable

19   instances.

20         Q    So other than West and Lexis, you

21   have no objection to any member of the public

22   copying, making a copy of a brief you have filed

23   via ECF via Pacer?

24         A    Objection to the extent it was

25   asked and answered earlier.

1                    E. White

2              But otherwise, you can answer.

3         A    I don't have a specific objection

4    at this time.  I can see again hypotheticals

5    where I might have an objection, but I don't

6    know of any other than what I'm complaining

7    about here.

8         Q    And you recognize that members of

9    the public may have made copies of briefs that

10   you have filed with the courts via ECF via

11   Pacer?

12        A    It's possible.

13             MR. WHITNEY:  We're going to mark

14             Exhibit 16.

15             (Reed Elsevier Inc.'s (Lexis) First

16             Request for Documents was marked as

17             White Exhibit No. 16 for

18             identification, as of this date.)

19        Q    Just had the court reporter mark

20   Exhibit 16, which Plaintiff's Response to

21   Defendant Reed Elsevier Inc.'s (Lexis) First

22   Request for Documents.  Lexis is in parenthesis.

23             Have you seen this before, Mr.

24   White?

25        A    Yes.

1                         E. White

2      of our initial discussions of his work for the

3      firm.

4           Q     Around what time would that have

5      been?

6           A     I don't really know, I would say

7      2003, in that time frame.  Could have been

8      earlier, 2002.

9           Q     Do you recall a specific

10     conversation in this regard?

11          A     No, it was ten years ago.  But I

12     recall that the subject matter of intellectual

13     property and when intellectual property practice

14     came up and to the extent he Works for the firm,

15     it's the firm's property.

16          Q     Okay.  Request number 25 -- see

17     we're skipping right -- moving right along.

18          A     That's nice.

19          Q     The request seeks all

20     communications between you and LexisNexis

21     regarding the Works -- no, I'm sorry.  All

22     communications between you and LexisNexis.  The

23     response, notwithstanding the general objections

24     as to the complaint work, plaintiffs have no

25     responsive documents.

Page 175

1                           E. White

2                Do you see that?

3          A    Yes.

4          Q    Have there been any communications

5    between you and LexisNexis regarding the Works

6    at issue in this case?

7          A    I don't believe so.  Other than the

8    litigation.

9          Q    Of course.  Have there been any

10   communications between you and West Law

11   regarding the Works at issue in this case?

12         A    Other than the litigation

13   communications, no.

14         Q    Request number 26 seeks all

15   communications with third parties other than

16   counsel of record in this case about LexisNexis.

17   The response, notwithstanding the general

18   objections as to the complaint Works, plaintiffs

19   have no responsive documents.

20               Do you see that?

21         A    Yes.

22         Q    Have there been any communications

23   with third parties other than counsel of record

24   in this case about LexisNexis with regard to the

25   Works at issue in this case?

1                            E. White

2              A    Yes.

3              Q    Have there been any written

4    communications with third parties other than

5    counsel of record in this case about LexisNexis

6    with regard to the Works at issue in this case?

7              A    No.

8              Q    Do you recall any -- have there

9    been any oral communications with third parties

10   other than counsel of record in this case about

11   LexisNexis with regard to the Works issue in

12   this case?

13             A    Yes.  And as it relates to these

14   communications or this question, generally as

15   I've said, I know I've had communication with

16   other colleagues and friends that are counsel

17   about this particular issue.  I don't know the

18   specific communications but there are along the

19   lines of did you know this was happening and

20   that sort of thing.

21             Q    Other than those conversations with

22   colleagues, just letting them know what's

23   happening, have you had any other communications

24   regarding the work -- about LexisNexis with

25   regard to the Works at issue in this case?

Page 177

1                          E. White

2            A     I don't think so.

3            Q     And the same response with regard

4       to West Law?

5            A     Correct.

6            Q     Look at request number 28.  That

7       request seeks all correspondence, including, but

8       not limited to cease and desist letters and take

9       down notices with any person requesting that the

10      copyrighted material be removed from any

11      publicly available sources, whether available

12      for free or for cost regardless of time period.

13      The response, notwithstanding the general

14      objections as to the complaint Works,

15      plaintiff's have no responsive documents.

16                 Do you see that?

17           A     Yes.

18           Q     Other than the complaint in this

19      action, do you have any correspondence with any

20      person requesting that copyrighted material be

21      removed from any publicly available sources?

22           A     As to the Works, no.

23           Q     Do you have any correspondence with

24      any person requesting the copyrighted material

25      be removed from any publicly available sources

1                          E. White

2      not -- not including the Works?

3              A    Well, I've represented clients in

4      that context and asked for their Works to be

5      removed from various sources.

6              Q    Have you ever asked for Works that

7      are -- that Edward L. White, P.C. claims

8      copyright ownership to be removed from any

9      publicly available sources other than the

10     complaint in this action?

11             A    I don't believe so.

12             Q    Did you search for documents

13     responsive to these requests for production?

14             A    Yes.

15             Q    And what did you do in that search?

16             A    Several things.  I directed Jan to

17     get together some things, some obvious

18     categories of materials.  There was some, the

19     registration form.  I asked -- I asked her to

20     look for documents that she might have in her

21     computer or in the paper files that responded

22     and then I did a search on my computer for

23     responsive materials as well.

24             Q    Did you search through e-mail?

25             A    I searched through e-mail, yes.

Page 201

1                          E. White

2          A     Is that the person at OCU who

3     accessed?

4          Q     Maybe.

5                MR. BLUE:  You don't get to ask

6          questions.

7                THE WITNESS:  I get to ask.  I

8          don't usually get the answers.

9          Q     Other than on Lexis or West Law or

10    in a court's electronic document system, are you

11    aware of any documents that you authored and

12    filed with the court are available on line?

13         A     I believe that one or more of the

14    documents filed in the Beer versus XTO case is

15    on file associated with the web site that's

16    maintained for that case.

17         Q     Any other examples?

18         A     It would not -- no, I'm not aware

19    of any specific examples.

20               MR. WHITNEY:  Okay, let's take a

21          break here.  I may be able to wrap it up

22          soon.

23               VIDEOGRAPHER:  The time is 2:49 and

24          we're off the record.

25               (Whereupon, at 2:49 p.m., a recess

1                           E. White

2                   was taken to 2:58 p.m.)

3                   (The deposition resumed with all

4                   parties present.)

5                   VIDEOGRAPHER:  The time is 2:58 and

6             we're back on the record.

7             Q    Mr. White, to the extent that

8       anyone accessed your briefs on Lexis or West

9       Law, you're not aware of the reasons why they

10      did, correct?

11            A    Correct.

12            Q    And you did not create the motion

13      for summary judgment at issue in this case in

14      order to license or sell it to other lawyers,

15      correct?

16            A    Not -- not for that purpose.

17            Q    And you did not create the motion

18      in limine at issue in this case license in order

19      to license or sell it to other lawyers, correct?

20            A    Same answer.

21            Q    Has anyone ever offered to license

22      any of your briefs, pleadings or motions?

23            A    Not directly.

24            Q    Have they offered indirectly?

25            A    Well, to the extent I've been

Page 203

1                          E. White

2      contacted and people have asked me to serve as

3      co-counsel on the case, I think in part that's

4      the work on cases I've done and they know I have

5      knowledge that is embodied in those briefs.

6             Q    But they've offered to retain you

7      as co-counsel?

8             A    Correct.

9             Q    They haven't offered to license a

10     brief that you had previously offered?

11            A    Correct.

12            Q    And have you ever attempted to

13     license any of the Works you've created and

14     filed with courts of record?

15            A    You mean to sell a, "Here's a copy

16     fro $50," that kind of a transaction.

17            Q    Correct.

18            A    No.

19                 MR. MARKS:  Nothing further.

20                 MR. BLUE:  Nothing from the

21            plaintiff.

22                 VIDEOGRAPHER:  The time is 2:59 p.m

23            and we're off the record.

24            (Time noted:  2:59 p.m.)

25            _____

1                    E. White

2            EDWARD L. WHITE

3

4

5    Subscribed and sworn to before me

6    this_____day of _____2012.

7    _____
     NOTARY PUBLIC

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25