# EXHIBIT D

```
IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK


-------------------------------------------------x

EDWARD L. WHITE, P.C.,

     Plaintiff,

vs.                                No. 12-CV-1340 (JSR)


WEST PUBLISHING CORPORATION d/b/a
"WEST" and REED ELSEVIER INC.,
d/b/a LEXIS NEXIS,

     Defendants.

-------------------------------------------------x




   VIDEOTAPE DEPOSITION OF MARTIN S. HIGH, Ph.D.

          Thursday, September 6, 2012

             Oklahoma City, Oklahoma
```

REPORTED BY:

Becky C. Dame

Ref: 8096

1
2
3
4
5
6
7    September 6, 2012
8    9:59 a.m.
9
10
11
12    Deposition of MARTIN S. HIGH, Ph.D., held
13   at the offices of Crowe & Dunlevy, 20 N. Broadway,
14   Oklahoma City, Oklahoma, pursuant to Notice before
15   BECKY DAME, a Shorthand Reporter of the State of
16   Oklahoma.
17
18
19
20
21
22
23
24
25

```
 1     APPEARANCES:

 2

 3          GREGORY A. BLUE, P.C.
            Appearing for Plaintiff and
 4          Witness MARTIN S. HIGH, Ph.D.
            BY:  GREGORY A. BLUE, ESQ.
 5               The Chrysler Building
                 405 Lexington Avenue, Suite 2600
 6               New York, New York 10174
                 646.351.0006
 7               Blue@bluelegal.us

 8

 9          MORRISON & FOERSTER LLP
            Attorneys for Defendant
10          REED ELSEVIER, INC., D/B/A LEXIS NEXIS
            BY:  CINDY P. ABRAMSON, ESQ.
11               CRAIG B. WHITNEY, ESQ.
                 1290 Avenue of the Americas
12               New York, New York 10104-0050
                 212.336.4122
13               Cabramson@mofo.com
                 cwhitney@mofo.com
14

15
            WEIL, GOTSHAL & MANGES, LLP
16          Attorney for Defendant WEST PUBLISHING
            CORPORATION d/b/a "WEST"
17          BY:  JOHN GERBA, ESQ.
                 767 Fifth Avenue
18               New York, New York 10153
                 212.310.8000
19               John.gerba@weil.com

20

21     Also Present:

22          Edward L. White, Esq. - Plaintiff
            C.J. Shelton - Legal Video Specialist,
23

24

25
```

```
 1                         INDEX
 2                                                    Page
 3    Direct Examination by Ms. Abramson               7
 4    Direct Examination by Mr. Gerba                 55
 5                        EXHIBITS
 6    Exhibit            Description
 7    1        OSU Bio of Dr. Martin                  14
      2        Bio page from Mr. White's website      14
 8    3        Plaintiff's Combined Motion for        26
               Summary Judgment for Plaintiffs
 9             Beer and Ramsey and Brief in Support
      4        Plaintiff's Motion in Limine           28
10    5        Copyright web page printout for a      34
               Handbook of Polymer Solution
11             Thermodynamics
      6        Motion in Support of Class Counsels'   37
12             Fee Request and Request for Separate
               Allocation of Fees to White and to
13             Prior Class Representatives
      7        Email from Mr. White to Mr. Martin     66
14             concerning Motion for Summary Judgment
      8        Motion for Summary Judgment in         68
15             the XTO case
      9        Draft of Motion for Summary Judgment   71
16             with MS Word edits
      10       Another version of Motion for Summary  74
17             Judgment
      11       Partial Motion for Summary Judgment    80
18
19
20
21
22
23
24
25
```

1                    STIPULATIONS
2            IT IS STIPULATED AND AGREED by and between
3    the attorneys for the respective parties herein that
4    the filing, sealing, and certification of the within
5    deposition be waived.
6            IT IS FURTHER STIPULATED AND AGREED that
7    all objections, except as to the form of the
8    question, shall be reserved to the time of the
9    trial.
10           IT IS FURTHER STIPULATED AND AGREED that
11   the within deposition may be sworn to and signed
12   before any officer authorized to administer an oath,
13   with the same force and effect as if signed to
14   before the court.
15
16
17
18
19
20
21
22
23
24
25

```
 1                THE VIDEOGRAPHER:  This is Tape No. 1 of
 2   the videotape deposition of Martin High taken in the
 3   matter of Edward L. White, P.C., versus West
 4   Publishing Company, filed in the United States
 5   District Court, Southern District of New York, Case
 6   No. 12-CV-1340 (JSR).
 7                This deposition is being held at 20 North
 8   Broadway, in Oklahoma City, Oklahoma 73102, on
 9   September 6th, 2012, at approximately 9:59 a.m.
10                My name is C.J. Shelton from the firm of
11   Professional Reporters and I am a legal video
12   specialist.  The court reporter is Becky Dame.
13                Will counsel please introduce themselves
14   for the record?
15                MR. BLUE:  Gregory Blue for the plaintiff
16   and the witness.
17                MS. ABRAMSON:  Cindy Abramson from
18   Morrison & Foerster for Lexis Nexis, a division of
19   Reed Elsevier.
20                MR. WHITNEY:  Craig Whitney, Morrison &
21   Foerster for Lexis Nexis, a division of Reed
22   Elsevier.
23                MR. GERBA:  John Gerba from Weil Gotshal
24   for Defendant, West Publishing Corporation.
25                THE VIDEOGRAPHER:  Will the court reporter
```

1  please swear in the witness?
2  WHEREUPON,
3                    MARTIN S. HIGH, Ph.D.,
4  after having been first duly sworn, deposes and
5  says in reply to the questions propounded as
6  follows, to-wit:
7                    DIRECT EXAMINATION
8  BY MS. ABRAMSON:
9       Q    Good morning, Mr. High.
10      A    Good morning.
11      Q    Can you please state your name and address
12  for the record?
13      A    Martin High, 4016 West Deer Crossing
14  Drive, Stillwater, Oklahoma.
15      Q    Have you ever been deposed before?
16      A    Yes.
17      Q    What were the circumstances?
18      A    At least twice.  Both were expert witness
19  cases.  I was an expert witness on a dryer fire in a
20  poultry processing plant, and the other one was a
21  patent dispute.
22      Q    And the first one was not a patent?
23      A    It was not.
24      Q    Was it engineering?  What was the basis of
25  your expertise?

1  fact questions about Mr. High's involvement in these
2  documents or fact questions about his involvement
3  with Ed White, P.C., that's fine, but you're totally
4  just making a legal argument, but I'm sure Judge
5  Rakoff would be fascinated by it, but these are not
6  deposition questions.
7  BY MR. GERBA:
8      Q    You can answer the question.
9      A    You've asked me -- you started out with
10 the presumption this is a hypothetical that you're
11 giving me, and now you're asking me whether I know
12 there's an actual market to your hypothetical, and
13 the answer is yes.
14     Q    And -- okay.  Maybe I can just wrap this
15 up on this point.
16          Dr. High, are you being compensated in any
17 way for your time here today?
18     A    No.
19     Q    Now, you talked a little bit about --
20 earlier about your firm, Martin S. High, P.C.  Does
21 that firm have any employees?
22     A    Myself.
23     Q    Other than yourself?
24     A    No.
25     Q    And you also testified earlier that you do

Case 1:12-cv-01340-JSR   Document 49-4   Filed 10/05/12   Page 10 of 16

Page 63

 1    some work for Ed L. White, P.C.; correct?
 2         A    Correct.
 3         Q    Roughly how much of your professional time
 4    is spent on work for White, P.C.?
 5         A    During what time frame?
 6         Q    Let's -- since 2009.
 7         A    Okay.  During calendar year 2009, the
 8    amount of work that I spent was considerable because
 9    of the Beer versus XTO case, there was a lot going
10    on.  I would say up to -- in any given week, the
11    maximum of around maybe even 30 hours a week, and
12    then some weeks down to zero, depending on -- excuse
13    me -- depending on what was going on with the case.
14    But in 2009, in particular, there was a lot going on
15    with the case.
16         Q    And since 2009?
17         A    2010, much less.  And when the class was
18    decertified, obviously, our involvement dropped off
19    precipitously.  2011, 2012, per week, close to zero.
20         Q    In your work for White, P.C., do you have
21    occasion to speak with White, P.C.'s clients?
22         A    Yes.
23         Q    And during those conversations, have you
24    ever discussed who would own the IP rights for
25    documents filed on behalf of those clients?

TransPerfect Legal Solutions
212-400-8845 - depo@transperfect.com

1        A     No.
2        Q     Do you know if White, P.C., has any
3    agreements with its clients about who would own the
4    intellectual property rights for documents filed on
5    behalf of those clients?
6        A     I am not aware of any.
7        Q     Dr. High, the possibility that Westlaw or
8    Lexis Nexis might make a legal document you drafted
9    available on one of their services, that possibility
10   wouldn't stop you from creating legal documents,
11   would it?
12       A     No.
13       Q     And even if you knew that Westlaw or Lexis
14   Nexis was going to put a legal document you drafted
15   on their service, you would still create that
16   document if you thought it benefit your client's
17   case; right?
18       A     I would.
19       Q     I'd like us to take a look back at what
20   has been marked as High Exhibit 3.
21       A     Okay.
22       Q     And I apologize if we go over some stuff
23   you've already answered, but do you believe you have
24   any copyright interest in this document?
25       A     No.

Page 65

1  Q   Other than either filing with the court or
2  sending copies to a client, the client of White,
3  P.C., have you distributed this document to anybody?
4  A   Well, of course, it would have gone to
5  opposing counsel.
6  Q   Other than opposing counsel?
7  A   No.
8  Q   And are you aware of -- other than
9  opposing counsel, filing with the court, sending it
10 to the client, are you aware of White, P.C.,
11 distributing this document to anybody?
12 A   I am not.
13 Q   Has anyone ever asked you for a copy of
14 this work?
15 A   Not that I can recall, no.
16 Q   Has anyone ever asked you for permission
17 to copy this work?
18 A   Not that I can recall, no.
19 Q   Has anyone ever asked you for a license
20 for the rights in this work?
21 A   No.
22 Q   I believe earlier you testified that you
23 thought -- your memory was that this document was
24 drafted, at least in the first instance, by
25 Mr. White and you really added only editorial

Page 66

```
 1   comments to it?
 2        A    Correct.
 3        Q    What is your understanding -- when you say
 4   "editorial," what do you mean by that?
 5        A    Oh, you know, word choice, some
 6   grammatical questions.  I might have added or
 7   amplified some points that he wrote.  I might have
 8   added some citation -- excuse me.  I might have
 9   added some citations where I thought they were
10   necessary, you know, basically -- basic legal
11   drafting suggestions to add.
12             (Exhibit 7 marked for identification)
13   BY MR. GERBA:
14        Q    I'd like to mark as High Exhibit 7 a
15   document Bates numbered P00339.
16             Do you recognize this document?
17        A    Yes.
18        Q    And what is it?
19        A    It's an e-mail from Ed to me concerning a
20   Motion for Summary Judgment.
21        Q    Do you believe that this Motion for
22   Summary Judgment is referring to Exhibit 3?
23        A    I don't know for sure.  I suspect it's in
24   the correct time frame of when the Motion for
25   Summary Judgment was documented.  There wasn't any
```

```
 1   Ed at the time.
 2        Q    And so, if you know, your understanding
 3   is, he was an employee of Edward L. White, P.C.?
 4        A    I don't know whether he was an employee.
 5   I don't know what their formal relationship was.
 6        Q    And on the front page, it says, "Submitted
 7   by," and then it has "Edward L. White, Diane
 8   Goldschmidt, and William L. Oldfield" listed, and
 9   then below that it says, "and Foshee and Yaffe,
10   P.C."
11        A    Correct.
12        Q    Are you familiar with that firm?
13        A    I've met them, so my extent of knowledge
14   of them is to the point where we've met at some
15   gatherings.
16        Q    Do you know if there were any agreements
17   between Edward L. White and Diane Goldschmidt about
18   who would own the copyright in this brief?
19        A    I do not know if there were any
20   agreements.
21        Q    Do you know if there were any agreements
22   between Edward L. White and Foshee and Yaffe, P.C.,
23   who would own the copyrights to this document?
24        A    I do not.
25        Q    Do you know if Mr. White asked for
```

Page 85

1   Ms. Goldschmidt's permission to provide you a copy
2   of this brief?
3       A    I do not know.
4       Q    And do you know if Mr. White asked for
5   Foshee and Yaffe, P.C.'s permission to provide you a
6   copy of this brief?
7       A    I do not.
8            THE WITNESS:  While you get yourself
9   organized, I'm just going to grab a little more
10  water.
11           MR. GERBA:  Sure.
12  BY MR. GERBA:
13      Q    If we could go back to Exhibit 4, and,
14  again, this is the Motion in Limine filed on behalf
15  of the plaintiffs in the Beer v XTO litigation by
16  Edward L. White, P.C.; correct?
17      A    Correct.
18      Q    Other than this document being filed with
19  the court, provided to clients, and served on the
20  other side, are you aware of any other distribution
21  of this document?
22      A    I am not.
23      Q    Did you distribute it to anyone?
24      A    I don't believe so, no.
25      Q    Has anyone ever asked you for a copy of

```
 1    this document?
 2        A    Not that I can recall, no.
 3        Q    And has anybody ever asked you for
 4    permission to copy this document?
 5        A    No.
 6        Q    Has anybody ever asked you for a license
 7    for the rights in this document?
 8        A    No.
 9             MR. GERBA:  Can we go off the record for
10    five minutes?
11             THE VIDEOGRAPHER:  We are off the record
12    at 12:02.
13             (Off the record)
14             THE VIDEOGRAPHER:  We are back on the
15    record at 12:06.
16    BY MR. GERBA:
17        Q    Dr. High, I believe earlier you testified
18    that it was your presumption that, using your word,
19    that White, P.C., would own all the copyright and
20    works you did for White, P.C.; is that correct?
21        A    That's correct.
22        Q    Was that presumption ever discussed with
23    Mr. White?
24             MR. BLUE:  Objection.  Asked and answered.
25             You can answer.
```