UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EDWARD L. WHITE, P.C.<br><br>Plaintiff,<br><br>- against -<br><br>WEST PUBLISHING CORPORATION d/b/a "West"; and REED ELSEVIER INC., d/b/a LexisNexis,<br><br>Defendants. | 12-CV-1340 (JSR)<br>ECF CASE |

## PLAINTIFF'S MEMORANDUM OF LAW
## IN SUPPORT OF MOTION
## FOR SUMMARY JUDGMENT

Gregory A. Blue
GREGORY A. BLUE, P.C.
405 Lexington Avenue, Suite 2600
New York, New York 10174
Telephone: (646) 351-0006
Facsimile: (212) 208-6874
Email: blue@bluelegal.us

Raymond A. Bragar
BRAGAR EAGEL & SQUIRE, P.C.
885 Third Ave., Suite 3040
New York, New York 10022
Telephone: (212) 308-5858
Facsimile: (212) 208-2519
Email: bragar@bespc.com

*Attorneys for Plaintiff*

## **Table of Contents**

Table of Authorities ...................................................................... iv

Preliminary Statement.................................................................. 1

Undisputed Facts.......................................................................... 2

Legal Argument ........................................................................... 3

I.      STANDARD ON A MOTION FOR SUMMARY JUDGMENT. ............................ 3

II.     THERE IS NO GENUINE DISPUTE AS TO ANY MATERIAL FACT
        CONCERNING PLAINTIFF'S PRIMA FACIE CASE FOR COPYRIGHT
        INFRINGEMENT.................................................................... 4

A.      Plaintiff owns the copyright in the Works ........................................... 5

B.      Defendants violated Plaintiff's exclusive rights under the Copyright
        Act.   5

        1.      Defendants made unauthorized copies of the Works................ 6

        2.      Defendants distributed the Works without authorization. ......... 6

        3.      Defendants displayed the Works without authorization. ........... 7

III.    THE DEFENDANTS' AFFIRMATIVE DEFENSES ARE WITHOUT MERIT. ....... 7

A.      The "fair use" defense does not apply................................................. 7

        1.      The purpose and character of the Defendants' use of the
                works weighs heavily against a finding of "fair use." .............. 9

                a.      The Defendants' use is commercial in nature.................. 9

                b.      The Defendants' copying was not transformative. ......... 10

        2.      The nature of the registered works weighs heavily against
                a finding of fair use. ............................................... 13

                a.      The Works are unpublished ............................ 14

                b.      The fact that the works are unpublished weighs
                        against a finding of fair use. ......................... 15

                c.      The filing of the Works with the Clerk of the Court
                        does not does not strip the copyright owner of its
                        rights. ......................................... 16

3.    The amount and substantiality of the portion used in relation to the copyrighted use as a whole weighs heavily against a finding of fair use. ..................................................... 18

4.    The effect of the use upon the potential market for or value of the copyrighted work does not favor a finding of fair use. .......................................................... 18

B.   Defendants did not have an express or implied license to copy, distribute, and display the Works. ..................................................... 20

C.   Plaintiff's claims are not barred by the statute of limitations. ........... 21

D.   Defendants' remaining affirmative defenses are without merit. ........ 22

Conclusion .................................................................................................. 22

## **Table of Authorities**

*CASES*

*American Geophysical Union v. Texaco Inc.*,
    60 F.3d 913 (2d Cir. 1994) ................................................................ 11, 12

*Authors Guild v. Google Inc.*, 770 F. Supp. 2d 666 (S.D.N.Y. 2011) .......... 16

*Basic Books, Inc. v. Kinko's Graphics Corp.*,
    758 F. Supp. 1522 (S.D.N.Y. 1991) .................................................... 10, 18

*Campbell v. Acuff-Rose Music*, 510 U.S. 569 (1994) ............................... 8, 10

*Castle Rock Entm't, Inc. v. Carol Publ'g Group, Inc.*,
    150 F.3d 132 (2d Cir. 1998) .............................................................. 4, 8, 9

*Design Options, Inc. v. BellePointe, Inc.*,
    940 F. Supp. 86 (S.D.N.Y. 1996) ............................................................ 21

*Eyal R.D. Corp. v. Jewelex New York, Ltd.*,
    576 F.Supp.2d 626 (S.D.N.Y. 2008) ....................................................... 22

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991) ................... 4

*Fonar Corp. v. Domenick*, 105 F.3d 99 (2d Cir. 1997) ................................. 4

*Fox Film Corp. v. Doyal*, 286 U.S. 123  (1932) ......................................... 16

*Hamil Am., Inc. v. GFI, Inc.*, 193 F.3d 92 (2d Cir. 1999) ............................. 5

*Harper & Row, Publrs. v. Nation Enters.*, 471 U.S. 539 (1985).......... 8, 9, 15

*Infinity Broad. Corp. v. Kirkwood*, 150 F.3d 104 (2d Cir. 1998).......... 10, 13

*Int'l Swaps & Derivatives Ass'n v. Socratek*,
    712 F. Supp. 2d 96 (S.D.N.Y. 2010) ........................................................ 4

*Intown Enterprises, Inc. v. Barnes*,
    721 F. Supp. 1263 (N.D. Ga. 1989) ........................................................ 15

*Kunycia v. Melville Realty Co.*, 755 F. Supp. 566 (S.D.N.Y. 1990) ............ 14

*Matthew Bender & Co. v. W. Publ. Co.*, 158 F.3d 693 (2d Cir. 1998) .......... 6

*McIntosh v. N. Cal. Universal Enters. Co.*,
    670 F. Supp. 2d 1069 (E.D. Cal. 2009)................................................... 17

*Miner v. Clinton Cnty., New York*, 541 F.3d 464 (2d Cir. 2008) ................... 3

*N.Y. Times Co. v. Tasini*, 533 U.S. 483 (2001).................................................. 7

*Religious Tech. Ctr. v. Lerma*, 908 F. Supp. 1362 (E.D. Va. 1995) ............ 17

*Ruiz v. County of Rockland*, 609 F.3d 486 (2d Cir. 2010) ............................. 3

*SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133 (2d Cir. 2009)........... 3

*SHL Imaging, Inc. v. Artisan House, Inc.*,
   117 F. Supp. 2d 301 (S.D.N.Y. 2000)....................................................... 21

*Sledge v. Kooi*, 564 F.3d 105 (2d Cir. 2009) ................................................... 4

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
   464 U.S. 417 (1984) ...................................................................................... 9

*Tufenkian Import/Export Ventures*, 338 F.3d 127 (2d Cir. 2003) ................. 4

*Umg Recordings v. Mp3.com, Inc.*,
   92 F. Supp. 2d 349 (S.D.N.Y. 2000)......................................................... 13

*Warner Bros. Entm't Inc. v. RDR Books*,
   575 F. Supp. 2d 513 (S.D.N.Y. 2008)........................................................ 10

*Wright v. Warner Books, Inc.*, 953 F.2d 731 (2d Cir. 1991) ......................... 8

### STATUTES

17 U.S.C. § 101............................................................................................ 7, 14

17 U.S.C. § 106.............................................................................................. 6, 7

17 U.S.C. § 107......................................................................................... 7, 8, 9, 18

17 U.S.C. § 410(c) ............................................................................................ 5

17 U.S.C. § 507.............................................................................................. 22

### OTHER AUTHORITIES

4-13 Melville B. Nimmer and David Nimmer, NIMMER ON COPYRIGHT
   § 13.05 (Matthew Bender, Rev. Ed) ........................................... 17, 19, 20

## **Preliminary Statement**

Plaintiff respectfully moves this Court for summary judgment on its claims for copyright infringement against West Publishing Corporation ("West"), and Reed Elsevier Inc. ("Lexis").

The Defendants rummage through court dockets and steal intellectual property. It is as simple as that. Under the plain language of the Copyright Act, authors – including attorneys and law firms – own the copyright to their works, and enjoy copyright protection from the moment those works are created. Nothing in the Copyright Act, or case law, supports the Defendants' position that the filing of those works with the clerk of court strips the author of his rights under the Copyright Act, and permits any diligent pirate to copy and sell those works for profit, without the permission of the author, and without compensating him. In short, a court's docket is not a lawless copyright-free zone. All the usual rules apply, and the Defendants have broken those rules.

It is true – as the Defendants will no doubt argue – that anyone can go to court, or access the court's files online, and read the legal briefs and pleadings that are filed there. But it is also true that members of the public can go to a public library and read a copy of the latest John Grisham novel. The fact that the novel is placed in a public building, in the hands of public employees, and the author expects that it will be read there, does not mean that the reader is authorized to create innumerable copies and make a business of selling them. What the Defendants did here is scarcely different.

This is a straightforward case. While the parties may disagree over the facts at the margins, there are no essential facts in dispute. So, summary

1

judgment on the issue of the Defendant's infringement of Plaintiff's registered Works (as defined in the Amended Complaint) is appropriate because there is no genuine dispute as to any material fact concerning: (i) Plaintiff's authorship of the Works; (ii) Plaintiff's ownership of the copyright in the Works; and (iii) Defendants' unauthorized copying, distribution, and display of the Works for their own commercial gain.

The Defendants' affirmative defenses, including the "fair use" defense, are without merit and should be dismissed as a matter of law. There is no sense in which the taking of an entire copyrighted work, without the author's permission, and selling an essentially unaltered copy for profit is "fair use."

As explained below, the Court therefore should grant summary judgment against the Defendants.

### Undisputed Facts

Plaintiff is a professional corporation engaged in the practice of law. (Plaintiff's Statement of Undisputed Facts Pursuant to Local Rule 56.1 ("Undisp. Facts") at ¶ 1)  Plaintiff authored the two Works at issue in this litigation, as evidenced by the copyright registration certificates identifying Plaintiff as the Author and Copyright Claimant.  (*Id.* at ¶ 2.)   The copyright registration certificates identify Plaintiff as the Author of the Works (*id*. at ¶ 3), and as the Copyright Claimant.  (*Id.* at ¶ 4)

Defendants obtained PDF files of the Works from the PACER system, created electronic text-searchable versions of the Works, and made those electronic text-searchable Works available to their subscribers and other fee-

paying users, along with links to PDF versions of the Works. (*Id.* at ¶¶ 15-24)

Defendants never sought from the Plaintiff, and the Plaintiff never granted to the Defendants, any express permission to copy, distribute, or display the Works, or to make any use of them whatsoever. (*Id.* at ¶¶ 5-14.)

Prior to the filing of the Complaint, certain of the Defendants' subscribers and other fee-paying users accessed copies of the Works as they existed in the Defendants' databases. (*Id.* at ¶ 25.)

## Legal Argument

## I.      Standard on a motion for summary judgment.

"Summary judgment is appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Ruiz v. County of Rockland*, 609 F.3d 486, 491 (2d Cir. 2010) (quotation omitted). An issue of fact is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009). A "material" fact is one that might "affect the outcome of the suit under the governing law." *Id.*

While the moving party bears "the burden of demonstrating that no material fact exists." *Miner v. Clinton Cnty.*, *New York*, 541 F.3d 464, 471 (2d Cir. 2008) (citing *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007)), and the Court must construe "the evidence in the light most favorable to the non-moving party and draw[ ] all reasonable inferences in that party's favor," *Sledge v. Kooi*, 564 F.3d 105, 108 (2d Cir.

2009), the non-moving party may not rely on "conclusory allegations or unsubstantiated speculation." *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998).

## II.   There is no genuine dispute as to any material fact concerning Plaintiff's prima facie case for copyright infringement.

"There are only two elements of an infringement claim: ownership of a valid copyright and the copying of constituent elements of the work that are original." *Fonar Corp. v. Domenick*, 105 F.3d 99, 103 (2d Cir. 1997). *See also*, *e.g.*, *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991) ("To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."); *Tufenkian Import/Export Ventures*, 338 F.3d 127, 131 (2d Cir. 2003) ("Copyright infringement is established when the owner of a valid copyright demonstrates unauthorized copying.") (quoting *Castle Rock Entm't, Inc. v. Carol Publ'g Group, Inc.*, 150 F.3d 132, 137-38 (2d Cir. 1998)); *Int'l Swaps & Derivatives Ass'n v. Socratek*, 712 F. Supp. 2d 96, 102 (S.D.N.Y. 2010) ("To make out a prima facie case of copyright infringement, a party must show (1) ownership of a valid copyright in the item and (2) unauthorized copying.").

There is no genuine dispute that Plaintiff owns the copyrights in the Works, and that Defendants copied them for commercial purposes. Summary judgment therefore is appropriate.

## A.    Plaintiff owns the copyright in the Works

Plaintiff holds registration certificates for each of the Works. (Undisp. Facts ¶ 2) The registration certificates state that Plaintiff is the Author and the Copyright Claimant.  *Id.*

"A certificate of registration from the United States Register of Copyrights constitutes prima facie evidence of the valid ownership of a copyright, although that presumption of ownership may be rebutted."  *Hamil Am., Inc. v. GFI, Inc*., 193 F.3d 92, 98 (2d Cir. 1999).  *See also* 17 U.S.C. § 410(c).  "The party challenging the validity of the copyright has the burden to prove the contrary."  *Hamil Am*., *Inc.*, at 98.

Defendants cannot carry their burden of showing that Plaintiff does not own the copyrights in the Works because there is no genuine dispute that the Works were authored by the Plaintiff.  The Court, therefore, should find as a matter of law that Plaintiff is the copyright owner of the Works, and should dismiss, as a matter of law, Lexis's Fifth Affirmative Defense (alleging that Plaintiff is not the legal or beneficial owner of the copyrights in the Works) and West's Second Affirmative Defense (alleging that Plaintiff has failed to demonstrate that it is the owner of the copyrights alleged to have been infringed).

## B.    Defendants violated Plaintiff's exclusive rights under the Copyright Act.

There also is no dispute that Defendants made copies of the Works, distributed the Works, and displayed the Works without Plaintiff's authorization. (Undisp. Facts ¶¶ at ¶¶ 5-14, 17-25)

### 1.     Defendants made unauthorized copies of the Works.

Under § 106(1) of the Copyright Act, Plaintiff has the exclusive right "to reproduce the copyrighted work in copies."  Section 101 of the Copyright Act defines "copies" as "material objects, other than phonorecords, in which a work is fixed by any method now known or later developed, and from which the work can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device."  The statutory definition of "copies" is expansive, and includes the types of copies made by the Defendants in the process of placing the Works in their databases.  As the Second Circuit explained, the statutory definition of copies "was intended to expand the 'fixation' requirement to include material objects that embody works capable of being perceived with the aid of a machine, thereby ensuring that reproductions of copyrighted works contained on media such as floppy disks, hard drives, and magnetic tapes would meet the Copyright Act's 'fixation" requirement.'"  *Matthew Bender & Co. v. W. Publ. Co.*, 158 F.3d 693, 703 (2d Cir. 1998).

Both Defendants copied the Works by: (i) accessing the US Court's PACER to obtain the Works; (ii) converting the Works into a text-searchable version; and (iii) including electronic versions of the Works in their databases, which were available to their subscribers.

### 2.     Defendants distributed the Works without authorization.

Under § 106(7) of the Copyright Act, Plaintiff has the exclusive right "to distribute copies…of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending."  Making electronic versions of the Works available to paying subscribers constitutes distribution

under § 106(7).  *See*, *e.g.*, *N.Y. Times Co. v. Tasini*, 533 U.S. 483, 498 (2001) (finding that "LEXIS/NEXIS, by selling copies of the Articles through the NEXIS Database, 'distribute[s] copies' of the Articles 'to the public by sale,' [under] § 106(3)'").

Both Defendants admitted that subscribers actually accessed the Works in their databases. (Undisp. Facts ¶ 25)  The Defendants, therefore, violated Plaintiff's exclusive right to distribute copies of the Works.

### 3.  Defendants displayed the Works without authorization.

Under § 106(5) of the Copyright Act, Plaintiff has the exclusive right "to display the copyrighted work publicly."  "Display" "means to show a copy of it, either directly or by means of a film, slide, television image, or any other device or process."  17 U.S.C. § 101.

Defendants displayed copies of the Works to users (Undisp. Facts ¶ 25), and in so doing violated Plaintiff's exclusive rights under section 106(5).

The undisputed facts therefore show that Defendants violated Plaintiff's exclusive rights under 17 U.S.C. § 106(7).  For this reason, too, Plaintiff has established a prima facie case for copyright infringement.

## III.  The Defendants' affirmative defenses are without merit.

### A.  The "fair use" defense does not apply.

The Defendants have asserted that their copying, distribution, and display of the Works are "fair use" under § 107 of the Copyright Act. [Lexis's Third Affirmative Defense; West's Fourth Affirmative Defense]

The Defendants have the burden of demonstrating fair use. *Campbell v. Acuff-Rose Music*, 510 U.S. 569, 590 (1994).

While "[f]air use is a mixed question of law and fact," *Harper & Row, Publrs. v. Nation Enters.*, 471 U.S. 539, 560 (1985), the Court may grant summary judgment where, as here, there are no material facts in dispute concerning the applicability of the defense. *See Castle Rock Entm't*, 150 F.3d at 137 ("this court has on a number of occasions 'resolved fair use determinations at the summary judgment stage' where, as here, there are no genuine issues of material fact") (quoting *Wright v. Warner Books, Inc.*, 953 F.2d 731, 735 (2d Cir. 1991)).

Under § 107 of the Copyright Act, there are at four factors to consider in determining whether a particular instance of copying is "fair use":

> (1)   the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
> (2)   the nature of the copyrighted work;
> (3)   the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
> (4)   the effect of the use upon the potential market for or value of the copyrighted work.

Summary judgment is appropriate in this case because there are no material facts in dispute concerning the "fair use" defense.   Based on those undisputed facts, the four factors weigh heavily in favor of a finding that Defendants' copying was not fair use.   The Court, therefore, should find as a matter of law that the fair use defense does not apply.

### 1.    The purpose and character of the Defendants' use of the works weighs heavily against a finding of "fair use."

Courts considering how to weigh the first factor in the "fair use" analysis – the purpose and character of the defendant's use – consider: (a) "whether such use is of a commercial nature or is for nonprofit educational purposes," 17 U.S.C. § 107(1); and (b) "'whether the allegedly infringing work merely supersedes' the original work 'or instead adds something new, with a further purpose or different character, altering the first with new . . . meaning [] or message,' in other words 'whether and to what extent the new work is 'transformative.'"  *Castle Rock Entm't*, 150 F.3d at 141 (alterations in original).

### a.    The Defendants' use is commercial in nature.

"[E]very commercial use of copyrighted material is presumptively an unfair exploitation of the monopoly privilege that belongs to the owner of the copyright." *Sony Corp. of Am. v. Universal City Studios, Inc*., 464 U.S. 417, 451 (1984).  While commerciality, by itself, does not inextricably lead to the conclusion that the Defendants' copying is unfair, *Campbell*, 510 U.S. at 585, "[t]he fact that a publication was commercial as opposed to nonprofit is a separate factor that tends to weigh against a finding of fair use." *Harper & Row, Publrs..*, 471 U.S. at 562.

To determine whether the publication is commercial in nature, the focus is on whether the *infringer* derives a commercial benefit from the copying, not on whether those *receiving* the copies do.  So, for example, a copy shop that makes photocopies of copyrighted course materials for use in a classroom has a "commercial purpose," even though the ultimate users of

those materials have an educational, not-for-profit motive. *See Basic Books, Inc. v. Kinko's Graphics Corp*., 758 F. Supp. 1522, 1531 (S.D.N.Y. 1991) ("The use of the Kinko's packets, in the hands of the students, was no doubt educational. However, the use in the hands of Kinko's employees is commercial.")

The same is true here. It is undisputed that Defendants are engaged in the sale of legal research materials, and that they charge subscribers for access to databases containing legal briefs and pleadings, including the databases that included the Works. [West Answer to Amended Complaint ("West Ans.") at ¶¶ 10, 16; Lexis Answer to Amended Complaint ("Lexis Ans.") at ¶¶ 10, 13]   Whatever legitimate purposes West's and Lexis's *subscribers* have for the briefs and pleadings, the Defendants' copying and sale of the Works is undoubtedly commercial in nature, and this fact weighs against a finding of fair use.

### b.    The Defendants' copying was not transformative.

Even more importantly, though, the Defendants simply made verbatim copies of the Works. "Most critical to the inquiry under the first fair-use factor is 'whether and to what extent the new work is ''transformative.'''" *Warner Bros. Entm't Inc. v. RDR Books,* 575 F. Supp. 2d 513, 540 (S.D.N.Y. 2008) (quoting *Campbell*, 510 U.S. at 579). Here, the Defendants' copying of the Works was in no way transformative. "There is neither new expression, new meaning nor new message. In short, there is no transformation." *Infinity Broad. Corp. v. Kirkwood*, 150 F.3d 104, 108 (2d Cir. 1998) (quotation and citation omitted).

*American Geophysical Union v. Texaco Inc.*, 60 F.3d 913, 923 (2d Cir. 1994), is particularly instructive on the issue of "transformative" use because that case, like this one, involved the simple copying of an entire copyrighted work without any transformation.  In that case, Texaco admittedly made photocopies of articles in scientific journals for use by its in-house scientists.  Texaco contended (among other things), that its copying was fair use, arguing that the "transformative" issue was only relevant to the extent that the copy actually competed with the original, and that its copies were, in all events, "transformative."  As the Second Circuit explained Texaco's position:

> Texaco asserts that the "transformative use" concept is valuable only to the extent that it focuses attention upon whether a second work unfairly competes with the original. Texaco states that in this case, where the photocopies it made were not sold or distributed in competition with the original, the nontransformative nature of its copying should not prevent a finding of fair use. Texaco also suggests that its use should be considered transformative: photocopying the article separated it from a bulky journal, made it more amenable to markings, and provided a document that could be readily replaced if damaged in a laboratory, all of which "transformed" the original article into a form that better served [the scientist's] research needs.

60 F.3d at 920.

The Second Circuit, however, rejected Texaco's analysis.  Instead, the Court found that "[t]he District Court properly emphasized that Texaco's

11

photocopying was not 'transformative,'" *id.* at 922,  because Texaco's
copying added nothing of value:

> To the extent that the secondary use involves
> merely an untransformed duplication, the value
> generated by the secondary use is little or nothing
> more than the value that inheres in the original.
> Rather than making some contribution of new
> intellectual value and thereby fostering the
> advancement of the arts and sciences, an
> untransformed copy is likely to be used simply for
> the same intrinsic purpose as the original, thereby
> providing limited justification for a finding of fair
> use.

*Id.* at 923.

Converting copyrighted works into a more convenient, easily
accessible format is not, the Second Circuit explained, "transformative."
Instead, a copy of the original into a more convenient form "merely
transforms *the material object* embodying the intangible article that is the
copyrighted original work." *Id.* (emphasis in original).  That is not
transformation.

Just as was the case in *American Geophysical Union*, West and Lexis
have added nothing of value to the copyrighted expression owned by the
Plaintiff.  At most, the Defendants' copying, like the copying at issue in
*American Geophysical Union*, simply made the Works more convenient to
access and use, and "merely transform[ed] *the material object* embodying
the intangible article that is the copyrighted original work." *Id*.  While the
Defendants will no doubt argue that they performed a valuable service in
making the Works more readily available and searchable, "this is simply

another way of saying that the unauthorized copies are being retransmitted in another medium -- an insufficient basis for any legitimate claim of transformation." *Umg Recordings v. Mp3.com, Inc.*, 92 F. Supp. 2d 349, 351 (S.D.N.Y. 2000).

Moreover, even if the Defendants are arguably performing a useful service for their customers (who may themselves transform the works), it is the Defendants' own conduct that is at issue, and that conduct involves little or no transformation. The "different, and possibly beneficial, purposes of [Defendants'] customers… are outweighed by the total absence of transformativeness." *Infinity Broad. Corp. v. Kirkwood*, 150 F.3d at 109 (finding no fair use with respect to service that enabled subscribers, for a fee, to listen over the telephone to contemporaneous radio broadcasts in remote cities).

When, as here, the transformative purpose is "slight to non-existent," and merely seeks to "repackage" the original, *Castle Rock Entm't*, 150 F.3d at 142, "the first fair use factor weighs against the defendants." *Id.* at 143.

### 2. The nature of the registered works weighs heavily against a finding of fair use.

The second "fair use" factor – the nature of the copyrighted works, also weighs against a finding of fair use. Significantly, the Works are unpublished. The law affords the author of an unpublished work the right to control first publication or – if the author chooses – to decide *not* to publish. This is true even though the documents were filed with the clerk of court, and available for public inspection. For this reason, too, the Court should

grant summary judgment dismissing the Defendants' "fair use" affirmative defenses.

### a.     The Works are unpublished

The Copyright Act defines "publication" as "the distribution of copies…of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending."   17 U.S.C. § 101.  Plaintiff never distributed the Works to the public "by sale or other transfer of ownership, or by rental, lease, or lending."

Filing a copyrighted work with a department or instrumentality of the government, by itself, does not amount to publication within the meaning of the Copyright Act.  Here, there is a direct analogy to architects who are required to submit their architectural plans to government agencies for approval and, in many instances, review by members of the public.  Courts have widely held that the submission of such copyrighted works to a government agency (even if the works are, as a consequence, made available to members of the public) does *not* constitute publication, and does deprive the author of the protections of the Copyright Act.  *See Kunycia v. Melville Realty Co.*, 755 F. Supp. 566, 574 (S.D.N.Y. 1990) ("Distribution of plaintiff's architectural drawings to contractors, landlords *and building authorities* does not constitute a publication…The distribution was restricted to those persons without whose participation the plans could not be given practical effect. Implicit in these business relationships is the understanding that such a distribution does not convey the right further to diffuse, reproduce, distribute or sell the drawings without the architect's permission.") (emphasis added); *Intown Enterprises, Inc. v. Barnes*, 721 F.

Supp. 1263, 1266 (N.D. Ga. 1989) ("The weight of authority holds that neither the filing of architectural plans with permitting authorities nor distributing such plans to subcontractors for bidding purposes constitutes publication under the Copyright Act.")

Just as architectural plans are not "published" when they are filed with the building department, Plaintiff's Works were not "published" when they were filed with the court.

### b. The fact that the works are unpublished weighs against a finding of fair use.

"The right of first publication implicates a threshold decision by the author whether and in what form to release his work." *Harper & Row, Publrs. v. Nation Enters*., 471 U.S. at 553. The Supreme Court, quoting the legislative history on the Copyright Act, explained that the author's decision *not* to publish is to be afforded substantial weight in the fair use analysis:

> The Senate Report confirms that Congress intended the unpublished nature of the work to figure prominently in fair use analysis. In discussing fair use of photocopied materials in the classroom the Committee Report states:
>
> > "A key, though not necessarily determinative, factor in fair use is whether or not the work is available to the potential user. If the work is 'out of print' and unavailable for purchase through normal channels, the user may have more justification for reproducing it. . . . The applicability of the fair use doctrine to unpublished works is narrowly limited since, although the work is unavailable, this is the result of a deliberate choice on the part of

15

> the copyright owner. Under ordinary
> circumstances, the copyright owner's 'right
> of first publication' would outweigh any
> needs of reproduction for classroom
> purposes." [S. Rep. No. 94-473, p. 65
> (1975)] at 64.

471 U.S. at 553.

Plaintiff, as the copyright owner, has the right to control not only how, but also *if* the Works are distributed.  "A copyright owner's right to exclude others from using his property is fundamental and beyond dispute." *Authors Guild v. Google Inc.*, 770 F. Supp. 2d 666, 681 (S.D.N.Y. 2011).  *See Fox Film Corp. v. Doyal*, 286 U.S. 123, 127  (1932) ("The owner of the copyright, if he pleases, may refrain from vending or licensing and content himself with simply exercising the right to exclude others from using his property.").

Here, Defendants arrogated to themselves the opportunity to publish Plaintiff's works, and in so doing violated Plaintiff's exclusive rights.  Thus, the "nature of the works," – *i.e.* the fact that they are unpublished, by the Plaintiff's choice – weighs very strongly against a finding of fair use.

> c.   **The filing of the Works with the Clerk of the Court does not does not strip the copyright owner of its rights.**

As courts have routinely found with architectural drawings, it is wholly illogical to argue that the filing of a copyrighted document with a public agency, or a court, divests the owner of copyright protection.  "Taken to its extreme, [the] notion is that any copyrighted material submitted to a public agency is a general publication to entitle the public agency to unlimited dissemination of the material…Such notion is illogical and legally

unsupported." *McIntosh v. N. Cal. Universal Enters. Co.*, 670 F. Supp. 2d 1069, 1098 (E.D. Cal. 2009) (finding that submission of architectural plans to a public agency did not constitute general publication).

In a case involving copyrighted material filed together with an affidavit, portions of which were later published by the *Washington Post*, one court explained that "the mere existence of a copyrighted work in an open court file does not destroy the owner's property interests in that work. In the same way, the placement of a copyrighted book on a public library shelf does not permit unbridled reproduction by a potential infringer." *Religious Tech. Ctr. v. Lerma*, 908 F. Supp. 1362, 1367 (E.D. Va. 1995). "The rule could scarcely be otherwise. For if it were, the plaintiff's deposit of her infringed work as an exhibit to the infringement action would *ipso facto* forfeit the copyright, as third parties would be free to reproduce it under the guise of reproducing various aspects of 'the judicial proceedings.'" 4-13 Melville B. Nimmer and David Nimmer, NIMMER ON COPYRIGHT § 13.05[2], n. 444.6 (Matthew Bender, Rev. Ed).

The rule should be the same with respect to legal pleadings as it is for exhibits attached to an affidavit filed in court, architectural drawings, and books in a public library.  Submitting a document to a public agency or court does not strip the owner of rights under the Copyright Act.  The fact that the Works were filed with the Clerk of Court does not make them free game for poaching by the Defendants in the service of their own commercial interests.

3.      **The amount and substantiality of the portion used in relation to the copyrighted use as a whole weighs heavily against a finding of fair use.**

The third "fair use" factor requires the Court to consider "the amount and substantiality of the portion used in relation to the copyrighted work as a whole."  17 U.S.C. § 107(3).  "Most contested instances of copyright infringement are those in which the infringer has copied small portions, quotations or excerpts of works and represents them in another form, for example, a biography, criticism, news article or other commentary."  *Basic Books*, 758 F. Supp. at 1530.  This is not one of those cases.

Instead, Defendants copied every sentence, every word, and every punctuation mark of the copyrighted Works.  This was, in essence, nothing more than photocopying someone else's work and selling it for profit, without adding anything new.  "In this case, there was absolutely no literary effort made by [the Defendants] to expand upon or contextualize the materials copied.  The excerpts in suit were merely copied, [put] into a new form, and sold."  *Basic Books*, 758 F. Supp. at 1530-1531 (citations omitted).

The copying of the entirety of the Works weighs very heavily against a finding of fair use.

4.      **The effect of the use upon the potential market for or value of the copyrighted work does not favor a finding of fair use.**

The final factor in the "fair use" analysis is "the effect of the use upon the potential market for or value of the copyrighted work."  17 U.S.C. § 107(4).  Defendants will no doubt argue that there is *no* potential market

for the Works, and that their unauthorized copying, distribution, and display of the Works therefore has no effect on the potential market or value of those works.  That argument fails for a number of reasons.

First, and most obviously, it is apparent from the fact that the Defendants have an active business in the sale of legal briefs and pleadings that there *is* a market for such works.  If briefs and pleadings were of no value whatsoever, Defendants would not be able to attract subscribers to these databases.  While the value of each individual work in the Defendants' briefs and pleadings databases may be a fraction of the whole, even that fraction has value.

Second, "it is a mistake to view this factor, as do some courts, as merely raising the question of the extent of damages to plaintiff caused by the particular activities of the defendant. This factor, rather, poses the issue of whether unrestricted and widespread conduct of the sort engaged in by the defendant (whether in fact engaged in by the defendant or by others) would result in a substantially adverse impact on the potential market for, or value of, the plaintiff's present work."  4-13 Nimmer on Copyright § 13.05.

Thus, while Plaintiff has not actively marketed the Works, or sought compensation for them in the same way that Defendants have, there can be no "market" for attorneys to *sell* their legal briefs and pleadings if the Defendants – both behemoths in the legal research field – can simply *steal* the attorneys' works and include them in their own subscription plans without paying the authors.  Any competing service, or licensing regime, that would pay attorneys a fee for their works cannot compete with the Defendants so long as the Defendants are allowed to acquire copyrighted

19

works for free.  In that way, the Defendants' conduct, in the aggregate, "result[s] in a substantially adverse impact on the potential market for, or value of, the plaintiff's present work." 4-13 Nimmer on Copyright § 13.05.

Moreover, there is value to the Plaintiff in being able to control dissemination and copying of legal briefs and pleadings.  Plaintiff is in competition with other law firms for clients, and wants to market the firm's expertise and experience.  To the extent Defendants make Plaintiff's work product readily available to competing attorneys, those competing attorneys have the ability to obtain Plaintiff's work and offer Plaintiff's work product and expertise to their own clients.

The Defendants, therefore, cannot carry their burden of showing that the fourth factor favors a finding of "fair use."  And, for all these reasons, the Court should grant summary judgment dismissing Defendants' "fair use" affirmative defenses.

**B.      Defendants did not have an express or implied license to copy, distribute, and display the Works.**

Both Defendants assert, as an affirmative defense, that they had a "license" to copy, distribute, and display the works.  [Lexis's Second Affirmative Defense ("implied license); West's Ninth Affirmative Defense ("The relief sought by Plaintiff is barred to the extent any allegedly infringing acts were licensed or otherwise authorized")]  Those affirmative defenses have no basis in the undisputed facts, and must be dismissed.

First, it is undisputed that Plaintiff did not grant the Defendants any express license to exploit the Works.  (Undisp. Facts ¶¶ 5-14)

Second, it is undisputed that the Plaintiff's registration with the CM/ECF system did not expressly require Plaintiff to relinquish rights in any document filed with the court, nor did the registration expressly inform the Plaintiff that the filing of such documents would entitle others to copy, sell, or distribute those documents for a commercial purpose. (Undisp. Facts ¶ 26)

Third, there was no "implied license." "[A]n implied license to use a copyrighted work 'cannot arise out of the unilateral expectations of one party.' There must be objective conduct that would permit a reasonable person to conclude that 'an agreement had been reached.'" *Design Options, Inc. v. BellePointe, Inc.*, 940 F. Supp. 86, 92 (S.D.N.Y. 1996) (quoting *Allen-Myland v. International Bus. Mach. Corp.*, 746 F. Supp. 520, 549 (E.D. Pa. 1990)).  *See also SHL Imaging, Inc. v. Artisan House, Inc.*, 117 F. Supp. 2d 301, 317 (S.D.N.Y. 2000) (finding no implied license when "there is no evidence of a meeting of the minds between plaintiff and defendant").

Here, Defendants never spoke with Plaintiff about his Works (until this lawsuit) (Undisp. Facts ¶¶ 13-14), much less had a "meeting of the minds" that would grant them an implied license.  It simply didn't happen. The Court therefore should dismiss, as a matter of law, Lexis's Second Affirmative Defense and West's Ninth Affirmative Defense.

**C.    Plaintiff's claims are not barred by the statute of limitations.**

Each of the Defendants asserts that the statute of limitations bars Plaintiff's claims.  [Lexis' Sixth Affirmative Defense; West's Eighth Affirmative Defense]

21

The Copyright Act provides that "[n]o civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued." 17 U.S.C. § 507(b). For limitations purposes, "each act of infringement is a distinct harm giving rise to an independent claim for relief, although recovery is allowed only for those acts within three years of suit." *Eyal R.D. Corp. v. Jewelex New York, Ltd.*, 576 F.Supp.2d 626, 644 (S.D.N.Y. 2008) (citation and internal quotation marks omitted).

Both of the Works were created within three years prior to the institution of this lawsuit. (Undisp. Facts ¶¶ 2, 27) Therefore, there is no dispute that Plaintiff's claim for infringement of the Works concerns only infringement that occurred within the limitations period. Defendants' affirmative defenses based on the statute of limitations therefore should be dismissed.

**D.     Defendants' remaining affirmative defenses are without merit.**

There is no evidentiary support for the Defendants' remaining affirmative defenses, and the remaining defenses should be dismissed as a matter of law.

<u>Conclusion</u>

The Court should grant summary judgment in favor of the Plaintiff, and against the Defendants:

(i)     adjudging that Plaintiff is the copyright owner of the Works;

(ii)    adjudging that Defendants infringed the Plaintiff's exclusive rights to the Works;

(iii)   dismissing each of the Defendants' affirmative defenses; and

(iv)    granting such other relief as the Court deems just and proper.


Dated:        New York, New York
              October 5, 2012

                              GREGORY A. BLUE, P.C.

                              By:   /s/ Gregory A. Blue
                                    Gregory A. Blue
                              The Chrysler Building
                              405 Lexington Avenue, Suite 2600
                              New York, NY 10174
                              Telephone: (646) 351-0006
                              Facsimile: (212) 208-6874
                              blue@bluelegal.us

                              Raymond A. Bragar
                              BRAGAR EAGEL & SQUIRE, P.C.
                              885 Third Ave., Suite 3040
                              New York, New York 10022
                              Telephone: (212) 308-5858
                              Facsimile: (212) 208-2519
                              bragar@bespc.com

                              *Attorneys for Plaintiff*