UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| EDWARD L. WHITE, P.C., <br><br> Plaintiff, <br><br> v. <br><br> WEST PUBLISHING CORPORATION d/b/a "West," and REED ELSEVIER INC. d/b/a LexisNexis, <br><br> Defendants. | ECF CASE <br><br><br> Civil Action No. 12-CV-1340 (JSR) |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT REED ELSEVIER INC.'S MOTION FOR SUMMARY JUDGMENT

James E. Hough
Craig B. Whitney
Cindy P. Abramson
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
jhough@mofo.com
cwhitney@mofo.com
cabramson@mofo.com

James F. McCabe (admitted *pro hac vice*)
Paul Goldstein (admitted *pro hac vice*)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105
Telephone: (415) 268-7000
Facsimile: (415) 268-7522
jmccabe@mofo.com
pgoldstein@mofo.com

*Attorneys for Defendant*
*LexisNexis, a div. of REED ELSEVIER INC.*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ....................................................................................... 2

LEGAL STANDARD ............................................................................................. 8

ARGUMENT ....................................................................................................... 9

I.     LEXIS'S USE OF THE BRIEFS IS PERMISSABLE UNDER
THE FAIR USE DOCTRINE. ........................................................................ 9

     A.     Lexis's Use Serves the Purpose of Copyright Law and Fair Use. ......... 9

     B.     Lexis's Use of the Briefs is Fair. ...................................................... 10

          1.     Lexis's use of the Briefs does not supersede the Briefs'
original purpose. ................................................................. 10

               a.     Lexis transformed the Briefs by making enhancements and
incorporating the documents into a searchable database. ............. 11

               b.     Lexis's commercial motivation does not militate against a finding
of fair use. .................................................................. 13

          2.     The nature of the Briefs weighs in favor of fair use. ................ 14

          3.     Lexis took what was reasonably necessary from the Briefs
in order to integrate the Briefs into the searchable
online database. ................................................................. 15

          4.     Lexis's use of the Briefs has no negative effect on any
cognizable market for the Briefs. ........................................ 17

               a.     Lexis's product is not a substitute for the original Briefs and does
not harm the value of, or the market for, the Briefs. .................... 17

               b.     There is no market for sale or licensing of the Briefs. ................ 18

          5.     Lexis's BPM product creates a significant public benefit. ........ 21

          6.     The public's right to access and copy court documents also supports a
finding of fair use. ............................................................ 21

          7.     Lexis satisfies the standards for fair use under the Copyright Act. .......... 23

# TABLE OF CONTENTS
## (Cont.)

**Page**

II.     LEXIS HAD AN IMPLIED LICENSE TO USE PLAINTIFF'S BRIEFS. ..................... 23

CONCLUSION ................................................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Am. Geophysical Union v. Texaco Inc.*,
  60 F.3d 913 (2d Cir. 1994)..........................................................................................18, 19

*Am. Geophysical Union v. Texaco Inc.*,
  802 F. Supp. 1 (S.D.N.Y. 1992), *aff'd*, 60 F.3d 913.........................................................19

*Arica Inst., Inc. v. Palmer*,
  970 F.2d 1067 (2d Cir. 1992).............................................................................................15

*Bill Graham Archives v. Dorling Kindersley Ltd.*,
  448 F.3d 605 (2d Cir. 2006).......................................................................................*passim*

*Blanch v. Koons*,
  467 F.3d 244 (2d Cir. 2006).......................................................................................*passim*

*Campbell v. Acuff-Rose Music, Inc.*,
  510 U.S. 569 (1994)...................................................................................................*passim*

*Carano v. Vina Concha y Toro, S.A.*,
  288 F. Supp. 2d 397 (S.D.N.Y. 2003)....................................................................................9

*Castle Rock Entm't, Inc. v. Carol Publ'g Grp.*,
  150 F.3d 132 (2d Cir. 1998)....................................................................................14, 18, 20

*EMI Latin v. Bautista*,
  No. 03 Civ. 0947, 2003 U.S. Dist. LEXIS 2612 (S.D.N.Y. Feb. 24, 2003) .....................23, 24

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
  499 U.S. 340 (1991)...........................................................................................................9, 15

*Field v. Google Inc.*,
  412 F. Supp. 2d 1106 (D. Nev. 2006).................................................................................24

*Foltz v. State Farm Mut. Auto. Ins. Co.*,
  331 F.3d 1122 (9th Cir. 2003) ............................................................................................22

*Gambale v. Deutsche Bank AG*,
  377 F.3d 133 (2d Cir. 2004)................................................................................................21

# TABLE OF AUTHORITIES
(Cont.)

**Page(s)**

**CASES**

*Golan v. Holder,*
132 S. Ct. 873 (2012) ..................................................................................9

*Harper & Row, Publishers, Inc. v. Nation Enters.,*
471 U.S. 539 (1985) ..................................................................................15

*Hartford Courant Co. v. Pellegrino,*
380 F.3d 83 (2d Cir. 2004) ........................................................................22

*In re Application of Nat'l Broad. Co.,*
635 F.2d 945 (2d Cir. 1980) ......................................................................22

*Keane Dealer Servs. v. Harts,*
968 F. Supp. 944 (S.D.N.Y. 1997) ..........................................................9, 24

*Kelly v. Ariba Soft Corp.,*
336 F.3d 811 (9th Cir. 2003) ...................................................................12, 13

*Lugosch v. Pyramid Co.,*
435 F.3d 110 (2d Cir. 2006) ......................................................................22

*Nixon v. Warner Commc'ns,*
435 U.S. 589 (1978) ..................................................................................22

*NXIVM Corp. v. Ross Inst.,*
364 F.3d 471 (2d Cir. 2004) ......................................................................14

*Perfect 10, Inc. v. Amazon.com, Inc.,*
508 F.3d 1146 (9th Cir. 2007), *cert. denied*, 132 S. Ct. 1713 (2012) ................12, 13

*Sony Corp. of Am. v. Universal City Studios, Inc.,*
464 U.S. 417 (1984) ..........................................................................14, 16, 17

*Stewart v. Abend,*
495 U.S. 207 (1990) ..................................................................................14

*The Swatch Grp. Mgmt. Servs. LTD. v. Bloomberg L.P.,*
No. 11 Civ. 1006, 2012 U.S. Dist. LEXIS 70045 (S.D.N.Y. May 17, 2012) ................ *passim*

*Time, Inc. v. Bernard Geis Assocs.,*
293 F. Supp. 130 (S.D.N.Y. 1968) ............................................................21

ii

## <u>TABLE OF AUTHORITIES</u>
(Cont.)

**Page(s)**

CASES

*Unclaimed Prop. Recovery Serv. v. Kaplan*,
    11-cv-1799, 2012 U.S. Dist. LEXIS 135094 (E.D.N.Y. Sept. 19, 2012) ..............................20

*Vanderhye v. iParadigms*,
    562 F.3d 630 (4th Cir. 2009) ...............................................................................................11

STATUTES

17 U.S.C. § 107.............................................................................................................10, 13, 14

Fed R. Civ. P. 56(a) ...................................................................................................................8

OTHER AUTHORITIES

3 MELVILLE B. NIMMER AND DAVID NIMMER, NIMMER ON COPYRIGHT § 10.03[A]
    (Matthew Bender, Rev. Ed.) ...............................................................................................23

Defendant LexisNexis, a division of Reed Elsevier Inc. ("Lexis"), hereby submits this Memorandum of Law in Support of its Motion for Summary Judgment dismissing all claims asserted by Plaintiff Edward L. White, P.C. ("White P.C."). The facts underlying this motion are fully set forth in Lexis's Rule 56.1 Statement of Undisputed Facts ("St.").

## PRELIMINARY STATEMENT

Plaintiff White P.C. asserts that Lexis infringed its copyrights by copying two legal documents (the "Briefs") that Plaintiff filed in federal district court in Oklahoma. Knowing from the start that these documents would be publicly available for anyone to view and copy, Plaintiff nevertheless claims that Lexis's inclusion of enhanced versions of the Briefs in a database—which serves a purpose entirely different from that of the original documents—constitutes copyright infringement. The doctrines of fair use and implied license defeat such a claim and support entry of summary judgment in Lexis's favor.

The material facts are undisputed. Lexis acquired a copy of the Briefs through the court's Public Access to Court Electronic Records (PACER) system. Lexis then enhanced the Briefs and integrated them into a searchable database product with more than one million other legal documents, with links to and from court opinions, statutes and related case materials, among other documents. These enhancements and integration into a searchable, interconnected database transformed the Briefs into a research tool that in no way superseded the Briefs' original purpose.

Plaintiff admits that the Briefs were created to advocate on behalf of its clients, and that its motivation to create similar advocacy documents is unaffected by Lexis's use of the Briefs. Plaintiff did not create the Briefs for the purpose of licensing or selling them and has never attempted to license or sell them, nor has anyone ever offered to license or buy them. Plaintiff's advocacy service—on behalf of its clients—is entirely different from the research database

service provided by Lexis to its users, a fact that is indisputable even though both services use the Briefs. Lexis's use of the Briefs has not harmed any market for, or the value of, the Briefs, a fact that is supported by Plaintiff's testimony and unrebutted expert testimony. Lexis's integration of the enhanced Briefs to its database in fact provides a public benefit by furthering the public's well-established right to access and copy judicial documents. On these facts, any reasonable fact finder must conclude that Lexis's use of the Briefs is fair under the Copyright Act.

Plaintiff also impliedly licensed Lexis to use the Briefs by filing them with the understanding that any member of the public, including Lexis, would be permitted to copy them. Plaintiff did not attempt to limit or restrict Lexis's copying and use of the Briefs in any way. Even after learning that Lexis included the Briefs in its database offering, Plaintiff did nothing to prevent or object to such use. As a result, any reasonable fact finder must conclude that Plaintiff had impliedly licensed Lexis's use of the Briefs.

Plaintiff has no viable claim against Lexis for copyright infringement because the undisputed facts compel the conclusions that Lexis's use is fair and impliedly licensed. Lexis is entitled to summary judgment as a matter of law.[1]

## STATEMENT OF FACTS

The following material facts are uncontroverted:

### Public Access to Court-Filed Documents

In 1998, the federal judiciary created the Case Management/Electronic Case Files ("CM/ECF") system, which "allows attorneys to file documents directly with [a federal] court

---

[1] Lexis also hereby incorporates by reference the arguments set forth in the Memorandum of Law in Support of Defendant West Publishing Corporation's Motion for Summary Judgment, dated October 5, 2012, to the extent applicable to Lexis.

over the Internet and allows courts to file, store, and manage their case files in an easy-to-access, transparent way."  (St. 12, 13.)  "CM/ECF provides courts the ability to make their documents available to the public over the Internet."  (St. 14.)

Only those who register for a CM/ECF login and password, and agree to have read the most recent version of the Court's ECF Policy Manual, are permitted to file court documents electronically.  (St. 15, 16.)  Once a document has been filed through CM/ECF, that document is publicly accessible via the United States Courts Public Access to Electronic Records (PACER) system.  (St. 17.)  PACER is an "electronic public access service that allows users to obtain case and docket information from federal appellate, district and bankruptcy courts."  (St. 11.)

When a document is filed via CM/ECF, an email containing a link to one free copy of the document and a note advising recipients to make a copy of the document to avoid payment for future copies is sent to CM/ECF users associated with the case file.  (St. 18, 19.)  The general public can also view or download copies of the document via PACER at a rate of $.10 per page (formerly $.08 per page), with the maximum cost per document of $3.00 (formerly $2.40).  (St. 20.)  In lieu of using PACER, individuals can view legal filings at a federal courthouse at no cost and make copies for $.50 per document.  (St. 21.)

**The Lexis BPM Product**

Lexis provides numerous products and services designed for legal practitioners, law students and other business customers, including electronic databases that contain case law, news and business information, public records and other content.  (St. 1.)  Since approximately 2005, Lexis has made available electronic databases that contain selected attorney-authored legal

3

documents that were filed, without seal, in state and federal courts.[2]  (St. 2, 3.)  Lexis makes these materials available through its Briefs, Pleadings and Motions ("BPM") product offering. (St. 2.)  The BPM product is intended to provide attorneys and other Lexis users with research materials in targeted practice areas.  (St. 4.)  A key component of the BPM product is therefore the selectivity and relevance of the legal documents in the database, as well as the ability to search all legal documents in the BPM database.  (St. 4, 35.)  To this end, the BPM database consists of over one million legal documents that have been enhanced to make the database searchable by text and category.  (St. 5, 33.)

Lexis acquires legal documents from various sources.  For legal documents filed in federal district courts—the type of legal documents at issue here—Lexis obtains those documents primarily via the PACER system.  (St. 10.)  Lexis pays the same rate as other private users to obtain documents from PACER.  (St. 26.)  Lexis also has relationships with certain courts that send legal documents directly to Lexis.  (St. 7.)

Lexis's BPM product provides more than just the text of the documents.  Before any legal document is added to the BPM database, Lexis determines whether a particular document pertains to a priority topic area or is from a priority jurisdiction, and is therefore of value to the BPM product.  (St. 27.)  After Lexis decides that a particular legal document should be added to the BPM product, the document, if it was filed in federal district court, is typically downloaded from PACER.  (St. 10, 28.)  The Lexis editor then determines if the document should be split into multiple documents (for instance, if a brief includes an attachment) or if previously split documents should be combined.  (St. 29.)  Lexis also reviews the document for sensitive information, such as social security numbers, and makes any necessary redactions.  (St. 30.)

---

[2] The term "legal documents" is used throughout this brief to refer to attorney-authored legal documents that have been filed with a court.

4

Lexis then enhances the document through a detailed process that includes capturing certain "metadata" about the document, such as the case name, the court, the type of document, any expert witnesses involved and the court opinion with which the legal document is associated. (St. 31.)  Ultimately, the metadata is used to enhance the searchability of the document.  (St. 32.) The legal document is also converted into Lexis's proprietary data file format to become text and segment searchable.  (St. 33.)  Following this conversion, Lexis runs a cite recognition program to identify statutes, codes, regulations and court opinions cited in the legal document and adds hyperlinks to those related materials.  (St. 36.)  Lexis will also identify practice areas relevant to the document.  (St. 37.)  Lexis then links the legal document to and from related case materials, such as expert witness reports and jury instructions, and includes a link to the legal document from the case law opinion(s) to which the document is related.  (St. 38.)  A link to the image of the legal document as it is available in court files, such as on PACER, is also added to the converted document.  (St. 39.)  Finally, Lexis adds a unique Lexis citation to enable users to identify and cite to each document.  (St. 41.)  The document is then incorporated into the BPM product along with over one million other legal documents and organized into relevant menus and files within the BPM product.  (St. 5, 42.)

**The Briefs at Issue**

Plaintiff White P.C. is a law firm located in Oklahoma City, Oklahoma, founded by Edward White in 1997.  (St. 47.)  White estimated that White P.C. has likely filed thousands of legal documents with state and federal courts.  (St. 48.)  In approximately 2003, White began working with Martin High, who is currently of counsel to White P.C.  (St. 49, 50.)

White P.C. claims that Lexis has infringed its copyrights in the Briefs.[3]  Plaintiff alleges that it "is the owner of the [Briefs], which [Lexis has] copied, digitized, transformed, and packaged into databases that are sold for profit."  (Am. Compl. ¶ 23.)  The Briefs were filed in a case captioned *Beer et al. v. XTO Energy, Inc.*, Case No CIV-07-798-L in the Western District of Oklahoma (the "*Beer* Litigation").  (St. 22, 23.)  Plaintiff filed the Summary Judgment Motion via CM/ECF on May 20, 2009 and the Motion In Limine via CM/ECF on March 15, 2010.  (St. 22, 23.)  Upon filing, the Briefs were publicly available to be copied via both PACER and the Western District of Oklahoma Court Clerk's Office.  (St. 24, 25.)  The Briefs contain no stated limitation on copying or any other future use.  (St. 56, 57.)

White and High are both listed on the cover pages and signature blocks of the Briefs, and are the only attorneys listed.  (St. 51.)  Nevertheless, White claims that High is not an author of the Briefs, and that he merely made "editorial comments."  (St. 52, 53.)  High, on the other hand, testified that he is a co-author and drafted a significant portion of the substantive content of the Briefs.[4]  (St. 54, 55.)  It is undisputed, however, that the Briefs were created for the sole purpose of advocating on behalf of White P.C.'s clients in the *Beer* Litigation.  (St. 67.)  White and High did not create the Briefs in order to license or sell them to other lawyers, and have never attempted to license or sell them.  (St. 68, 71.)  Nor has anyone ever offered to license or purchase the Briefs or any of Plaintiff's legal documents.  (St. 72.)

---

[3] The Briefs consist of two legal documents: Plaintiffs' Combined Motion For Summary Judgment For Plaintiffs, Beer And Ramsey, And Brief In Support ("the Summary Judgment Motion"); and Plaintiffs' Motion In Limine ("the Motion In Limine").  (*See* Am. Compl. ¶ 4.)

[4] Whether High is a co-author of the Briefs is immaterial for the purposes of Lexis's motion for summary judgment.  The fact that there is a dispute regarding authorship between the only two individuals named on the documents, however, is relevant to the fair use analysis, as discussed below at page 19.

Plaintiff registered copyrights in the Briefs only *after* the district court in the *Beer* Litigation decertified the class and removed White P.C. as class counsel because the court had "lost its confidence in [White P.C.'s] ability to represent the class." (St. 58, 60, 61.) On April 26 and 30, 2010, another firm sought to intervene as counsel for new proposed class representatives and sought to have the district court reconsider class decertification. (St. 59.) This caused Plaintiff to register the Briefs with the Copyright Office, on May 20 and May 21, 2010. (St. 60, 61.) As White admitted, he registered the Briefs to prevent copying of his work product by successor class counsel in the *Beer* Litigation. (St. 62.)

**Lexis's Use of the Briefs**

Lexis obtained copies of the Briefs via PACER. (St. 10, 28.) Lexis made enhancements to the Briefs as described above prior to including them in the BPM product. (St. 29-42.) On August 4, 2010, Lexis made these enhanced versions of the Briefs available to Lexis users as part of its BPM database of over one million legal documents. (St. 5, 43.)

Despite its availability on the BPM product for well over a year, the Summary Judgment Motion was never accessed by a Lexis user prior to the filing of the original complaint in this action. (St. 43, 73.) The Motion In Limine was accessed by only three users, one of whom was a law student at White's alma mater who accessed the document seven times in less than fifteen minutes. (St. 74, 75.) Notwithstanding White's awareness that the Briefs were available on Lexis, Plaintiff never requested that the Briefs be removed from the Lexis databases prior to filing this lawsuit. (St. 77, 79.) After service of the complaint in this action, Lexis removed the Briefs from the BPM product. (St. 80.)

7

**Market for the Briefs**

David Blackburn, an applied microeconomist, has assessed various economic factors relevant to Lexis's use of the Briefs and any effect of that use on the actual or potential market for the Briefs.  (St. 84.)  Blackburn's expert conclusions are uncontroverted.  According to Blackburn, the BPM product offered by Lexis represents a distinct product that does not compete with or supersede the Briefs.  (St. 86.)  The BPM product has no impact on the market for the Briefs because the BPM product is not a substitute for the Briefs and, as White admits, Lexis's use of the Briefs does not affect the creation or quality of Plaintiff's legal documents.  (St. 85, 86, 92-94.)

With its database of enhanced legal documents, Lexis created a new product for a different market that does not compete with or supersede the product or the market for which Plaintiff created the Briefs.  (St. 86, 89.)  The BPM product has no effect on Plaintiff's Briefs— no secondary market exists in which Plaintiff licenses the Briefs to other attorneys.  (St. 85, 90.)  Plaintiff is also unable to license the Briefs to Lexis: there is no value to Lexis for any individual legal document and transaction costs would be prohibitively high if Lexis were required to license individual legal documents from all attorneys.  (St. 87, 88, 91.)

Blackburn concludes that Lexis's compilation and enhancement of publicly available legal documents has no economic impact on Plaintiff or the market for Plaintiff's Briefs.  (St. 85, 92.)

## LEGAL STANDARD

Summary judgment should be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed R. Civ. P. 56(a).  Where, as here, the facts underlying the affirmative defenses of fair use and implied license are not in dispute, summary judgment is appropriate.  *See Blanch v. Koons*, 467 F.3d 244, 250 (2d Cir.

2006) (citing *Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 560 (1985)) (fair use); *Carano v. Vina Concha y Toro, S.A.*, 288 F. Supp. 2d 397, 403 (S.D.N.Y. 2003) (implied license); *Keane Dealer Servs. v. Harts*, 968 F. Supp. 944, 947 (S.D.N.Y. 1997) (implied license).

## ARGUMENT

**I.     LEXIS'S USE OF THE BRIEFS IS PERMISSABLE UNDER THE FAIR USE DOCTRINE.**

### A.     Lexis's Use Serves the Purpose of Copyright Law and Fair Use.

"Fair use" exists as a necessary tool to further the goals of copyright law.  *See Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 575 (1994) ("From the infancy of copyright protection, some opportunity for fair use of copyrighted materials has been thought necessary to fulfill copyright's very purpose, 'to promote the Progress of Science and useful Arts.'" (quoting U.S. Const., Art. I, § 8, cl. 8)).  Recently, the Supreme Court reinforced that copyright law's constitutional purpose to "promote the Progress of Science . . . refers broadly to the creation and spread of knowledge and learning." *Golan v. Holder*, 132 S. Ct. 873, 888 (2012) (internal quotation marks omitted).  Copyright protection serves to encourage the creation of works, sometimes by borrowing or building upon previous works, for the benefit of the public.  *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 349-50 (1991) ("copyright assures authors the right to their original expression, but encourages others to build freely upon the ideas and information conveyed by a work").  By offering a vast, searchable library of enhanced versions of publicly filed legal documents, Lexis has created a public benefit that disseminates information, encourages the development of individual knowledge and legal skills, and assists in the creation of new works.

**B.      Lexis's Use of the Briefs is Fair.**

Lexis's use of the Briefs constitutes fair use.  A use is fair when the purposes of the Copyright Act would be advanced more by allowing the use than by prohibiting it.  *Blanch*, 467 F.3d at 251.  The non-exclusive statutory factors to be considered in determining fair use are: (1) the purpose and character of the use; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used; and (4) the effect of the use upon the potential market for or value of the copyrighted work.  17 U.S.C. § 107.  No one factor is dispositive; instead, "[a]ll are to be explored, and the results weighed together, in light of the purpose of copyright." *Campbell*, 510 U.S. at 578.

Each statutory fair use factor weighs in Lexis's favor, and additional factors, such as the common law right to access and copy court records, also favor a finding of fair use.

**1.      Lexis's use of the Briefs does not supersede the Briefs' original purpose.**

The first factor of the fair use analysis looks at "the purpose and character of the use." 17 U.S.C. § 107(1).  The "central purpose of this investigation is to see . . . whether the new work merely 'supersedes[s] the objects' of the original creation or . . . instead adds something new, with a further purpose or different character . . . .  [I]t asks, in other words, whether and to what extent the new work is 'transformative.'" *Campbell*, 510 U.S. at 579.  "Most important to the court's analysis of the first factor is the 'transformative' nature of the work." *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 608 (2d Cir. 2006).  The more transformative the work, the less important other elements—such as the commercial nature of the work—are to the analysis under the first factor. *Campbell*, 510 U.S. at 579.

10

a.      Lexis transformed the Briefs by making enhancements and
incorporating the documents into a searchable database.

Lexis's use of the Briefs by enhancing them and including them in a large searchable database is transformative.  Lexis's use of the Briefs is not the same as the original use and thus does not "'supersede the objects' of the original." *Campbell*, 510 U.S. at 579 (internal citations omitted).  Attorneys create and file legal documents with one specific goal: to advocate on behalf of their clients.  Legal documents have been created for that purpose at least as long as the federal courts have existed, and will continue to be created for that purpose.  White admitted that the Briefs were created to advocate for his clients, and for no other purpose.  (St. 67.)  Lexis's use does not in any way impede or supersede that purpose.  Lexis has instead created a fully searchable database comprised of select legal documents in order to offer an interactive research tool that provides legal information to users to assist, for example, in the creation of *new* legal documents.  Such a use—distinct from that for which the Briefs were created—is transformative. *See Blanch*, 467 F.3d at 252 ("The sharply different objectives that Koons had in using, and Blanch had in creating, [Blanch's work] confirms the transformative nature of the use.").

Were Lexis's BPM product merely an online repository of publicly filed court documents, it would be sufficiently transformative of Plaintiff's Briefs to constitute fair use.  "The use of a copyrighted work need not alter or augment the work to be transformative in nature.  Rather, it can be transformative in function or purpose without altering or actually adding to the original work." *Vanderhye v. iParadigms*, 562 F.3d 630, 639 (4th Cir. 2009) (database of unaltered student papers used to check for plagiarism held transformative); *see also Bill Graham Archives*, 448 F.3d at 611 ("[defendant's] use of the disputed images is transformative both when accompanied by referencing commentary and when standing alone").

11

But the BPM product is more than a mere online repository of legal documents: it is a research tool that gathers individual legal documents and weaves them together with other documents, creating an interconnected database of litigation materials that are easily searchable by topic as well as other user-generated search parameters.[5]  (St. 27-42.)  In creating this online database, Lexis selectively evaluates and chooses certain legal documents that are pre-determined to have editorial value, often based on their relationship to a particular jurisdiction or practice area.  (St. 27.)  As outlined in the Statement of Facts, Lexis enhances the legal documents by, among other things, making them text and segment searchable, capturing and inputting metadata, adding links to and from case opinions, jury instructions, expert witness filings, deposition transcripts, the original image version of the documents and other related case materials, and creating and adding a unique Lexis citation.  (St. 28-42.)  Lexis's BPM product is thus plainly "something new, with a further purpose [and] different character" than the Briefs, and is therefore transformative.  *Campbell*, 510 U.S. at 579.

Lexis's transformation of the Briefs in its searchable BPM database goes beyond similar uses found to be transformative in *Kelly v. Ariba Soft Corporation*, 336 F.3d 811 (9th Cir. 2003) and *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007), *cert. denied*, 132 S. Ct. 1713 (2012).  In *Kelly*, the court held that the use of thumbnail images of works to facilitate searches is transformative because it improves access to information, rather than satisfying a demand for artistic expression.  336 F.3d at 819.  Lexis's use of the Briefs similarly improved access to information and assisted users with legal research, and did not fulfill a demand for obtaining a particular legal outcome in a particular case—thus serving "an entirely different

---

[5] White testified that his primary objection to Lexis's use of the Briefs is that its transformation of the Briefs makes it easier for other lawyers to locate the publicly filed documents.  (St. 83.) Ironically, this very transformative quality compels a finding of fair use.

function" than the original Briefs. *Id.* In *Perfect 10*, the court held that using thumbnail images in a search engine "transforms the image into a pointer directing a user to a source of information." 508 F.3d at 1165. Lexis's BPM database likewise uses the Briefs to point users toward new sources of legal information and therefore puts the Briefs "in a different context such that [they are] transformed into a new creation." *Id.* Lexis's use of the Briefs, however, presents a more compelling case than in *Kelly* and *Perfect 10* because, unlike the thumbnail images at issue in those cases, Lexis significantly enhanced the Briefs themselves in furtherance of its transformative use.

Accordingly, Lexis's transformative use qualifies as fair use.

> b. <u>Lexis's commercial motivation does not militate against a finding of fair use.</u>

Lexis's commercial motivation is of limited significance in the first factor analysis. "[T]he more transformative the new work, the less will be the significance of other factors, like commercialism, that may weigh against a finding of fair use." *Campbell*, 510 U.S. at 579. As the Supreme Court observed, if the commercial nature of a work carried a presumptive force against a finding of fair use, then "the presumption would swallow nearly all of the illustrative uses listed in the preamble paragraph of § 107, including news reporting, comment, criticism, teaching, scholarship, and research, since these activities 'are generally conducted for profit in this country.'" *Id.* at 584 (citation omitted). Further, "the presence or absence of a profit-making motive is not dispositive as to this factor or the overall fair use analysis." *The Swatch Grp. Mgmt. Servs. LTD. v. Bloomberg L.P.*, No. 11 Civ. 1006, 2012 U.S. Dist. LEXIS 70045, at *8 (S.D.N.Y. May 17, 2012) (citing *Campbell*, 510 U.S. at 584).

The Second Circuit has frequently found fair use in cases where the defendant benefited commercially by selling the plaintiff's works. *See, e.g. Blanch*, 467 F.3d at 253 (fair use despite

"substantial profit from the sale" of the allegedly infringing work); *Bill Graham Archives*, 448 F.3d at 612 (defendant's publication of book containing copyrighted images was "a commercial venture" but nonetheless fair); *Swatch*, 2012 U.S. Dist. LEXIS 70045, at *8, *16 (finding fair use despite defendant's status as a for-profit corporation whose subscribers pay for access to its online business newscasting service); *see also Castle Rock Entm't, Inc. v. Carol Publ'g Grp.*, 150 F.3d 132, 141 (2d Cir. 1998) (the Second Circuit does "not give much weight to the fact that the secondary use was for commercial gain"); *NXIVM Corp. v. Ross Inst.*, 364 F.3d 471, 477-78 (2d Cir. 2004) (same).

Notably, the BPM product is often used for educational and non-commercial purposes by students, who are given access to the service at no cost.  (St. 44.)  A 2007 study, in fact, concluded that the vast majority of legal documents were accessed by law students.  (St. 45.) Not surprisingly, all but two accesses to the Briefs prior to the filing of the complaint were made by a law student.  (St. 73, 74.)

Because Lexis's use is highly transformative and does not supersede the original Briefs, despite its commercial nature, the first factor strongly weighs in favor of Lexis's fair use defense.

## 2.     The nature of the Briefs weighs in favor of fair use.

The second fair use factor considers "the nature of the copyrighted work" and posits that "some works are closer to the core of intended copyright protection than others."  17 U.S.C. § 107(2); *Campbell*, 510 U.S. at 586.  Here, two aspects relevant to the nature of the Briefs support the conclusion that Lexis's use is fair.

*First*, the Briefs are factual, not fictional.  *See Stewart v. Abend*, 495 U.S. 207, 237 (1990) ("fair use is more likely to be found in factual works than in fictional works").  Copyright law does not generally create incentives for the development of factual works, as those works do not require protection of any creative expression.  *See Sony Corp. of Am. v. Universal City*

*Studios, Inc.*, 464 U.S. 417, 450 (1984) (a main purpose of copyright protection is to "create incentives for creative effort"). The Briefs at issue are replete with case law citations, personal facts, and other factual information including lengthy verbatim quotations from deposition transcripts that, at best, create a "'thin' copyright." *See Swatch*, 2012 U.S. Dist. LEXIS 70045, at *11 (quoting *Feist Publ'ns, Inc.*, 499 U.S. at 349).

Attorneys routinely create factually based legal documents with the goal of facilitating client needs and securing favorable judicial rulings, and there is no doubt that such works will continue to be created regardless of the protections of copyright law. White readily admitted that the Briefs were not created with the intention of seeking a future license and would have been created regardless of Lexis's use. (St. 68, 69.) White also conceded that many elements of the Briefs are not copyrightable. (St. 76.)

*Second*, the Briefs are otherwise publicly available. Plaintiff intentionally and knowingly made the Briefs available to the general public by filing them with the court. (St. 63, 64.) As court-filed documents, public availability is inherent in their nature. This is not a case where the author is seeking to protect the right to control how and when to disclose a work to the public. *See, e.g.*, *Harper & Row, Publishers, Inc.*, 471 U.S. at 551 (finding no fair use in part because infringement usurped "the author's right to decide when and whether it will be made public").

As a result, the second fair use factor weighs in Lexis's favor. *See Arica Inst., Inc. v. Palmer*, 970 F.2d 1067, 1078 (2d Cir. 1992) (finding fair use where plaintiff's work was "available to the general public").

### 3. Lexis took what was reasonably necessary from the Briefs in order to integrate the Briefs into the searchable online database.

The third fair use factor requires an inquiry as to whether the amount copied "[is] reasonable in relation to the purpose of the copying." *Campbell*, 510 U.S. at 586. "[T]he extent

15

of permissible copying varies with the purpose and character of the use." *Id.* at 586-87.  The Supreme Court and the Second Circuit have both held that copying an entire work may be deemed fair use in cases where full copying is necessary to fulfill the purpose of the fair use.  *See Sony*, 464 U.S. at 449-50; *Bill Graham Archives*, 448 F.3d at 613 ("copying the entirety of a work is sometimes necessary to make a fair use of the image").  Further, "insomuch as a public interest is served by Defendant's dissemination of the information contained in the Copyrighted Work, that interest is better served by the dissemination of that information *in its entirety*." *Swatch*, 2012 U.S. Dist. LEXIS 70045, at *13-14 (emphasis added) (finding fair use where defendant used the entire copyrighted work—earnings reports—to serve "an important public interest in disseminating business-related information promptly and fully").

Here, it was necessary for Lexis to copy the entirety of the Briefs in order to create a new use—the BPM database.[6]  The BPM product offers users access to complete and accurate legal documents, which enables users to compare certain forms and arguments with others, as well as to evaluate the effectiveness of those forms and arguments.  It was also necessary for Lexis to copy the entirety of the Briefs for the database to be comprehensively text searchable—an integral component of the BPM product.  (St. 34, 35.)  Lexis included a link to the PACER version of the Briefs as well for convenience, and for verification and archival purposes.  (St. 39.)  A user could only access this link by first accessing the enhanced version of the Briefs through the database.  (St. 40.)

Because Lexis copied what was reasonably necessary for its transformative use, the third factor weighs in Lexis's favor.

---

[6] PACER also does not allow a user to download a partial copy of a document.

16

### 4.   Lexis's use of the Briefs has no negative effect on any cognizable market for the Briefs.

The fourth fair use factor inquires whether the defendant's use negatively affects a potential market for the work or the value of the work. *Campbell*, 510 U.S. at 590.  The analysis "requires a balancing of 'the benefit the public will derive if the use is permitted and the personal gain the copyright owner will receive if the use is denied.'"  *Bill Graham Archives*, 448 F.3d at 613 (quoting *MCA, Inc. v. Wilson*, 677 F.2d 180, 183 (2d Cir. 1981)).  Here, the public receives a significant benefit from Lexis's use of legal documents and the Plaintiff will gain nothing if the use is denied.  Lexis's use does not harm the value of Plaintiff's Briefs or inhibit any incentive to create future legal documents.  (St. 92-94.)  "[A] use that has no demonstrable effect upon the potential market for, or the value of, the copyrighted work need not be prohibited in order to protect the author's incentive to create."  *Sony*, 464 U.S. at 450.

### a.   Lexis's product is not a substitute for the original Briefs and does not harm the value of, or the market for, the Briefs.

The "fourth factor disfavors a finding of fair use only when the market is impaired because the . . . material serves the consumer as a substitute, or, . . . supersedes the use of the original." *Bill Graham Archives*, 448 F.3d at 614.  Here, the original market for the Briefs is one in which attorneys create legal documents to provide legal advocacy for their clients.  Lexis's use of the Briefs is in no way a substitute for the use of the Briefs in this market.  (St. 85, 86.)  Clients hire attorneys to represent them; they do not hire Lexis.  Attorneys, not Lexis, file legal documents in court.  Lexis's inclusion of the Briefs in the BPM product does not supersede the Briefs' use in the original market or harm the original value of the Briefs.  (St. 85, 86, 92.)

The BPM product is not any one specific work, but is instead comprised of over one million legal documents.  (St. 5, 88.)  The enhancements made to the Briefs to render them suitable for inclusion in the BPM product provide value that does not exist in the original Briefs

and serve a different purpose: research.  By White's own admission, the motivation in creating

the Briefs was wholly different from Lexis's purpose.  White created the Briefs to advocate on

behalf of Plaintiff's clients.  (St. 67.)  White did not create the Briefs in order to license them.

(St. 68.)  In fact, White admits that the possibility of copying or distributing the Briefs did not

and would not affect the creation or quality of the Briefs.  (St. 69, 70.)  Plaintiff's professional

reputation or ability to represent clients has not been compromised, and Plaintiff did not lose any

clients due to the availability of the Briefs on Lexis.  (St. 81, 82.)

Finally, there is no evidence in the record that anyone would stop writing legal briefs due

to the possibility that Lexis might include them in the BPM product without compensating the

authors.  The record supports only one conclusion: Lexis's use of the Briefs causes no harm to

the value of the Briefs.  *See*, *e.g.*, *Swatch*, 2012 U.S. Dist. LEXIS 70045, at *15 (finding no

market harm where defendant's use "was not at odds with [plaintiff] maximizing [its] value.").

b.      There is no market for sale or licensing of the Briefs.

A "potential market" is comprised of markets in which the plaintiff could license his

works or license others to develop his works.  *Castle Rock Entm't*, 150 F.3d at 145 (citing

*Campbell*, 510 U.S. at 590).  There are no such potential markets here, because there are no

"traditional, reasonable, or likely to be developed markets" for the sale or licensing of legal

documents by individual attorneys.  *Am. Geophysical Union v. Texaco Inc.*, 60 F.3d 913, 930 (2d

Cir. 1994).  Similar to the Second Circuit's holding in *Blanch*, "nothing in the record here

suggests that there was a derivative market for [Plaintiff] to tap into that is in any way related to

[Defendant's] use of [Plaintiff's] work, even if [Plaintiff] wanted to."  467 F.3d at 258 n.9.

Plaintiff does not point to any market in which it can sell or license the Briefs because no

such market exists.  White has been a practicing attorney for seventeen years and White P.C. has

likely prepared thousands of court filings.  (St. 46, 48.)  Plaintiff, however, has *never* attempted

18

to sell or license the Briefs or any other legal document. (St. 71.) Nor has anyone *ever* asked Plaintiff to license the Briefs or any legal documents created by Plaintiff. (St. 72.) Further, Plaintiff is not aware of *any* person ever licensing a legal document for *any* purpose. (St. 95-97.) The absence of any potential for Plaintiff to exploit a secondary market for its Briefs weighs heavily on the side of fair use. *See Am. Geophysical Union*, 60 F.3d at 930 ("the fourth factor will favor the secondary user when the only possible adverse effect occasioned by the secondary use would be to a potential market or value that the copyright holder has not typically sought to, or reasonably been able to, obtain or capture") (citing *Twin Peaks Prods. v. Publ'ns Int'l, Ltd.*, 996 F.2d 1366, 1377 (2d Cir. 1993)).

In addition, the transaction costs in any hypothetical market for attorneys to sell or license works would be prohibitively high. In *American Geophysical Union v. Texaco Inc.*, 802 F. Supp. 1 (S.D.N.Y. 1992), *aff'd*, 60 F.3d 913, the court found that a potential market existed for individual journal articles because there was a pre-established organization through which an author could set a price for and license his works. *Id.* at 24-25. The court recognized that, without that mechanism in place, "[a]n honest user, who would be happy to pay a reasonable royalty, faces the problem of the enormous administrative difficulty and expense of making an agreement with the copyright owner for a license to make a single copy. . . . Because of the outlandishly wasteful delay, expense, and inconvenience involved in negotiating such a transaction, virtually no user has been willing to do it." *Id.* at 23-24.

Unlike in *American Geophysical*, there is no existing mechanism by which attorneys could sell or license legal documents. Instead, were Lexis to license legal documents, it would have to locate and negotiate with numerous possible owners of each work. This would be difficult, if not impossible, given that many legal documents list multiple attorneys and give no

clear indication as to authorship, much less as to copyright ownership.  The Briefs at issue here provide a good illustration of this problem.  Both White and High are listed on the Briefs, and they disagree as to who is a co-author of the Briefs.  (St. 51, 52, 55.)  Any licensing effort would also have to consider the possibility that clients might claim ownership of legal documents they paid attorneys to create or created themselves.  *See*, *e.g.*, *Unclaimed Prop. Recovery Serv. v. Kaplan*, 11-cv-1799, 2012 U.S. Dist. LEXIS 135094, at *3 (E.D.N.Y. Sept. 19, 2012) (client claiming copyright ownership over complaint filed by his attorney).

The expense required to overcome these numerous hurdles for the more than one million documents currently in the BPM database would be prohibitive, and could not be justified by any potential benefit to Lexis.  This is particularly true because no individual work has value to Lexis's users.  (St. 87.)  Rather, it is the collection of a large number of legal documents that are searchable and interconnected that gives the BPM product value to Lexis and its users.   (St. 88.)  Lexis already spends considerable time and expense selectively collecting and enhancing the documents.  Even if a determination of copyright ownership were possible for all legal documents, any additional significant transaction costs would likely cause the BPM product to be economically unfeasible.  (St. 91.)

Moreover, as discussed above, Lexis's use of the Briefs is transformative and, under the fair use analysis, Plaintiff does not suffer market harm "due to the loss of license fees" in a "transformative market."  *Bill Graham Archives*, 448 F.3d at 615; *see also Castle Rock Entm't*, 150 F.3d at 146 n.11 ("copyright owners may not preempt exploitation of transformative markets").

Based on these considerations, any reasonable fact finder would be compelled to conclude that Lexis's use of the Briefs has no demonstrable effect on the potential market for, or the value of, the Briefs.  The fourth factor therefore weighs in Lexis's favor.

### 5.      Lexis's BPM product creates a significant public benefit.

"[C]ourts are more willing to find a secondary use fair when it produces a value that benefits the broader public interest."  *Blanch*, 467 F.3d at 253 (citing *Am. Geophysical Union*, 60 F.3d at 922).  Lexis's BPM product provides a public benefit by allowing attorneys and students the opportunity to search among selected content for relevant material.  Further, the enhancements made to legal documents allow a user to access related content and verify citations in a time-efficient manner.  By offering a vast library of easily searchable legal documents, Lexis provides the opportunity to learn about new areas of law, analyze successful and unsuccessful legal arguments, and research specific jurisdictional formats and related issues.  Lexis's service also allows practitioners to make strategic decisions in a more timely and efficient manner, and allows students to research legal issues without cost.  The public benefits provided by Lexis thus outweigh any hypothetical harm to the Plaintiff and favors a finding of fair use.  *See, e.g., Time, Inc. v. Bernard Geis Assocs.*, 293 F. Supp. 130, 146 (S.D.N.Y. 1968) (fair use where "[t]here is a public interest in having the fullest information available" and where "[t]here seems little, if any, injury to plaintiff, the copyright owner").

### 6.      The public's right to access and copy court documents also supports a finding of fair use.

A finding that Lexis's use of the Briefs is fair is also supported by the well-established right of public access to judicial records.  "The public has a common law presumptive right of access to judicial documents."  *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 140 (2d Cir. 2004).  The underlying purpose behind the right of access is to promote openness while also

"provid[ing] the public with a more complete understanding of the judicial system and a better perception of its fairness."  *Id.* (internal citations omitted).  The Briefs at issue here are judicial records subject to this presumption of access.  *See Lugosch v. Pyramid Co.*, 435 F.3d 110, 119 (2d Cir. 2006) (judicial records are those "relevant to the performance of the judicial function and useful in the judicial process"); *see also Gambale*, 377 F.3d at 140 ("In part because they relate to a court's adjudication process, 'documents used by parties moving for, or opposing, summary judgment should not remain under seal absent the most compelling reasons.'").  Lexis's use of the Briefs is consistent with the underlying purpose of the right of access—creating a broader audience for legal documents.

The common law right to inspect and copy judicial records, a right encompassed by the right of public access, also supports a finding of fair use here.[7]  *See Nixon v. Warner Commc'ns*, 435 U.S. 589, 597 (1978); *In re Application of Nat'l Broad. Co.*, 635 F.2d 945, 951 (2d Cir. 1980).  This right extends "to pretrial documents filed in civil cases, including materials submitted in connection with motions for summary judgment."  *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1134 (9th Cir. 2003); *see also Hartford Courant Co.*, 380 F.3d at 94 (protecting the public right to access, inspect and copy docket sheets).  Plaintiff admits that Lexis's copying promotes wide public access of legal documents.  (St. 83.)  Lexis also takes care to remove any confidential or sensitive information.  (St. 30.)  Because Plaintiff has no compelling reason that would overcome the strong presumption favoring public access, Lexis has a clear right to inspect and copy publicly accessible court-filed documents, which in turn supports a finding of fair use.

---

[7] The right to copy and inspect is similarly protected by the First Amendment.  *See Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 93 (2d Cir. 2004) (explaining that the media's and public's First Amendment right to inspect documents is derived from the public nature of tribunals).

### 7.     Lexis satisfies the standards for fair use under the Copyright Act.

An analysis of the fair use factors makes clear that Lexis's use of the Briefs was fair. Lexis acquired the Briefs—publicly filed, factually based legal documents—and transformed them into part of a searchable database used as a research tool by law students and legal practitioners.  Lexis copied the entirety of the Briefs because doing so was necessary to maintain accuracy and ensure the database was fully searchable.  Lexis's use created a distinct market that did not supersede the object of the Briefs or affect any market in which Plaintiff could sell the Briefs.  Finally, Lexis's use benefitted the public and caused no harm to Plaintiff, and comported with the public's right to access and copy judicial documents.  As these facts are not in dispute, this Court should grant Lexis's motion for summary judgment on the grounds of fair use.

## II.     LEXIS HAD AN IMPLIED LICENSE TO USE PLAINTIFF'S BRIEFS.

The undisputed record compels the conclusion that Plaintiff authorized Lexis's use of the Briefs through an implied license.  Non-exclusive licenses may be implied through the parties' conduct.  *See EMI Latin v. Bautista*, No. 03 Civ. 0947, 2003 U.S. Dist. LEXIS 2612, at *36 (S.D.N.Y. Feb. 24, 2003) (citing *Graham v. James*, 144 F.3d 229, 235 (2d Cir. 1998)); *see also* 3 MELVILLE B. NIMMER AND DAVID NIMMER, NIMMER ON COPYRIGHT § 10.03[A] (Matthew Bender, Rev. Ed.) ("When the totality of the parties' conduct indicates an intent to grant such permission, the result is a nonexclusive license.").

For at least seven years, Lexis has made legal documents available through its BPM product in reliance on the fact that attorneys who publicly file their legal documents know that those documents can be accessed and copied by anyone.  In fact, Lexis receives requests directly from attorneys and legal organizations to make their legal documents available as part of the BPM product.  (St. 8.)  At least one public agency *requires* that Lexis include the agency's legal documents on Lexis's service as a condition to signing an exclusive subscription agreement.

23

(St. 9.)  Plaintiff was aware that filing briefs in federal court rendered the Briefs publicly available.  (St. 64.)  Plaintiff also knew that PACER permitted and indeed encouraged copying of the Briefs.  (St. 66.)  Plaintiff, however, made no attempt to limit Lexis's copying.  (St. 56, 57, 79.)

Lexis made no secret of its BPM product.  Lexis marketed the product directly to practicing attorneys, such as Plaintiff, who author legal documents.  (St. 6.)  White testified that he became aware that Lexis included Plaintiff's legal documents in its databases perhaps two years ago, yet White never contacted Lexis to object to its use of the Briefs prior to filing the complaint.  (St. 77, 79.)

Given Plaintiff's knowledge of Lexis's use of the Briefs and its decision not to object to that use—particularly where Plaintiff publicly filed the Briefs knowing that Lexis was permitted to access and copy those Briefs—Plaintiff's conduct is sufficient to grant Lexis an implied license for its use of the Briefs.  *See EMI Latin*, 2003 U.S. Dist. LEXIS 2612, at *36 (record company likely to succeed on implied license defense because singer did not object to company's use of his songs or advise anyone that the songs could not be used); *Keane Dealer Servs.*, 968 F. Supp. at 947 (plaintiff's knowledge of a use, coupled with "silence in the face of [that] use," could constitute an implied license); *Field v. Google Inc.*, 412 F. Supp. 2d 1106, 1116 (D. Nev. 2006) ("An implied license can be found where the copyright holder engages in conduct 'from which [the] other [party] may properly infer that the owner consents to his use.'") (internal citations omitted).

## <u>CONCLUSION</u>

For the reasons set forth above, as well as in the Memorandum of Law in Support of

Defendant West Publishing Corporation's Motion for Summary Judgment, incorporated herein

by reference, Lexis respectfully requests that this Court grant Lexis's motion for summary

judgment dismissing all claims against Lexis.

Dated: October 5, 2012
       New York, New York

MORRISON & FOERSTER LLP

/s/ James E. Hough
James E. Hough
Craig B. Whitney
Cindy P. Abramson
1290 Avenue of the Americas
New York, NY 10104
Telephone:  (212) 468-8000
Facsimile:  (212) 468-7900
jhough@mofo.com
cwhitney@mofo.com
cabramson@mofo.com

James F. McCabe (admitted *pro hac vice*)
Paul Goldstein (admitted *pro hac vice*)
425 Market Street
San Francisco, California  94105
Telephone:   (415) 268-7000
Facsimile:    (415) 268-7522
jmccabe@mofo.com
pgoldstein@mofo.com

*Attorneys for Defendant*
*LexisNexis, a div. of REED ELSEVIER INC.*

25