R. Bruce Rich
Benjamin E. Marks
Jonathan Bloom
John R. Gerba
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000

*Attorneys for Defendant West Publishing Corporation*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

EDWARD L. WHITE, P.C.,

                        Plaintiff,                      12 Civ. 1340 (JSR)

                                              **Filed Electronically**

                        v.

WEST PUBLISHING CORPORATION d/b/a West;
and REED ELSEVIER, INC. d/b/a LexisNexis,

                        Defendants.

-------------------------------------------------------------------x

**DEFENDANT WEST PUBLISHING CORPORATION'S MEMORANDUM OF LAW IN
OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

# **TABLE OF CONTENTS**

**Page(s)**

PRELIMINARY STATEMENT ...............................................................................1

COUNTER-STATEMENT OF FACTS ...................................................................3

ARGUMENT ...........................................................................................................5

    I.      WEST'S FAIR-USE DEFENSE .............................................................5

           A.      The Purpose and Character of West's Use of the Motions Weigh in Favor of Fair Use ....................................................................5

                  1.      The commercial nature of the use is of little significance ..............5

                  2.      West used the works for a non-superseding, transformative purpose.................................................7

           B.      The Factual Nature of the Copyrighted Works Weighs in Favor of Fair Use ......................................................................10

           C.      Use of the Entire Work Does Not Weigh Against Fair Use in This Context ................................................................12

           D.      The Absence of Actual or Potential Market Harm Confirms That the Use Is Fair.......................................................12

           E.      Balance of Factors.........................................................14

    II.      WEST'S OTHER DEFENSES .............................................................15

           A.      West – Not Plaintiff – Is Entitled to Summary Judgment on West's Affirmative Defenses Concerning the Unavailability of Actual Damages, Statutory Damages, Attorney's Fees, and Injunctive Relief.....15

           B.      Plaintiff Is Not Entitled to Summary Judgment on West's Defenses Concerning Implied License, the Ownership of the Copyrights at Issue, and the Lack of Valid Copyright Registrations ........15

           C.      Plaintiff's Abandonment of Infringement Claims Based on All But Two Works Obviated West's Remaining Affirmative Defenses........17

CONCLUSION.......................................................................................................17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

C<small>ASES</small>

A.V. ex rel. Vanderhye v. iParadigms,
562 F.3d 630 (4th Cir. 2009) .........................................................................................5, 8, 12

Am. Geophysical Union v. Texaco,
60 F.3d 913 (2d Cir. 1994)........................................................................................ passim

Authors Guild, Inc. v. Hathitrust,
No. 11 CV 63551 (HB), 2012 WL4808939 (S.D.N.Y. Oct. 10, 2012) .................. 8, 10, 12-13

Basic Books, Inc. v. Kinko's Graphics Corp.,
758 F. Supp. 1522 (S.D.N.Y. 1991)........................................................................................2

Bill Graham Archives v. Dorling Kindersley Ltd.,
448 F.3d 605 (2d Cir. 2006)...................................................................................... passim

Blanch v. Koons,
467 F.3d 244 (2d Cir. 2006)....................................................................................... 8-9, 14

Calkins v. Playboy Enters., Int'l,
561 F. Supp. 2d 1136 (E.D. Cal. 2008)...................................................................... passim

Campbell v. Acuff-Rose Music, Inc.,
510 U.S. 569 (1994)...................................................................................................... 5-6

Eldred v. Ashcroft,
537 U.S. 186 (2003).......................................................................................................14

Haberman v. Hustler Magazine, Inc.,
626 F. Supp. 201 (D. Mass. 1986) ...................................................................................12, 14

Harper & Row, Publ'rs, Inc. v. Nation Enters.,
471 U.S. 539 (1985)................................................................................................... 6, 11-12

Infinity Broad. Corp. v. Kirkwood
150 F.3d 104, 108 (2d Cir. 1998)...........................................................................................8

Kelly v. Arriba Soft Corp.,
336 F.3d 811 (9th Cir. 2003) ..........................................................................................6, 8, 12

Nunez v. Caribbean Int'l News Corp.,
235 F.3d 18 (1st Cir. 2000)..................................................................................... 11-12

NXIVM Corp. v. Ross Inst.,
364 F.3d 471 (2d Cir. 2004)..............................................................................................6

Perfect 10, Inc. v. Amazon.com, Inc.,
    508 F.3d 1146 (9th Cir. 2007) ...............................................................................12

Rotbart v. J.R. O'Dwyer Co, Inc.,
    No. 94 Civ. 2091 (JSM), 1995 WL 46625 (S.D.N.Y. Feb. 7, 1995) ......................................11

Salinger v. Random House, Inc.,
    811 F.2d 90 (2d Cir. 1987)....................................................................................11

Sedgwick Claims Mgmt. Servs., Inc. v. Delsman,
    No. C 09-1468 SBA, 2009 WL 2157573 (N.D. Cal. 2009)......................................................12

Sony Corp. of Am. v. Universal City Studios, Inc.,
    464 U.S. 417 (1984)...............................................................................................5

Swatch Group Mgmt. Servs. Ltd. v. Bloomberg L.P.,
    861 F. Supp. 2d 336 (S.D.N.Y. 2012)..........................................................6-7, 12

UMG Recordings v. Mp3.com, Inc.,
    92 F. Supp. 2d 349 (S.D.N.Y. 2000)........................................................1-2, 9-10

Wilson v. Brennan,
    666 F. Supp. 2d 1242 (D.N.M. 2009) ....................................................................16

**STATUTES**

17 U.S.C. § 101.................................................................................................16

17 U.S.C. § 102(b) .............................................................................................14

17 U.S.C. § 107.................................................................................................5-6

**OTHER AUTHORITIES**

4 Melville B. & David Nimmer, Nimmer on Copyright § 13.05[B][1] (2011)...............................8

Defendant West Publishing Corporation ("West") submits this memorandum of law in opposition to Plaintiff's motion for summary judgment.

## PRELIMINARY STATEMENT

Plaintiff and West agree that this case can and should be resolved on summary judgment. As we explained in support of West's own summary judgment motion, the conduct of which Plaintiff complains – the inclusion of two of Plaintiff's publicly filed motions in West subscription databases – is clearly fair use. A finding of fair use follows inescapably from the fact that West has made a transformative use of Plaintiff's publicly available, non-confidential, fact-driven court filings in a manner that has no adverse impact on any market for Plaintiff's works or on Plaintiff's incentive to create them. Neither that West is a for-profit entity that charges fees to its subscribers nor that West copied Plaintiff's works in their entirety points toward a different conclusion.

Plaintiff apparently believes it self-evident that West, by making copies of two of its publicly filed motions and providing access to them as part of a text-searchable, hyperlinked database containing millions of other court filings, is "steal[ing] intellectual property." Plaintiff's Mem. of Law in Support of Mot. Summ. J. 1, ECF No. 55 ("Pl. Mem."). But fair use, by definition, is not stealing, and Plaintiff's attempt to surmount West's fair-use defense falls far short.

Plaintiff reaches the wrong conclusion on every one of the four statutory fair-use factors. As to the first factor – the purpose and character of the use – Plaintiff misses the thrust of West's argument. West does not rely solely or even primarily on the physical enhancement of Plaintiff's motions by West but on the entirely new, non-superseding purpose for which West uses the documents as part of its legal research database. In the cases cited by Plaintiff, such as American Geophysical Union v. Texaco, 60 F.3d 913 (2d Cir. 1994), UMG Recordings v. Mp3.com, Inc.,

92 F. Supp. 2d 349 (S.D.N.Y. 2000), and Basic Books, Inc. v. Kinko's Graphics Corp., 758 F. Supp. 1522 (S.D.N.Y. 1991), the fair-use defense failed because the copies were directed to the same end users, for the same purposes, as the originals. There is no such overlap here. Plaintiff also overemphasizes the commercial purpose of West's conduct, which is all but irrelevant in view of the transformative purpose of West's copying and the public benefits that flow from West's transformative use.

As to the fourth factor – harm to the potential market for or value of the work – Plaintiff's failure to identify any evidence of harm to the actual or any potential market for the works also sets this case apart from the cases Plaintiff cites. In American Geophysical Union, Mp3.com, and Basic Books the infringing copies were substitutes for the copyrighted works in well-established markets or obvious potential markets that the plaintiffs had taken steps to enter. Here, Plaintiff's principal, Mr. White, has conceded the absence of any comparable harm. Plaintiff has never attempted, nor been asked, to license any of its works, let alone the motions at issue. The fact that West's conduct admittedly has no effect on Plaintiff's incentive to write briefs and motions to advance its clients' interests should be dispositive.

Plaintiffs' arguments as to what in this case are the less significant second and third factors also miss the mark. Plaintiff emphasizes that its works are unpublished, but that does not weigh against fair use because the rationales for protecting unpublished works in other circumstances do not apply here. The motions already were publicly available before West added them to its database; there was no interference with Plaintiff's right to control the first public appearance of its work or intrusion on Plaintiff's privacy. That West copied the motions in their entirety also does not assist Plaintiff. Courts recognize that copying entire works does not cut against fair use if the extent of the copying was necessary to accomplish the defendant's

transformative purpose.  There is no dispute that copying court filings in their entirety is necessary to advance the transformative research and archival purposes of West's Litigator™ database.

Plaintiff's facile analogy to the unauthorized copying of library books actually helps to illustrate why West's conduct is fair use.  Unlike with library books, the public is invited to copy court filings via the PACER system as well as through the court clerk's office.  Indeed, the permitted copying of such documents reflects a federal policy of ensuring access to information about the workings of the judicial process.  Moreover, whereas the sale of each unauthorized copy of a library book in Plaintiff's analogy would substitute directly for the sale of an authorized copy, there is no comparable substitution here.  If copies were not available through West, no one would pay Plaintiff for the right to obtain a copy.  Anyone can instead obtain it from PACER or the courthouse without permission from or payment to Plaintiff.

In the end, Plaintiff cannot overcome its failure to develop any evidence that West's conduct has any impact on the market for Plaintiff's works or on the incentive to create them. For these reasons and those discussed in more detail below, West – not Plaintiff – is entitled to summary judgment on fair-use grounds.  Plaintiff's motion also fails because West – not Plaintiff – is entitled to summary judgment on the unavailability of actual damages, statutory damages, attorney's fees, and injunctive relief and, as we explain below, because there are disputed fact issues concerning certain of West's other affirmative defenses.  Accordingly, Plaintiff's motion for summary judgment should be denied.

## COUNTER-STATEMENT OF FACTS

West set forth the material facts concerning its use of Plaintiff's works and its fair-use defense in its motion for summary judgment, see Mem. of Law in Supp. of Def. West Publ'g

Corp.'s Mot. Summ. J. 4-9, ECF No. 47 ("West Sum. J. Mem."), and incorporates those facts by reference here.  While West assumed (without conceding) that Plaintiff could establish copyright ownership of the works at issue (the "Motions") for purposes of West's own motion for summary judgment, West Sum. J. Mem. 10 n.3, there are material facts in dispute concerning ownership that preclude summary judgment for Plaintiff.   The additional facts relevant to this aspect of West's opposition to Plaintiff's motion for summary judgment follow.

Plaintiff's copyright registrations for the Motions do not accurately set forth the authorship of the Motions.  Plaintiff was co-counsel with another attorney – Martin S. High – in the Beer v. XTO Energy, Inc. litigation.  See White Dep. 60:7-21; High Dep. 24:17-25.[1]  High was not, and is not, an employee of Plaintiff.  See White Dep. 20:20-22; High Dep. 10:4-14.  Nor has High executed a written agreement with Plaintiff concerning ownership of the intellectual property rights in materials he drafts, in whole or in part, for cases on which he works with Plaintiff.  See White Dep. 22:9-12; High Dep. 19:19-22.  Mr. High was the principal author of the Beer Motion in Limine.  See High Dep. 28:20-31:22.  He also drafted significant portions of the Beer Motion for Summary Judgment, including the legal argument section.  See High Dep. 26:8-28:19, 65:22-79:22.  His name appears on the cover page and in the signature block of both motions.  See High Dep. 26:8-27:21, 28:20-29:20.  Plaintiff's copyright registrations fail to disclose Mr. High's authorial role.  Blue Decl. Exs. F, G, ECF No. 54.  Moreover, they describe the Motions as published, id., when, as Plaintiff now concedes, they are unpublished.

---

[1] "White Dep." refers to the transcript of the August 30, 2012 Deposition of Edward L. White, and "High Dep." refers to the transcript of the September 6, 2012 Deposition of Martin S. High. Excerpts with the pages cited herein are attached the October 23, 2012 Declaration of Jonathan Bloom ("Bloom Decl."), which is submitted herewith.  In addition, West refers herein to the October 4, 2012 Declaration of Tom Leighton, ECF No. 50 ("Leighton Decl."), and the October 5, 2012 Declarations of John R. Gerba, ECF No. 62 ("Gerba Decl."), and David Blackburn, ECF No. 48 ("Blackburn Decl."), that were submitted in support of West's motion for summary judgment.

## ARGUMENT

In Point I, we demonstrate that West – not Plaintiff – is entitled to summary judgment on West's fair-use defense.  In Point II.A, we show that West – not Plaintiff – is entitled to summary judgment on West's affirmative defenses directed at relief.  In Point II.B, we address the other defenses that preclude summary judgment for Plaintiff.

### I.   WEST'S FAIR-USE DEFENSE

West explained in its summary judgment motion why its use of Plaintiff's Motions is fair.  <u>See</u> West Sum. J. Mem. 10-20.  Nothing in Plaintiff's brief calls into question any of West's arguments.  We discuss the errors in Plaintiff's analysis of the four statutory fair-use factors below.  <u>See</u> 17 U.S.C. §107.

### A.   The Purpose and Character of West's Use of the Motions Weigh in Favor of Fair Use

#### 1.   The commercial nature of the use is of little significance

Plaintiff begins its discussion of the first fair-use factor by reciting the since-abandoned principle that "every commercial use of copyrighted material is presumptively an unfair exploitation."  Pl. Mem. 9 (quoting <u>Sony Corp. of Am.</u> v. <u>Universal City Studios, Inc.</u>, 464 U.S. 417, 451 (1984)).  From this erroneous premise, Plaintiff then points to the commercial benefit West derives from the "the sale of legal research materials" when it "charge[s] subscribers for access to databases containing legal briefs and pleadings, including the databases that included the Works," and contends that this fact weighs meaningfully against a finding of fair use.  Pl. Mem. 10.  It does not.

The U.S. Supreme Court has expressly rejected the notion that commercial uses of copyrighted material are presumptively unfair.  <u>Campbell</u> v. <u>Acuff-Rose Music, Inc.</u>, 510 U.S. 569, 584 (1994); <u>see also, e.g.</u>, <u>A.V. ex rel. Vanderhye</u> v. <u>iParadigms</u>, 562 F.3d 630, 639 (4th

Cir. 2009).[2]  Rather, in assessing the impact of commercial use on a determination of whether copying is fair, courts apply "a more subtle, sophisticated approach."  Am. Geophysical Union, 60 F.3d at 921.  Instead of presuming unfairness, courts consider factors such as whether the use is transformative, whether the defendant is seeking to capitalize on the expressive value of the plaintiff's works without paying a "customary price," and whether there is a public interest in the defendant's dissemination of information.  See Bill Graham Archives v. Dorling Kindersley Ltd., 448 F.3d 605, 609-12 (2d Cir. 2006); Kelly v. Arriba Soft Corp., 336 F.3d 811, 818-20 (9th Cir. 2003); Swatch Group Mgmt. Servs. Ltd. v. Bloomberg L.P., 861 F. Supp. 2d 336, 340 (S.D.N.Y. 2012).  Each of these considerations weighs in favor of fair use here.

First, as explained in West's motion for summary judgment and as discussed in Point I.B below, West's use of the Motions is transformative.  The commercial nature of its use therefore is "properly discounted."  NXIVM Corp. v. Ross Inst., 364 F.3d 471, 478 (2d Cir. 2004); see also Campbell, 510 U.S. at 584.

Second, although West is a for-profit entity, "'[t]he crux of the profit/non-profit distinction is not whether the sole motive of the use is monetary gain but whether the user stands to profit from exploitation of the copyrighted material without paying the customary price.'"  Bill Graham Archives, 448 F.3d at 612 (quoting Harper & Row, Publ'rs, Inc. v. Nation Enters., 471 U.S. 539, 562 (1985)).  Here, there is no "customary price," Plaintiff concedes that anyone may copy the Motions without his consent at the courthouse or through PACER, and he has

---

[2] The commercial or nonprofit educational purpose of a work "is only one element of the first factor enquiry into its purpose and character," Campbell, 510 U.S. at 584, and it is not necessarily an important one.  As the Supreme Court has noted, "nearly all of the illustrative uses listed in the preamble paragraph of § 107 . . . 'are generally conducted for profit.'"  Id. (citation omitted); see also Am. Geophysical Union, 60 F.3d at 921 ("Since many, if not most, secondary users seek at least some measure of commercial gain from their use, unduly emphasizing the commercial motivation of a copier will lead to an overly restrictive view of fair use.").

never attempted, or been asked by anyone, to license his work.  See Gerba Decl. Ex. E, Nos. 2-3, 5-6 (admitted pursuant to Fed. R. Civ. P. 36(a)(3)); White Dep. 78:22-79:7, 128:11-129:4, 130:9-18, 164:19-165:19, 202:21-203:18.

Third, commerciality is given little weight when the use serves a public interest.  See West Sum. J. Mem. 13-14; Am. Geophysical Union, 60 F.3d at 922 ("[C]ourts are more willing to find a secondary use fair when it produces a value that benefits the broader public interest."); Swatch, 861 F. Supp. 2d at 341 (finding first factor weighed in favor of defendant (Bloomberg) on ground that its commercial use of plaintiff's earnings call "advanced the public interest of furthering full, prompt and accurate dissemination of business and financial news").  Plaintiff does not dispute that West's enhancement of access to court filings serves a valuable public interest.

In short, the mere fact that West charges subscribers for access to its database is of little consequence to the overall fair-use assessment.

### 2. West used the works for a non-superseding, transformative purpose

Conceding that whether the use is transformative is most critical to the first-factor analysis, Plaintiff disputes the transformative nature of West's use.  See Pl. Mem. 10-13.  But Plaintiff's assertion that West "simply made verbatim copies of the Works" that were "in no way transformative," id., is not only counterfactual but contrary to its allegation that West "copied, digitized, *transformed*, and packaged [the Works] into databases that are sold for profit," Am. Compl. ¶ 23, ECF No. 37 (emphasis added).

More important, Plaintiff errs in contending that West's use of the Motions cannot be transformative because West assertedly "adds nothing of value to the copyrighted expression owned by Plaintiff."  Pl. Mem. 12.  As the Fourth Circuit recently observed:  "This argument is clearly misguided.  The use of a copyrighted work need not alter or augment the work to be

transformative in nature.  Rather, it can be transformative in function or purpose without altering

or actually adding to the original work."  Vanderhye, 562 F.3d at 639; see id. at 640 (finding

archiving of verbatim copies of student papers in a database used to detect plagiarism to be

transformative and fair use).  The Second Circuit and other courts are in accord.  See Bill

Graham Archives, 448 F.3d at 609 (finding transformative use of entire works where defendant's

"purpose in using the copyrighted images at issue . . . is plainly different from the original

purpose for which they were created"); Kelly, 336 F.3d at 819 ("Because Arriba's use is not

superseding Kelly's use but, rather, has created a different purpose for the images, Arriba's use is

transformative."); see also Calkins v. Playboy Enters. Int'l, 561 F. Supp. 2d 1136, 1141 (E.D.

Cal. 2008) ("[B]ecause [the defendant] used the Photograph in a new context to serve a different

function (inform and entertain Playboy readers) than the original function (gifts for family and

friends), [the defendant's] use did not supersede the function of the original Photograph, and

therefore [its] use is transformative."); 4 Melville B. & David Nimmer, Nimmer on Copyright §

13.05[B][1] at 13-212 (2011) ("[I]f, regardless of medium, defendant's work performs a different

function from plaintiff's, then notwithstanding its use of substantially similar material, the

defense of fair use may prevail.").[3]

        Although West does add important transformative elements to the documents it includes

in Litigator™, such as making them text-searchable and linking them to other documents in the

---

[3] The dictum in Infinity Broadcasting Corp. v. Kirkwood that "difference in purpose is not quite
the same thing as transformation," 150 F.3d 104, 108 (2d Cir. 1998), does not reflect the more
recent evolution in how transformativeness is conceptualized in the Second Circuit in cases such
as Bill Graham Archives and Blanch v. Koons, 467 F.3d 244, 252-53 (2d Cir. 2006).  See also
Authors Guild, Inc. v. Hathitrust, No. 11 CV 63551 (HB), 2012 WL 4808939, at *11 (S.D.N.Y.
Oct. 10, 2012) ("A transformative use may be one that actually changes the original work.
However, a transformative use can also be one that serves an entirely different purpose.").

database,[4] West's argument does not rely solely, or even primarily, on these physical

transformations.  Nor does West claim it has made a transformative use simply because it has

made documents accessible in a different physical format, as Plaintiff wrongly suggests.  See Pl.

Mem. 12-13.  Rather, West contends that its use is transformative because it equipped the

Motions to serve a completely different, non-superseding purpose than that for which they were

created: the provision of legal services.  See Bill Graham Archives, 448 F.3d at 610 (finding

secondary use transformative because it served a "separate and distinct" purpose from the

original).

There is no dispute that the purpose of West's use of the Motions as part of its database

of public court filings is entirely "separate and distinct" from Plaintiff's original purpose in

creating them, which was to provide legal representation to its clients.  See White Dep. 69:14-24,

76:13-77:21, 202:12-20.  West's database does not use the Motions to substitute for Plaintiff's

legal advocacy or for any potential market into which Plaintiff might sell copies of its briefs;

rather, it offers an entirely new, transformative product.  See Leighton Decl. ¶¶ 3, 6-7, 11;

Blackburn Decl. ¶¶ 4-6, 8.  In Blanch v. Koons, the Second Circuit found that the "sharply

different objectives that Koons had in using, and Blanch had in creating, [the copyrighted work]

confirms the transformative nature of the use."  467 F.3d 244, 252 (2d Cir. 2006) (citation

omitted).  No differently, the distinct objectives that West has in using, and White had in

creating, the Motions confirm the transformative nature of West's use.

Plaintiff's reliance on cases such as American Geophysical Union and Mp3.com is

unavailing.  Plaintiff argues that American Geophysical Union is "particularly instructive on the

issue of 'transformative' use," see Pl. Mem. 11, but, unlike this case, the copies at issue in

---

[4] See Leighton Decl. ¶¶ 6-7.

American Geophysical Union were made by the defendant "for the same basic purpose that one would normally seek to obtain the original." 60 F.3d at 918. The court observed that the defendant's copying was "part of a systematic process of encouraging employee researchers to copy articles so as to multiply available copies while avoiding payment." Id. at 920. Because an untransformed copy of plaintiff's work by the defendant in that case was "likely to be used simply for the same intrinsic purpose as the original," there was "limited justification for a finding of fair use." Id. at 923. By contrast, West's copies were offered to an entirely different audience, and for an entirely different purpose, than were the originals. There is, moreover, no avoidance of payment to Plaintiff. As noted above, anyone can copy the Motions from PACER without Plaintiff's consent and without compensation to him.

This case is likewise easily distinguished from Mp3.com: West's enhancement of the Motions and their inclusion in West's text-searchable, hyperlinked research database is not mere retransmission in another medium; it is transformative use for an entirely different audience and entirely different purposes. See Authors Guild, 2012 WL 4808939, at *11-*12 & n.24. Moreover, unlike the plaintiffs in MP3.com, White concedes he has made no effort to license its Motions or to develop a potential market for them. See Gerba Decl. Ex. E, Nos. 2-3 (admitted pursuant to Fed. R. Civ. P. 36(a)(3)); White Dep. 78:22-79:7, 202:21-203:18.

* * *

In sum, the purpose and character of West's use of Plaintiff's Motions strongly favors fair use.

### B.     The Factual Nature of the Copyrighted Works Weighs in Favor of Fair Use

Plaintiff implicitly concedes that the Motions are factual in nature, which tips factor two in favor of fair use. See West Sum. J. Mem. 17. Plaintiff's sole argument as to this factor is that the Motions remain unpublished (which West does not dispute). See Pl. Mem. 13-17. Although

10

the unpublished nature of the Motions is relevant to Plaintiff's eligibility for statutory damages and attorneys' fees, see West Sum. J. Mem. 21-23, it does not bear on West's fair-use defense because Plaintiff had already filed the Motions and made them available to the public without restriction prior to any act of copying by West.  See, e.g., Rotbart v. J.R. O'Dwyer Co, Inc., No. 94 Civ. 2091 (JSM), 1995 WL 46625, at *4 (S.D.N.Y. Feb. 7, 1995).

Courts have disfavored unauthorized use of unpublished works for one of two reasons, neither of which applies here.  First, courts have recognized that the use of unpublished works is less likely to be fair use if it interferes with the author's right to control and profit from the first public appearance of the work.  See, e.g., Harper & Row, Publ'rs, Inc. v. Nation Enters., 471 U.S. 539, 555, 564 (1985); see also, e.g., Calkins, 561 F. Supp. 2d at 1142.  In Harper & Row, the Court determined that a pre-publication "scoop" of President Ford's memoirs by *The Nation* magazine was not a fair use of the copyrighted material in part because it interfered with the right of President Ford publisher to control the "first public appearance" of the newsworthy material and resulted in a cancelled contract for a similar (but licensed) use of excerpts by another magazine.  471 U.S. at 564.  Second, some courts have recognized, at least implicitly, a privacy interest in unpublished materials that were never intended for publication at all, such as diaries and personal letters.  See, e.g., Salinger v. Random House, Inc., 811 F.2d 90 (2d Cir. 1987) (unpublished letters).

The logic of these cases does not apply to Plaintiff's Motions.  See Nunez v. Caribbean Int'l News Corp., 235 F.3d 18, 24 (1st Cir. 2000).  Although the Motions are unpublished, there has been no interference by West with Plaintiff's right to control the first public appearance of them, and no privacy interest is implicated.  The Motions already had made their "first public appearance" and were widely available to any member of the public at the courthouse and

through PACER.  See Gerba Decl. Ex. E, Nos. 5-6 (admitted pursuant to Fed. R. Civ. P.

36(a)(3)); White Dep. 71:3-72:3, 76:24-77:11.  In marked contrast to the copying at issue in

Harper & Row, West's copying had neither the "intended purpose" nor even the "incidental

effect" of supplanting Plaintiff's right to control the first public appearance of the Motions.

Harper & Row, 471 U.S. at 562; see also Vanderhye, 562 F.3d at 641.

 Accordingly, the second factor favors fair use.

### C. Use of the Entire Work Does Not Weigh Against Fair Use in This Context

 Plaintiff contends erroneously that West's "copying of the entirety of the Works weighs

very heavily against a finding of fair use."  Pl. Mem. 18.  Plaintiff simply ignores the many cases

in which courts have held that copying the entire work does not weigh against a finding of fair

use if the copying is necessary to achieve the transformative purpose of the use.  See West Sum.

J. Mem. 18 (citing Bill Graham Archives, 448 F.3d at 613; Kelly, 336 F.3d at 821; Nunez, 235

F.3d at 24; Swatch, 861 F. Supp. 2d at 342); see also, e.g., Perfect 10, Inc. v. Amazon.com, Inc.,

508 F.3d 1146, 1167-68 (9th Cir. 2007); Authors Guild, 2012 WL 4808939, at *12; Sedgwick

Claims Mgmt. Servs., Inc. v. Delsman, No. C 09-1468 SBA, 2009 WL 2157573, at *6 (N.D. Cal.

2009); Calkins, 561 F. Supp. 2d at 1142-43; Haberman v. Hustler Magazine, Inc., 626 F. Supp.

201, 212 (D. Mass. 1986).  West explained in its moving brief why copying the Motions in their

entirety is necessary to fulfill West's transformative purpose, see West Sum. J. Mem. 18-19, and

refers the Court to those arguments.

 The third factor is neutral.

### D. The Absence of Actual or Potential Market Harm Confirms That the Use Is Fair

In its moving brief, West discussed the absence of any secondary market for Plaintiff's

works.  West explained that Plaintiff's inability to articulate any way in which a market for, or

the value of, its works has been adversely affected by West's conduct demonstrates an absence of market harm.  See West Sum. J. Mem. 16-17.  Tellingly, Plaintiff does not cite a single case or shred of evidence to support its discussion of market harm.

Plaintiff first contends that because West and Lexis offer databases that contain legal briefs and pleadings, there must be a market for such works and asserts that West and Lexis have foreclosed the development of a licensing market.  See Pl. Mem. 19.  But Plaintiff's invocation of an imagined "competing service" that would pay for its motions cannot support a finding of potential market harm.  The market-harm inquiry is limited to possible impacts on "traditional, reasonable, or likely to be developed markets."  Am. Geophysical Union, 60 F.3d at 930.  The purely hypothetical market to which Plaintiff alludes is none of those.  Plaintiff's suggestion that, in the absence of West and Lexis, erstwhile competitors and a licensing regime would emerge is rank speculation.[5]  See Authors Guild, 2012 WL 4808939, at *13.

Plaintiff has no right to interfere with West's exploitation of a transformative market, and the imagined loss of prospective revenues from a hypothetical future competitor in that same transformative market is not cognizable market harm.  As the Court of Appeals has observed:

> Were a court automatically to conclude in every case that potential licensing revenues were impermissibly impaired simply because the secondary user did not pay a fee for the right to engage in the use, the fourth factor would *always* favor the copyright owner. . . . [C]opyright owners may not preempt exploitation of transformative markets . . . .

Bill Graham Archives, 448 F.3d at 614-15 (citation and quotation omitted); see also Authors Guild, 2012 WL 4808939, at *13.

---

[5] The only evidence on this point indicates that no such licensing regime would emerge. Blackburn Decl. ¶¶ 7, 9; Leighton Decl. ¶ 14.

Plaintiff is left to contend that, by making the Motions "readily available to competing attorneys, those competing attorneys have the ability to obtain Plaintiff's work and offer Plaintiff's work product and expertise to their own clients." Pl. Mem. 20. This is no more than a complaint about public access to court filings. Copyright law does not prevent other attorneys from using legal theories and ideas gleaned from Plaintiff's filings; ideas, as opposed to the author's particular expression of them, are not protected by copyright. See 17 U.S.C. § 102(b); Eldred v. Ashcroft, 537 U.S. 186, 219 (2003) ("[Copyright law] distinguishes between ideas and expression and makes only the latter eligible for copyright protection."). Nor does this purported prospective harm flow from West's conduct. Any attorney interested in competing with White could simply log onto PACER or visit a courthouse to obtain copies of Plaintiff's works. And even this harm is speculative: White cannot identify a single instance in which a competing attorney used West to obtain copies of the Motions (or any other filing) in order to compete with him.

The complete absence of harm to any actual or potential market for the Motions weighs heavily in favor of fair use. See, e.g., Blanch, 467 F.3d at 258.

## E.    Balance of Factors

Three of the four statutory fair use factors weigh heavily in favor of fair use, and the remaining factor (the third) is neutral. Plaintiff does not allude to any other equitable consideration that weighs against fair use, nor could it credibly do so.[6] In light of the foregoing, Plaintiff's motion for summary judgment should be denied, and West's motion for summary judgment on its fair-use defense should be granted.

---

[6] Other courts have considered factors such as whether: (i) the works were fairly acquired by the defendant (they were); (ii) the defendant attempted to palm off the plaintiff's work as its own (West did not); and (iii) the defendant acted in bad faith (West did not). See, e.g., Haberman, 626 F. Supp. at 214.

## II.   WEST'S OTHER DEFENSES

### A.   West – Not Plaintiff – Is Entitled to Summary Judgment on West's Affirmative Defenses Concerning the Unavailability of Actual Damages, Statutory Damages, Attorney's Fees, and Injunctive Relief

In a single sentence, Plaintiff moves for summary judgment on West's affirmative defenses concerning the unavailability of various forms of relief in this case.  Pl. Mem. 22 (seeking dismissal of, inter alia, West's Tenth, Eleventh, Twelfth, and Thirteenth Affirmative Defenses).  In support of its motion for summary judgment, West demonstrated that, even if the Court were to deny summary judgment to West on its fair-use defense, the record is ripe for the Court now to rule, as a matter of law, that Plaintiff is not entitled to actual damages, statutory damages, attorney's fees, or injunctive relief even if Plaintiff were to secure a favorable ruling on liability.  See West Sum. J. Mem. 21-25.  West refers the Court to those arguments.  Plaintiff's ipse dixit assertion that it is entitled to judgment as a matter of law on those defenses has no merit.

### B.   Plaintiff Is Not Entitled to Summary Judgment on West's Defenses Concerning Implied License, the Ownership of the Copyrights at Issue, and the Lack of Valid Copyright Registrations

Plaintiff asserts that it is entitled to summary judgment on West's defenses concerning implied license (Ninth Affirmative Defense), ownership of the copyrights at issue (Second Affirmative Defense), and the lack of valid copyright registrations (First Affirmative Defense).  Pl. Mem. 20-22.  West asserted its entitlement to summary judgment on the basis of implied license and joined in the arguments made by Defendant Reed Elsevier Inc. in its summary judgment motion.  See West Sum. J. Mem. 20 n.9.  West similarly joins in Reed Elsevier's opposition to Plaintiff's motion for summary judgment on the defense of implied license and incorporates the arguments in opposition by reference herein.  At a minimum, there are factual questions that preclude summary judgment for Plaintiff on West's Ninth Affirmative Defense.

Plaintiff also fails in its effort to defeat West's First and Second Affirmative Defenses by relying on its copyright registrations for the Motions and the presumption of ownership conferred by a valid copyright registration.  As Plaintiff acknowledges, the presumption of copyright ownership conferred by a copyright registration may be rebutted.  Pl. Mem. 5.  On this record, Plaintiff is not even entitled to a presumption of ownership because its registrations inaccurately describe the authorship of the Motions and incorrectly claim a date of first publication for works that Plaintiff now concedes, see Pl. Mem. 14-15, are unpublished.  See Wilson v. Brennan, 666 F. Supp. 2d 1242, 1251-52 (D.N.M. 2009) (finding that the "correct approach" to dealing with material omissions, even if inadvertent, from a registration application "is to deprive the party of the presumption of validity that ordinarily attaches to a registered copyright . . . and to require the party to establish that the works are entitled to copyright protection").

Plaintiff's co-counsel in the Beer v. XTO Energy, Inc. litigation – Martin High – testified at length concerning authorship of the Motions.  See High Dep. 26:8-31:22, 65:22-79:22.  He explained that he – not Edward White – was the primary drafter of the Beer Motion in Limine and that he drafted the legal argument section of the Beer Motion for Summary Judgment.  See id.  Plaintiff does not own the copyrights in documents written by Mr. High under the work-for-hire doctrine because Mr. High is not an employee of Plaintiff, and he has no written agreement with Plaintiff concerning copyright ownership.  See 17 U.S.C. § 101; High Dep. 10:4-14, 19:19-22; White Dep. 20:20-22, 22:9-12.  The extent of White's contributions to the Motions (as opposed to High's), and whether White's contributions are sufficiently original to warrant copyright protection is a matter that remains in dispute.  Nor is there evidence to show whether either Motion is a "joint work" within the meaning of section 101.

These fact issues are sufficient to rebut any presumption of ownership and raise genuine issues of fact that defeat Plaintiff's motion for summary judgment on West's First and Second Affirmative Defenses.[7]

### C.   Plaintiff's Abandonment of Infringement Claims Based on All But Two Works Obviated West's Remaining Affirmative Defenses

During discovery, after West served its answer to the Amended Complaint, Plaintiff drastically narrowed the scope of this action, limiting the works at issue from all of the registered works it purports to own to just the two Motions  See Bloom Decl. Exs. C, D.  West is not pursuing its remaining affirmative defenses as to these two works.

### CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment should be denied.


Dated:  October 23, 2012

                                        Respectfully submitted,

                                        WEIL,  GOTSHAL & MANGES LLP

                                        By:   _/s/ R. Bruce Rich_
                                             R. Bruce Rich
                                             Benjamin E. Marks
                                             Jonathan Bloom
                                             John R. Gerba
                                             767 Fifth Avenue
                                             New York, New York 10153
                                             (212) 310-8000
                                             benjamin.marks@weil.com

                                        *Attorneys for Defendant West Publishing Corp.*

---

[7] These fact issues as to authorship and ownership illustrate the complications that would be involved in maintaining a database like Litigator™ if the Court were to recognize a right in the copyright owners in legal filings to require West to license their works.