UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EDWARD L. WHITE, P.C.,<br><br>                         Plaintiff,<br><br>        v.<br><br>WEST PUBLISHING CORPORATION<br>d/b/a "West," and REED ELSEVIER INC.<br>d/b/a LexisNexis,<br><br>                         Defendants. | ECF CASE<br><br><br>Civil Action No. 12-CV-1340 (JSR) |

---

**DEFENDANT REED ELSEVIER INC.'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

---

James E. Hough
Craig B. Whitney
Cindy P. Abramson
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York  10104
Telephone:   (212) 468-8000
Facsimile:    (212) 468-7900
jhough@mofo.com
cwhitney@mofo.com
cabramson@mofo.com

James F. McCabe (admitted *pro hac vice*)
Paul Goldstein (admitted *pro hac vice*)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105
Telephone:   (415) 268-7000
Facsimile:    (415) 268-7522
jmccabe@mofo.com
pgoldstein@mofo.com

*Attorneys for Defendant*
*LexisNexis, a div. of REED ELSEVIER INC.*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ............................................................................ 1

ARGUMENT .................................................................................................... 3

I.     LEXIS'S USE OF THE BRIEFS IS PERMISSIBLE UNDER THE FAIR USE
       DOCTRINE ............................................................................................ 3

       A.     The Purpose and Character of Lexis's Use of the Briefs Weighs in Favor
              of Fair Use .................................................................................... 3

              1.     Lexis's use of the Briefs was transformative ............................ 3

              2.     Lexis's commercial use does not weigh against fair use ............ 6

       B.     The Nature of the Briefs Weighs in Favor of Fair Use ...................... 7

              1.     The Briefs are published and were made available to the public
                     prior to Lexis's use .......................................................... 7

              a.     A work can be "published" for purposes of fair use even if Section
                     101 "publication" is not established ...................................... 7

              b.     Plaintiff's copyright registration certificates establish that the
                     Briefs were published ........................................................ 9

              2.     The Briefs are factual works .............................................. 10

       C.     Lexis Used the Amount of the Briefs Necessary for Its Transformative
              Use ............................................................................................. 11

       D.     Lexis's Use Had No Effect on a Potential Market for or the Value of the
              Briefs .......................................................................................... 11

       E.     Public Policy and the First Amendment Also Favor Fair Use ............ 14

II.    LEXIS HAD AN IMPLIED LICENSE TO USE PLAINTIFF'S BRIEFS .............. 15

III.   DISPUTED ISSUES OF FACT REMAIN REGARDING COPYRIGHT
       INFRINGEMENT ................................................................................... 19

       A.     Lexis's Copies of the Briefs Were Authorized ............................... 19

       B.     Lexis Did Not Distribute the Briefs ............................................. 20

       C.     Lexis Did Not Publicly Display the Briefs ..................................... 22

IV.    PLAINTIFF IS NOT ENTITLED TO SUMMARY JUDGMENT ON LEXIS'S
       REMAINING AFFIRMATIVE DEFENSES .................................................. 22

CONCLUSION ............................................................................................... 25

## TABLE OF AUTHORITIES

CASES                                                                                          Page(s)

*American Geophysical Union v. Texaco Inc.*,
   60 F.3d 913 (2d Cir. 1994)......................................................................................4, 5, 12, 13

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986).....................................................................................................23

*Atl. Recording Corp. v. Brennan*,
   534 F. Supp. 2d 278 (D. Conn. 2008) ........................................................................21

*Atl. Recording v. Howell*,
   554 F. Supp. 2d 976 (D. Ariz. 2008) .........................................................................21

*Author's Guild, Inc. v. Hathitrust*,
   No. 11 CV 6351, 2012 U.S. Dist. LEXIS 146169 (S.D.N.Y. Oct. 10, 2012).....................5, 12

*Basic Books, Inc. v. Kinko's Graphic Corp.*,
   758 F. Supp. 1522 (S.D.N.Y. 1991)..............................................................................6

*Bill Graham Archives v. Dorling Kindersley Ltd.*,
   448 F.3d 605 (2d Cir. 2006).................................................................................3, 6, 12

*Blanch v. Koons*,
   467 F.3d 244 (2d Cir. 2006).................................................................................4, 6, 12

*Campbell v. Acuff-Rose Music, Inc.*,
   510 U.S. 569 (1994).........................................................................................3, 5, 6, 11

*Capital Records, Inc. v. Thomas*,
   579 F. Supp. 2d 1210 (D. Minn. 2008).......................................................................21

*Carol Barnhart, Inc. v. Economy Cover Corp.*,
   773 F.2d 411 (2d Cir. 1985)........................................................................................10

*Cartoon Network LP, LLLP v. CSC Holdings, Inc.*,
   536 F.3d 121 (2d Cir. 2008)........................................................................................21

*Castle Rock Entm't, Inc. v. Carol Publ'g Grp.*,
   150 F.3d 132 (2d Cir. 1998)........................................................................................12

*Design Options v. Bellepointe, Inc.*,
   940 F. Supp. 86 (S.D.N.Y. 1996) ..........................................................................17, 18

## TABLE OF AUTHORITIES
### Continued

CASES                                                        Page(s)

*Eldred v. Ashcroft*,
   537 U.S. 186 (2003) .................................................................................15

*EMI Latin v. Bautista*,
   No. 03 Civ. 0947, 2003 U.S. Dist. LEXIS 2612 (S.D.N.Y. Feb. 24, 2003) ...........................16

*F.D.I.C. v. Giammettei*,
   34 F.3d 51 (2d Cir. 1994) ...........................................................................22

*Field v. Google*,
   412 F. Supp. 2d 1106 (D. Nev. 2006) .................................................16, 17, 21

*Gambale v. Deutsche Bank AG*,
   377 F.3d 133 (2d Cir. 2004) ........................................................................14

*Gaste v. Kaiserman*,
   863 F.2d 1061 (2d Cir. 1988) .......................................................................10

*Hickey v. State Univ. of N.Y. at Stony Brook Hosp.*,
   No. 10-CV-1282, 2012 U.S. Dist. LEXIS 105182 (E.D.N.Y. July 27, 2012) ........................22

*Intown Enters., Inc. v. Barnes*,
   721 F. Supp. 1263 (N.D. Ga. 1989) ...........................................................8 n.3

*Keane Dealer Servs. v. Harts*,
   968 F. Supp. 944 (S.D.N.Y. 1997) ...................................................................15

*Kunycia v. Melville Realty Co.*,
   755 F. Supp. 566 (S.D.N.Y. 1990) ...........................................................8 n.3

*Laine v. Pride*,
   No. 09-CV-3057, 2010 U.S. Dist. LEXIS 3657 (S.D.N.Y. Jan. 15, 2010) ...........................20

*McIntosh v. N. Cal. Universal Enters. Co.*,
   670 F. Supp. 2d 1069 (E.D. Cal. 2009) .......................................................8 n.3

*Nat'l Car Rental Sys. v. Computer Assocs. Int'l, Inc.*,
   991 F.2d 426 (8th Cir. 1993) ........................................................................20

*Nixon v. Warner Communications*,
   435 U.S. 589 (1978) .................................................................................14

## TABLE OF AUTHORITIES
### Continued

CASES                                                                           Page(s)

*NXIM Corp. v. The Ross Inst.*,
    364 F.3d 471 (2d Cir. 2004) .................................................................................9

*Online Policy Group v. Diebold, Inc.*,
    337 F. Supp. 2d 1195 (N.D. Cal. 2004) .............................................................9

*Parker v. Yahoo!, Inc.*,
    No. 07-2757, 2008 U.S. Dist. LEXIS 74512 (E.D. Pa. Sept. 25, 2008) ...............17

*Perfect 10 v. Amazon.com, Inc.*,
    508 F.3d 1146 (9th Cir. 2007), *cert. denied*, 132 S. Ct. 1713 (2012) ......................5

*Psihoyos v. National Examiner*,
    No. 97 Civ. 7624, 1998 U.S. Dist. LEXIS 9192 (S.D.N.Y. June 22, 1998) ......................8, 9

*Publicker Indus., Inc. v. Cohen*,
    733 F.2d 1059 (3d Cir. 1984) ............................................................................14

*Religious Tech. Ctr. v. Lerma*,
    908 F. Supp. 1362 (E.D. Va. 1995) ...................................................................20

*Richmond Newspapers, Inc. v. Virginia*,
    448 U.S. 555 (1980) ..........................................................................................14

*Righthaven LLC v. Klerks*,
    No. 2:10-cv-00741, 2010 U.S. Dist. LEXIS 105307 (D. Nev. Sept. 17, 2010) ......................17

*Rotbart v. J.R. O'Dwyer Co.*,
    No. 94 Civ. 2091, 1995 U.S. Dist. LEXIS 1315 (S.D.N.Y. Jan. 31, 1995) .............................9

*Rushford v. New Yorker Magazine, Inc.*,
    846 F.2d 249 (4th Cir. 1988) .......................................................................14, 15

*Sarl Louis Feraud Int'l v. Viewfinder Inc.*,
    627 F. Supp. 2d 123 (S.D.N.Y. 2008) ...............................................................7, 8

*Satchel v. Sch. Bd. of Hillborough Cnty*,
    No. 8:05-cv-2239, 2007 U.S. Dist. LEXIS 11696 (M.D. Fla. Feb. 20, 2007),
    *aff'd*, 251 Fed. Appx. 626 (11th Cir. 2007) .......................................................22

*SHL Imaging, Inc. v. Artisan House, Inc.*,
    117 F. Supp. 2d 301 (S.D.N.Y. 2000) ...............................................................18

## TABLE OF AUTHORITIES
### Continued

CASES                                                                                    Page(s)

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
    464 U.S. 417 (1984)...........................................................................................11

*Stewart v. Abend*,
    495 U.S. 207 (1990)...........................................................................................10

*Sygma Photo News, Inc. v. High Soc. Magazine, Inc.*,
    778 F.2d 89 (2d Cir. 1985)................................................................................10

*Taylor v. Medtronics, Inc.*,
    861 F.2d 980 (6th Cir. 1988) ......................................................................13 n.5

*The Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*,
    No. 11 Civ. 1006, 2012 U.S. Dist. LEXIS 70045 (S.D.N.Y. May 17, 2012)...........................6

*UMG Recordings, Inc. v. MP3.com, Inc.*,
    92 F. Supp. 2d 349 (S.D.N.Y. 2000)...................................................................5

*United States v. Am. Soc'y of Composers (In re Application of Cellco P'ship d/b/a*
    *Verizon Wireless)*,
    663 F. Supp. 2d 363 (S.D.N.Y. 2009)...........................................................21, 22

*United States v. Amodeo*,
    71 F.3d 1044 (2d Cir. 1995)..............................................................................14

*Vanderhye v. iParadigms, LLC*,
    562 F.3d 630 (4th Cir. 2009) .......................................................................7, 9, 12

*Wright v. Warner Books*,
    953 F.2d 731 (2d Cir. 1991)..............................................................................12

STATUTES

17 U.S.C. § 102...............................................................................................15

17 U.S.C. § 106...............................................................................................19

17 U.S.C. § 107.................................................................................................8

17 U.S.C. § 410...............................................................................................10

# TABLE OF AUTHORITIES
## Continued

**OTHER AUTHORITIES**                                                            **Page(s)**

4 MELVILLE B. NIMMER AND DAVID NIMMER, NIMMER ON COPYRIGHT  (Matthew Bender,
    Rev. Ed.) ...................................................................................................8, 11, 12, 15, 16

4 WILLIAM F. PATRY, PATRY ON COPYRIGHT § 13:11.50 (2012)...................................................21

FED. R. CIV. P. 56...................................................................................................................23

Defendant LexisNexis, a division of Reed Elsevier Inc. ("Lexis"), hereby submits this Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment.  The facts underlying this opposition are fully set forth in Lexis's previously filed Rule 56.1 Statement of Undisputed Facts in Support of Its Motion for Summary Judgment, dated October 5, 2012 (Dkt. No. 57) ("St."), and Lexis's Rule 56.1 Counter-Statement ("Ctr. St.") and Declaration of James Hough in Support of Reed Elsevier Inc.'s Opposition to Plaintiff's Motion for Summary Judgment ("Hough Opp. Decl.") filed concurrently herewith.

## PRELIMINARY STATEMENT

The parties agree that the material facts relating to fair use are not in dispute, but disagree on the legal import of those facts.  Lexis obtained two of Plaintiff's court-filed legal briefs (the "Briefs")—which any member of the public may obtain and copy—and transformed them into part of a sophisticated research tool that serves an entirely different purpose and market from that of the original Briefs.  Despite Plaintiff's rhetoric, Lexis's actions cannot be equated to those of a copyright pirate.  Lexis purchased (not stole, as Plaintiff suggests) the Briefs from PACER after Plaintiff publicly filed them, without seal, in the Western District of Oklahoma.  Lexis then enhanced the Briefs and incorporated them into the Briefs, Pleadings and Motions ("BPM") legal research database product.  As Lexis explained in its motion for summary judgment, its use of the Briefs is fair, as supported by the four statutory fair use factors as well as additional factors such as the public benefit provided by Lexis's use and the public's right to access and copy legal documents.

Plaintiff's arguments against fair use are wrong, and its effort to equate Lexis's use of the Briefs with copying and selling "the latest John Grisham novel" available at a public library

highlights the flaws in Plaintiff's argument.  (Pl.'s Mot. at 1.)[1]  While a novel can be borrowed from a public library, the borrower is not permitted to copy and sell the entire novel because that would supersede the author's purpose for writing the novel in the first place—to sell books. Here, Plaintiff did not create the Briefs to sell or license them; they were created to advocate on behalf of clients in a court, and Lexis transformed the Briefs to use them for an entirely different purpose.  Further, in the John Grisham analogy, the market for the sale of Mr. Grisham's books would clearly be harmed by a borrower "making innumerable copies" of the book and selling those copies.  But there is no existing bookstore or other marketplace where Plaintiff could sell or license the Briefs, which are already available on PACER, and therefore there has been no harm to any market for the Briefs.  Simply stated, the difference between copying and selling a best-selling novel that was borrowed from the public library and Lexis's use of Plaintiff's court-filed legal documents to incorporate into a searchable research database that causes no harm to the value of the original works is the difference between copyright infringement and fair use.

Lexis's use also differs from that of a copyright pirate because Plaintiff impliedly licensed Lexis's use by filing the Briefs knowing that the public, including Lexis, has the right to access and copy them, while assuming that Lexis made enhanced versions of all court-filed legal documents, including the Briefs, available in its BPM product.[2]  Plaintiff's inaction in the face of this knowledge and assumption is sufficient to establish the existence of an implied license.

Plaintiff's motion for summary judgment should also be denied because it has failed to establish that it is entitled to judgment on the issue of copyright infringement.  Plaintiff has not shown that Lexis's acts described herein constitute unauthorized reproduction, distribution

---

[1] Citations to "Pl.'s Mot." refer to Plaintiff's Memorandum of Law in Support of Motion for Summary Judgment, dated Oct. 5, 2012 (Dkt. No. 55).

[2] Plaintiff's assumption was incorrect; Lexis is selective about which legal documents are included in the BPM product.  (St. 27.)

and/or public display in violation of the exclusive rights granted to a copyright owner under Section 106 of the Copyright Act.  Accordingly, for these reasons and those set forth more fully below, Plaintiff's motion should be denied.

<u>ARGUMENT</u>

**I.     LEXIS'S USE OF THE BRIEFS IS PERMISSIBLE UNDER THE FAIR USE DOCTRINE.**

The parties agree that whether Lexis's use of the Briefs was fair under Section 107 of the Copyright Act is a question that can and should be decided on summary judgment.  As detailed in Lexis's Memorandum of Law in Support of Defendant Reed Elsevier Inc.'s Motion for Summary Judgment (Dkt. No. 56) ("Lexis's Summary Judgment Motion"), the undisputed facts show that the four non-exclusive factors set forth in Section 107 support a finding of fair use, as do other relevant factors such as public benefit and the right to access and copy court documents. Plaintiff's arguments against fair use rely on incorrect analyses of the relevant case law, as detailed below.  When applied to the undisputed facts of this case, and when properly analyzed, the case law compels the conclusion that Lexis's use of the Briefs was fair.

**A.     The Purpose and Character of Lexis's Use of the Briefs Weighs in Favor of Fair Use.**

**1.     Lexis's use of the Briefs was transformative.**

The central inquiry for the first factor of the fair use analysis is whether Lexis's use of the Briefs was transformative.  *See Bill Graham Archives v. Dorling Kindersley Ltd*., 448 F.3d 605, 608 (2d Cir. 2006); *see also Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994) (transformative means the new work "adds something new, with a further purpose or different character" than the original, rather than "merely 'supersede[s] the objects' of the original

creation"). Lexis enhanced the Briefs through a multi-step technical and editorial process,[3] and Lexis's use of the Briefs served an entirely different purpose than that for which the Briefs were created. These facts compel the conclusion that Lexis's use was transformative.

After selecting the Briefs for inclusion in the BPM database, Lexis enhanced them by making them text and topic searchable, adding links to and from related opinions, expert testimony, and other related materials, and adding hyperlinks to cited cases and statutes. (St. 31-38.) Following selection and enhancement, the Briefs were added to a sophisticated research tool consisting of interconnected legal documents for students and professionals to research legal arguments, case law, statutes, pleading formats and so on. (St. 1, 2, 4, 42, 43.)

Plaintiff's use of the Briefs was entirely different. They were created to advocate a client's position in a court. (St. 67.) The stark contrast in the purposes of these two uses alone confirms that Lexis's use is transformative. *See Blanch v. Koons*, 467 F.3d 244, 252 (2d Cir. 2006) ("The sharply different objectives that Koons had in using, and Blanch had in creating, [Blanch's work] confirms the transformative nature of the use.").

Plaintiff argues that Lexis's use was not transformative because, according to Plaintiff, Lexis has "added nothing of value to the copyrighted expression" in the Briefs. (Pl.'s Mot. at 12.) Plaintiff relies on *American Geophysical Union v. Texaco Inc.*, 60 F.3d 913 (2d Cir. 1994) in support of this argument, but that reliance is misplaced. The defendant in *American Geophysical* was a company whose employees photocopied articles from the plaintiffs' scientific journals for future reference because the company did not purchase subscriptions for each employee. *Id.* at 915. The court found that the defendant's use served "the same basic purpose that one would normally seek to obtain the original—to have it available on his shelf for ready

---

[3] Lexis's enhancements to the Briefs are discussed in greater detail in Lexis's Summary Judgment Motion at pages 4-5.

reference," and was not transformative. *Id.* at 918. That is not the situation here. Lexis added substantial enhancements to the Briefs that cannot reasonably be equated to the mere photocopying involved in *American Geophysical*, and the purposes served by Lexis's use are drastically different from the purpose for which the originals were created. "[E]ven making an exact copy of a work may be transformative so long as the copy serves a different function than the original work." *Perfect 10 v. Amazon.com, Inc.*, 508 F.3d 1146, 1165 (9th Cir. 2007), *cert. denied*, 132 S. Ct. 1713 (2012).

Judge Baer's recent decision in *Author's Guild, Inc. v. Hathitrust*, No. 11 CV 6351, 2012 U.S. Dist. LEXIS 146169, at *46-49 (S.D.N.Y. Oct. 10, 2012) supports Lexis's position. The court held that making a digital copy of a book in order to enable full text searching was a transformative use in part because of the different purpose of the use—superior search capabilities. The *Hathitrust* court also "easily distinguish[ed]" the two cases cited by Plaintiff here in support of its transformative use argument—*American Geophysical* and *UMG Recordings, Inc. v. MP3.com, Inc.*, 92 F. Supp. 2d 349 (S.D.N.Y. 2000)—because the use to which the copies were put in those cases was no different than the use for the originals. *Hathitrust*, 2012 U.S. Dist. LEXIS 146169, at *47-48 n.24. The same basis for distinguishing those cases exists here: Lexis's enhancements made the Briefs text and topic searchable and linked them to other materials in order to create a research tool that allows students and practitioners to efficiently and effectively locate and analyze publicly filed legal documents. (St. 4, 31-38.) This use is different from using the Briefs to advocate for a client's position in a court, and it does not supersede the original purpose for which the Briefs were created. Lexis's use was, therefore, transformative.

## 2.    Lexis's commercial use does not weigh against fair use.

Where the use is transformative, the commercial nature of the use is less important to the fair use analysis.  *See Campbell*, 510 U.S. at 579.  Numerous courts have found a use to be fair even though commercial.  *See, e.g., Blanch*, 467 F.3d at 253 (fair use despite "substantial profit from the sale" of the allegedly infringing work); *Bill Graham Archives*, 448 F.3d at 612 (defendant's publication of book containing copyrighted images was "a commercial venture" but nonetheless fair); *The Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*, No. 11 Civ. 1006, 2012 U.S. Dist. LEXIS 70045, at *8, *16 (S.D.N.Y. May 17, 2012) (finding fair use despite defendant's status as a for-profit corporation whose subscribers pay for access to its online business newscasting service); *see also Campbell*, 510 U.S. at 584 (recognizing that if the commercial nature of a work carried a presumptive force against a finding of fair use, then "the presumption would swallow nearly all of the illustrative uses listed in the preamble paragraph of § 107, including news reporting, comment, criticism, teaching, scholarship, and research, since these activities 'are generally conducted for profit in this country'") (citation omitted).

The record establishes that many, if not most, accesses to legal documents in the BPM database are made by law students, who receive free access for educational purposes.  (St. 44, 45.)  This undercuts Plaintiff's position that Lexis's use is strictly commercial, and Plaintiff's reliance on *Basic Books, Inc. v. Kinko's Graphic Corp.*, 758 F. Supp. 1522 (S.D.N.Y. 1991) for the proposition that an educational purpose may still have a "commercial purpose" misses the point.  That case involved a private copy center charging college students for copies of course packets.  *Id.* at 1526-27.  Lexis, however, does not charge law students for access, and its use, unlike the defendant in *Basic Books*, did not have "the intended purpose of supplanting the copyright holder's commercially valuable right."  *Id.* at 1531 (citing *Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 562 (1985)) (emphasis omitted).

6

The first factor accordingly weighs in favor of fair use.

**B.      The Nature of the Briefs Weighs in Favor of Fair Use.**

      **1.      The Briefs are published and were made available to the public prior to Lexis's use.**

Plaintiff makes the misleading argument that there was no "publication" of the Briefs under the definition in Section 101 of the Copyright Act, which Plaintiff claims is relevant to the second fair use factor.  It is not.  The second factor does not turn on whether there has been a "publication" of a work.  Instead, case law under this factor asks whether the work was private or confidential at the time of its alleged unauthorized use by the defendant.  It is undisputed that the Briefs were publicly available and not confidential prior to Lexis's use, and this undisputed fact favors a finding of fair use.  Whether there was a "publication" for purposes of Section 101, while relevant to the availability of statutory damages and attorneys' fees under Section 412, is not relevant to whether the Briefs were available to the public prior to Lexis's use—which is what matters for the fair use analysis.  Moreover, even if Section 101 "publication" were relevant to the fair use analysis, Plaintiff's submissions to the Copyright Office establish that publication has occurred.

      **a.      A work can be "published" for purposes of fair use even if Section 101 "publication" is not established.**

Whether there was a "publication" of the Briefs under Section 101 is not the relevant inquiry for the fair use analysis.  The proper inquiry is whether the work is publicly available or, stated another way, whether the accused infringer usurped the copyright owner's right to keep the work confidential and control access to it.  *See*, *e.g.*, *Vanderhye v. iParadigms, LLC*, 562 F.3d 630, 641 (4th Cir. 2009) ("the primary basis for the close scrutiny courts give the use of an unpublished work is . . . an 'author's right to control the first public appearance of his expression'") (quoting *Harper & Row*, 471 U.S. at 562); *Sarl Louis Feraud Int'l v. Viewfinder*

*Inc.*, 627 F. Supp. 2d 123, 132 & n.12 (S.D.N.Y. 2008) (whether plaintiffs' works were

published according to Section 101 is irrelevant where plaintiffs publicly displayed their works

and were unable to demonstrate that the defendant's use interfered with plaintiffs' control "over

the circumstances of the first offering of their goods for sale"); *see also* 17 U.S.C. § 107 ("The

fact that a work is unpublished shall not itself bar a finding of fair use if such finding is made

upon consideration of all the [fair use] factors.").[4]

  The Briefs at issue here were publicly filed and remain available to be viewed and copied

by anyone via PACER or in person at the court.  (St. 22-25.)  Indeed, Lexis obtained the Briefs

from PACER in the same manner that any other member of the public could, and paid the same

fee.  (St. 26, 28.)  The Briefs are not confidential—a consideration more relevant to the fair use

analysis than whether a work is "published."  *See Psihoyos v. National Examiner*, No. 97 Civ.

7624, 1998 U.S. Dist. LEXIS 9192, at \*10-11 (S.D.N.Y. June 22, 1998) ("While it is undisputed

that the photo at issue had not been published prior to the [Defendant's use], the scope of the fair

use doctrine in this case should not be narrowed because of it. . . .  [I]f the author does not seek

confidentiality, fair use is not necessarily precluded as to an unpublished work."); 4 MELVILLE B.

NIMMER AND DAVID NIMMER, NIMMER ON COPYRIGHT § 13.05[A][2][b][ii] (Matthew Bender,

Rev. Ed.) (hereinafter "NIMMER") ("'[C]onfidential differs subtly from 'unpublished.'  If the

author does not seek confidentiality, fair use is not necessarily precluded even as to an

unpublished work.").

  Even if a work is "unpublished," where it has been made publicly available without

confidentiality restrictions, courts have regarded the work as "de facto published" for purposes of

---

[4] Not surprisingly, none of the cases Plaintiff cites for the proposition that the Briefs are
unpublished involves a fair use analysis.  *See Kunycia v. Melville Realty Co.*, 755 F. Supp. 566,
574 (S.D.N.Y. 1990); *Intown Enters., Inc. v. Barnes*, 721 F. Supp. 1263, 1266 (N.D. Ga. 1989);
*McIntosh v. N. Cal. Universal Enters. Co.*, 670 F. Supp. 2d 1069, 1098 (E.D. Cal. 2009).

the fair use analysis. *See Psihoyos*, 1998 U.S. Dist. LEXIS 9192, at *10-11 (unpublished photo

considered "de facto published" where a similar photo was published and the photo had been

distributed to a book publisher); *Rotbart v. J.R. O'Dwyer Co.*, No. 94 Civ. 2091, 1995 U.S. Dist.

LEXIS 1315, at *10 (S.D.N.Y. Jan. 31, 1995) (work considered "de facto published" where a

presentation was given to hundreds of people without confidentiality restrictions, "[t]hus, the fact

that Rotbart had 'published' his work, in the sense that he made it available to the public in []

several ways, *makes his work subject to fair use by defendant*") (emphasis added) (citing *Harper

& Row*, 471 U.S. at 563); *cf. NXIM Corp. v. The Ross Inst.*, 364 F.3d 471, 475 (2d Cir. 2004)

(work regarded as unpublished "in the sense that it is not available to the general public").

It is also undisputed that Plaintiff did not create the Briefs with the intention of selling or

licensing them.  (St. 67, 68.)  Lexis therefore did not usurp any right of first "publication"

because Plaintiff never had any intention to publish the Briefs beyond filing them in court.  *See

Online Policy Group v. Diebold, Inc.*, 337 F. Supp. 2d 1195, 1203 n.13 (N.D. Cal. 2004) (no

violation of the "first publication right" where copyright owner never intended to publish the

works at issue); *see also Vanderhye*, 562 F.3d at 641 (despite the unpublished status of plaintiffs'

works, the second fair use factor weighed in defendant's favor where the use "did not have the

'intended purpose' or 'incidental effect' of supplanting plaintiff's rights to first publication")

(quoting *Harper & Row*, 471 U.S. at 562) (emphasis omitted).

The fact that the Briefs are not confidential, are publicly available, and were not intended

for any "publication" other than court advocacy all weigh in favor of fair use.

### b. Plaintiff's copyright registration certificates establish that the Briefs were published.

Even if Section 101 "publication" were relevant, Plaintiff has already admitted before the

Copyright Office that the Briefs were "published."  Plaintiff prepared and filed copyright

registration certificates for each of the Briefs that state a date of first publication.  (Hough Opp. Decl., Exs. B, C.)  These publication dates (which correspond to the dates the respective briefs were filed via CM/ECF) are presumed to be valid.  *See* 17 U.S.C. § 410(c) (a "certificate of [copyright] registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate"); *Carol Barnhart, Inc. v. Economy Cover Corp.*, 773 F.2d 411, 414 (2d Cir. 1985); *Gaste v. Kaiserman*, 863 F.2d 1061, 1064 (2d Cir. 1988) (publication date on registration certificate subject to presumption of validity).

Lexis does not challenge the publication dates listed on the registration certificates, and those facts should therefore be deemed established for purposes of this motion.  *See Sygma Photo News, Inc. v. High Soc. Magazine, Inc.*, 778 F.2d 89, 92 (2d Cir. 1985) (affirming grant of summary judgment where there was no evidence to rebut the presumption of copyright validity).

### 2.     The Briefs are factual works.

As discussed in Lexis's Summary Judgment Motion (at 14-15), the Briefs are factual works, which favors fair use.  *See Stewart v. Abend*, 495 U.S. 207, 237 (1990).  Plaintiff does not and cannot dispute the primarily factual nature of the Brief.  Indeed, legal documents filed in courts are, by their very nature, significant primarily for their factual content, including theories, concepts and legal authorities described therein.  Any copyrightable expression in legal documents is far less significant to courts than is the non-copyrightable content.  Likewise, legal professionals who review already filed legal documents are not searching for clever turns of phrase—they are looking to see what arguments have been made, what authorities have been cited, and what facts have been relied upon by lawyers in cases similar to their own.

Therefore, because the Briefs are both factual and published—or "de facto published"— the second factor weighs in favor of fair use.

**C.      Lexis Used the Amount of the Briefs Necessary for Its Transformative Use.**

Plaintiff's argument on the third fair use factor—that Lexis copied the entirety of the

Briefs—misses the point.  The inquiry under the third factor is not how much of the work was

copied, but how much was *necessary* in order to effectuate a transformative use.  *See Campbell*,

510 U.S. at 586.  As set forth in Lexis's Summary Judgment Motion, it is indisputable that it was

necessary for Lexis to copy the entirety of the Briefs to create a fully searchable database and

provide the user access to complete and accurate legal formats and arguments as part of its

transformative use.  (St. 34, 35.)  Courts have repeatedly held that copying the entirety of a work

can be fair use where necessary to fulfill the transformative purpose of that use.  *See*, *e.g.*, *Sony*

*Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 449-50 (1984); *Bill Graham*

*Archives*, 448 F.3d at 613.  Because Lexis copied only what was reasonably necessary for its

transformative use of the Briefs, the third factor does not weigh against fair use.

**D.      Lexis's Use Had No Effect on a Potential Market for or the Value of the Briefs.**

Plaintiff does not argue that Lexis's use of the Briefs affected the Briefs' value in their

intended market, which was to provide a legal service to Plaintiff's clients.  Rather, Plaintiff

makes the circular argument that, because Lexis uses the Briefs for its sophisticated legal

research database, *ipso facto*, Lexis has harmed Plaintiff's ability to license its Briefs for that use.

Plaintiff does not cite a single case in support of this well-worn—and oft-rejected—argument.

Plaintiff relies instead on a respected copyright law treatise, but fails to cite the provision of that

treatise that recognizes the circularity of Plaintiff's very argument:

> A danger of circularity is posed here—a potential market, no matter how unlikely,
> has always been supplanted in every fair use case, to the extent that the defendant,
> by definition, has made some actual use of plaintiff's work, which use could in
> turn be defined in terms of the relevant potential market.  In other words, it is a
> given in every fair use case that plaintiff suffers a loss of a *potential* market if that
> potential is defined as the theoretical market for licensing the very use at bar.

NIMMER § 13.05[A][4] (emphasis in original).

To avoid this "danger of circularity," courts have held that market harm for purposes of a fair use analysis does not take into account any market created by the transformative use. *See Bill Graham Archives*, 448 F.3d at 615; *Castle Rock Entm't, Inc. v. Carol Publ'g Grp.*, 150 F.3d 132, 146 n.11 (2d Cir. 1998) ("copyright owners may not preempt exploitation of transformative markets"); *Hathitrust*, 2012 U.S. Dist. LEXIS 146169, at *20 ("A use that 'falls within a transformative market' does not cause the copyright holder to 'suffer market harm due to the loss of license fees.'") (quoting *Bill Graham Archives* 448 F.3d at 615); *see also Blanch*, 467 F.3d at 258 n.9 ("[I]t is of course circular to assert simply that if we were to hold in [plaintiff's] favor she could then charge [defendant] for his further use of [plaintiff's work].'"); *Am. Geophysical Union*, 60 F.3d at 930 n.17 ("[W]ere a court automatically to conclude in every case that potential licensing revenues were impermissibly impaired simply because the secondary user did not pay a fee for the right to engage in the use, the fourth fair use factor would *always* favor the copyright holder.") (emphasis in original).

Plaintiff speculates, without factual support, that Lexis's conduct "in the aggregate, 'result[s] in a substantially adverse impact on the potential market for, or value of, the plaintiff's present work.'" (Pl.'s Mot. at 20 (citing NIMMER § 13.05[A][4]).) "[T]heoretical and speculative" harms, however, are not considered in the fourth factor analysis. *Vanderhye*, 562 F.3d at 644; *see also Wright v. Warner Books*, 953 F.2d 731, 739 (2d Cir. 1991) (speculative nature of alleged potential harm tilted the fourth factor in favor of fair use). Further, Plaintiff acknowledges that the Briefs were not created with the intention of selling or licensing them, and it has never attempted to sell or license the Briefs. (St. 67, 68, 71.) Nor is there any evidence that there was a market in which to license or sell the Briefs even if Plaintiff were willing and

12

able to do so.  The undisputed evidence, in fact, indicates just the opposite (St. 72, 90, 91), which again confirms that Lexis's use had no negative impact on the value of the Briefs.[5]  *See Blanch*, 467 F.3d at 258 n.9 ("nothing in the record here suggests that there was a derivative market for [plaintiff] to tap into that is in any way related to [defendant's] use of [plaintiff's] work, even if [plaintiff] dearly wanted to"); *see also Am. Geophysical Union*, 60 F.3d at 930 (supporting the view that "the fourth factor will favor the secondary user when the only possible adverse effect occasioned by the secondary use would be to a potential market or value that the copyright holder has not typically sought to, or reasonably been able to, obtain or capture").

Finally, Plaintiff argues that the fourth factor favors Plaintiff because Lexis's use makes the Briefs "readily available to competing attorneys."  (Pl.'s Mot. at 20.)  In addition to Plaintiff's pure speculation as to any harm to the value of the Briefs resulting from competing attorneys seeing already filed briefs, and the failure to identify any potential market for the Briefs after filing, Plaintiff ignores the fact that, because the Briefs are already publicly available, competing attorneys can *already* "obtain Plaintiff's work and offer Plaintiff's work product and expertise to their own clients" if they so choose.  (*Id*.)

Accordingly, as set forth in more detail in Lexis's Summary Judgment Motion, the undisputed facts show that Lexis's use of the Briefs has had no effect upon "the potential market for or value of" the Briefs, and therefore the fourth factor, like the others, favors fair use.

---

[5] Plaintiff has not challenged the expert report submitted by expert applied microeconomist David Blackburn, or even deposed Mr. Blackburn.  His analysis and conclusions, including those regarding the absence of a secondary market for the Briefs, are therefore uncontroverted.  *See Taylor v. Medtronics, Inc.*, 861 F.2d 980, 987 (6th Cir. 1988) (finding "no [] genuine issue of material fact because the opinions of the defense experts stood unrebutted").

13

E.       **Public Policy and the First Amendment Also Favor Fair Use.**

In addition to the four non-exclusive factors in Section 107, the Court may appropriately consider a fifth factor—the public interest in access to court processes—in holding that Lexis's use of publicly filed court documents is a fair use.

Lawsuits represent efforts to petition the government for redress of grievances. Documents filed publicly in connection with lawsuits are thus petitioning acts as to which the public has a right to be informed.  The public has "a common law presumptive right of access to judicial documents . . . and likely a constitutional one as well."  *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 140 (2d Cir. 2004) (citing *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995)).  The federal common law right "to inspect and copy public records and documents" was treated at length in *Nixon v. Warner Communications*, 435 U.S. 589, 597 (1978).  Its utility was described in *Amodeo*:

> The public's exercise of its common law access right in civil cases promotes public confidence in the judicial system. . . .   As with other branches of government, the bright light cast upon the judicial process by public observation diminishes the possibilities for injustice, incompetence, perjury, and fraud. Furthermore, the very openness of the process should provide the public with a more complete understanding of the judicial system and a better perception of its fairness.

71 F.3d at 1048.

The constitutional right of access to court proceedings is rooted in the First Amendment guarantee of freedom of assembly.  *See Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 578 (1980) (recognizing First Amendment right to attend criminal trials); *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1067-70 (3d Cir. 1984) (recognizing First Amendment right to attend civil trials and tracing historical precedents); *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988) (under First Amendment, denial of public access to civil court

14

proceeding "must be necessitated by a compelling government interest and narrowly tailored to serve that interest").

First Amendment considerations are also part of the fair use doctrine.  In *Eldred v. Ashcroft*, 537 U.S. 186 (2003), the Supreme Court considered an argument that the Copyright Term Extension Act (Pub. L. 105-298, § 102(b) and (d), 112 Stat. 2827-2828 (amending 17 U.S.C. §§ 302, 304)) violated the First Amendment.  The Court inferred that "copyright's limited monopolies are compatible with free speech principles," and noted that "copyright law contains built-in First Amendment accommodations," notably the idea/expression dichotomy (17 U.S.C. § 102(b)) and the fair use doctrine.  537 U.S. at 219-20 (citing *Harper & Row*, 471 U.S. at 556, 560).  First Amendment concerns, such as the public's right to access legal documents, are therefore yet another factor weighing in favor of fair use here.

Taken together, the Court should find that Lexis's use of the Briefs constitutes fair use under the Copyright Act, and deny Plaintiff's motion for summary judgment.

## II.    LEXIS HAD AN IMPLIED LICENSE TO USE PLAINTIFF'S BRIEFS.

Plaintiff is not entitled to dismissal of Lexis's implied license defense.  As outlined in Lexis's Summary Judgment Motion, Lexis had an implied license to use the Briefs in its BPM database based on the undisputed facts and Plaintiff's objective conduct.  *See Keane Dealer Servs. v. Harts*, 968 F. Supp. 944, 947 (S.D.N.Y. 1997); *see also* NIMMER § 10.03[A][7] ("[N]onexclusive licenses may . . . be implied from conduct.").

Legal documents have been available on Lexis's BPM database for more than seven years and the Briefs were available on the BPM database for almost two years.  (St. 3, 43, 80.) Plaintiff also assumed that Lexis included all legal documents—including the Briefs—in its BPM database.  (White Dep. at 99:3-12 (Hough Opp. Decl., Ex. A).)  Prior to the filing of the Complaint, however, Plaintiff did not contact Lexis to object to its use of the Briefs, nor did

Plaintiff make any attempt to limit Lexis's use. (St. 56, 57, 77, 79.) Indeed, Plaintiff remained silent even though Plaintiff was aware that filing the Briefs in federal court rendered them publicly available and that PACER permits and encourages copying of such legal documents. (St. 63-66.) Plaintiff's conduct can only reasonably be interpreted as manifesting an intent— albeit implied rather than express—to permit Lexis to use the Briefs in the BPM database. *See Keane Dealer Servs.*, 968 F. Supp. at 947 (plaintiff's knowledge of a use, coupled with "silence in the face of [that] use," could constitute an implied license); *see also EMI Latin v. Bautista*, No. 03 Civ. 0947, 2003 U.S. Dist. LEXIS 2612, at *36 (S.D.N.Y. Feb. 24, 2003) (record company likely to succeed on implied license defense because singer did not object to company's use of his songs or advise anyone that the songs could not be used); NIMMER § 10.03[A][7] ("When the totality of the parties' conduct indicates an intent to grant such permission, the result is a nonexclusive license.").

*Field v. Google*, 412 F. Supp. 2d 1106 (D. Nev. 2006), is instructive in clarifying the type of conduct sufficient to establish an implied license. In *Field*, the plaintiff, an author, included copies of his works on his website. *Id*. at 1110. The plaintiff brought a copyright infringement action against Google alleging that, by caching an image of his website and works included therein, and including that cached image as part of its search engine results, Google had violated his exclusive rights to reproduce and distribute the works. *Id*. at 1109. In support of its implied license defense, Google submitted testimony showing that website owners can communicate with search engines to prevent the collection of their data for searching, including by placing a meta-tag on their web pages to tell Google's automated web crawler not to analyze their pages or include them in Google's search results. *Id.* at 1112-13, 1116. Plaintiff admitted that he was aware of these industry standard mechanisms, but chose not to utilize them. *Id.* at 1116. In

granting Google's summary judgment motion, the court held that plaintiff's failure to act, despite

his knowledge of Google's use of the copyrighted works and ability to prevent such use,

constituted conduct that was "reasonably interpreted as the grant of a license to Google for that

use." *Id*; *see also Parker v. Yahoo!, Inc.*, No. 07-2757, 2008 U.S. Dist. LEXIS 74512, at *15-16

(E.D. Pa. Sept. 25, 2008) (dismissing similar claims by author against Internet search engine

based on reasoning in *Field*).

Plaintiff's conduct here similarly manifests the grant of an implied license.  As in *Field*,

Plaintiff admits it was aware of Lexis's use of legal documents and, notwithstanding an ability to

request Lexis not use the Briefs, made no effort to prevent that use.  (St. 56, 57, 77, 79.)  Lexis,

in fact, spread awareness about its use of legal documents by marketing the BPM product

directly to practicing attorneys, who themselves author legal documents.  (St. 6.)  Based on both

parties' conduct, Lexis properly inferred that it had implied consent to use the Briefs.  *See Field*,

412 F. Supp. 2d at 1116 ("Consent to use the copyrighted work need not be manifested verbally

and may be inferred based on silence where the copyright holder knows of the use and

encourages it."); *see also Righthaven LLC v. Klerks*, No. 2:10-cv-00741, 2010 U.S. Dist. LEXIS

105307, at *10-11 (D. Nev. Sept. 17, 2010) (setting aside default judgment based on an implied

license defense where "Defendant may have properly inferred that the owner consented to the

use, especially in the light of established and accepted custom of users freely and openly sharing

certain information posted on the internet").

Plaintiff relies on *Design Options v. Bellepointe, Inc.*, 940 F. Supp. 86 (S.D.N.Y. 1996),

to argue that Lexis did not have an implied license because there was no communication between

the parties that would grant such a right.  The court in *Design Options*, however, held that the

implied license defense was waived in that case because the defendant had failed to plead it as an

affirmative defense. *Id.* at 91-92.  In dicta, the court noted that the two parties—a sweater manufacturer and a retail wholesaler—had a shared understanding that the plaintiff had exclusive rights to its sweater designs and that there was no "objective conduct that would permit a reasonable person to conclude that 'an agreement had been reached.'" *Id.* at 88, 92 (quoting *Allen-Myland v. Int'l Bus. Machs. Corp.*, 746 F. Supp. 520, 549 (E.D. Pa. 1990)).  The lack of objective conduct in *Design Options* is in stark contrast to Plaintiff's and Lexis's conduct here. Lexis widely advertised its use of legal documents such as the Briefs and Plaintiff, despite its awareness that the publicly filed Briefs could be copied by anyone, failed to object to Lexis's use of the Briefs.  (St. 6, 63-65, 77, 79.)  Further, while use of the plaintiff's works in *Design Options* was restricted, Plaintiff's Briefs were available to anyone and Plaintiff imposed no restrictions on their use.  (St. 24, 56, 57, 64.)

Plaintiff also relies on *SHL Imaging, Inc. v. Artisan House, Inc.*, 117 F. Supp. 2d 301 (S.D.N.Y. 2000), but that case is readily distinguishable.  There, the defendants hired the plaintiff to photograph defendants' products with the understanding that the photographs would have a limited use by defendants' sales force.  *Id.* at 303.  After the plaintiff provided the photos, the defendants used them for various unauthorized purposes.  *Id.*  The court found no implied license because defendants only alleged that the plaintiff "suspected defendants *might* use the photographs" in a different medium.  *Id.* at 317 (emphasis in original).  The record showed that "plaintiff created the photographs, sold them to defendants for a price, and never conveyed any rights to reproduce the photographs directly or by implication."  *Id.* at 317-18.  Conversely, in this case, it was reasonable for Lexis to assume that Plaintiff's objective conduct—Plaintiff's complete silence in the face of Lexis's known use of legal documents, including the Briefs— indicated acceptance of Lexis's use of the Briefs.

Accordingly, because Lexis's use was based on a reasonable interpretation of Plaintiff's conduct, Plaintiff's motion for summary judgment on Lexis's implied license defense should be denied.

### III.   DISPUTED ISSUES OF FACT REMAIN REGARDING COPYRIGHT INFRINGEMENT.

Summary judgment on the question of infringement is not appropriate here because there are disputed issues of fact regarding whether Lexis violated the exclusive rights granted to a copyright owner under Section 106 of the Copyright Act.  Plaintiff seeks summary judgment that Lexis violated three exclusive rights: reproduction, distribution and public display.  (Pl.'s Mot. at 5-7.)  *See* 17 U.S.C. § 106(1), (3) & (5).  As set forth below, Plaintiff is not entitled to summary judgment that Lexis violated any of these rights.

#### A.   Lexis's Copies of the Briefs Were Authorized.

For a valid claim of copyright infringement, the accused infringer must have made *unauthorized* copies of the works at issue.  Plaintiff alleges that Lexis copied the Briefs by: "(i) accessing the US Court's PACER to obtain the Works; (ii) converting the Works into a text-searchable version; and (iii) including electronic versions of the Works in their databases, which were available to their subscribers."  (Pl.'s Mot. at 6.)  Lexis has conceded that it copied the Briefs by downloading them from PACER, but there is, at a minimum, a factual dispute regarding whether such copying was authorized.  Further, Plaintiff does not point to any facts that show that either converting the Works into a text-searchable version or including electronic versions of the Works in Lexis's databases constitutes a reproduction.

Accessing and copying documents from PACER is not unauthorized.  Every user with a PACER account is authorized to access and download copies of the documents available on the system.  Plaintiff itself conceded that it downloads copies of legal documents from PACER.

19

(White Dep. at 18:20-23, 152:12-154:8 (Hough Opp. Decl., Ex. A).)  It is undisputed that

Plaintiff filed the Briefs via CM/ECF, without seal, with the understanding that PACER allows

public access to legal documents and encourages users to download copies of the legal

documents being viewed.  (St. 22-24, 63-66.)  In doing so, Plaintiff—like any other litigant—

necessarily authorized the public to access those documents.  At least one court has expressly

recognized that copying court-filed legal documents is permissible.  *See Religious Tech. Ctr. v.

Lerma*, 908 F. Supp. 1362, 1369 (E.D. Va. 1995) ("there was nothing illegal or unethical about

[the defendant] going to the Clerk's office for a copy of the [legal] documents or downloading

them from the Internet").  Thus, the mere act of accessing the Briefs from PACER does not

constitute *unauthorized* reproduction in violation of Section 106(1).

Regarding the other two acts allegedly constituting unauthorized copying—making the

Briefs text searchable and including them on Lexis's databases—Plaintiff fails to introduce any

evidence sufficient to show that these acts constitute a reproduction.  Nor do these acts violate

any other exclusive rights.  "The only rights granted to the copyright holder by the statute are

found in the numbered sub-sections of Section 106, and unless one of those rights is infringed,

the copyright holder has no recourse in law under Section 106."  *Laine v. Pride*, No. 09-CV-

3057, 2010 U.S. Dist. LEXIS 3657, at *20 (S.D.N.Y. Jan. 15, 2010) (quotation omitted).

Plaintiff is therefore not entitled to summary judgment that Lexis has made an

unauthorized reproduction of the Briefs in violation of the Copyright Act.

### B.      Lexis Did Not Distribute the Briefs.

Plaintiff claims that Lexis distributed the Briefs without authorization, but Lexis did not

distribute copies of the Briefs to its users in violation of the distribution right under the

Copyright Act.  For such a violation to occur, there must have been an actual transfer of a copy

of the copyrighted work.  *See*, *e.g.*, *Nat'l Car Rental Sys. v. Computer Assocs. Int'l, Inc.*, 991

F.2d 426, 434 (8th Cir. 1993); *Atl. Recording Corp. v. Brennan*, 534 F. Supp. 2d 278, 281-82 (D. Conn. 2008); *Atl. Recording v. Howell*, 554 F. Supp. 2d 976, 981, 983 (D. Ariz. 2008); *Capital Records, Inc. v. Thomas*, 579 F. Supp. 2d 1210, 1216-24 (D. Minn. 2008) (extensive analysis concluding that distribution requires actual dissemination of a copy); *see also* 4 WILLIAM F. PATRY, PATRY ON COPYRIGHT § 13:11.50 (2012) ("the mere offering to distribute a [copyrighted] work does not violate section 106(3)").  One of the Briefs, however, was never accessed by a Lexis user prior to the filing of the complaint in this action, contrary to Plaintiff's unsupported assertion, and was therefore never distributed.  (St. 73; Ctr. St. 25(a).)

Nor did Lexis commit the necessary acts to constitute a distribution of either Brief.  The Second Circuit has made clear that no direct liability exists for copyright infringement when there was no volitional conduct from the defendant.  *See Cartoon Network LP, LLLP v. CSC Holdings, Inc.*, 536 F.3d 121, 131 (2d Cir. 2008) ("[T]he person who actually presses the button to make the recording, supplies the necessary element of volition, not the person who manufactures, maintains, or, if distinct from the operator, owns the machine.").

In *Field v. Google*, *supra*, the court found that Google did not engage in the requisite volitional acts of distributing cached webpages to its users.

> [W]hen a user requests a Web page contained in the Google cache by clicking on a 'Cached' link, it is the user, not Google, who creates and downloads a copy of the cached Web page.  Google is passive in this process.  Google's computers respond automatically to the user's request.  Without the user's request, the copy would not be created and sent to the user, and the alleged infringement at issue in this case would not occur.  The automated, non-volitional conduct by Google in response to a user's request does not constitute direct infringement under the Copyright Act.

412 F. Supp. 2d at 1115.  As in *Field*, because Lexis users controlled all aspects of what was accessed and displayed on their computer, Lexis did not engage in the requisite conduct to constitute distribution (or public display, as discussed below).  *See*, *e.g.*, *United States v. Am.*

*Soc'y of Composers (In re Application of Cellco P'ship d/b/a Verizon Wireless)*, 663 F. Supp. 2d

363, 377-78 (S.D.N.Y. 2009) (Verizon lacked the volitional conduct required to violate the right

of public performance).  Lexis therefore did not violate Plaintiff's distribution right.

> ### C.    Lexis Did Not Publicly Display the Briefs.

In addition to the lack of volitional conduct by Lexis to constitute a public display,

discussed above, Plaintiff is not entitled to summary judgment that Lexis publicly displayed the

Briefs because Plaintiff did not allege a public display violation in the Amended Complaint.

(Am. Compl. ¶ 24.)  Plaintiff is therefore precluded from alleging it for the first time here.  *See*,

*e.g.*, *Hickey v. State Univ. of N.Y. at Stony Brook Hosp.*, No. 10-CV-1282, 2012 U.S. Dist.

LEXIS 105182, at *15-16 (E.D.N.Y. July 27, 2012) (denying plaintiff's summary judgment

motion where plaintiff raised its claim for the first time in its motion); *Satchel v. Sch. Bd. of*

*Hillborough Cnty*, No. 8:05-cv-2239, 2007 U.S. Dist. LEXIS 11696, at *22 (M.D. Fla. Feb. 20,

2007) (same), *aff'd*, 251 Fed. Appx. 626 (11th Cir. 2007).

Accordingly, Plaintiff is not entitled to summary judgment that Lexis violated any of the

exclusive rights under Section 106.

## IV.    PLAINTIFF IS NOT ENTITLED TO SUMMARY JUDGMENT ON LEXIS'S REMAINING AFFIRMATIVE DEFENSES.

In a single sentence, Plaintiff seeks summary judgment dismissing all remaining

affirmative defenses without offering any support for their dismissal.  (Pl.'s Mot. at 22.)  "Where

a plaintiff uses a summary judgment motion, in part, to challenge the legal sufficiency of an

affirmative defense—on which the defendant bears the burden of proof at trial—a plaintiff may

satisfy its Rule 56 burden by showing that there is an absence of evidence to support an essential

element of the non-moving party's case."  *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994)

(quoting *DiCola v. SwissRe Holding (North America), Inc.*, 996 F.2d 30, 32 (2d Cir. 1993))

(internal quotation marks and brackets omitted).  Plaintiff has made no attempt to show "that there is an absence of evidence to support an essential element" of any of Lexis's remaining affirmative defenses.  Plaintiff, in fact, does not even identify the essential elements.

To prevail on summary judgment, Plaintiff must show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986).  Plaintiff has not made the requisite showing.  In addition to the fair use and implied license affirmative defenses  (Lexis's second and third affirmative defenses) on which Lexis has moved for summary judgment, there is evidentiary support for Lexis's remaining affirmative defenses, which Lexis intends to pursue if the case proceeds to trial.  Specifically:

- Lexis's Fourth Affirmative Defense that Lexis's use is permitted by public policy is supported by, *inter alia*, the public benefit of Lexis's service and the public's right to access and copy legal documents (*see supra*, at 14-15);

- Lexis's Fifth Affirmative Defense disputing ownership of the copyrights is supported by, *inter alia*, the dispute between Edward White and Martin High regarding authorship and whether the Briefs were properly works for hire (St. 51-55);

- Lexis's Seventh Affirmative Defense contesting whether the Briefs are protected by copyright law is supported by, *inter alia*, the lack of copyrightable expression in the Briefs (Declaration of James Hough in Support of Defendant Reed Elsevier Inc.'s Motion for Summary Judgment (Dkt. No. 58), Exs. F, G; St. 76);

- Lexis's Eighth and Ninth Affirmative Defenses pertaining to laches, waiver, and equitable estoppel are supported by, *inter alia*, Plaintiff's delay in filing suit despite its awareness of Lexis's use of the Briefs, as well as Plaintiff's public filing of the

23

Briefs with knowledge that Lexis is permitted to access and copy those Briefs (St. 63-66, 77-79);

- Lexis's Eleventh Affirmative Defense regarding Lexis's use being licensed or otherwise authorized is supported, *inter alia*, by the same facts in support of Lexis's implied license defense (*see supra*, at 15-19; St. 56, 57, 63-66, 77-79);

- Lexis's Twelfth Affirmative Defense regarding Plaintiff's lack of damages is not suitable for summary judgment in Plaintiff's favor because Plaintiff has offered no evidence of damages, which Defendant West Publishing Corporation ("West") has argued in its motion for summary judgment and Lexis has incorporated by reference into Lexis's Summary Judgment Motion;

- Lexis's Thirteenth Affirmative Defense regarding Plaintiff's failure to mitigate damages is not suitable for summary judgment in Plaintiff's favor because, to the extent that Plaintiff is capable of proving damages, Lexis preserves its defense that any damages are from Plaintiff's own doing; and

- Lexis's Fifteenth Affirmative Defense regarding the unavailability of injunctive relief is not suitable for summary judgment in Plaintiff's favor because Plaintiff cannot show that it is entitled to injunctive relief, which West has argued in its motion for summary judgment and Lexis has incorporated by reference into Lexis's Summary Judgment Motion.

Accordingly, Plaintiff's half-hearted request that the Court dismiss Lexis's affirmative defenses should be denied.[6]

---

[6] Lexis is no longer pursuing its statute of limitations and unclean hands affirmative defenses (Lexis's sixth and tenth affirmative defenses).

## CONCLUSION

For the reasons set forth above, Plaintiff's motion for summary judgment should be denied.

Dated: October 23, 2012         MORRISON & FOERSTER LLP
       New York, New York

/s/ James E. Hough
James E. Hough
Craig B. Whitney
Cindy P. Abramson
1290 Avenue of the Americas
New York, NY 10104
Telephone:  (212) 468-8000
Facsimile:  (212) 468-7900
jhough@mofo.com
cwhitney@mofo.com
cabramson@mofo.com

James F. McCabe (admitted *pro hac vice*)
Paul Goldstein (admitted *pro hac vice*)
425 Market Street
San Francisco, California  94105
Telephone:   (415) 268-7000
Facsimile:   (415) 268-7522
jmccabe@mofo.com
pgoldstein@mofo.com

*Attorneys for Defendant*
*LexisNexis, a div. of REED ELSEVIER INC.*