R. Bruce Rich
Benjamin E. Marks
Jonathan Bloom
John R. Gerba
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000

*Attorneys for Defendant West Publishing Corporation*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
EDWARD L. WHITE, P.C.,

                      Plaintiff,                    12 Civ. 1340 (JSR)
                                                              **Filed Electronically**

                      v.

WEST PUBLISHING CORPORATION d/b/a West;
and REED ELSEVIER, INC. d/b/a LexisNexis,

                      Defendants.
------------------------------------------------------------------x

# DEFENDANT WEST PUBLISHING CORPORATION'S
# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS
# MOTION FOR SUMMARY JUDGMENT

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 3

I. PLAINTIFF FAILS TO REBUT WEST'S SHOWING THAT IT IS ENTITLED TO SUMMARY JUDGMENT ON ITS FAIR-USE DEFENSE ......................................... 3

    A. Plaintiff's Factor One Arguments Miss the Mark ..................................................... 3

        1. West Made Transformative Use of the Motions ......................................... 3

        2. There Is No Presumption that Commercial Uses Are Unfair ..................... 4

    B. West's Use Has No Effect on Any Actual or Potential Market for the Motions ................................................................................................................. 5

    C. The Factual Nature of the Motions Favors Fair Use ................................................ 7

    D. Copying an Entire Work Does Not Preclude a Fair-Use Finding ........................... 8

    E. Plaintiff Fails to Rebut West's Showing That Including the Motions in Litigator™ Advances the Purposes of Copyright ..................................................... 8

II. SUMMARY JUDGMENT IS WARRANTED ON PLAINTIFF'S CLAIMS FOR ACTUAL DAMAGES, STATUTORY DAMAGES, ATTORNEY'S FEES, AND INJUNCTIVE RELIEF ................................................................................................ 9

CONCLUSION ........................................................................................................................... 10

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

Am. Geophysical Union v. Texaco Inc.,
   60 F.3d 913 (2d Cir. 1994)................................................................................................6

Authors Guild, Inc. v. Hathitrust,
   No. 11 CV 6351 (HB), 2012 WL 4808939 (S.D.N.Y. Oct. 10, 2012). ................................4, 9

Authors Guild v. Google, Inc.,
   770 F. Supp. 2d 666 (S.D.N.Y. 2011)................................................................................8

A.V. ex rel. Vanderhye v. iParadigms,
   562 F.3d 630 (4th Cir. 2009) ............................................................................................4

Bill Graham Archives v. Dorling Kindersley Ltd.,
   448 F.3d 605 (2d Cir. 2006)........................................................................................3, 6, 8

Campbell v. Acuff-Rose Music, Inc.,
   510 U.S. 569 (1994).......................................................................................................5, 8

Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,
   499 U.S. 340 (1991).......................................................................................................7

Kelly v. Arriba Soft Corp.,
   336 F.3d 811 (9th Cir. 2003) ..........................................................................................3

Maxtone-Graham v. Burtchaell,
   803 F.2d 1253 (2d Cir. 1986).........................................................................................7

Monge v. Maya Magazines, Inc.,
   688 F. 3d 1164 (9th Cir. 2012) ......................................................................................7

Perfect 10 v. Amazon, Inc.,
   508 F.3d 1146 (9th Cir. 2007) .......................................................................................3

Sony Corp. of Am. v. Universal City Studios, Inc.,
   464 U.S. 417 (1984).......................................................................................................5

**OTHER AUTHORITIES**

Fed.R.Civ.P. 36(a)(3)................................................................................................................10

Defendant West Publishing Corporation ("West") submits this reply memorandum of law in further support of its motion for summary judgment.

## PRELIMINARY STATEMENT

In its moving papers, West demonstrated its entitlement to summary judgment on its fair-use defense, as well as on Plaintiff's claims for actual damages, statutory damages, attorney's fees, and injunctive relief. Plaintiff agrees that the material facts germane to West's motion are undisputed, and it concedes that West is correct as to damages and attorney's fees (issues the Court should not, in any event, need to reach).

Plaintiff's efforts to overcome West's fair-use defense are unavailing. On the key issue of whether West's inclusion of a pair of Plaintiff's publicly filed motions (the "Motions") in its Litigator™ database is transformative, Plaintiff concedes, as it must, that a use can be transformative if it is intended to serve a different purpose than the original, but argues erroneously that West used the Motions for the same purpose as Plaintiff did. This is clearly wrong: Plaintiff used the Motions to advocate for its clients in a specific litigation. West had nothing to do with that litigation or with representing those clients. West does not advocate on behalf of clients; it provides a legal research tool. Nor does West's use supplant Plaintiff's sale of legal services, including brief-writing, more generally. Plaintiff's concern with *other attorneys* accessing Plaintiff's work via West's service and engaging in infringing "cutting and pasting" – a hypothesized activity for which there is no evidence that it has ever occurred – does not implicate West. Moreover, that West's use is commercial does *not* make it presumptively unfair, as Plaintiff asserts incorrectly. As West showed in its opposition brief, that fact is immaterial.

As for the effect on the potential market for the work, Plaintiff cannot offer a shred of evidence of a current or likely future secondary market for its court filings that would be

cognizable in assessing market harm. Plaintiff's principal, Mr. White, practiced law for over ten years before Defendants began including legal briefs in their databases, and it is undisputed that no one has ever tried, nor did he ever offer, to license any of his work product. West's integrated research system, of which Litigator's™ millions of documents comprise only one part, represents a non-superseding, transformative market that Plaintiff cannot claim the right to exploit.

Plaintiff's other arguments fare no better. On the second factor, Plaintiff admits that the Motions are factual in nature and that factual works receive less copyright protection. Its effort to undermine the force of this concession conflates "copyrightable" (which is not at issue on this motion) with "fact-based" and ignores Second Circuit rulings holding that copying from a factual work weighs in favor of fair use. On factor three, Plaintiff does not dispute West's showing that copying the entirety of a work is neutral when necessary to achieve a transformative purpose.

As three factors clearly favor West and one is, at worst, neutral, and there are no disputed fact issues as to any of them, West is entitled to summary judgment on its fair-use defense.

With respect to relief, Plaintiff concedes that West would be entitled to summary judgment on Plaintiff's claims for actual damages, statutory damages, and attorney's fees should the Court reach those issues. As for injunctive relief, Plaintiff confuses damage that is difficult to quantify with damage that does not exist. The latter is the case here, as Plaintiff cannot demonstrate any injury, let alone irreparable injury. The record shows, moreover, that West removes documents from its database upon request. There is no basis for an injunction.

## ARGUMENT

### I. PLAINTIFF FAILS TO REBUT WEST'S SHOWING THAT IT IS ENTITLED TO SUMMARY JUDGMENT ON ITS FAIR-USE DEFENSE

#### A. Plaintiff's Factor One Arguments Miss the Mark

##### 1. West Made Transformative Use of the Motions

Plaintiff does not dispute that fair use favors transformative uses of copyrighted works, but it contends that West's use was not transformative. See Pl.'s Mem. of Law in Opp'n to Defs'. Mots. Summ. J. 3-6, ECF No. 68 ("Pl. Opp."). This is plainly wrong. Plaintiff created the works to advocate on behalf of its clients in Beer v. XTO Energy, Inc., No. Civ. 07-798-L (W.D. Okla.), and for no other purpose. See White Dep. 69:14-24, 76:13-77:21.[1] West's use of the Motions had nothing to do with Beer and in no way superseded Plaintiff's purpose, which already had been accomplished by the time West downloaded copies of the Motions from PACER. Instead, West used the Motions as an element of its searchable, interlinked legal research tool. See Leighton Decl. ¶¶ 4, 14. These two uses are totally "separate and distinct" from one another. See Bill Graham Archives v. Dorling Kindersley Ltd., 448 F.3d 605, 610 (2d Cir. 2006).[2]

---

[1] "White Dep." refers to the transcript of the August 30, 2012 Deposition of Edward L. White, excerpts of which are attached as Exhibit C to the October 5, 2012 Declaration of John R. Gerba, ECF No. 62 ("Gerba Decl."). In addition, West refers herein to the October 4, 2012 Declaration of Tom Leighton, ECF No. 50 ("Leighton Decl."); the October 5, 2012 Declaration of Leigh Beauchamp, ECF No. 59 ("Beauchamp Decl."); the October 5, 2012 Declaration of David Blackburn, ECF No. 48 ("Blackburn Decl."); its October 5, 2012 Memorandum of Law in Support of its Motion for Summary Judgment, ECF No. 47 ("West Br."); and its October 23, 2012 Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment, ECF No. 63 ("West Opp.").

[2] Plaintiff's attempt to distinguish Perfect 10 v. Amazon, Inc., 508 F.3d 1146 (9th Cir. 2007), and Kelly v. Arriba Soft Corp., 336 F.3d 811 (9th Cir. 2003), see Pl. Opp. 4-5, mistakenly takes on a factual analogy that West never made. West cited those cases for the point that a distinct, non-superseding use can be transformative – which Plaintiff does not contest. Compare West Br. 12 n.5 with Pl. Opp. 4. The relevant question is not whether the copies are "reduced quality" or

3

Plaintiff attempts to obscure the lack of overlap between these purposes by referring to the relevant purpose as "legal advocacy" in general, rather than to the specific case and clients for which the Motions were created, and it invokes hypothetical conduct by West's *subscribers*, not by West.  See Pl. Opp. 3 ("It is self-evident . . . that the purpose of Defendants' databases is to allow their *subscribers* to engage in legal advocacy by downloading (and cutting-and-pasting from) briefs and pleadings to put them to exactly the same use for which they were written."). Plaintiff's argument has no merit.  There is no evidentiary support for Plaintiff's assertion that West offers its product so that attorneys can "cut-and-paste" the prose of other attorneys.  There is, moreover, no evidence that any other attorney has cut-and-pasted from the Motions for use in any other case, let alone evidence that they downloaded the Motions from West in order to do so.[3]  In any event, what West's subscribers may do with the documents beyond West's control has no bearing on the fact that West does not use the works for legal advocacy, let alone to advocate for Plaintiff's clients in Beer.[4]

### 2. There Is No Presumption that Commercial Uses Are Unfair

Plaintiff asserts that "every commercial use of copyrighted material is presumptively an

---

"reduced-size" but whether they are used for the same purpose as the originals.  Nothing in those or any other cases limits transformative purposes to using low-quality or reduced-size "placeholders," as Plaintiff incorrectly implies.  See, e.g., Authors Guild, Inc. v. Hathitrust, No. 11 CV 6351 (HB), 2012 WL 4808939, at *11 (S.D.N.Y. Oct. 10, 2012); see also A.V. ex rel. Vanderhye v. iParadigms, 562 F.3d 630, 640 (4th Cir. 2009).

[3] West acknowledges the purely hypothetical possibility of another attorney copying Plaintiff's expression in a potentially infringing manner, but even if the attorney were a West subscriber and used Litigator™ to access Plaintiff's work, such a scenario would not give rise to an infringement claim against West.  West would not control, nor does it encourage, such conduct.

[4] Plaintiff's reliance on the conduct of West's subscribers contradicts its insistence elsewhere that the use made by Defendants' subscribers is not a relevant consideration.  Compare Pl. Opp. 3 (relying on the purpose of Defendants' subscribers in using the databases) with id. at 7 (arguing that Lexis's subscribers' "non-commercial purpose in using the databases . . . is not the issue").  It is West's use that matters.

4

unfair exploitation of the monopoly privilege that belongs to the owner of the copyright." Pl. Opp. 7 (quoting Sony Corp. of Am. v. Universal City Studios, Inc., 464 U.S. 417, 451 (1984)). But the Supreme Court subsequently rejected the notion of such a presumption in Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569 (1994), noting that if "commerciality carried presumptive force against a finding of fairness, the presumption would swallow nearly all of the illustrative uses listed in the preamble paragraph of § 107" and that "Congress could not have intended such a rule." Id. at 584. For the reasons discussed in West's opposition brief, the fact that West charges subscribers for access to its service is of little consequence to the fair-use analysis. See West Opp. 6-7 (citing numerous cases).

### B. West's Use Has No Effect on Any Actual or Potential Market for the Motions

In its moving papers, West demonstrated that the absence of any impact on a potential market for or the value of Plaintiff's works decisively favors a finding of fair use. See West Br. 14-16. Plaintiff has admitted that: (i) it never attempted to license or sell the Motions; (ii) West's copying has no effect on Plaintiff's incentive to create the Motions or on their quality; and (iii) it cannot identify any concrete harm caused by West's copying. See id. at 16. The (non-existent) prospect of licensing simply did not factor into Plaintiff's decision to create the Motions. See White Dep. 74:12-18, 78:3-79:7, 202:12-20. Indeed, any such additional financial incentive could undermine an attorney's ethical obligation to serve only the interests of his or her clients.

Plaintiff claims that the market for West's databases is evidence of a market for the Motions. See Pl. Opp. 12. But the existing market for West's searchable, integrated repository of millions of legal documents is not the same as a market for Plaintiff's Motions.[5] There is, in

---

[5] Plaintiff's selective quotation from Lexis' Rule 56.1 Statement omits the end of the quoted sentence where Lexis states that it created a market for the Motions "where one would not otherwise exist." Def. Reed Elsevier Inc.'s Rule 56.1 Statement of Undisputed Facts in Supp. of Its Mot. Summ. J. ¶ 89, ECF No. 57.

5

fact, only one market for the Motions: the legal services market. The distinct market for West's transformative database (which is not a market for the individual documents in the database) does not properly factor into the market-harm analysis. See West. Br. 15 (quoting Bill Graham Archives, 448 F.3d at 615). Indeed, if a defendant's use *ipso facto* established market harm, factor four would be rendered a nullity, as it would always favor the plaintiff.

Plaintiff's claim also fails because it invokes a purely hypothetical potential market, see Pl. Opp. 12-14, whereas only "traditional, reasonable, or likely to be developed markets" are properly taken into account. West Br. 15 (quoting Am. Geophysical Union v. Texaco Inc., 60 F.3d 913, 930 (2d Cir. 1994)). Plaintiff offers no evidence of any such market for its works. See Pl. Opp. 12-14. To the contrary, Mr. White testified that no one has ever offered to license any of his briefs, pleadings, or motions, and he admitted that he has never attempted to license any such works. See White Dep. 202:21-203:18. Mr. White received his law degree in 1994 and has been operating his own legal practice since 1997. See id. at 9:5-11:6. West did not begin collecting trial court briefs until 2005, see Leighton Dep. 20:2-4,[6] and Lexis did not make its Briefs, Pleadings and Motions product offering available until that same year, see Beauchamp Decl. ¶ 4. If Plaintiff's theory that Defendants squelched any potential market were correct, one would expect to see *some* evidence of licensing activity before Defendants created their databases, but there is none. The Court therefore should find as a matter of law that West's conduct causes no impact on a potential market for Plaintiff's works.

Plaintiff's hypothetical-market theory also fails to explain why anyone would participate in such a market when the documents can be obtained from PACER without paying Plaintiff. Indeed, Plaintiff's admission that the "actual expression in the briefs and pleadings is hardly

---

[6] "Leighton Dep." refers to the August 28, 2012 Deposition of Tom Leighton. Excerpts cited herein are attached to the November 2, 2012 Declaration of John Patrick Sullivan as Exhibit A.

necessary for effective advocacy in subsequent cases," Pl. Opp. 16, undercuts, rather than supports, the claim that other lawyers would pay to license the Motions.[7] Dr. Blackburn, in unrebutted testimony, confirmed that there is no evidence that a secondary market is likely to develop in which an attorney can license or sell briefs. See Blackburn Decl. ¶ 8.

Monge v. Maya Magazines, Inc., 688 F. 3d 1164 (9th Cir. 2012), does not assist Plaintiff's argument. In that case, the Ninth Circuit expressly found that the plaintiff celebrity couple was "undisputedly in the business of selling images of themselves and they have done so in the past and Maya itself paid $1,500 for prior photos." Id. at 1181. The opposite is true here: Plaintiff is *not* in the business of licensing its briefs, and West does not license briefs from anyone. Moreover, Plaintiff's request that the Court "presume market harm," see Pl. Opp. 14, is contradicted by Monge: "In light of the Supreme Court's admonition eschewing presumptions under this factor, we refrain from presuming harm in the potential market." 688 F.3d at 1181.

As in Maxtone-Graham v. Burtchaell, 803 F.2d 1253, 1264 (2d Cir. 1986), Plaintiff is "unable to point to a single piece of evidence portending future harm." This factor thus weighs heavily in favor of fair use.

### C. The Factual Nature of the Motions Favors Fair Use

Plaintiff concedes that the Motions are factual in nature and that copyright protection for factual compilations is "thin." Pl. Opp. 9-10 (citing Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340 (1991)). But Plaintiff confuses the issue of copyrightability – which West does not contest for purposes of this motion – with the issue of whether the factual nature of the works tips factor two in favor of fair use. The cases Plaintiff cites for the proposition that works of authorship remain copyrightable even if part of a public filing, see Pl. Opp. 8, are inapposite. As

---

[7] This admission also explains why there is no evidence of another lawyer cutting-and-pasting from the Motions for his or her own advocacy in separate cases.

West demonstrated in its moving papers, the highly factual nature of the Motions weighs in favor of fair use. See West Br. 17.[8] In any event, the second factor "may be of limited usefulness where [a] creative work . . . is being used for a transformative purpose." Bill Graham Archives, 448 F.3d at 612; see also Campbell, 510 U.S. at 586 (observing that the second factor is "not much help" in separating infringement from fair use in relation to a transformative use that involves copying of expressive works).

### D. Copying an Entire Work Does Not Preclude a Fair-Use Finding

Plaintiff does not dispute West's showing that factor three is neutral when a transformative use requires the copying of an entire work. Compare Pl. Opp. 10-11 with West Br. 18-19.

### E. Plaintiff Fails to Rebut West's Showing That Including the Motions in Litigator™ Advances the Purposes of Copyright

West's Litigator™ database serves an important public purpose of increasing access to judicial records for lawyers, scholars, and the public at large through transformative use of court filings that has no effect on the incentives of lawyers to write them. See West Br. 20; White Dep. 69:14-24, 76:13-77:21. Plaintiff's assertion that the public benefit from unauthorized copying cannot be the measure of fair use is a red herring. West does not argue that public benefits alone are sufficient. West argues instead that a public benefit *arising from a transformative use that causes no market harm* favors a finding of fair use. See West Br. 20.[9]

---

[8] If the second factor tilted against fair use simply because the Motions were copyrightable, the second fair-use factor would *always* favor the plaintiff because the fair-use doctrine is relevant only to copyrightable works.

[9] Plaintiff's discussion of Authors Guild v. Google, Inc., 770 F. Supp. 2d 666 (S.D.N.Y. 2011), see Pl. Opp. 17, also is unavailing. That case rejected a proposed class settlement because of a number of concerns, including those related to international law, privacy, antitrust, and copyright, among others. See Authors Guild, 770 F. Supp. 2d at 678-86. The court did not address fair use, and thus that case does not support Plaintiff's opposition. Moreover, as Plaintiff

8

Plaintiff's assertion that "Defendants' public policy arguments for 'fair-use' . . . could be applied with equal or greater force to justify free and widespread copying and distribution of Defendants' own legal treatises," Pl. Opp. 17, is wrong: widespread unauthorized copying of Defendants' legal treatises would have a profound adverse impact on the well-established market for those works and on the incentive for Defendants to create them. There is, by Plaintiff's admission, no secondary market for its works and no impact on Plaintiff's incentives as a result of West's copying. Indeed, it is vastly more likely that a ruling in Plaintiff's favor, instead of catalyzing the emergence of a licensing market, would simply compel West to shut down its service – with the result that Plaintiff would gain nothing and the public would lose a service of great social value. See Blackburn Decl. ¶ 9.

\*    \*    \*

Taken together, the statutory factors clearly favor fair use. Three of the four factors – the nature and purpose of the use; the effect of the use on the potential market for or value of the copyrighted work; and the nature of the copyrighted work – decisively favor West. The other factor – the amount and substantiality of the use – is, at worst, neutral. When coupled with the public benefits Litigator™ provides and the lack of any effect on Plaintiff's incentive to create legal briefs, an aggregate fair-use assessment clearly warrants summary judgment for West.

## II.   SUMMARY JUDGMENT IS WARRANTED ON PLAINTIFF'S CLAIMS FOR ACTUAL DAMAGES, STATUTORY DAMAGES, ATTORNEY'S FEES, AND INJUNCTIVE RELIEF

Because Plaintiff does not address West's showing that it is entitled to summary judgment on Plaintiff's claims for actual damages, statutory damages, and attorney's fees, see Pl.

---

fails to note, another court in this district recently held that Google's conduct was transformative and fair use. See Hathitrust, 2012 WL 4808939.

Opp. 20-21, Plaintiff must be deemed to have conceded that summary judgment on these issues would be appropriate should the Court reach them.

With respect to injunctive relief, Plaintiff's invocation of irreparable harm is misplaced. The issue presented here is not remedying an injury that cannot be quantified; Plaintiff has failed to show *any injury at all*. The harm here is not irreparable – it is *nonexistent*. Moreover, the record shows that West complies with the exceedingly rare requests to remove documents from Litigator™ without regard to the reason for the request, see Leighton Decl. ¶¶ 11, 19, and that Plaintiff never made such a request before commencing this action, see Gerba Decl. Ex. E, Request No. 1 (admitted pursuant to Fed. R. Civ. P. 36(a)(3)).  West's almost-never-invoked removal policy obviates the need for an injunction.  Thus, West should be granted summary judgment on Plaintiff's request for injunctive relief if the Court reaches the issue.[10]

## CONCLUSION

For the foregoing reasons, West's motion for summary judgment should be granted.

Dated:  November 2, 2012

                                              Respectfully submitted,

                                              WEIL, GOTSHAL & MANGES LLP

                                              By:   */s/ R. Bruce Rich*
                                                    R. Bruce Rich
                                                    Benjamin E. Marks
                                                    Jonathan Bloom
                                                    John R. Gerba
                                                    767 Fifth Avenue
                                                    New York, New York 10153
                                                    (212) 310-8000
                                                    benjamin.marks@weil.com

                                            *Attorneys for Defendant West Publishing Corp.*

---

[10] Plaintiff also opposes Defendants' entitlement to summary judgment on the basis of an implied license.  West joins in Lexis's reply on this point.