UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EDWARD L. WHITE, P.C.

    Plaintiff,

    - against -

WEST PUBLISHING CORPORATION d/b/a "West";
and REED ELSEVIER INC., d/b/a LexisNexis,

    Defendants.

12-CV-1340 (JSR)
ECF CASE

# PLAINTIFF'S REPLY MEMORANDUM OF LAW
# IN FURTHER SUPPORT OF PLAINTIFF'S
# MOTION FOR SUMMARY JUDGMENT

Gregory A. Blue
GREGORY A. BLUE, P.C.
405 Lexington Avenue, Suite 2600
New York, New York 10174
Telephone: (646) 351-0006
Facsimile: (212) 208-6874
Email: blue@bluelegal.us

Raymond A. Bragar
BRAGAR EAGEL & SQUIRE, P.C.
885 Third Ave., Suite 3040
New York, New York 10022
Telephone: (212) 308-5858
Facsimile: (212) 208-2519
Email: bragar@bespc.com

*Attorneys for Plaintiff*

## Table of Contents

Table of Authorities ................................................................................................................... iii

Preliminary Statement ................................................................................................................ 1

I.   Defendants' copying is not "fair use." ................................................................................ 1

        A.   The purpose of the use weighs against a finding of "fair use." ...................... 1

              1.   Defendants' use is not transformative .................................................. 1

              2.   Defendants' use is commercial. .......................................................... 4

        B.   The nature of the works ................................................................................. 5

        C.   The Defendants used the entirety of the works. ............................................ 6

        D.   The potential market for the works. ............................................................... 6

II.   The Defendants did not have an "implied license" ......................................................... 8

III.   Defendants violated Plaintiff's exclusive rights under the Copyright Act. .............. 10

Conclusion ............................................................................................................................... 10

# Table of Authorities

**CASES**

*American Geophysical Union v. Texaco Inc.*,
  60 F.3d 913 (2d Cir. 1994) .................................................................................................. 8

*Authors Guild, Inc. v. HathiTrust*, 2012 U.S. Dist. LEXIS 146169,
  Case No. 11 CV 6351 (HB) (S.D.N.Y. Oct. 10, 2012) ........................................ 1, 2, 3, 4

*Bill Graham Archives v. Dorling Kindersley Ltd.*,
  448 F.3d 605 (2d Cir. 1992) ........................................................................................ 6, 7, 8

*Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569 (1994) ..................................................... 7

*Castle Rock Entm't, Inc. v. Carol Publ'g Grp.*,
  150 F.3d 132 (2d Cir. 1998) .................................................................................................. 7

*EMI Latin v. Bautista,*
  2003 U.S. Dist. LEXIS 2612 (S.D.N.Y. Feb. 24, 2003) .................................................. 9

*Field v. Google Inc.*,
  412 F. Supp. 2d 1106 (D. Nev. 2006) ................................................................................ 9

*Keane Dealer Servs. v. Harts,*
  968 F. Supp. 944 (S.D.N.Y. 1997), ..................................................................................... 9

*N.Y. Times Co. v. Tasini*,
  533 U.S. 483 (2001) ............................................................................................................ 10

*Parker v. Yahoo!, Inc.*,
  2008 U.S. Dist. LEXIS 74512 (E.D. Pa. Sept. 25, 2008) ................................................. 9

*Perfect 10 v. Amazon.com, Inc.*
  508 F.3d 1146 (9th Cir. 2007) ....................................................................................... 4, 6

*Psihoyos v. National Examiner*,
  1998 U.S. Dist. LEXIS 9192, Case No. 97-Civ.-7624 (JSM) (S.D.N.Y.
  June 22, 1998) ........................................................................................................................ 5

*Righhaven LLC v. Klerks*,
  2010 U.S. Dist. Lexis 105307 (D. Nev. Sept. 17, 2010) .................................................. 9

**TREATISES**

4-13 Melville B. Nimmer and David Nimmer, Nimmer on Copyright §
  13.05[A][4] (Mathew Bender, Rev. Ed) ............................................................................ 7

## Preliminary Statement

Plaintiff respectfully submits this Reply Memorandum of Law in Further Support of Plaintiff's Motion for Summary Judgment. In order to avoid duplicative briefing, Plaintiff incorporates by reference its legal arguments in opposition to Defendants' Motions for Summary Judgment, which addressed the same issues.[1]

**I.      Defendants' copying is not "fair use."**

**A.     The purpose of the use weighs against a finding of "fair use."**

**1.      Defendants' use is not transformative.**

In opposition to Plaintiff's Motion for Summary Judgment, Defendants reiterate their arguments (made in their own Motions for Summary Judgment) that their uses were transformative because, Defendants insist, they were directed at a different audience for a different purpose. That argument ignores the fact that Defendants' subscribers – the end users– are lawyers using the briefs and pleadings for the same purpose as the originals.

In support of that argument, Defendants' opposition papers both cite to Judge Baer's recent decision in *Authors Guild, Inc. v. HathiTrust*, 2012 U.S. Dist. LEXIS 146169, Case No. 11 CV 6351 (HB) (S.D.N.Y. Oct. 10, 2012). Lexis, in particular, argues that *HathiTrust* stands for the proposition that making a copy of an entire work "to enable full text searching" is transformative when the new purpose is "superior search capabilities." [Lexis Op. Br.[2] at p. 5] The *HathiTrust* decision, however, actually says no such thing.

---

[1] Plaintiff's Memorandum of Law in Opposition to Defendants' Motions for Summary Judgment ("Plaintiff's Op. Br."), Oct. 23, 2012, Dkt. No. 68.

[2] "Lexis Op. Br." is Defendant Reed Elsevier Inc.'s Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment, Oct. 23, 2012, Dkt. No. 69.

1

*HathiTrust* involved copying for only very limited purposes. University libraries entered into agreements with Google for Google to scan the libraries' books. Google then provided the libraries with digital copies, which the libraries then "contributed" to the HathiTrust Digital Library (the "HDL"). *Id.* at *8-9. "For works with known authors," the defendants "use[d] the works within the HDL in three ways: (1) full-text searches; (2) preservation; and (3) access for people with certified print disabilities." *Id.* at *9.

The first use at issue in the *HathiTrust* case was "full-text searches." At first blush, that sounds like what West and Lexis do with legal briefs and pleadings. In *HathiTrust*, however, documents protected by copyright were not available in full text to the general user. Rather, "[f]or works that are not in the public domain or for which the copyright owner has not authorized use, the full-text search indicates only the page numbers on which a particular term is found and the number of times the term appears on each page." *Id.* at *9. *See also id.* at *45. So, unlike the situation here, "[n]o actual text from the [works] is revealed except to print-disabled library patrons." *Id.* at *44 (citation omitted).

It therefore is not true, as Lexis argues, that *HathiTrust* stands for the proposition that copying of an entire copyright-protected work is "fair use" simply because the infringer offers "superior search capabilities." [Lexis Br. at p. 5] Quite the contrary, Judge Baer's decision that copying of the works for indexing was for a different purpose, and therefore "transformative," was expressly based on his finding that the defendants in that case did *not* do what Lexis and Westlaw do. As Judge Baer explained, "[t]he use to which the works in the HDL are put is transformative because the copies serve an entirely different purpose than the original works: the purpose is superior search capabilities <u>rather than actual access to copyrighted material.</u>" *Id*. at *45 (emphasis added). Here, unlike in *HathiTrust*, the purpose of the West's and Lexis's copying is "actual access to

2

copyrighted material." This is not *HathiTrust,* and this is not fair use.[3]

The second use at issue in *HathiTrust* was "preservation." Judge Baer found that "[t]he argument that preservation on its own is a transformative use is not strong," but that the non-commercial nature of the preservation efforts, coupled with the other purposes, was "fair use." *Id.* at *42-43, fn. 19. In other words, full-text copying for preservation was not transformative and could only be justified based on the other "fair use" factors. Thus, that part *HathiTrust* also does not support the Defendants' "transformation" argument.

The third use at issue in *HathiTrust* was copying to make the works available for access by "print-disabled" users.[4] Judge Baer found that, by making the works available to print-disabled users, the defendants "revolutionized" access to such works because, "[s]ince the digital texts in the HDL became available, print-disabled students have had full access to the materials through a secure system intended solely for students with certified disabilities." *Id.* at *10-11 (citations to the record omitted). It therefore is hardly surprising that Judge Baer found such use transformative. It clearly is. After all, making copies for the visually impaired was specifically identified in the House Committee Report as a quintessential type of "fair use." *Id.* at *50 (citing *Sony Corp. of Am. v. Universal City Studios, Inc*, 464 U.S. 417, 455 n.40 (1984)).

---

[3] At most, Defendants' copying is for the purpose of search *and* access to the full text of the materials. In either case, as Judge Baer recognized, search alone is a materially different type of use than search coupled with full-text access.

[4] "Print-disabled individuals read digital books independently through screen access software that allows text to be conveyed audibly or tactilely to print-disabled readers, which permits them to access text more quickly, reread passages, annotate, and navigate, just as a sighted reader does with text." *Id.* at *10.

So, in the *HathiTrust* case, Judge Baer held that *when the defendant has a non-commercial purpose*: (i) indexing, *without displaying the full text*, can be transformative; and (ii) making works available to the visually impaired can be transformative. The Defendants distort *HathiTrust* by arguing that their commercial copying of the full text in order to sell copies to general users is transformative. It is not, and the *HathiTrust* decision does not even begin to suggest that it is.

Ultimately, the Defendants' copying, sale, and display of the briefs and pleadings in their databases is intended to pass copyright-protected works, essentially unaltered and in pristine form, to users who can put them to exactly the same use for which they were created. That is not "transformation," and that is not fair use.[5]

### 2. Defendants' use is commercial.

Defendants offer only half-hearted arguments on the commerciality of their use. West is more candid than Lexis, suggesting that the commercial nature of its use "is of little consequence" in light of the other factors [West Op. Br. at p. 7],[6] while Lexis more boldly asserts that it has a partially non-commercial purpose because some users are students, who Lexis doesn't charge. That hardly matters. The primary purpose of

---

[5] West's reliance on *Perfect 10 v. Amazon.com, Inc.* 508 F.3d 1146, 1165 (9th Cir. 2007), *cert. denied,* 132 S.Ct. 1713 (2012) is misplaced. The whole work copied in *Perfect 10* was a photograph transformed to a thumbnail size for an entirely different purpose for the users of the site that did the transformation. Here the entire Work is exactly copied for the users of Lexis to advocate in Court.

[6] West's characterization of the considerations used in evaluating commercial use at p. 6 of its brief argue tilt the analysis against a finding of "fair use" here. First, there was no transformation of the Works themselves, other than those that made the Works searchable, and therefore salable. Second, West is seeking to capitalize on the expressive value of the works without paying a fee. Third there is limited public interest in the *Defendants'* sale of briefs and motions because, as they point out, those documents are readily available from other, non-commercial sources, including PACER.

Lexis's use is commercial, a fact that cannot be changed by their self-interested attempt to hook budding lawyers on their services in their professional infancy. Giving away Lexis and Westlaw services to students is not an eleemosynary endeavor, it is good for business. The Defendants' uses are commercial, which weighs against finding "fair use."

**B.     The nature of the works.**

Lexis argues that the second "fair use" factor tips in its favor because the Works are published, *de facto* published, or at least were not held confidential by Plaintiff. West (while arguing that the Works *were* published) similarly avers that the public availability of the works tips the "fair use" analysis in favor of the Defendants.

Both Defendants dramatically overstate the significance of public availability. First, as explained in Plaintiff's opening brief, the fact that a work is publicly filed does not strip it of protection under the Copyright Act, or even weigh in favor of a finding of fair use. [Plaintiff's SJ Br. at pp. 16-17]

Second, with respect to *de facto* publication, none of the cases cited by Lexis found publication, or even "*de facto* publication," based upon a public filing, as is the situation in his case. More importantly, none of those cases suggest that de facto publication actually *favors* a finding of fair use. Rather, "if the author does not seek confidentiality, fair use is *not necessarily precluded* as to an unpublished work." *Psihoyos v. National Examiner*, 1998 U.S. Dist. LEXIS 9192, *10, Case No. 97-Civ.-7624 (JSM) (S.D.N.Y. June 22, 1998) (emphasis added). That is not the same as saying that de facto publication actually *favors* a finding of fair use, as Lexis argues. It does not.

The Defendants also argue that the briefs are "factual" works and that, for this reason, too, the "nature of the works" favors a finding of "fair use." [Lexis Op. Br. at p. 10; West Op. Br. at p. 10] As discussed in Plaintiff's Opposition to Defendants' Motion for Summary Judgment, that the briefs contain factual matter only gives the Defendants

5

leeway to copy the factual matter, not the precise expression. [Plaintiff's Op. Br. at pp. 9-10] Defendants copied not only the facts, but also the exact expression, and none of the authority cited by the Defendants suggests that such copying is "fair use."[7]

As with all "fair use" factors, the Defendants have the burden of proof. The Defendants cannot carry their burden of showing that this factor tips in their favor.

**C.     The Defendants used the entirety of the works.**

The cases cited by the Defendants concerning the amount of the works used – in this case, the entirety of the works – are not relevant here. As discussed in Plaintiff's opposition to the Defendants' Motions for Summary Judgment, the cases cited by the Defendants in which the entirety of a work was copied all involve situations in which the work was significantly transformed, either by incorporation into a larger work used for a different purpose, *e.g. Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605 (2d Cir. 1992), or in the internet search engine cases. *E.g. Perfect 10, Inc. v. Amazon*. This factor also weighs against a finding of "fair use," and the Defendants cannot carry their burden on this factor.

**D.     The potential market for the works.**

Both Defendants argue that Plaintiff has not shown "market harm." In this situation, in which the Defendants are simply making copies of the Works, the Court

---

[7] That the Defendants are free to relate the facts and even the legal arguments made, without copying the exact expression, also disposes of Defendants' First Amendment argument. As the Supreme Court explained, "copyright's idea/expression dichotomy strikes a definitional balance between the First Amendment and the Copyright Act by permitting free communication of facts while still protecting an author's expression." *Harper & Row, Publrs. v. Nation Enters.*, 471 U.S. 539, 556 (1985) (quotation omitted). Defendants are free to digest, summarize, or otherwise covey the factual elements of the Works, but they do not have a First Amendment right to sell Plaintiff's exact expression, as embodied in the Works.

must heed the direction of the Supreme Court, which has explained that "when a commercial use amounts to mere duplication of the entirety of an original it clearly supersede[s] the objects of the original and serves as a market replacement for it, making it likely that cognizable market harm to the original will occur." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 591 (1994) (citation and quotation omitted).  *See* 4 Melville B. Nimmer and David Nimmer, Nimmer on Copyright § 13.05[A][4] (Mathew Bender, Rev. Ed), fn. 234 ("Common sense dictates that a nontransformative use of an entire copyrighted work for commercial purposes obviously supplants the original.") (citations omitted).

      Lexis argues that it is "circular" reasoning to suggest that the Defendants' own sale of the Works demonstrates the existence of a market for the works.  It is not.  The classic cases in which the infringers' own sale of the works was held *not* to demonstrate the existence of a market all involved situations in which the alleged infringer was selling something demonstrably different than the work itself, *i.e.* in which there had been some dramatic and obvious transformation of the copyright-protected work before its sale.

      Thus, Lexis is left to argue that there is no market harm from a *transformative* use.  So, for example, in *Bill Graham Archives*, *supra*, (discussed at length in Plaintiff's Opposition to Defendant's Motions for Summary Judgment), the Second Circuit's holding with respect to market injury was expressly based on its finding that the use was transformative.  *Id.* at 15 (holding that, "[s]ince DK's use of BGA's images falls within a transformative market, BGA does not suffer market harm due to the loss of license fees.").  *See also Castle Rock Entm't, Inc. v. Carol Publ'g Grp.*, 150 F.3d 132, 146 n.11 (2d Cir. 1998) ("copyright owners may not preempt exploitation of *transformative* markets") (emphasis added).

7

Notably, the Second Circuit in *Bill Graham Archives* contrasted the facts of that case with those in *American Geophysical Union v. Texaco Inc.*, 60 F.3d 913 (2d Cir. 1994), a case in which Texaco's in-house researches copied entire articles from scientific journals. The Court of Appeals explained that *American Geophysical Union* was distinguishable because the use at issue in *Bill Graham Archives* was "transformatively different from their original expressive purpose," while the use at issue in the earlier case – mere copying of articles – was not. *Bill Graham Archives* at 612. Here, the Defendants have made no changes to the Works to alter their "expressive purpose." *Id.* at 614.[8]

For these reasons, and those set out in Plaintiff's other memoranda of law, the "market harm" factor tips in favor of the Plaintiff, and Defendants cannot carry their burden of showing "fair use."

## II.     The Defendants did not have an "implied license"

As described in Plaintiff's Opposition to the Defendants' Motion for Summary Judgment, Lexis's "implied license" argument asks this Court to adopt an unprecedented interpretation of that defense that would result in a massive (indeed, unlimited) expansion the concept. Never before has a court held that an entire class of works, created by tens of thousands of authors, are available for poaching on the ground that the authors' silence resulted in an "implied license" to copy their works.

---

[8] Interestingly, the Second Circuit also distinguished *American Geophysical Union* on the ground that the scientific journals at issue in that case were available for download "from online databases such as Lexis, which paid the journals a license fee." *Id.* at 615, fn. 6. The legitimate "market harm" in *American Geophysical Union* thus included a loss of licensing fees from "databases such as Lexis," which were not part of the original market for the scientific journals. Just as Lexis and West can (and do) pay licensing fees for content created by the authors of journals and treatises, they can pay licensing fees for content created by attorneys.

Each of the cases relied upon by Lexis involved a personal transaction, or the unique context of internet search engines. Thus, in *Keane Dealer Servs. v. Harts,* 968 F. Supp. 944 (S.D.N.Y. 1997), the alleged infringer called the copyright owner with a question about the software at issue, and the owner answered questions about it. The court found that, after that conversation, the owner "chose to take no action" with respect to the use. *Id.* at 946. There was no similar direct communication between the Plaintiff and the Defendants here. *See also EMI Latin v. Bautista,* 2003 U.S. Dist. LEXIS 2612 (S.D.N.Y. Feb. 24, 2003) (direct dealings between band member and record label).

The internet search engine cases finding an implied license are also distinguishable because each of those cases made a specific factual finding that the plaintiff was aware of internet protocols that would have prevented copying by the search engines, and yet made a conscious decision not to include those protocols in their web pages. *See Field v. Google Inc.*, 412 F. Supp. 2d 1106, 1116 (D. Nev. 2006) (finding that the author "chose not to include the no-archive meta-tag on the pages of his site"); *Parker v. Yahoo!, Inc.*, 2008 U.S. Dist. LEXIS 74512, *14 (E.D. Pa. Sept. 25, 2008) (finding that the complaint itself established that the plaintiff "knew that as a result of his failure to abide by the search engines' procedures, the search engines would display a copy of his works"). Here, in contrast to the internet search engine implied license cases, the Defendants have not submitted any evidence that Plaintiff: (i) knew there was a method to prevent the Defendants from copying the Works; *and* (ii) consciously chose not to avail itself of those method. Under these circumstances, the Court cannot find that Plaintiff manifested any intent to license the works for the Defendants' use.[9]

---

[9] Lexis also cites *Righhaven LLC v. Klerks*, 2010 U.S. Dist. Lexis 105307 (D. Nev. Sept. 17, 2010), which, as Lexis notes, was merely a decision vacating a default judgment. In that case, which concerned defendant's copying of an article from the

(*footnote continued on next page*)

9

### III.  Defendants violated Plaintiff's exclusive rights under the Copyright Act.

There is no dispute that the Defendants made electronic, text-searchable versions of the Works. included versions of those Works in their databases, and that those works were accessed by their subscribers.  Under these circumstances, "[i]t is clear that [the Defendants] have exercised at least some rights that § 106 initially assigns exclusively to the Authors." *N.Y. Times Co. v. Tasini*, 533 U.S. 483, 498 (2001) (finding that, "LEXIS/NEXIS' central discs and UMI's CD-ROMs 'reproduce . . . copies' of the Articles, § 106(1); UMI, by selling those CD-ROMs, and LEXIS/NEXIS, by selling copies of the Articles through the NEXIS Database, 'distribute copies' of the Articles 'to the public by sale'").[10]

## Conclusion

The Plaintiff's Motion for Summary Judgment should be granted.

---

internet, the defendant alleged that "the original copyright holder offered the article to the world for free, encouraged people to save and share the article with others without restrictions, and permitted users to 'right-click' and copy the article from its website.") *Id.* at *10.  The court, though, did not actually find an implied license.  It merely found "a sufficiently plausible affirmative defense to warrant setting aside the default." *Id.* at 11.

[10] Defendants insist there is a "dispute" over ownership.  [Lexis Op. Br. at p. 23] That argument is a gross and irresponsible misrepresentation of the record.  Both Mr. White and Mr. High agreed that the Works are owned by Edward L. White, P.C.  [Bloom Declaration, Dkt. No. 64, Exh. B, Transcript p. 19-20 (Mr. High stated "Ed's firm [Edward L. White, P.C.] owns all the work product.")].  There is no sense in which there is a "dispute" over ownership.


Dated: New York, New York
       November 2, 2012

                                          GREGORY A. BLUE, P.C.

                                          By:   /s/ Gregory A. Blue
                                                 Gregory A. Blue
                                          405 Lexington Avenue, Suite 2600
                                          New York, NY 10174
                                          Telephone: (646) 351-0006
                                          Facsimile: (212) 208-6874
                                          blue@bluelegal.us

                                          Raymond A. Bragar
                                          BRAGAR EAGEL & SQUIRE, P.C.
                                          885 Third Ave., Suite 3040
                                          New York, New York 10022
                                          Telephone: (212) 308-5858
                                          Facsimile: (212) 208-2519
                                          bragar@bespc.com

                                          *Attorneys for Plaintiff*