UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

EDWARD L. WHITE, P.C.,

                Plaintiff,

v.

WEST PUBLISHING CORPORATION
d/b/a "West," and REED ELSEVIER INC.
d/b/a LexisNexis,

                Defendants.

ECF CASE

Civil Action No. 12-CV-1340 (JSR)

---

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT REED ELSEVIER INC.'S MOTION FOR SUMMARY JUDGMENT

---

James E. Hough
Craig B. Whitney
Cindy P. Abramson
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York  10104
Telephone:   (212) 468-8000
Facsimile:   (212) 468-7900
jhough@mofo.com
cwhitney@mofo.com
cabramson@mofo.com

James F. McCabe (admitted *pro hac vice*)
Paul Goldstein (admitted *pro hac vice*)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105
Telephone:   (415) 268-7000
Facsimile:   (415) 268-7522
jmccabe@mofo.com
pgoldstein@mofo.com

*Attorneys for Defendant*
*LexisNexis, a div. of REED ELSEVIER INC.*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT ...................................................................................................... 3

    I.      LEXIS IS ENTITLED TO SUMMARY JUDGMENT ON FAIR USE .............. 3

          A.      Lexis's Use of the Briefs was Transformative ........................................... 3

          B.      Lexis's Use of the Briefs Had No Negative Effect on Any Market
              for or the Value of the Briefs .................................................................. 5

          C.      The Remaining Factors Taken Together Support a Finding of Fair
              Use ......................................................................................................... 8

    II.     LEXIS HAD AN IMPLIED LICENSE TO USE PLAINTIFF'S BRIEFS ........... 9

CONCLUSION .................................................................................................... 10

# <u>TABLE OF AUTHORITIES</u>

PAGE(S)

CASES

*Am. Geophysical Union v. Texaco Inc.*,
    60 F.3d 913 (2d Cir. 1994).................................................................................3, 6

*Authors Guild, Inc. v. Hathitrust*,
    No. 11 CV 6351, 2012 U.S. Dist. LEXIS 146169 (S.D.N.Y. Oct. 10, 2012)...........6

*Blanch v. Koons*,
    467 F.3d 244 (2d Cir. 2006)...........................................................................4 n.3, 6

*Campbell v. Acuff-Rose Music, Inc.*,
    510 U.S. 569 (1994)..................................................................................................4

*Field v. Google Inc.*,
    412 F. Supp. 2d 1106 (D. Nev. 2006).....................................................................9

*Keane Dealer Servs. v. Harts*,
    968 F. Supp. 944 (S.D.N.Y. 1997) .........................................................................9

*Monge v. Maya Magazines, Inc.*,
    688 F.3d 1164 (9th Cir. 2012) .............................................................................6, 7

*Parker v. Yahoo!, Inc.*,
    No. 07-2757, 2008 U.S. Dist. LEXIS 74512 (E.D. Pa. Sept. 25, 2008)................10

*Psihoyos v. Pearson Educ., Inc*,
    855 F. Supp. 2d 103 (S.D.N.Y. 2012)....................................................................9

*Righthaven LLC v. Klerks*,
    No. 2:10-cv-00741, 2010 U.S. Dist. LEXIS 105307 (D. Nev. Sept. 17, 2010)......10

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
    464 U.S. 417 (1984)...........................................................................................5 n.4

*Vanderhye v. iParadigms, LLC*,
    562 F.3d 630 (4th Cir. 2009) ...................................................................................7

*Wright v. Warner Books Inc.*,
    953 F.2d 731 (2d Cir. 1991)....................................................................................7

OTHER AUTHORITIES

Barton Beebe, *An Empirical Study of U.S. Copyright Fair Use Opinions, 1978-2005*,
    156 U. PA. L. REV. 549 (2008)...............................................................................3

Local Civ. R. 56.1(d) ................................................................................5-6 n.5

## PRELIMINARY STATEMENT

All parties agree that the facts regarding Lexis's fair use defense are not in dispute.  Lexis legitimately acquired two of Plaintiff's publicly filed legal documents (the "Briefs") from PACER.  After editorial and technical enhancements, Lexis incorporated the Briefs into a sophisticated research database (the "BPM database") that serves an entirely different purpose than that of the original Briefs, and that has no impact on any actual or potential market for the Briefs.  Plaintiff attempts to escape the legal import of these undisputed facts with little more than unsupported attorney argument and ill-conceived analogies.  When the undisputed evidence is examined under the applicable law, Lexis's use of the Briefs was unquestionably fair.

Plaintiff argues it is "self-evident" that Lexis used the Briefs to allow "their *subscribers* to engage in legal advocacy by downloading (and cutting-and-pasting from) briefs and pleadings to put them to exactly the same use for which they were written."  (Pl.'s Opp. at 3 (emphasis in original).)[1]  Lexis's subscribers' use, however, is irrelevant to the transformative nature of Lexis's use.  Moreover, the undisputed record evidence establishes that the BPM database's purpose is to facilitate research (including research by law students, legal scholars, and court personnel, among other users), which added something new to the Briefs and was entirely different from the legal advocacy purpose for which Plaintiff created the Briefs.

Lexis's use also had no impact on any potential market for the Briefs.  Eschewing any reliance on actual evidence, Plaintiff speculates that such a market *could* exist despite the fact that there is no evidence that any attorney *ever* licensed or sold a brief for any purpose, and Plaintiff admits that it did not create the Briefs in order to license or sell them.  Indeed, the evidence in the record, including the unrebutted testimony of an expert micro-economist,

---

[1] Citations to "Pl.'s Opp." refer to Plaintiff's Memorandum of Law in Opposition to Defendants' Motions for Summary Judgment, dated October 23, 2012 (Dkt. No. 68).

confirms that there has been no harm to any actual or potential market for the Briefs. Plaintiff's alternate contention that *defendants* are the relevant market is nothing more than a circular argument that courts have uniformly rejected, based on the unimpeachable logic that if a secondary use by itself sufficed as evidence of a harmed market, then the all-important fourth fair use factor could never favor fair use.

None of the evidence relevant to the other fair use factors favors Plaintiff. The Briefs are factual works that were publicly filed in a court, without seal, to advocate for a client, Plaintiff had no intention to use them for any further purpose, and Lexis's use of the entire documents was indisputably necessary for its transformative purpose. Plaintiff is correct that the use of an entire work, when such use is necessary for a transformative purpose, does not in itself favor fair use, but Plaintiff does not—and could not—contend that use of an entire work in such circumstances weighs against fair use. And Plaintiff completely discounts the significance of the public's right to inspect and copy legal documents, a right rooted in the First Amendment, which is relevant to the context in which Lexis's use was made, and therefore bears heavily on the merits of Lexis's fair use defense. Taken together, the undisputed facts compel a finding of fair use, and Plaintiff cannot point to a single relevant fact that would support a contrary holding.

The facts supporting Lexis's implied license defense are also undisputed. Plaintiff's argument against an implied license relies entirely on a line of inapplicable cases that arise from contractual arrangements gone awry, a situation that does not exist here. Instead, the applicable cases cited by Lexis hold that a license can be inferred from conduct, and here the relevant conduct is undisputed: Plaintiff publicly filed the Briefs without seal assuming they would end up on the BPM database and, aware that PACER encouraged copying by other PACER users, nonetheless made no effort to object to Lexis's use before filing this lawsuit. Given the absence

2

of any factual dispute, and the supporting case law, Lexis is also entitled to summary judgment on its implied license defense.

## ARGUMENT

## I.   LEXIS IS ENTITLED TO SUMMARY JUDGMENT ON FAIR USE.

Determining fair use involves balancing various factors, but the two primary considerations here are the transformative purpose of Lexis's use and lack of any harm to the value of, or any potential market for, the Briefs.  Courts and commentators agree that these two factors (the first and fourth factors as listed in Section 107) are the most important.  *See Am. Geophysical Union v. Texaco Inc.*, 60 F.3d 913, 931 (2d Cir. 1994) (emphasizing the first and fourth factors as the "important" factors); Barton Beebe, *An Empirical Study of U.S. Copyright Fair Use Opinions*, 1978–2005, 156 U. PA. L. REV. 549, 583 (2008) (noting that factors two and three are often regarded as "peripheral").  Lexis's transformative use and the absence of market harm therefore support fair use, both independently and in conjunction with the other factors.

### A.   Lexis's Use of the Briefs was Transformative.

The facts underlying Lexis's enhancement of the Briefs and integration into a searchable, interconnected database for legal research are undisputed.  (St. 27-43.)[2]  Instead of disputing these facts, Plaintiff argues that Lexis's *subscribers* use the Briefs for non-transformative purposes.  This contention lacks any support and is irrelevant to whether *Lexis's* use is transformative.

Lexis enhanced the Briefs and converted them from a client advocacy piece into a research tool.  (St. 1, 4, 43.)  Numerous authoritative and persuasive cases, including those cited in Lexis's Memorandum in Support of Its Motion for Summary Judgment (Dkt. No. 56)

---

[2] Citations to "St." refer to Lexis's Rule 56.1 Statement of Undisputed Facts in Support of Its Motion for Summary Judgment, dated October 5, 2012 (Dkt. No. 57).

("Lexis's Summary Judgment Motion"), have held that the use of a work for a different purpose

than that of the original, and which adds something new and does not supersede the object of the

original, is transformative.  Plaintiff, on the other hand, does not cite a single case holding that

the type of use engaged in by Lexis is *not* transformative.  Plaintiff attempts merely to

distinguish the many cases cited by Lexis by highlighting inconsequential factual differences.[3]

(Pl.'s Opp. at 4-6.)  But while those cases had different facts from this case and from each other,

the principle was the same: a new work that "adds something new, with a further purpose or

different character" than the original, rather than "merely 'supersede[s] the objects' of the

original creation" is transformative.  *See Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579

(1994) (internal citations omitted).

    While Lexis's enhancements are designed to increase the commercial value of the BPM

database, they do so by adding value to and thus transforming the originals.  In fact, Plaintiff

acknowledges that "the fees charged by the Defendants are substantially higher than the fees

charged by public sources, such as PACER." (Pl.'s Opp. at 15.)  The reason Lexis is able to

charge higher fees, however, is that Lexis added value to and transformed the Briefs.  If the

integration of the Briefs into the BPM database did not transform the originals, no rational

individual would pay "substantially" more for that product.  And Lexis's added value occurred

*after* the Briefs already served their only purpose, compelling proof that Lexis's product does not

supersede Plaintiff's purpose for creating the Briefs.

    Plaintiff's argument that Lexis's *subscribers* use the Briefs "by downloading (and

cutting-and-pasting from) [the Briefs] to put them to exactly the same use for which they were

---

[3] Plaintiff notably does not attempt to distinguish *Blanch v. Koons*, 467 F.3d 244 (2d Cir. 2006), which, like the other cases, stands for the principle that a use different from that of the original is generally regarded as transformative.  *Id.* at 252.

4

written" is both irrelevant and wrong.  (Pl.'s Opp. at 3.)  Lexis's subscribers' use of the Briefs

has no bearing on whether Lexis's use is transformative.  Plaintiff acknowledges this point

elsewhere in arguing that Lexis's subscribers' non-commercial use of the Briefs is irrelevant to

whether Lexis's use is commercial (which Lexis has never disputed), but ignores this principle

when it suits Plaintiff's argument.  (*Id.* at 7.)  Moreover, Plaintiff does not cite any evidence to

support its pure conjecture regarding Lexis's customers' use of the Briefs.  Plaintiff has never

claimed—much less introduced an admissible fact—that anyone has ever plagiarized the Briefs

or used them for the same purpose for which they were written.[4]  Lacking any evidence, Plaintiff

claims that it needs none, because its argument is "self-evident."  (Pl.'s Opp. at 3.)  Plaintiff's

"self-evident" conclusion, however, is contradicted by the actual evidence showing that the

majority of accesses to the Briefs (and the BPM database) were by law students—not lawyers—

and that the BPM database is designed for research purposes.  (St. 1, 4, 45, 73-74.)

        Notwithstanding Plaintiff's speculation, Lexis's use—the only relevant use—is clearly

transformative, and serves a purpose different from that of the original Briefs.  The record

contains no evidence to support a contrary conclusion.

> ### B.   Lexis's Use of the Briefs Had No Negative Effect on Any Market for or the Value of the Briefs.

        Lexis produced extensive evidence showing that its use had no negative effect on any

potential market for or the value of the Briefs, and Plaintiff has not produced a shred of evidence

showing otherwise.  (St. 85-97.)[5]  Plaintiff instead argues that: (1) Lexis's use is evidence of a

---

[4] Nor could Lexis be liable for direct infringement as a result of its subscribers' use.  *See Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 446 (1984) ("Third-party conduct would be wholly irrelevant in an action for direct infringement of [plaintiffs'] copyrights.").

[5] Plaintiff does not raise a factual dispute regarding David Blackburn's expert testimony that there has been no harm to the original market for the Briefs and that no other market for the Briefs available to Plaintiff exists.  (St. 85-92.)  Plaintiff disagrees with Dr. Blackburn's expert

market; (2) someone would be willing to pay Plaintiff for the Briefs absent Lexis's use; and (3) where a use supersedes the objects of the original, market harm is likely to occur.  (Pl.'s Opp. at 12-14.)  None of these arguments has merit.

Plaintiff primarily argues that because Lexis acquired the Briefs via PACER and incorporated them into its BPM database, there must be a market for Plaintiff to sell the Briefs to Lexis.  However, as discussed at length in Lexis's Memorandum of Law in Support of Its Opposition to Plaintiff's Motion for Summary Judgment (Dkt. No. 69) ("Lexis's Summary Judgment Opposition") at pages 11 through 13, this argument has been uniformly rejected.  The market based on a transformative use is not the relevant market for purposes of a fair use analysis—otherwise there would always be market harm and never a fair use.  *See*, *e.g.*, *Authors Guild, Inc. v. Hathitrust*, No. 11 CV 6351, 2012 U.S. Dist. LEXIS 146169, at *56 (S.D.N.Y. Oct. 10, 2012) ("A use that 'falls within a transformative market' does not cause the copyright holder to 'suffer market harm due to the loss of license fees.'") (quoting *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 615 (2d Cir. 2006)); *see also Blanch*, 467 F.3d at 258 n.9 ("[I]t is of course circular to assert simply that if we were to hold in [plaintiff's] favor she could then charge [defendant] for his further use of [plaintiff's work].");  *Am. Geophysical Union*, 60 F.3d at 930 n.17 ("[W]ere a court automatically to conclude in every case that potential licensing revenues were impermissibly impaired simply because the secondary user did not pay a fee for the right to engage in the use, the fourth fair use factor would *always* favor the copyright holder.") (emphasis in original).

Plaintiff relies on the recent Ninth Circuit opinion, *Monge v. Maya Magazines, Inc.*, 688 F.3d 1164 (9th Cir. 2012), but in doing so misstates the holding, and omits a pivotal sentence

---

opinion, but offers only attorney argument in rebuttal.  This is not sufficient to raise a disputed issue of fact regarding the subject of Dr. Blackburn's testimony.  *See* Local Civ. R. 56.1(d).

from the quotation it highlights.  (Pl.'s Opp. at 13.)  Contrary to Plaintiff's contention, the Ninth

Circuit did not find that a market for celebrity wedding photographs existed and was harmed

solely because the defendant purchased the photographs at issue.  The court properly held that

there was market harm because *both* the plaintiff *and* the defendant had a history of participating

in the relevant market *and* had a history of participating in that market with each other.  The full

quote partially cited by Plaintiff, with the omitted portion in italics, states:

> *The couple is undisputedly in the business of selling images of themselves and*
> *they have done so in the past and Maya itself paid $1,500 for prior photos*.
> Maya's purchase of the pictures unequivocally demonstrates a market for the
> couple's copyrighted pictures.  And Maya is itself a participant in the market for
> celebrity wedding photos, as Issue 633 also featured pictures of another celebrity
> wedding with photos that the magazine purchased.

*Monge*, 688 F.3d at 1181 (emphasis added).

In contrast to *Monge*, Plaintiff here has never sold or licensed the Briefs or any legal

documents, Lexis has never purchased legal documents from Plaintiff, Plaintiff is not aware of

any attorney ever selling or licensing a legal document or anyone ever requesting to license legal

documents, and there exists no feasible method by which Lexis could purchase legal documents

directly from attorneys.  (St. 71-72, 90-91, 95-97.)  The undisputed facts confirm that there is

simply no market for Plaintiff to sell the Briefs and no harm to any potential market.

Likewise, Plaintiff's speculation that someone might be willing to pay Plaintiff for the

Briefs has no basis in fact.  *See Vanderhye v. iParadigms, LLC*, 562 F.3d 630, 644 (4th Cir.

2009) ("theoretical and speculative" harms are not considered in the fourth factor analysis); *see*

*also Wright v. Warner Books Inc.*, 953 F.2d 731, 739 (2d Cir. 1991) (speculative nature of

potential harm tilted the fourth factor in favor of fair use).  Indeed, the undisputed record

evidence confirms precisely the opposite.  (St. 72, 90-91, 95-97.)

ny-1063809

Finally, Plaintiff relies on *Campbell* for the proposition that a use that "clearly supersede[s] the objects of the original and serves as a market replacement for it" is likely to cause market harm.  (Pl.'s Opp. at 14 (citing *Campbell*, 510 U.S. at 591).)  Lexis does not contest this principle.  The undisputed evidence, however, shows that Lexis's use of the Briefs does not supersede the sole object of the Briefs, which was to provide legal advocacy to Plaintiff's clients in the *Beer et al. v. XTO Energy, Inc.* litigation.  (St. 67-68, 86.)  That purpose was already necessarily served by the time Lexis acquired the Briefs, and Lexis's use does not serve as a replacement for or impact the quality of the already filed Briefs.  (St. 69-70, 86.)

The undisputed facts show that Lexis transformed the Briefs for a use that caused no harm to the value of the Briefs or any potential market, supporting a finding of fair use.

### C.    The Remaining Factors Taken Together Support a Finding of Fair Use.

As detailed in Lexis's Summary Judgment Motion and Summary Judgment Opposition, the factual nature of Plaintiff's Briefs, combined with the Briefs' lack of confidentiality, their public dissemination and their publication or "de facto publication," weighs heavily in favor of fair use.  (Lexis's Summ. J. Mot. at 14-15; Lexis's Summ. J. Opp. at 7-10.)  Also, as previously addressed, Lexis used the entirety of the Briefs because it was necessary for its transformative purpose—which by itself does not weigh against fair use, and in conjunction with the other factors weighs in Lexis's favor.  (Lexis's Summ. J. Mot. at 15-16; Lexis's Summ. J. Opp. at 11.)  Additional considerations, including the public benefit of Lexis's use and the public's right to access and copy court records—which Plaintiff does not even address—further contribute to a fair use finding.  (Lexis's Summ. J. Mot. at 21-22; Lexis's Summ. J. Opp. at 14-15.)

Plaintiff does not dispute a single material fact cited by Lexis.  Those facts, when properly analyzed, make clear that Lexis is entitled to summary judgment on its fair use defense.

ny-1063809

II.     **LEXIS HAD AN IMPLIED LICENSE TO USE PLAINTIFF'S BRIEFS.**

The parties' conduct here gave rise to an implied license under applicable law.  Plaintiff,

once again, does not dispute the relevant facts.  (St. 3, 6-10, 14, 16-19, 22-25, 47-48, 56-57, 63-

66, 77-80.)  Plaintiff instead relies on a line of cases involving parties that had an existing

agreement, or where one party created a work at the other's request.  (Pl.'s Opp. at 18.)  The

implied license tests applicable to existing agreements, however, do not apply here.

As a recent decision in this district acknowledged, other tests are more likely to apply

when the facts do not fit within the traditional "narrow" implied license tests.

> Some courts ignore the *Effects/Shaver* test [where one party created a work at the
> other's request] entirely and instead focus on the oft-stated principle that "consent
> given in the form of mere permission or *lack of objection* is also equivalent to a
> nonexclusive license and is not required to be in writing." . . . Of note, in *Keane*
> [*Dealer Servs. v. Harts*, 968 F. Supp. 944 (S.D.N.Y. 1997)], *Field* [*v. Google Inc.*,
> 412 F. Supp. 2d 1106 (D. Nev. 2006)], and *Parker* [*v. Yahoo!, Inc.*, No. 07-2757,
> 2008 U.S. Dist. LEXIS 74512 (E.D. Pa. Sept. 25, 2008)], the courts all found
> implied licenses without adhering to the stricter requirements of the
> *Effects/Shaver* test.  In particular, there was no argument in those cases that the
> plaintiff had created the work at issue at the request of the defendant, but the
> courts nevertheless found an implied license had been created.

*Psihoyos v. Pearson Educ., Inc*, 855 F. Supp. 2d 103, 121-22 (S.D.N.Y. 2012) (emphasis added).

Where, as here, the Briefs were not created at Lexis's request, cases applying the

*Effects/Shaver* test have little bearing on the implied license analysis.  Rather, the cases cited by

Lexis based on the parties' conduct, where there has been a "lack of objection" by Plaintiff,

support a finding of an implied license.  *See, e.g., Keane*, 968 F. Supp. at 947.

Plaintiff also incorrectly states that Lexis "can cite no authority for the proposition that an

entire class of works, comprising millions of individual documents, created by uncounted

numbers of individual authors, can be found to be subject to an implied license."  (Pl.'s Opp. at

20.)  But that is precisely what *Field* held.  412 F. Supp. 2d at 1115-16, 1120 (the "works were

among *billions* of works in Google's database" subject to an implied license) (emphasis in

ny-1063809

original).  And *Field* is not the only court to find an implied license for a large number of works

based on a combination of inaction on the author's part and industry custom on the defendant's

part.  *See, e.g., Parker*, 2008 U.S. Dist. LEXIS 74512, at \*15-16; *Righthaven LLC v. Klerks*, No.

2:10-cv-00741, 2010 U.S. Dist. LEXIS 105307, at \*10-11 (D. Nev. Sept. 17, 2010).

     Accordingly, based on the undisputed facts set forth in Lexis's Summary Judgment

Motion, Lexis is entitled to summary judgment on its implied license defense.

## **CONCLUSION**

     For the reasons set forth above, as well as in Lexis's Summary Judgment Motion and

West Publishing Corporation's Motion for Summary Judgment, Lexis respectfully requests that

this Court grant summary judgment dismissing all claims against Lexis.

Dated: November 2, 2012         MORRISON & FOERSTER LLP
      New York, New York

                    /s/ James E. Hough
                    James E. Hough
                    Craig B. Whitney
                    Cindy P. Abramson
                    1290 Avenue of the Americas
                    New York, NY 10104
                    Telephone:  (212) 468-8000
                    Facsimile:  (212) 468-7900
                    jhough@mofo.com
                    cwhitney@mofo.com
                    cabramson@mofo.com

                    James F. McCabe (admitted *pro hac vice*)
                    Paul Goldstein (admitted *pro hac vice*)
                    425 Market Street
                    San Francisco, California  94105
                    Telephone:   (415) 268-7000
                    Facsimile:    (415) 268-7522
                    jmccabe@mofo.com
                    pgoldstein@mofo.com

                    *Attorneys for Defendant*
                    *LexisNexis, a div. of REED ELSEVIER INC.*