CBK8WHIA

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x
EDWARD L. WHITE, et al.,

          Plaintiffs,

      v.                                      12 Cv. 1340 (JSR)

WEST PUBLISHING CORPORATION,
et al.,

          Defendants.
------------------------------x

                                  November 20, 2012
                                  10:55 a.m.

Before:

                  HON. JED S. RAKOFF

                                  District Judge

                    APPEARANCES

GREGORY A. BLUE
    Attorney for Plaintiffs

BRAGAR EAGEL & SQUIRE, P.C.
    Attorneys for Plaintiffs
BY:  RAYMOND A. BRAGAR

WEIL, GOTSHAL & MANGES LLP
    Attorneys for Defendant West Publishing Corp.
BY:  BENJAMIN E. MARKS
     JONATHAN BLOOM
     R. BRUCE RICH

MORRISON & FOERSTER LLP
    Attorneys for Defendant LexisNexis
BY:  JAMES E. HOUGH
     PAUL GOLDSTEIN
     CINDY P. ABRAMSON

```
 1              (Case called)
 2              THE DEPUTY CLERK:  Will the parties please identify
 3    themselves for the record.
 4              MR. BLUE:  Greg Blue for the plaintiff.
 5              MR. BRAGAR:  Raymond Bragar, Bragar Eagel & Squire,
 6    also for the plaintiff.
 7              MR. MARKS:  Benjamin Marks, Weil, Gotshal & Manges,
 8    for defendant West Publishing Corporation.
 9              MR. BLOOM:  Jonathan Bloom, Weil, Gotshal & Manges,
10    also for West Publishing Corporation.
11              MR. RICH:  Bruce Rich, Weil, Gotshal, also for West
12    Publishing Corporation.
13              MR. HOUGH:  James Hough, Morrison & Foerster, for Reed
14    Elsevier, herein as LexisNexis.
15              MR. GOLDSTEIN:  Paul Goldstein, Morrison & Foerster,
16    also for LexisNexis.
17              MS. ABRAMSON:  Cindy Abramson, Morrison & Foerster,
18    also for LexisNexis.
19              THE COURT:  Good morning.
20              I need to apprise you of the Court's policy with
21    respect to oral argument.  I have read your briefs.  You have
22    all presented many interesting issues.  I do not need anyone to
23    repeat anything that's in their brief.  Indeed, I would, with
24    apologies, consider it kind of an insult if you repeated
25    anything that's in your brief because that would indicate that
```

1    you didn't think I read your brief.
2             So the purpose of oral argument is really simply to
3    respond to arguments you didn't have the chance to respond to,
4    because in summary judgment there is always one party that has
5    the last reply papers or something that you just think got lost
6    in the shuffle, so to speak, that you feel ought to be brought
7    to the Court's attention.
8             So I think since they are cross-motions, it doesn't
9    much matter who starts, but let's start with the plaintiff.
10            MR. BLUE:  Thank you, your Honor.  Am I fine from here
11   or would you like me to take the podium?
12            THE COURT:  Whichever you prefer.
13            MR. BLUE:  Your Honor, thank you for saying we don't
14   need to repeat anything.
15            I think we briefed the fair use factors extensively.
16   The one thing here, if we step back from the four factors, is I
17   think the commerciality gets lost a little bit because it was
18   conceded so quickly by the defendants.  The reason I think it
19   gets lost is in the cases, you don't find any instances where a
20   defendant is taking the work itself and simply selling it for a
21   profit and you find fair use.  Either you find cases where they
22   are not selling it, like Judge Baer's recent *HathiTrust* case,
23   making works available to visually impaired, or you find cases
24   where they have made some dramatic change to the work itself.
25            Here what we have got is they are taking the entirety

1   of work that's covered by the copyright act and simply selling
2   it.  In fact, that's their whole business.  Their whole
3   business is acquiring content and selling content.  And they
4   found this one little vein of very valuable legal content that
5   they believe that they can tap for free and turn around and
6   sell it.  We submit that that is not fair use and there are no
7   cases that suggest that it should be.
8           THE COURT:  All right.  Very good.
9           Let me hear from the defense.
10          MR. MARKS:  Benjamin Marks for West Publishing, your
11  Honor.
12          Let me just respond first to the point about
13  commercial use because I don't agree it's been lost in the
14  shuffle.  It's been briefed extensively.  And what the cases
15  tell us is that where you have a different purpose, as West has
16  here, where they are using the words for a different purpose to
17  a different audience, the commercial value or the fact that
18  there is commercial intent and that the defendant is operating
19  a commercial business is relatively unimportant to the overall
20  balancing of the fair use factors.
21          The plaintiffs' argument mischaracterizes what it is
22  that West and Lexis do.  It's not a business predicated on
23  selling one-offs of the plaintiffs' briefs.  What the
24  defendants do is sell integrated research databases.  That's
25  why people subscribe to them.  That's the service that's being

1    offered.  Where the copying takes place is in connection with
2    creating the searchable database.  And so it's not a case where
3    it's simply we are usurping an existing market or even a
4    potential market for the plaintiff by providing access to his
5    brief.
6              We disagree with the premise he has laid out about
7    what it is that we are doing.  We don't think the record
8    reflects it remotely.  And we think that our conduct is
9    comfortably within the framework of numerous cases where there
10   has been a commercial purpose by the defendant, where the
11   defendant has a business.  Whether it's cases like the *Perfect*
12   *10* and the *Kelly* case, or any number of others, where the
13   defendant has anticipated profits, *Bill Graham*, the *Blanch*
14   case, nonetheless, courts have recognized that the copying
15   falls comfortably within fair use.
16             THE COURT:  On the issue of the various factors under
17   fair use, are you both in agreement that there is no material
18   fact in dispute so that the Court has undisputed facts on which
19   it could determine the fair use issue?
20             MR. MARKS:  I believe that the parties are in
21   agreement that there are no material facts in dispute.  I will
22   note that there is some argumentation from the plaintiffs' side
23   without any evidentiary support whatsoever.  Their claims about
24   the purpose for which West and Lexis offer their databases is
25   just attorney argumentation; it's not based on any fact in the

1    record.  But we certainly agree that there are no disputed
2    evidentiary issues.
3            THE COURT:  I should have put that same question to
4    your adversary before he sat down.  So let me put it to him and
5    I will come back to you.
6            MR. BLUE:  Yes, your Honor.  We agree that the Court
7    should decide this because there are no material facts in
8    dispute.
9            THE COURT:  OK.
10           MR. HOUGH:  Just to round it out, for LexisNexis, we
11   also agree that as to the fair use factors, there are no
12   material facts that are in dispute.
13           THE COURT:  Back to counsel.  Yes.
14           MR. MARKS:  So let me just, consistent with your
15   Honor's instruction at the outset, highlight a few points to
16   respond to arguments that appeared in the reply briefing.
17           The first is that the plaintiff has made issue out of
18   the conduct of West's subscribers and Lexis subscribers and
19   what they may or may not do with the briefs.  I note initially,
20   whatever they do with the briefs, that's not our case.  There
21   is no claim for contributory infringement.  This was pled as a
22   direct infringement case.  So what our subscribers may have in
23   mind or what they may want to do is simply off point.
24           I would also note there is no evidence in the record
25   to suggest that what plaintiff has described as this practice

1   of cutting and pasting briefs and submitting briefs from one
2   attorney that they find on West or Lexis in another case, there
3   is no evidence that that happened.  There is certainly no
4   evidence that it ever happened with plaintiffs' briefs.  And
5   there is no evidence that, even if it happened with the
6   plaintiffs' briefs, the way that some hypothesized third party
7   infringer would have gotten the briefs is either through West
8   or through Lexis.  So I did want to make clear that that
9   hypothesized injury is not rooted in the record and not our
10  case since they didn't plead that type of claim or injury.
11              I also wanted to expand briefly on the issue of the
12  public availability of the briefs through the PACER system, and
13  the federal policy of making briefs available, because I think
14  there may have been some talking past each other in the
15  briefing.  We don't contend that the fact that the briefs are
16  publicly available on PACER, or that any copyrighted work has
17  been made available to the public in some form or another, is
18  enough by itself standing alone to make it clear that it's a
19  fair use.  But the public availability is highly relevant here
20  for at least three reasons.
21              First of all, it's the public benefit.  It's part of
22  the federal policy to have widespread access to knowledge about
23  the workings of the court system and arguments that were made
24  and not made.
25              Secondly, on factor two, the fact that the briefs are

1   publicly available is highly relevant to the Court's
2   consideration of factor two because it makes plain that our
3   copying does not interfere at all with the defendants' right to
4   make the works available to the public for the first time.  We
5   don't interfere with that.  They have already been made
6   publicly available, and they don't interfere with any privacy
7   interests.  Those are the circumstances under which some courts
8   have found that factor two favors a plaintiff.  Those don't
9   apply here.
10          The third point I wanted to mention on the public
11  availability is obviously it has a huge impact on factor four
12  and the consideration of market harm.  There is simply no
13  interference with any possible transaction in which the
14  plaintiff would take part.  It has no effect on his incentives.
15  If we disappeared and somebody wanted to access his briefs,
16  they would go to PACER.  They wouldn't go to him.
17          So I did just want to elaborate a little bit more on
18  the public availability.
19          THE COURT:  Anything from counsel for codefendant?
20          MR. HOUGH:  Nothing further on the fair use factors.
21  We did decide to divide up responsibility a bit so that I would
22  focus on the implied license point if your Honor had any
23  questions.
24          THE COURT:  Let me hear from plaintiffs' counsel on
25  anything further on fair use that he wants to say and then we

1   will turn to other issues.

2           MR. BLUE:  Your Honor, on the market harm issue on the
3   fair use, there is a bit made in the papers about the fact that
4   the plaintiffs are going to write these briefs anyway because
5   they have an obligation to the client to right as good a brief
6   as possible.  And that's certainly true.  The deposition
7   questions were:  You would write this and you would do just as
8   good a job even if you would never get paid from a license,
9   isn't that true?  And he said yes.  Of course he said yes.  But
10  that doesn't mean that they have a right to copy and sell.

11          The analogy I can come up with here is movie posters.
12  There are Casablanca movie posters and It's a Wonderful Life
13  movie posters hanging on the walls of living rooms and dining
14  rooms all over the country now.  At the time those movies came
15  out, if you asked the advertising agencies, did you create this
16  movie poster so that you could sell them for decades from now?,
17  they would say, no, I created these movie posters to sell movie
18  tickets.  Well, would you have made that movie poster just as
19  good and tried to sell movie tickets if you knew there would
20  never be a license?  Of course I would do that job.

21          Well, it turned out that years later there was a
22  market for these.  It doesn't mean that people can copy them
23  and sell them with impunity just because at the outset the
24  person who created it never imagined there would be a market
25  for it and because they would have done just as good of a job

1    if there was no licensing market. So I think that that
2    argument fails.
3           Yes, we are in this profession for lots of reasons,
4    one of which is because we get paid for what we do. We do a
5    great job for our clients. We are going to do a great job for
6    our clients whether there is a licensing fee or not. But that
7    doesn't vitiate rights under the copyright act.
8           MR. MARKS: May I respond to that?
9           THE COURT: Sure.
10          MR. MARKS: Under factor four, the market has to be
11   reasonable, traditional or likely to be developed, and his case
12   fails on all three counts. There is simply no market for the
13   licensing of briefs. There never has been. Briefs have been
14   filed for hundreds of years. Whatever copyright theory
15   protects them has existed for generations. West and Lexis
16   started their databases of these types of materials seven years
17   ago. There is just simply no evidence that there would ever be
18   a market for this type of licensing. He has never tried to
19   license it. Nobody has ever tried to license it from him.
20          There is unrebutted testimony in the record that there
21   would not be a licensing market even from the defendants. So
22   even if the Court were to accept, which we don't think it
23   should, the circularity of the argument that because we have
24   used his materials, we would therefore pay for it, even if that
25   logic weren't totally circular, the unrebutted testimony in the

1   record from Mr. Leighton from West, from Ms. Beauchamp from
2   Lexis, from the expert economist David Blackburn representing
3   the defendants, is that this market would not exist, nobody
4   would pay the licensing fees.
5           So with factor four, you have to look to a reasonable,
6   traditional or likely to be developed market.  Not, well, would
7   somebody sometime make some use and therefore I should get
8   paid?  That's just not the test.
9           THE COURT:  What is the market that you're seeking to
10  reach with these materials?
11          MR. MARKS:  What Westlaw offers is an integrated
12  research product.  We have subscribers to our product that uses
13  it for legal research.  It's used by lawyers to understand what
14  arguments have been made in past cases, to understand facts
15  that may not be clear from an opinion, to improve the quality
16  of their advocacy.  It's used by students and academics who are
17  following cases or want to learn about the law or gain
18  experience.  It's used by courts as another means to access
19  court records and often a more convenient means of accessing
20  court records.
21          THE COURT:  And they all pay for that, right?
22          MR. MARKS:  They pay subscription fees to the
23  database, that's correct.
24          THE COURT:  Maybe I am missing why you think there
25  wouldn't be a license agreement potentially.  I understand what

1  you're saying about actual.
2           MR. MARKS:  You mean a licensing market whereby West
3  or Lexis would pay attorneys for the right to include it?
4           The reason that there is not a likely market for that
5  is that the transaction costs of offering that kind of product
6  are insurmountable.  The unrebutted testimony from witnesses
7  from West and from Lexis is that they have no interest in that.
8  They wouldn't pay for it.  The product wouldn't be viable if
9  they had to do it.  You would have the transaction cost of
10 figuring out who the proper copyright owner is.  Even on this
11 record, it's clear that that's not an easy thing to do.  In
12 many cases, you would have the enormous transaction costs of
13 getting the licensing in place, and it's simply not a product
14 that they have an interest in doing.  Both West and Lexis
15 removed Mr. White's briefs because they are not interested.
16 When he objected, they took them out.  No one work is that
17 important, and if there had to be a licensing regime, the
18 product simply would be unlikely to exist.  Again, that's the
19 unrebutted testimony of fact witnesses from West and Lexis and
20 that's the unrebutted testimony of Dr. Blackburn.
21          THE COURT:  All right.
22          Now, you wanted to say something about implied
23 license?
24          MR. HOUGH:  I have been assigned to focus on that
25 issue.  I am not sure that I have anything to say that would

CBK8WHIA

1    meet your Honor's rules for oral argument.  I think we have
2    covered it very well in the briefs.
3              THE COURT:  That's why I like my rule.
4              MR. HOUGH:  Our position is based on the proposition
5    that objective conduct, knowledge and silence and acquiescence
6    can give rise to an implied license, and we cited the cases in
7    the briefs where courts have said that.  I will be happy to
8    discuss that if your Honor has any questions about it.
9              THE COURT:  I am going to pass on that, but I did have
10   one question for plaintiff.  This goes to the question of
11   infringement.  Do you agree or disagree that there are material
12   facts in issue as to the adequacy of your copyright because of
13   the presence of another person and the creation or whatever?
14             MR. BLUE:  I think that's, respectfully to the
15   defendants, ridiculous.  The testimony was that Mr. High was
16   acting of counsel to the law firm and his deposition testimony
17   very clearly said he created this work for the plaintiff law
18   firm Edward L. White, P.C., and that all of the profit,
19   intellectual property, work product, whatever it is, is owned
20   by the law firm.  I think it's not an issue.
21             Even if it somehow were theoretically an issue, I
22   suppose it could be solved in three minutes by a written
23   assignment of any copyright he has got to the law firm if we
24   had to do that.  But there is no dispute between those folks
25   who owns it.  This is a dispute that's cooked up by the

CBK8WHIA

1    defendants.

2             MR. MARKS:  Let me just respond to that.  The work for
3    hire rules in the copyright act are clear.  Both Mr. High and
4    Mr. White testified Mr. High is not an employee.  He didn't
5    create the drafts of the briefs in any capacity as an employee.
6    And there is no written assignment.  It just simply doesn't
7    qualify as a work for hire that would automatically confer
8    ownership on Edward L. White, P.C.  And there is no written
9    assignment in the record.  On these facts, there are certainly
10   issues about the ownership of the copyright, and it's not
11   enough that they may have intended for Mr. White to own it.
12   The rules are what the rules are, and without a written
13   assignment and without being from an employee, Edward L. White,
14   P.C. does not own those copyrights.

15            THE COURT:  Well, he testified, the other fellow, that
16   everything belonged to them.  So it does sound like this would
17   be easily rectifiable, yes?

18            MR. MARKS:  It may be rectifiable if there were an
19   assignment.  There hasn't been an assignment.  The record as it
20   stands now, there is not clear title to the ownership.  He is
21   not entitled to the presumption of validity of the copyright
22   registration because there are material mistakes in the
23   registration form, material inaccuracies.  And whether or not
24   it could be fixed in some manner, that's not the facts that we
25   have before us now.  What we have before us now are that there

1  were drafts prepared by somebody who wasn't an employee and no
2  written assignment of the copyright.  So there is certainly
3  material questions about the validity and the ownership of the
4  copyright.
5          THE COURT:  Is the only one that is material that one?
6  There were some others you referred to.  There was a question
7  about whether it really was published, things like that.
8          MR. MARKS:  The issue of whether or not the work was
9  published, and I think that West and plaintiffs agree that the
10 work has not been published, those go to remedies, not to the
11 prima facie case of whether or not there is copyright
12 infringement.
13         THE COURT:  So let's assume for the sake of argument
14 that tomorrow he gets an assignment from Mr. High and the Court
15 were to permit that to be presented to the Court, does that
16 solve your problem or are you saying there is still a problem?
17         MR. MARKS:  If he can prove at trial that he has valid
18 ownership of the copyright, then he can establish that at
19 trial.
20         THE COURT:  I am just wondering whether as to this
21 element on summary judgment I have to have a trial, assuming
22 that were in the end to be dispositive for some reason.  It
23 sounds like that would be a dumb thing to have a trial just for
24 that reason.
25         MR. MARKS:  We are not suggesting that it's an

1   incurable defect, if he is in fact able to cure the defect and
2   the presentation of ownership.  Our position is simply on this
3   record he hasn't established ownership.  I am not suggesting
4   it's an incurable problem, but we are now getting into a
5   situation where we are hypothesizing that he will get an
6   assignment that he may or may not get.
7          THE COURT:  So let me go back to the plaintiff.  Can
8   you get that assignment?
9          MR. BLUE:  I can represent to you that Mr. High has
10  told me that he would execute an assignment, and depending on
11  his availability, I could have it before Thanksgiving.
12         THE COURT:  I will give you a week to get it and to
13  submit it without further argument just so that it is part of
14  the record in this case.
15         MR. BLUE:  Thank you, your Honor.
16         THE COURT:  Anything else any counsel wants to raise?
17         All right.  So I very much appreciate your being here.
18  I know you had to wait a while.  I will take the matter under
19  advisement.  There are many interesting issues here, but I
20  think I can get you a decision by the end of January.  I don't
21  think I can do it before then.
22         Very good.  Thanks very much.
23         (Adjourned)
24
25