```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
EDWARD L. WHITE, EDWARD L. WHITE,    :
P.C., and KENNETH ELAN, on behalf of :
themselves and all others similarly  :
situated,                            :
                                     :
        Plaintiffs,                  :
                                     :     12 Civ. 1340 (JSR)
        -v-                          :
                                     :     MEMORANDUM AND ORDER
WEST PUBLISHING CORPORATION d/b/a    :
"West," and REED ELSEVIER INC.,      :
d/b/a "LexisNexis,"                  :
                                     :
        Defendants.                  :
------------------------------------x
```

JED S. RAKOFF, U.S.D.J.

On February 22, 2012, plaintiffs Edward L. White, Edward L. White, P.C., and Kenneth Elan filed a putative class action alleging copyright infringement against defendants West Publishing Corp. ("West") and Reed Elsevier, Inc. ("Lexis"). On June 26, 2012, after the Court had dismissed Elan's claims and those of the proposed subclass of plaintiffs who had not registered any copyrights, White filed an amended, non-class action complaint, asserting claims of copyright infringement based on the inclusion of White's copyrighted briefs in West's "Litigator" and Lexis's "Briefs, Pleading and Motions" databases. On September 28, 2012 and October 5, 2012, defendants and White, respectively, filed cross-motions for summary judgment on White's copyright infringement claims. The Court heard oral argument on these motions on November 20, 2012 and in a "bottom-line" Order dated February 11, 2013, granted defendants'

1

motion for summary judgment and denied plaintiff's motion. This Memorandum and Order explains the reasons for that decision and directs the entry of final judgment.

Plaintiffs sue West and Lexis for copyright infringement based on the inclusion of two of White's copyrighted briefs in the Westlaw "Litigator" and Lexis "Briefs, Pleading and Motions" (BPM) databases. The briefs at issue are "Plaintiffs' Combined Motion for Summary Judgment, Beer and Ramsey, and Brief in Support" ("Summary Judgment Motion"), filed May 20, 2009, and "Plaintiffs' Motion in Limine" ("Motion in Limine"), filed March 15, 2010, both of which White filed while serving as class counsel in *Beer v. XTO Energy, Inc.*, No. Civ-07-798-L, in the Western District of Oklahoma. Defendant West Publ'g Copr.'s Statement of Uncontested Material Facts Pursuant to Local Rule 56.1 ("West 56.1") ¶¶ 16-19.

On April 13, 2010, mid-way through the litigation, the *Beer* Court removed White as class counsel in *Beer* and decertified the class. *Id.* ¶ 22. Two individuals filed a motion to intervene as new named plaintiffs in *Beer* with new class counsel. *Id.* ¶¶ 23-24. Because White was concerned that the newly proposed class counsel or other lawyers would use his work product, White registered copyrights on the *Beer* Summary Judgment Motion and Motion in Limine briefs on May 20, 2010, and May 21, 2010, respectively. *Id.* ¶ 25.

Prior to registering copyrights on the Summary Judgment Motion and Motion in Limine briefs, White filed the motions with the court using the electronic CM/ECF (PACER) service, from which West and

2

Lexis retrieved the documents. West 56.1 ¶¶ 26, 27; Def. Reed Elsevier Inc.'s Rule 56.1 Statement of Undisputed Facts in Support of Its Motion for Summary Judgment ("Lexis 56.1") ¶¶ 10, 23-24. Filing a document on PACER makes that document publicly available online as well as in the court's clerk's office and allows members of the public to retrieve and download a copy of the document from PACER for $0.10 per page, up to $3.00 per document. Lexis 56.1 ¶¶ 17, 20, 24-25.

West's Litigator and Lexis's BPM products offer users access to select legal documents that were filed, without seal, in state and federal courts. West 56.1 ¶¶ 3-5, 7; Lexis 56.1 ¶¶ 2-4. Once West or Lexis selects a particular legal document for inclusion into Litigator or BPM, the document is converted into a text-serchable electronic file and saved in each database's proprietary format. West 56.1 ¶ 9; Lexis 56.1 ¶ 33. The document is further modified as follows: an editor reviews the document to redact sensitive and private information, West 56.1 ¶ 11; Lexis 56.1 ¶ 30; the editor codes and/or extracts from the document key characteristics like jurisdiction and practice area in order to allow users to find and retrieve documents more easily, West 56.1 ¶ 10; Lexis 56.1 ¶¶ 32, 36; the editor links the document to decisions and other filings in the same or related cases and creates links to authorities cited in the document, West 56.1 ¶ 10; Lexis 56.1 ¶¶ 32, 26; a unique identifier is created for each document for ease of locating and citing the document, West 56.1 ¶; Lexis 56.1 ¶ 41; and a link to a

3

PDF of the as-filed version of the document is included in the database version of the document to maintain an archival copy, West 56.1 ¶ 14; Lexis 56.1 ¶ 39. BPM contains over one million legal documents, and Litigator approximately eleven million legal documents, obtained either from PACER or from courts directly. Lexis 56.1 ¶¶ 5, 7, 1; West 56.1 ¶¶ 5-6.

The *Beer* Summary Judgment Motion was loaded into Litigator on July 11, 2009, and accessed a total of five times between then and March 6, 2012; the Motion in Limine was loaded into Litigator on May 2, 2010, and accessed a total of seven times between then and March 5, 2012. West 56.1 ¶¶ 27-28. Both motions were available as part of BPM as of August 4, 2010; the Summary Judgment motion was never accessed, and the Motion in Limine was accessed by three users. Lexis 56.1 ¶¶ 43, 73-74.

Section 107 of the Copyright Act provides a defense to copyright infringement that allows for "fair use" of a copyrighted work without permission based on consideration of four non-exclusive statutory factors: "(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work . . . ." 17 U.S.C. § 107. The Court finds that three of the

4

above factors weigh in favor of a finding of fair use, while one of the factors is neutral.

Regarding the first factor, a key issue is: "whether and to what extent the new work is 'transformative,'" *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 578 (1994), that is, whether how the defendants have altered and used plaintiff's work has effectively transformed it into a different kind of work. The Court finds that West and Lexis's use of the briefs was transformative for two reasons. First, while White created the briefs solely for the purpose of providing legal services to his clients and securing specific legal outcomes in the Beer litigation, the defendants used the brief toward the end of creating an interactive legal research tool. *See Blanch v. Koons*, 467 F.3d 224, 251 (2d Cir. 2006) ("The sharply different objectives that Koons had in using, and Bland had in creating [the work] confirms the transformative nature of the use."). Second, West and Lexis's processes of reviewing, selecting, converting, coding, linking, and identifying the documents "add[] something new, with a further purpose or different character" than the original briefs. *Campbell*, 510 U.S. at 579. While, to be sure, the transformation was done for a commercial purpose, "the more transformative the new work, the less will be the significance of other factors, like commercialism, that may weigh against a finding of fair use." *Campbell*, 510 U.S. at 579. Thus, on net, the first factor weighs in favor of a finding of fair use.

5

Regarding the second factor (the nature of the copyrighted work), "[i]n general, fair use is more likely to be found in factual works than in fictional works." *Stewart v. Abend*, 495 U.S. 207, 237 (1990). Here, the briefs at issue are functional presentations of fact and law, and this cuts towards finding in favor of fair use. It is true that "the scope of fair use is narrower with respect to unpublished works [because] . . . . the author's right to control the first public appearance of his expression weighs against use of the work before its release." *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 564 (1985). However, while White's briefs were in some sense unpublished, this factor is made less significant by the fact that White intentionally made the briefs publicly available by filing them with the court; thus the circumstances of this case do not implicate the rationales for protecting unpublished works. On net, the second factor also weighs in favor of a finding of fair use.

Regarding the third factor, which looks at "'the quantity and value of the materials used . . . in relation to the purpose of the copying,'" *Blanch*, 467 F.3d at 257 (quoting *Campbell*, 510 U.S. at 586), although "copying of an entire work [does not] *favor[]* fair use[,] . . . courts have concluded that such copying does not necessarily weigh against fair use because copying the entirety of a work is sometimes necessary to make a fair use of the image." *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 613 (2d Cir. 2006). Although defendants here copied the entirety of White's

6

briefs, such copying was necessary to make the briefs comprehensively text searchable. Thus the Court finds that defendants only copied what was reasonably necessary for their transformative use, and that the third factor is therefore neutral.

Regarding the fourth factor, a finding of fair use is disfavored "only when the market is impaired because the . . . material serves the consumer as a substitute, or . . . supersedes the use of the original." *Bill Graham Archives*, 448 F.3d at 614 (quoting Pierre N. Leval, *Toward a Fair Use Standard*, 103 HARV. L. REV. 1105, 1125 (1990)). In determining whether such a market exists, the Second Circuit "looks at the impact on potential licensing revenues for 'traditional, reasonable, or likely to be developed markets.'" *Bill Graham Archives*, 448 F.3d at 614 (quoting *American Geophysical Union v. Texaco Inc.*, 60 F.3d 913, 930 (2d Cir. 1994)). In this instance, West's and Lexis's usage of the briefs is in no way economically a substitute for the use of the briefs in their original market: the provision of legal advice for an attorney's clients. White himself admits that he lost no clients as a result of West's and Lexis's usage. Lexis 56.1 ¶ 94. Furthermore, no secondary market exists in which White could license or sell the briefs to other attorneys, as no one has offered to license any of White's motions, nor has White sought to license or sell them. *See Blanch*, 467 F.3d at 258 (finding that this factor "greatly favor[ed]" the alleged infringer where the copyright holder had "never licensed any of her photographs for use in works of graphic or other visual

7

art"). Although White argues that Lexis and West impede a market for licensing briefs, the Court finds that no potential market exists because the transactions costs in licensing attorney works would be prohibitively high. Thus on net, the fourth factor weighs in favor of defendants and a finding of fair use.

Accordingly, for the foregoing reasons, the Court finds that the defendants' use of plaintiff's brief was a fair use. The Court therefore reaffirms its Order of February 11, 2013, granting defendants' motion for summary judgment. The Clerk of the Court is directed to enter judgment dismissing the complaint with prejudice, and to close the case.

SO ORDERED.

Dated: New York, NY
July 3, 2014

_____
JED S. RAKOFF, U.S.D.J.